UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MARIA JACKSON,

                Plaintiff,

      -against-                                     08 Civ. 1064 (LAK)

THE SCOTTS COMPANY,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

        In a memorandum and order, dated April 9, 2008 (the "Memorandum"), I dismissed plaintiff's twelfth cause of action, which claimed that defendant violated Section 120 of the New York Workers' Compensation Law by discriminating against plaintiff on the basis of her race, for failure to state a claim. I did so for the eminently simple reason that the Workers' Compensation Law, unlike the New York State Human Rights Law, does not even address, let alone proscribe, employment discrimination on the basis of race or other suspect characteristics. I directed that plaintiff's counsel, Sandra D. Frelix, Esq., whom I have sanctioned previously in this action for a prior frivolous filing of like nature, show cause why she should not be sanctioned for violating Fed. R. Civ. P. 11(b)(2) on the ground that her contention in her motion and memorandum of law, entered April 8, 2008, that Section 120 of the Workers' Compensation Law prohibits discrimination on the basis of race was not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or

2

for establishing new law.[1]

Ms. Frelix's response ignored entirely the language of Section 120 of the Workers' Compensation Law, which, as demonstrated in the Memorandum, makes abundantly clear that her argument is entirely baseless. She has, however, advanced two arguments.

First, she contends that the amended complaint alleges that "[p]laintiff's supervisor commanded Plaintiff and her co-workers not to inform personnel about her injury." This, she argues, gives rise to "a reasonable inference that Defendant's failure to provide a legitimate reason to support such a command was a pretext for race discrimination." Further, she maintains that plaintiff never was counseled as to her rights under the workers' compensation regime.[2]

Accepting for present purposes the well pleaded factual allegations of the complaint, I nevertheless fail to see how Ms. Frelix's allegation in the twelfth cause of action was anything but frivolous. The claim there asserted, whatever Ms. Frelix says now, was simply this: "Defendant knowingly or recklessly violated plaintiff's New York State Workers' Compensation Rights by subjecting plaintiff to treatment that no Caucasian employee of the defendants' [*sic*] has been subjected to."[3] For reasons stated in the Memorandum, race-based disparate treatment of an employee does not violate the Workers' Compensation Law.

Ms. Frelix's second argument – which rests only on an unsworn assertion in her memorandum, unsupported by an affidavit, declaration, or testimony – is that she located eight cases

---

[1] Docket item 31.

After receiving Ms. Frelix's written response, I offered her the opportunity to present oral argument or testimony on the issue of sanctions. [Docket item 39] Although she presented oral argument, she did not present testimony.

[2] Pl. Mem. 4-5.

[3] Am. Cpt. ¶ 265.

in which, she says, "claims of race discrimination . . . were addressed and discussed" by the Workers' Compensation Board.[4]  Assuming that Ms. Frelix in fact was aware of these cases before she signed the offending papers,[5] they would not avail her in the least.

The fundamental question here is whether Ms. Frelix had any responsible basis for certifying to the Court, as she did, that the defendant's alleged disparate treatment of plaintiff on the basis of race violated the Workers' Compensation Law.  Not one of these cases even remotely supports such a proposition.  All deal with such core workers' compensation questions as whether alleged verbal abuse that happened to have been ethnic in nature resulted in a workplace-related major depressive disorder; whether stress attributed to alleged sexual harassment was an occupational disease; and whether a racially motivated assault by a co-worker resulted in a work-related injury.  In the only cited decision in which the Board came close to addressing the issue presented here, it simply noted the claimant's contentions that the claimant was a victim of, among other things, racial discrimination and was terminated in violation of Section 120, and proceeded to reject the claim on the ground that the claimant was terminated for a valid business reason.[6]  It never addressed the question whether racial discrimination *vel non* would have violated that statute.

Accordingly, it is perfectly plain that, on an objective basis, Ms. Frelix's contention that

---

[4] Pl. Mem. 5 n.1 (citing *Thomas J. Mitchell*, 2007 WL 2998906 (N.Y. Work. Comp. Bd. Oct. 10, 2007); *N.Y.S. Dept. of Corrections*, 2003 WL 1214348 (N.Y. Work. Comp. Bd. Mar. 5, 2003); *Upstate Metals Corp.*, 2001 WL 1010947 (N.Y. Work. Comp. Bd. Aug. 13, 2001); *CNY Dept. of Corrections*, 2000 WL 33397971 (N.Y. Work. Comp. Bd. Sept. 12, 2000); *Guardsman Elevator Co.*, 1997 WL 751789 (N.Y. Work. Comp. Bd. Oct. 29, 1997); *CNA Risk Mgmt. Group*, 1997 WL 641021 (N.Y. Work. Comp. Bd. Oct. 9, 1997); *Bernard Fineson Dev. Ctr.*, 1995 WL 475627 (N.Y. Work. Comp. Bd. Aug. 7, 1995); *N.Y.S. Rochester Psychiatric Ctr.*, 1990 WL 367284 (N.Y. Work. Comp. Bd. Dec. 12, 1990)).

[5] Her papers do not so state.  She claimed during oral argument that she knew of the cases before she filed the papers.  Tr., May 2, 2008, at 3.

[6] *Guardsman Elevator Co., supra* note 4.

4

Section 120 of the Workers' Compensation Law prohibits discrimination on the basis of race was not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.  Her certification that it was so warranted was inaccurate.

The only remaining questions, and they have not been raised by Ms. Frelix, are whether a finding of bad faith must be made in order to warrant sanctions and, if so, whether such a finding is warranted here.

In *In re Pennie & Edmonds LLP*,[7] the Second Circuit held that sanctions may not be imposed absent a finding of bad faith where the Rule 11 sanction proceeding is initiated by a court *sua sponte* in circumstances that do not afford an opportunity to reconsider and withdraw the allegedly offending submission.[8]  It did not, however, "decide the standard for a sanction proceeding initiated . . . when the challenged submission could be corrected or withdrawn as part of the lawyer's response to the show cause order, even though the Rule does not explicitly guarantee a 'safe harbor' protection in such circumstances."[9]

In my view, the rationale of *Pennie & Edmonds* does not apply in a case such as this, as Ms. Frelix here had an opportunity to withdraw the offending documents in response to the Court's order to show cause why she should not be sanctioned.  In consequence, the imposition of sanctions here based on the objective unreasonableness of her behavior would not deter other lawyers from filing papers that might conceivably be in the vicinity of the border separating permissible from impermissible

---

[7] 323 F.3d 86 (2d Cir. 2003).

[8] *Id.* at 90-92.

This view has been rejected at least by the First Circuit.  *Young v. City of Providence ex rel. Napolitano,* 404 F.3d 33, 39-40 (1st Cir. 2005).

[9] 323 F.3d at 91-92 (footnote omitted).

5

action. Accordingly, I conclude that a finding of objective unreasonableness would suffice for the imposition of sanctions in this case.[10]

Turning to the merits, there is absolutely nothing in the language of the Workers' Compensation Law that supports Ms. Frelix's argument that that statute would be violated by disparate treatment of an employee on the basis of race. Assuming that the cases were known to her, they are very far from supporting her position. In fact, when the Court asked Ms. Frelix at oral argument to explain her logic in asserting that the cases supported her position, she could not do so.

Accordingly, the Court finds that Ms. Frelix's signatures on her motion and memorandum of law [docket items 29-30] violated Fed. R. Civ. P. 11(b)(2) because her contention that Section 120 of the Workers' Compensation Law prohibits discrimination on the basis of race was not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Ms. Frelix shall pay a monetary sanction of $750 to the Clerk of the Court no later than May 30, 2008.

SO ORDERED.

Dated:    May 14, 2008

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[10] This makes it unnecessary to consider whether Ms. Frelix acted in subjective bad faith. That question therefore would remain open on remand in the event the Court of Appeals were to conclude that the *Pennie & Edmonds* standard applies in this case.

6

Case 1:08-cv-01064-LAK    Document 42    Filed 05/14/2008    Page 6 of 6