UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA JACKSON,

    Plaintiff,

 -against-

THE SCOTTS COMPANY

    Defendant

08 Civ. 1064 (LAK)

**DECLARATION OF
CRAIG S. FRIEDMAN IN
SUPPORT OF FRCP 26 MOTION
TO COMPEL PRODUCTION
OF DAMAGES COMPUTATION
AND SUPPORTING DOCUMENTS**

CRAIG S. FRIEDMAN declares as follows:

1.  I am a member of the bar of this Court and an associate of Jones Day, counsel to Defendant The Scotts Company LLC (incorrectly named in the Complaint "The Scotts Company") ("Defendant" or "Scotts"). I am fully familiar with this proceeding as well as the specific matters set forth herein. I submit this declaration in support of Defendant's motion for to compel pursuant to Federal Rule of Civil Procedure ("FRCP") 26.

2.  Attached as Exhibit A is a copy of the Proposed Amended Verified Complaint, filed by Plaintiff on March 27, 2008.

3.  On April 7, 2008, counsel for Plaintiff Sandra Frelix, Esq., and I held the FRCP 26(f) conference by telephone.

4.  Attached as Exhibit B is a copy of the letter I wrote to Ms. Frelix dated April 28, 2008.

5.  Attached as Exhibit C is a copy of Plaintiff's response to FRCP 26(a)(1)(A)(iii) excerpted from Plaintiff's Initial Disclosure Pursuant To FRCP 26(a), dated April 30, 2008 and faxed to me on May 2, 2008.

6.      Attached as Exhibit D is a copy of a letter I wrote to Ms. Frelix dated May 7, 2008.

7.      Attached as Exhibit E is a copy of a letter I wrote to Ms. Frelix dated May 21, 2008.

8.      Attached as Exhibit F is a copy of Plaintiff's Supplemental Disclosure Pursuant to FRCP 26(a), dated May 25, 2008 and faxed to me May 28, 2008.

9.      Attached as Exhibit G is a copy of a letter I wrote to Ms. Frelix dated June 6, 2008.

10.     On June 10, 2008, I spoke with Ms. Frelix by telephone and repeated Defendant's position, stated in the June 6 letter, that Plaintiff does not need to retain an expert to provide a basic computation of damages or to produce the documents supporting her damages claims.

11.     Attached as Exhibit H is a copy of a letter I wrote to Ms. Frelix dated June 11, 2008.

12.     Attached as Exhibit I is a copy of Plaintiff's Supplemental Disclosure Pursuant To FRCP 26(a), dated June 21, 2008, along with its cover letter dated June 23, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 10th day of July, 2008.
New York, New York

/s/ Craig S. Friedman

_____

Craig S. Friedman

# EXHIBIT A

SUPREME COURT OF TSHE STATE OF NEW YORK
COUNTY OF BRONX

-------------------------------------------------------------------------X

MARIA JACKSON

                              *Plaintiff,*                          **PROPOSED
                                                                    AMENDED
                                                                    VERIFIED
       -against-                                                    COMPLAINT**


THE SCOTTS COMPANY                                                  **INDEX No.:**

                              *Defendant.*

-------------------------------------------------------------------------X

       Plaintiff, MARIA JACKSON ("Mrs. Jackson", "Plaintiff" or "plaintiff"), by and

through her attorney, SANDRA D. FRELIX, for her Complaint against THE SCOTTS

COMPANY ("the Company", "Defendant Scotts", "Defendant" or "defendant"), thereby

states and alleges as follows:

                          **NATURE OF THE CLAIMS**

       1.       This action is for declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendant's unlawful employment practices and retaliation

against Plaintiff, including the discriminatory treatment, racial harassment, and retaliation

against Plaintiff due to her Race and/or Color (African-American/Black), gender,

deprivation of property without due process of law and equal protection of laws, in

violation of the New York State Human Rights Law, New York Executive Law §§ 290 et

seq.; and the New York City Human Rights Law, Administrative Code of the City of

New York §§ 8-101 et seq. and the New York State Constitution. Additionally, Mrs.

Jackson was subjected to defamation: slander per se and libel per se, being placed in a

false light and was forced to endure the breach of an implied contract to act in good faith

in violation of New York State Law. Moreover, the defendant caused her to suffer

economic discrimination and failed to provide her a reasonable accommodation pursuant
to her disability in violation of 9 New York Code of Rules and Regulations (NYCRR)
§466.11.

## JURISDICTION AND VENUE

2.      The Court has personal jurisdiction over Defendant pursuant to Sections
301 and/or 302 of the New York Civil Practice Law and Rules ("CPLR") in that the
Defendant transacts and/or solicits business within the state from which they derive
substantial revenues.

3.      The Court has personal jurisdiction over Defendant because a significant
portion of the unlawful employment practices and events giving rise to the claims herein
occurred in New York.

4.      The Court has subject matter jurisdiction over this action by virtue of the
New York State Human Rights Law, New York Executive Law § 279(9); the New York
City Human Rights Law, Administrative Code of the City of New York § 8-502(a); and
the Constitution of the State of New York.

5.      Venue is proper in this county pursuant to CPLR § 503(c) because the
Defendant conducted business in Bronx County at the relevant times described in this
Complaint and continues to conduct business in Bronx County.

6.      Prior to the commencement of this action, a copy of this Complaint was
served both on the New York City Commission on Human Rights and the Office of the
Corporation Counsel of the City of New York, thereby satisfying the notice requirements
of the New York City Administrative Code.

## PARTIES

7.      Plaintiff Maria Jackson is an African-American citizen female who resides in Springfield Gardens, New York.  At all relevant times, Plaintiff has met the definition of an "employee" under all applicable statutes.

8.      Defendant Scotts conducts business throughout New York State as well as in all the other forty-nine states and internationally.

9.      The Scotts Company is located at 14111 Scottslawn Road, Marysville, OH 43041.

## FACTUAL ALLEGATIONS

10.     Defendant hired Mrs. Jackson in April 2001 as a Seasonal Merchandiser.

11.     She was immediately promoted to the position of Sales Merchandising Manager on or about December 14, 2001.

12.     Mrs. Jackson worked diligently for the Company for four (4) years at the time of her June 2005 unlawful termination.

13.     Mrs. Jackson excelled at her responsibilities pursuant to each of her positions.

14.     Mrs. Jackson also received exemplary job performance appraisals.

15.     In the Spring of 2002 Mrs. Jackson suffered extreme embarrassment and humiliation when District Manager Patrick McGarr ("D.M. McGarr") stated that: "Maria's not Black she is Italian!"

16.     This incident took place at the Liberty Diner in Farmingdale, N.Y.

17.     There was never an occasion witnessed by Mrs. Jackson where a white person's core identity was challenged and violated.

18.    In the spring of 2002 Mrs. Jackson became aware that the Defendant was being sued for discrimination for not hiring women in the 04 region.

19.    She further learned that the Defendant had specifically directed D.M. McGarr to hire a black woman.

20.    D.M. McGarr shared this information with James Fitch ("Mr. Fitch"), a Sales Merchandising Manager ("SMM").

21.    Mr. Fitch wanted D.M. McGarr to hire his friend, a Caucasian male, who had previously resigned from the Defendant but wanted his old position back.

22.    At the December 2002 conference in Naples, Florida Mrs. Jackson, D.M. McGarr, and co-workers were attending a class.

23.    Mrs. Jackson went the ladies room upon her return the seats were taken in her class' section.

24.    The only seat available in the section with her co-workers was located at the far end of the table where her co-workers were seated.

25.    The closest unoccupied seat was located in an area occupied by another district.

26.    The district manager of that region Patrick Flagherty ("D.M. Patrick Flagherty) stated that she could sit with his district.

27.    However, D.M. McGarr tapped her on the shoulder and told her that she could not sit there.

28.    D.M. McGarr then signaled one of their co-workers to move down so she could sit with them.

29.     Mrs. Jackson then heard Mr. Flagherty state to his SMM's: "What is this? Is she too good to sit with us?  Oh yeah, that's right that's Pat's token."

30.     This racist comment was not only hurtful but it was extremely embarrassing to Mrs. Jackson.

31.     Another area where Mrs. Jackson was subjected to disparate treatment pertains to storage facilities.

32.     Point of Purchase is advertising that is sent to managers in great quantity.

33.     Therefore, it is customary for the Company to pay for the storage facility utilized by the managers to house and maintain the advertising materials.

34.     Unfortunately, Mrs. Jackson was informed in no uncertain terms by D.M. McGarr that his budget did not permit him to go over the $75.00 per month for storage.

35.     Consequently, she was forced to store the materials in her home, which greatly inconvenienced her family.

36.     Mrs. Jackson eventually learned that D.M. McGarr paid well over $100.00 for storage for Mrs. Jackson's co-workers who operated in eastern Long Island.

37.     This is an undeniable illustration of the humiliating, embarrassing, disparate as well as racist treatment imposed upon Mrs. Jackson by the Company.

38.     Moreover, even though D.M. McGarr was absolutely aware that Mrs. Jackson was out on a work related disability (herniated and bulging discs) he still spitefully sent Point of Purchase advertising materials to her home.

39.     In the spring of 2003 Ivy Acres held its annual flower show and invited the Company along with other lawn and garden professionals.

5

40.    The event is held on Long Island and after the showing a lavish luncheon is provided for those in attendance.

41.    All of Mrs. Jackson's colleagues were allowed to take the day off and attend the event and the luncheon that followed.

42.    However, Mrs. Jackson was not allowed to attend the event.

43.    But, the Company invited a white woman from an entirely different district (Philadelphia, PA) to attend the event and luncheon with all her expenses paid by the Company.

44.    This incident was extremely insulting to Mrs. Jackson and it too displayed the grossly disparate treatment she was subjected to.

45.    Mrs. Jackson was a dedicated and loyal employee of the Company.

46.    Her act of dedication and loyalty was demonstrated in March of 2003 when she was scheduled to have a hernia operation in March 2003.

47.    Mrs. Jackson's hernia injury was the result of work related lifting.

48.    Mrs. Jackson called D.M. McGarr from the Gunhill Road Home Depot store located in the Bronx in February 2003 to inform him that she needed to have hernia surgery in March 2003.

49.    During the same telephone conversation D.M. McGarr said no to the timing of her March 2003 hernia surgery and they would discuss the matter later.

50.    Mrs. Jackson also told D.M. McGarr that she was in pain.  But D.M. McGarr flippantly told her that she would have to get the job done.

51.    However, Mike Garbiele ("Mr. Garbiele"), a co-worker of Mrs. Jackson, required medical treatment for a torn rotor cup in his arm.

52.     D.M. McGarr not only allowed Mr. Garbiele time off for medical treatment of his injury but also provided coverage for his stores.

53.     Clearly, D.M. McGarr treated Mrs. Jackson disparately from Mr. Garbiele.

54.     D.M. McGarr did not require Mr. Garbiele to postpone his treatment.

55.     Additionally, D.M. McGarr provided coverage for Mr. Garbiele and allowed him time off for his treatment.

56.     Prior to learning about how D.M. McGarr accommodated Mr. Garbiele she decided to postpone it to accommodate D.M. McGarr even though her physician advised her against postponing the operation.

57.     D.M. McGarr requested that she delay the surgery because the season had just begun and he could not afford to have her out.

58.     D.M. McGarr finally agreed that she could have her surgery in June 2003.

59.     Although Mrs. Jackson has been totally dedicated and loyal to the Company these sentiments were not reciprocated back to her.

60.     Two days after her surgery D.M. McGarr called Mrs. Jackson on her hospital bedside telephone to discuss Scotts' business.

61.     Mrs. Jackson's physician Matthew Kilgo, M.D. answered her hospital bedside telephone and upon learning that D.M. McGarr wanted to discuss Scotts' business he told D.M. McGarr to call back.

62.     D.M. McGarr told Mrs. Jackson and her co-workers that they should not inform corporate that she's out recovering from surgery.

63.     Thus, Mrs. Jackson's surgery was never reported to the Company's human resources department.

64.    During her surgery she had an emergency blood transfusion and was hospitalized once again in July 2003.

65.    Mrs. Jackson was not only forced to submit to a hostile work environment and disparate treatment but she had to bear the indignity of inhumane treatment as well.

66.    The inhumane treatment manifested itself while she was at home recuperating from surgery and the relapse.

67.    D.M. McGarr had the unmitigated audacity to continue to burden Mrs. Jackson by having the Point of Purchase advertising material sent to her home.

68.    D.M. McGarr demanded that she follow-up on reports.

69.    D.M. McGarr also demanded that she answer calls on her cell phone from her home while she was recovering.

70.    Upon Mrs. Jackson's return to work in October 2003 D.M. McGarr was undaunted and unfazed by the fact that she had major surgery four months earlier.

71.    D.M. McGarr insisted that she work at the same level and pace that she worked at prior to her surgery.

72.    D.M. McGarr's actions were so detrimental to her recovery that in 2004 Mrs. Jackson's surgeon wrote two letters addressed to D.M. McGarr requesting a reasonable accommodation for his patient, Mrs. Jackson.

73.    The physician clearly expressed that lifting for Mrs. Jackson was unacceptable.

74.    D.M. McGarr failed to give Mrs. Jackson a reasonable accommodation.

75.    D.M. McGarr expected Mrs. Jackson to perform in the same manner that she had prior to her major surgery.

76.     D.M. McGarr informed Mrs. Jackson in no uncertain terms that she would have to find a way to get the job done.

77.     Another instance of discrimination against Mrs. Jackson occurred in the spring of 2004 when she requested to take her son to the dentist for a serious procedure.

78.     D.M. McGarr denied Mrs. Jackson's request to take her son to the dentist for the serious procedure.

79.     However, D.M. McGarr allowed Mrs. Jackson's co-worker, Jimmy Fitch, to take his son to a baseball game.

80.     Mrs. Jackson was also a victim of economic discrimination.

81.     During her October 2003 yearly evaluation D.M. McGarr raved about her performance and she was given a $900.00 raise.

82.     D.M. McGarr informed her that he had to fight to get her and her colleagues the $900.00 raises from Mike Carbanara ("Mr. Carbanara") the Regional Sales Director.

83.     D.M. McGarr requested that Mrs. Jackson not discuss her raise with her Caucasian male co-workers because he had gotten her a little more based on the fact that she was assigned to the Jericho Home Depot.

84.     However, shortly thereafter, she learned that her Caucasian male co-workers had each received a $1500.00 raise.

85.     This too illustrates the economic discrimination and disparate treatment she was subjected to and the hostile environment she worked in.

86.     It also demonstrates that D.M. McGarr acted in bad faith with Mrs. Jackson.

9

87.    The discriminatory and disparate treatment continued in that in the spring of 2004 Mrs. Jackson was servicing nine (9) Home Depots stores.

88.    She was firmly instructed that the Jericho Home Depot was to have one (1) dedicated merchandiser whose job was to service that store only.

89.    The individual who was the dedicated merchandiser to the Jericho Home Depot was a Caucasian male named Dominic Balducci ("Mr. Balducci").

90.    Mrs. Jackson was responsible for servicing eight (8) other Home Depot stores.

91.    However, she was assigned only one merchandiser to service the other eight Home Depot stores his name was Tyrone Jackson, ("Mr. Jackson") an African-American male.

92.    Mrs. Jackson's Caucasian male co-workers were assigned six to seven Home Depot stores.

93.    Moreover, her Caucasian male co-workers were assigned as many as four (4) merchandisers to service the stores they were responsible for.

94.    In 2003 Mr. Carbanara allocated Mrs. Jackson an additional twenty (20) hours of merchandising.

95.    But, D.M. McGarr instructed Mrs. Jackson to assign all the twenty (20) hours to the Jericho Home Depot store.

96.    During the gardening season of 2004 Mr. Balducci was prone to make many mistakes.

97.    Mrs. Jackson counseled him regarding his poor and disruptive work habits on numerous occasions, but to no avail.

98.     Mr. Balducci's poor and disruptive work habits included stealing time from the Company.

99.     Furthermore, Mr. Balducci threatened to cause bodily harm to department heads at Home Depot because someone borrowed "his" jack.

100.     Mr. Balducci was known to use perverted language and engaged in inappropriate discussions about his girlfriend's sex life in the presence of customers.

101.     Additionally, Mrs. Jackson received numerous calls from Home Depot management about his violent behavior.

102.     Mr. Balducci has been banished from three (3) other Home Depot stores and was sternly instructed not to return.

103.     D.M. McGarr's response to the foregoing was: "Dominic did not have to go back to those Home Depots that put him out and that they did not deserve his services to begin with."

104.     It is quite obvious that D.M. McGarr placed the personal feelings he had for Mr. Balducci before his obligations to the Company.

105.     However, Mrs. Jackson by sharing the real threat that Mr. Balducci posed with D.M. McGarr shows that she recognized that Mr. Balducci's unprofessional and violent behavior had a negative reflection on the Company as well as exposed the Company to unnecessary and avoidable liability.

106.     Moreover, Mrs. Jackson understood that he had clearly become a present liability and that the Company had been placed on notice about his unprofessional and violent behavior.

107.     The liability that D.M. McGarr exposed the Company to is enormous.

11

108.    It is common knowledge that Mr. Balducci had to attend court ordered anger management courses for threatening to kill his neighbor over a parking space.

109.    But, D.M. McGarr remained a staunch supporter of Mr. Balducci without considering the legal ramifications such blinding support could have on the Company or to Mrs. Jackson's safety and well-being.

110.    D.M. McGarr refused to re-hire Henry Williams ("Mr. Williams"), a black man, who worked for the Company for more than five years.

111.    The grounds that D.M. McGarr refused Mr. Williams employment was that he allegedly was not present in the store at a particular time.

112.    D.M. McGarr mercilessly defamed Mr. Williams with the tag "the Phantom" and often made jokes about him during meetings in the presence of a number of co-workers.

113.    Clearly, D.M. McGarr's disparate treatment of Mr. Williams and the unwavering support of Mr. Balducci were based on race and color.

114.    Mrs. Jackson was again forced to endure and witness this racially motivated injustice creating a hostile work environment.

115.    The discrimination and abuse suffered by Mrs. Jackson was unrelenting, discriminatory and racist.

116.    In 2004 Mr. Carbanara gave Mrs. Jackson an additional twenty (20) hours to service her other home depot stores.

117.    Mr. Carbanara realized that she was overwhelmed with servicing each of the Home Depot stores under her authority.

12

118.    Mrs. Jackson hired Ms. Snow in 2004 and Mr. Jackson was hired in 2001 to assist her servicing the other Home Depot stores she was responsible for.

119.    Based on information and belief there were no black merchandisers until Mrs. Jackson hired Kisha Snow ("Ms. Snow") and Mr. Jackson.

120.    Mrs. Jackson's sales numbers were growing by an incredible rate in her other Home Depot stores.

121.    Her sales numbers were increasing so rapidly that the Vice President of Miracle Gro flew in from Ohio to verify her sales numbers.

122.    However, Mr. McGarr transferred Ms. Snow and Mr. Jackson to the Jericho Home Depot store to help Mr. Balducci.

123.    The hours attributed to Ms. Snow and Mr. Jackson were the additional hours that Mr. Carbanara provided Mrs. Jackson with to service her seven (7) other Home Depot stores.

124.    This unfortunate arrangement allowed Mr. Balducci six (6) additional hours or more on a daily basis.

125.    Based on information and belief Mr. Balducci engaged in stealing time from the Company and Mrs. Jackson's budget by working in other departments at the Jericho Home Depot store.

126.    By reassigning hours specifically designated to Mrs. Jackson's seven (7) other Home Depot stores, Mr. McGarr methodically set her up to fail.

127.    Mrs. Jackson took pride in her job and used her creative skills when it was necessary.

128.    In 2003 the Company provided Mrs. Jackson and her colleagues with displays known as Cakes.

129.    The specs for the Cakes did not fit in the area they were to be displayed.

130.    Therefore, Mrs. Jackson took it upon herself to successfully re-configure and redesign the Cakes.

131.    Her efforts were so successful that D.M. McGarr gave her a $100.00 incentive for each Cake she built in her stores.

132.    D.M. McGarr instructed Mrs. Jackson to build the Cake displays in her co-workers' stores.

133.    However, Mrs. Jackson received no compensation or incentives for building the Cake displays in her co-workers stores.

134.    Another instance of unfair and disparate treatment Mrs. Jackson suffered occurred with the building of the Field Goal Post contest in 2004.

135.    Mrs. Jackson was the first of her Caucasian male co-workers to e-mail photos of her completed Field Goal Post to D.M. McGarr.

136.    D. M. McGarr admitted that Mrs. Jackson was the first to complete the Field Goal Post contest.

137.    D.M. McGarr further stated that he knew that she would be the first to complete the contest based on previous incentive driven assignments.

138.    However, D.M. McGarr insisted that she resubmit the photos because there was a piece of cardboard in one of the photos she sent.

139.    The piece of cardboard was the property of Home Depot and placed there by a Home Depot employee.

140.   Due to other commitments Mrs. Jackson was unable to resubmit the photos immediately.

141.   Another co-worker, Mike Gabriele won the $100.00 contest.

142.   Mike Gabriele won even though he sent his photos in after Mrs. Jackson sent her photos in.

143.   Mrs. Jackson in 2004 created and designed the Bookcase display.

144.   The Book Case display was created and designed by Mrs. Jackson specifically for the Miracle Gro product line.

145.   At the December 2004 National Conference, those in attendance were encouraged to adopt and use the Book Case display.

146.   Even though Mrs. Jackson created and designed the Book Case display concept, the raise she received was less than the raise received by her Caucasian male co-workers.

147.   The events surrounding the December 2004 National Conference in Naples, Florida were particularly public, brutal and extremely humiliating for Mrs. Jackson.

148.   At the conference the Company's employees were encouraged to take the Miracle-Gro since there were several new items in the product line.

149.   Mrs. Jackson began taking one of each sku and realized that Keith Conard ("Mr. Conard"), Regional Vice President, was watching her.

150.   A short time later, Mr. Conard approached Mrs. Jackson and asked her: "What are you doing with the Miracle-Gro?"

151.    Mrs. Jackson, although perplexed by his peculiar inquiry, respectfully explained: "It is my understanding that we could take the Miracle-Gro, everyone is taking the product."

152.    Mr. Conard responded by stating: "Yes we were told we could take it, however, you can not because you are going on an airplane and will not be allowed on the flight with the product."

153.    Mrs. Jackson approached Rob Lamp ("Mr. Lamp") to obtain clarification on airline travel constraints associated with the Miracle-Gro.

154.    Mr. Lamp stated: "I have been addressing that issue all morning and you can take the Miracle-Gro but you must check it in and not take it in your carry-on luggage.

155.    Mr. Lamp then escorted Mrs. Jackson to the Miracle-Gro table and began assisting her with boxing up the products.

156.    Mr. Conard continued to watch Mrs. Jackson's every move from a distance.

157.    Mr. Lamp carried the box to the elevator and waited with her until the elevator arrived.

158.    When the elevator arrived she stepped on the elevator and he handed her the box and said: "Farewell, until next year."

159.    Prior to the elevator doors closing Mr. Conard stepped onto the elevator.

160.    Mr. Conard then asked Mrs. Jackson: "Have you ever been thrown into jail?"

16

161.    There were other representatives from the Company on the elevator having a conversation.

162.    But, all discussions ceased when Mr. Conard singled out Mrs. Jackson and asked her that question.

163.    He further stated that: "If you take the Miracle-Gro you are going to be thrown into jail and Scotts is not going to be here in Naples to get you out of jail."

164.    He then said: "What are you going to do?"

165.    Mrs. Jackson was shocked and flabbergasted by such a question.

166.    She immediately felt that Mr. Conard was motivated by racism since she was the only Company representative he made this inquiry to.

167.    Mrs. Jackson responded by stating that: "If I am arrested Marion Silber of Gordon & Silber will represent me."

168.    Flippantly, Mr. Conard said: "Is that right?"

169.    Mrs. Jackson steeled herself in order to hold back the tears.

170.    When she got to her room she cried hysterically due to the unbearable embarrassment and humiliation Mr. Conard had subjected her to.

171.    Mrs. Jackson called D.M. McGarr but was far too upset to leave a message the first time she called but called again and left a message.

172.    She then called her colleague Mr. Botz.  Mr. Botz had previously been Mrs. Jackson's direct supervisor.

173.    Mrs. Jackson explained what had occurred with Mr. Conard and how she had tried to call D.M. McGarr unsuccessfully.

174.    Mr. Botz told Mrs. Jackson that D.M. McGarr was on the patio in the pool area.

175.    Mr. Botz was very angry about the incident with Mr. Conard and advised Mrs. Jackson to take the product.

176.    Mr. Botz said it was unfair and cited the fact that everyone was taking the product and that she was the only Scotts representative singled out.

177.    D.M. McGarr returned her call and told her to meet him in the hotel lobby. Mrs. Jackson explained what had occurred and D.M. McGarr appeared to be in shock.

178.    He continued to ask Mrs. Jackson over and over again what had transpired between her and Mr. Conard.

179.    D.M. McGarr stated: "I'm in shock because I saw people leaving the hotel with tons of the stuff in their suitcases.  Boxes of stuff I saw them leave with."

180.    Mrs. Jackson expressed to D.M. McGarr that due the actions of Mr. Conard she had been discriminated against.

181.    D.M. McGarr stated that when they get back to New York he would purchase all the Miracle-Gro that she wanted.

182.    But he voiced his concerns that he feared that if she did not put the Miracle-Gro back she would be fired for insubordination.

183.    He further stated that she should apologize to Mr. Conard for taking the Miracle-Gro.

184.    Mrs. Jackson began to cry because the harassment and humiliation had been compounded exponentially as a result of D.M. McGarr's reaction to the discrimination and the disparate treatment she had unfairly experienced.

185.    Nevertheless, she returned the Miracle-Gro and apologized to Mr. Conard for taking the product.

186.    Mr. Conard replied: "It was a wise thing to do because the Scotts Company would not have been available and that other incidents could have arose from the matter had you taken the Miracle-Gro."

187.    It is evident that those in a position to rightfully object to the wrongful and unlawful actions of Mr. Conard chose to act in concert with him by ignoring his blatant acts of discrimination.

188.    Mrs. Jackson was told to provide Mr. Cabanara with a formal report about the racist incident with Mr. Conard.

189.    However, when she broached the matter with him he stated curtly: "I'm not interested and forget the matter."

190.    D.M. McGarr acted in a similar fashion when he snapped: "Forget the entire matter. Just forget about it."

191.    It is obvious that both Mr. Cabanara and D.M. McGarr covered and condoned the unlawful actions of Mr. Conard.

192.    On or about January 10, 2005 Mrs. Jackson's back went completely out which forced her to go out on short-term disability.

193.    However, unbeknownst to her, sometime during the month of June 2005 she was unceremoniously and unlawfully terminated.

194.    Mrs. Jackson's unlawful termination was contrary to the Company's policies and procedures.

195.    Moreover, the Company failed to provide her with a reasonable accommodation for her work related injury.

196.    *In or about March 2003 during her employment with the Company Mrs. Jackson informed her immediate supervisor Mr. McGarr that she required hernia surgery that was caused by work related lifting.*

197.    *Mr. McGarr commanded that neither Mrs. Jackson nor her co-workers inform the Company of her work related hernia injury.*

198.    *Mrs. Jackson complied with Mr. McGarr's command and did not inform the Company of her work related hernia injury because she feared that she would be terminated.*

199.    *On or about January 8, 2005 when Mrs. Jackson was still an employee of the Company, she injured her back, neck and arm as a result of lifting boxes of Miracle Gro fertilizer, which resulted in her described injuries.*

200.    *Mrs. Jackson remained employed by the Company but the Company and its insurance carrier did not pay for her medical treatment.*

201.    *On or about January 10, 2005 Mrs. Jackson notified her direct supervisor Mr. McGarr of the injuries she suffered on or about January 8, 2005.*

202.    *The Company or its insurer never counseled Mrs. Jackson as to her rights under workers' compensation statutory provisions of the State of New York pursuant to her 2003 or 2005 work related injuries.*

203.    *Based on Mrs. Jackson was hesitant to inquire about her workers' compensation rights because she believed by doing so it would adversely affect her employment.*

*204.    On or about February 20, 2008 New York State Workers' Compensation Board took Mrs. Jackson's claim regarding her work related injuries upon learning the circumstances that caused the substantial delay. That her supervisor Mr. McGarr commanded her and her co-worker's not to inform the Company of her said job related injuries.*

## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination and Harassment
### In Violation of New York State Human Rights Law)

205.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 204, inclusive as if fully set forth herein.

206.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in violation of the New York State Human Rights Law by denying to plaintiff equal terms and conditions of employment, including but not limited to failing to provide plaintiff with a reasonable accommodation as a result to plaintiff's disability and subjecting plaintiff to disparate working conditions and performance standards, gender discrimination, denying plaintiff the opportunity to work in an employment setting free of unlawful harassment, denying plaintiff opportunities for professional growth, denying plaintiff compensation and other terms and conditions of employment equal to that of Caucasian employees, and terminating plaintiff unlawfully from plaintiff 's employment with defendant.

207.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in

violation of the New York State Human Rights Law by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, severe and pervasive racial harassment of plaintiff by plaintiff's superiors.

208.    As a direct and proximate result of defendant's unlawful and discriminatory conduct in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

209.    As a direct and proximate result of defendant's unlawful and discriminatory conduct in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of damages.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Retaliation in Violation of New York State Human Rights Law)

210.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 209, inclusive, as if fully set forth herein.

211.    Defendant has retaliated against plaintiff by, inter alia, by treating her with unmitigated contempt when she complained about how she was treated regarding the Mr. Conard/Miracle Gro incident and subjecting plaintiff to wrongful termination,

subjecting plaintiff to an unfair and hostile work environment and failing to provide

plaintiff with a reasonable accommodation pursuant to plaintiff's disability this is clearly

in violation of New York State Human Rights Law for: (a) plaintiff's opposition to

defendant's discriminatory practices; (b) being wrongfully subjected to harassment and a

hostile work environment.

212.     As a direct and proximate result of defendant's unlawful and retaliatory

conduct in violation of the New York State Human Rights Law, plaintiff has suffered and

continues to suffer, monetary and/or economic damages, including but not limited to loss

of past and future income, compensation and benefits for which plaintiff is entitled to an

award of monetary damages and other relief.

213.     As a direct and proximate result of defendant's unlawful retaliatory

conduct in violation of the New York State Human Rights Law, plaintiff has suffered and

continues to suffer, severe mental anguish and emotional distress, including but not

limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem

and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an

award of monetary damages and other relief.


## AS AND FOR A THIRD CAUSE OF ACTION

### (Aiding and Abetting Violations of New York State Human Rights Law)

214.     Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 213, inclusive, as if fully set forth herein.

215.     Defendants knowingly or recklessly aided and abetted the unlawful

employment practices, discrimination, harassment and retaliation against plaintiff in

violation of the New York State Human Rights Law by actively participating in the
unlawful conduct set forth above.

216.    As a direct and proximate result of defendant's unlawful discrimination,
harassment and retaliation against plaintiff in violation of the New York State Human
Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic
damages, including but not limited to loss of past and future income, compensation and
benefits for which plaintiff is entitled to an award of monetary damages and other relief.

217.    As a direct and proximate result of defendant's unlawful discrimination,
harassment and retaliation against plaintiff in violation of the New York State Human
Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and
emotional distress, including but not limited to depression, humiliation, embarrassment,
stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and
suffering for which plaintiff is entitled to an award of monetary damages and other relief.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Discrimination and Harassment
In Violation of New York City Human Rights Law)

218.    Plaintiff hereby repeats and re-alleges each and every allegation in
paragraphs 1 through 217, inclusive, as if fully set forth herein.

219.    Defendant has discriminated against plaintiff and subjected plaintiff to
harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in
violation of the New York City Human Rights Law by denying to plaintiff equal terms
and conditions of employment, including but not limited to, failing to provide plaintiff
with a reasonable accommodation pursuant to plaintiff's disability, subjecting plaintiff to

disparate working conditions and performance standards, gender discrimination,

economic discrimination, denying plaintiff the opportunity to work in an employment

setting free of unlawful harassment, denying plaintiff opportunities for professional

growth, denying plaintiff compensation and other terms and conditions of employment

equal to that of Caucasian employees, and terminating plaintiff unlawfully from

plaintiff's employment at the Defendant's.

220.    Defendant has discriminated against plaintiff and subjected plaintiff to

harassment on the basis of her Race and/or Color (African-American/Black), in violation

of the New York City Human Rights Law by fostering, condoning, accepting, ratifying

and/or otherwise failing to prevent or to remedy a hostile work environment that has

included, among other things, severe and pervasive racial harassment of plaintiff by

plaintiff's superiors.

221.    As a direct and proximate result of defendant's unlawful and

discriminatory conduct in violation of the New York City Human Rights Law, plaintiff

has suffered, and continues to suffer, monetary and/or economic damages, including but

not limited to loss of past and future income, compensation and benefits for which

plaintiff is entitled to an award of monetary damages and other relief.

222.    As a direct and proximate result of defendant's unlawful and

discriminatory conduct in violation of the New York City Human Rights Law, plaintiff

has suffered, and continues to suffer, severe mental anguish and emotional distress,

including but not limited to depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering for which

plaintiff is entitled to an award of damages.

223.    Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.


## AS AND FOR A FIFTH CAUSE OF ACTION

### (Retaliation in Violation of New York City Human Rights Law)

224.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 223, inclusive, as if fully set forth herein.

225.    Defendant retaliated against plaintiff by, inter alia, by treating  her with unmitigated contempt when she complained about how she was treated regarding the Mr. Conard/Miracle Gro incident and subjecting plaintiff to wrongful termination, subjecting plaintiff to an unfair and hostile work environment and failing to provide plaintiff with a reasonable accommodation pursuant to plaintiff's disability this is clearly in violation of New York State Human Rights Law for: (a) plaintiff's opposition to defendant's discriminatory practices; (b) being wrongfully subjected to harassment and a hostile work environment.

226.    As a direct and proximate result of defendant's unlawful and retaliatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

227.    As a direct and proximate result of defendant's unlawful retaliatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered and

continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

228.    Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR THE SIXTH CAUSE OF ACTION

### (Aiding and Abetting Violations of New York City Human Rights Law)

229.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 228, inclusive, as if fully set forth herein.

230.    Defendant knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against plaintiff in violation of the New York City Human Rights Law by actively participating in the unlawful conduct set forth above.

231.    As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York City Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

232.    As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York City Human

Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

233.   Defendants unlawful actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR THE SEVENTH CAUSE OF ACTION

### (Defamation)

234.   Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 233, inclusive, as if fully set forth herein.

235.   Defendant unlawfully subjected plaintiff to defamation: libel per se and slander per se, placed plaintiff in a false light, and engaged in acts that caused the invasion of plaintiff's privacy.

236.   Defendant knowingly or recklessly subjected plaintiff to defamation: libel per se and slander per se, placed her in a false light, and engaged in acts that caused the invasion of plaintiff's privacy in violation of New York State law.

237.   As a direct and proximate result of defendant's unlawful acts of defamation: libel per se and slander per se, placing plaintiff in a false light, and the invasion of plaintiff's privacy, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income,

compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

238.    As a direct and proximate result of defendant's unlawful acts of defamation: libel per se and slander per se, placing plaintiff in a false light, and the invasion of plaintiff's privacy, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

239.    Defendant's unlawful actions constitute malicious, willful and wanton violations of New York State Law for which plaintiff is entitled to an award of compensatory and punitive damages and other relief.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
### (Economic Discrimination)

240.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 239, inclusive, as if fully set forth herein.

241.    Defendant unlawfully subjected plaintiff to economic discrimination in violation of New York State Law.

242.    Defendant knowingly or recklessly subjected plaintiff to economic discrimination in violation of New York State Law.

243.    As a direct and proximate result of the defendant subjecting plaintiff to economic discrimination, plaintiff has suffered, and continues to suffer, monetary and/or

economic damages, including but not limited to loss of past and future income,

compensation and benefits for which plaintiff is entitled to an award of monetary

damages and other relief.

244.    As a direct and proximate result of the defendant subjecting plaintiff to

economic discrimination, plaintiff has suffered, and continues to suffer, severe mental

anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering for which plaintiff is entitled to an award of monetary damages and

other relief.

245.    Defendant's unlawful actions constitute malicious, willful and wanton

violations of New York State Law for which plaintiff is entitled to an award of

compensatory and punitive damages and other relief.


## AS AND FOR THE NINETH CAUSE OF ACTION

### (Breach of Implied Contract to Act in Good Faith)

246.    Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 245, inclusive, as if fully set forth herein.

247.    Defendant unlawfully breached its implied contract to plaintiff to act in

good faith in violation of New York State Law.

248.    Defendant knowingly or recklessly breached its implied contract to

plaintiff to act in good faith in violation of New York State Law.

249.    As a direct and proximate result of defendant's breach of the implied

contract to plaintiff to act in good faith, plaintiff has suffered, and continues to suffer,

monetary and/or economic damages, including but not limited to loss of past and future

income, compensation and benefits for which plaintiff is entitled to an award of monetary

damages and other relief.

250.     As a direct and proximate result of defendant's breach of the implied

contract to act in good faith, plaintiff has suffered, and continues to suffer, severe mental

anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering for which plaintiff is entitled to an award of monetary damages and

other relief.

251.     Defendant's unlawful actions constitute malicious, willful and wanton

violations of New York State Law for which plaintiff is entitled to an award of

compensatory and punitive damages and other relief.


## AS AND FOR THE TENTH CAUSE OF ACTION

### (Failure to Provide a Reasonable Accommodation)

252.     Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 251, inclusive, as if fully set forth herein.

253.     Defendant unlawfully failed to provide plaintiff with a reasonable

accommodation as a result of plaintiff's work related injury.

254.     Defendant knowingly and/or recklessly failed to provide plaintiff with a

reasonable accommodation as a result of plaintiff's work related injury in violation of 9

New York Code of Rules and Regulations (NYCRR) §466.11.

255.     As a direct and proximate result of defendant's failure to provide plaintiff with a reasonable accommodation of plaintiff's work related injury, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

256.     As a direct and proximate result of defendant's failure to provide plaintiff with a reasonable accommodation of her work related injury, plaintiff has suffered, and continues to suffer, severe physical and mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

257.     Defendant's unlawful actions constitute malicious, willful and wanton violations of New York State Law for which plaintiff is entitled to an award of compensatory and punitive damages and other relief.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION

### (Violation of Equal Protection of Laws)

258.     Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 257, inclusive, as if fully set forth herein.

259.     Defendant unlawfully violated plaintiff's Equal Protection of Laws rights.

260.     Defendant knowingly or recklessly violated plaintiff's Equal Protection of Laws rights under Article 1 § 11 of the New York State Constitution (Bill of Rights) by

subjecting plaintiff to treatment that no Caucasian employee of the defendants' has been
subjected to.

261.    As a direct and proximate result of defendant's violating plaintiff's Equal
Protection of Laws, plaintiff has suffered, and continues to suffer, monetary and/or
economic damages, including but not limited to loss of past and future income,
compensation and benefits for which plaintiff is entitled to an award of monetary
damages and other relief.

262.    As a direct and proximate result of defendant's violating plaintiff's Equal
Protection of Laws, plaintiff has suffered, and continues to suffer, severe mental anguish
and emotional distress, including but not limited to depression, humiliation,
embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional
pain and suffering for which plaintiff is entitled to an award of monetary damages and
other relief.

### AS AND FOR THE TWELFTH CAUSE OF ACTION

### (Violation of New York State Workers' Compensation Rights)

263.    Plaintiff hereby repeats and re-alleges each and every allegation in
paragraphs 1 through 262, inclusive, as if fully set forth herein.

264.    Defendant unlawfully violated plaintiff's New York State Workers'
Compensation Rights.

265.    Defendant knowingly or recklessly violated plaintiff's New York State
Workers' Compensation Rights by subjecting plaintiff to treatment that no Caucasian
employee of the defendants' has been subjected to.

266.    *As a direct and proximate result of defendant's violating plaintiff's New York State Workers' Compensation Rights, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.*

267.    *As a direct and proximate result of defendant's violating plaintiff's New York State Workers' Compensation Rights, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enters judgment in her favor and against defendant, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of defendant complained of herein violate the laws of the State of New York and the City of New York;

B.    An order directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and otherwise unlawful conduct are eliminated and do not continue to affect plaintiff;

C.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all monetary and/or economic damages,

including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for plaintiff's severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

E.    An award of damages for any and all other monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial, plus prejudgment interest;

F.    An award of punitive damages;

G.    An award of costs that plaintiff has incurred in this action, as well as plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

H.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.


Dated:  New York, New York
         March 27, 2008

Respectfully submitted,

SANDRA D. FRELIX, P.C.


By: _____
        Sandra D. Frelix
        Attorney for Plaintiff
        110 Wall Street, 11th Floor
        New York, New York 10005
        Telephone:  212-859-3509
        Facsimile:   212-862-8212

## VERIFICATION

State of New York     )
                      ) ss.:
County of Queens      )


    MARIA JACKSON, being duly sworn, states:

    I am the Plaintiff in the action herein.  I have read the annexed SUMMONS AND

AMENDED VERIFIED COMPLAINT, know the contents thereof and the same are true

to my knowledge, except those matters therein which, are stated to be alleged on

information and belief, and as to those matters I believe them to be true.


                                  _____

                                        MARIA JACKSON


Sworn to before me
this \_\_\_\_\_ day of March, 2008



_____
          NOTARY PUBLIC

# EXHIBIT B

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number: (212) 326-3414
csfriedman@jonesday.com

JP012279                                    April 28, 2008
906346-011032

<u>VIA FACSIMILE (212) 862-8212 & FIRST CLASS MAIL</u>

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

> Re:    Jackson v. The Scotts Company
>        <u>08 Civ. 1064 (LAK)</u>

Dear Ms. Frelix:

On behalf of Defendant The Scotts Company LLC ("Scotts" or "Defendant"), we write regarding Plaintiff Maria Jackson's ("Plaintiff") failure to provide initial disclosures pursuant to Federal Rule of Civil Procedure ("FRCP") 26(a)(1).

Pursuant to FRCP 26(a)(1)(A)(i-iv), "a party must, without awaiting a discovery request, provide other parties" initial disclosures containing four categories of information. These initial disclosures "must be made at or within 14 days after the Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in the circumstances of the action and states the objection in the Rule 26(f) discovery plan." FRCP 26(a)(1)(C).

As you know, the parties held a Rule 26(f) conference by telephone on Monday, April 7, 2008. During this conference, the parties agreed to a Consent Scheduling Order, which was 'so ordered' by Judge Kaplan on April 11, 2008. As Plaintiff did not object to providing initial disclosures during this conference or seek to have such an objection included in the Consent Scheduling Order, and no stipulation or court order sets out a different time for providing initial disclosures, Plaintiff's deadline to provide initial disclosures was 14 days after the April 7 conference—April 21, 2008.

To date, we have yet to receive Plaintiff's required initial disclosures, which are now one week overdue. As such, please provide Plaintiff's initial disclosures by Friday, May 2. Should we not receive Plaintiff's initial disclosures by this date, we will be forced to take this matter up directly with the Court.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Sandra D. Frelix, Esq.
April 28, 2008
Page 2

Please telephone me if you have any questions.

Very truly yours,

Craig S. Friedman

## Confirmation Report — Memory Send

```
Page      : 001
Date & Time: Apr-28-08  16:36
Line 1     : +
Line 2     :
Machine ID :           7144
```

| | | |
|---|---|---|
| Job number | : | 215 |
| Date | : | Apr-28 16:35 |
| To | : | ☎912128628212 |
| Number of pages | : | 003 |
| Start time | : | Apr-28 16:35 |
| End time | : | Apr-28 16:36 |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 215          *** SEND SUCCESSFUL ***

---



# JONES DAY.

## Facsimile Transmission

222 East 41st Street • New York, New York 10017 • (212) 326-3939
Facsimile: (212) 755-7306
csfriedman@jonesday.com

**April 28, 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Frelix, Esq.**

Company:

Telephone No.: **(212) 859-3509**

Send Copies To:

☐ Copies distributed _____
        Operator's Initials

Re:    **Jackson v. The Scotts Company**
       **08 Civ. 1064 (LAK)**

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):    **3**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **JP012279**

CAM No.:    **906346-011032**

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection.  If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible.  Please ask for the facsimile operator.

NYI-4076999v1

ATLANTA  •  BEIJING  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  FRANKFURT  •  HONG KONG  •  HOUSTON
IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MILAN  •  MOSCOW  •  MUNICH  •  NEW DELHI  •  NEW YORK  •  PARIS  •  PITTSBURGH
SAN DIEGO  •  SAN FRANCISCO  •  SHANGHAI  •  SILICON VALLEY  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

# EXHIBIT C

SANDRA D. FRELIX, ESQ. (SF-0421)
Attorney for the Plaintiff
110 Wall Street, 11th Floor
New York, New York 10005
(212) 859-35609

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

MARIA JACKSON

                           Plaintiff,

        -against-                                  08 Civ. 1064 (LAK)

                                                   PLAINTIFF'S INITIAL
                                                   DISCLOSURE PURSUANT
THE SCOTTS COMPANY,                                TO F.R.C.P. 26 (a)

                           Defendant.
---------------------------------------------------------------------X

        Pursuant to Federal Rules of Civil Procedure 26(a), Plaintiff Maria Jackson

hereby makes the following initial disclosures:

Rule 26 (a)(1)(A)(i)

        The name and, if known, the address and telephone number of each

individual likely to have discoverable information – along with the subjects of that

information – that the disclosing party may use to support its claims or defenses, unless

the use would be solely for impeachment.

        1.      Maria Jackson, Plaintiff, 184-12 144th Road, Springfield Garden,

        New York 11413, telephone #: 917-407-2629.  Mrs. Jackson will provide

        evidence to support the claims in her verified complaint.

        2.      Jeremy Fass, telephone #: 631-766-0116, will provide information

        regarding Mrs. Jackson's employment with the Defendant.

15.     Any and all documents regarding discrimination lawsuit involving the Defendant.

16.     Any and all documents detailing the policy and procedure when and act of discrimination is reported to a supervisor or other employee who occupies a superior position.

17.     Any and all documents regarding the policy and procedure for reporting a work related injury to the New York State Workers' Compensation Board.

18.     Any and all documents regarding Plaintiff and the New York State Workers' Compensation Board.

19.     Any and all documents regarding Plaintiff's termination.

20.     The Defendant's discrimination policy.

21.     Any and all documents regarding Plaintiff's EEOC charge.

22.     Plaintiff reserves the right to adjust this list.

Rule 26(a)(1)(A)(iii)

[A] computation of each category of damages claimed by the disclosing party — who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

1.     Plaintiff is unable to accurately estimate her economic losses at this time without discovery.

Rule 26(a)(1)(A)(iv)

[O]r inspection and copying as under Rule 34, any insurance agreement

under which an insurance business may be liable to satisfy all or part of a possible

judgment in the action or to indemnify or reimburse for payments made to satisfy the

judgment.

        1.     Not applicable.

Dated:  April 30, 2008
       New York, New York

                               Sandra D. Frelix, Esq. (SF 0421)
                               Attorney for Plaintiff
                               110 Wall Street, 11th Floor
                               New York, New York 10005
                               (212) 859-3509

To:    JONES DAY
       Craig S. Friedman, Esq.
       Matthew W. Lampe (pro hac vice admission pending)
       222 East 41st Street
       New York, New York 10017-6702
       (212) 326-3939
       Attorney for Defendant

# EXHIBIT D

# JONES DAY

222 EAST 41ST STREET · NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 · FACSIMILE: 212-755-7306

Direct Number: (212) 326-3414
csfriedman@jonesday.com

JP012279                                May 7, 2008
906346-011032

<u>VIA FACSIMILE (212) 862-8212 & FIRST CLASS MAIL</u>

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

            Re:    Jackson v. The Scotts Company
                   <u>08 Civ. 1064 (LAK)</u>

Dear Ms. Frelix:

        I am writing with regard to Plaintiff's Initial Disclosures Pursuant To F.R.C.P. 26(a), which fail to comply with Federal Rule of Civil Procedure ("FRCP") 26(a).

        Plaintiff's Initial Disclosures are deficient because she did not provide (i) a computation of "each category of damages" that she is seeking, and (ii) "the documents or other evidentiary material . . . on which each computation is based," both of which are required by FRCP 26(a)(1)(A)(iii). *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ("by its very terms Rule 26(a) requires . . . a 'computation,' supported by documents"); *DeWitt v. Lieberman*, 97 Civ. 4651 (SAS), 1998 WL 336651 (S.D.N.Y. June 22, 1998) (granting motion to compel production of detailed damages computation under FRCP 26(a)). Instead, Plaintiff makes the conclusory statement that she "is unable to accurately estimate her economic losses at this time without discovery." To the contrary, no discovery is required on Plaintiff's part to compute her alleged damages. Plaintiff surely possesses information concerning the income she received from Scotts, such as her tax returns. Further, Plaintiff is the only party that possesses information concerning the income and benefits she received subsequent to her employment with Scotts and the cost of medical care for injuries allegedly arising from the actions of Scotts.

        As such, please provide supplemental initial disclosures by Wednesday, May 14. Should we not receive supplemental initial disclosures that comply with FRCP 26(a) by this date, we will be forced to take this matter up directly with the Court. Please telephone me if you have any questions.

                            Very truly yours,

                            Craig S. Friedman

NY1-4085592v2

ATLANTA · BEIJING · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · FRANKFURT · HONG KONG · HOUSTON
IRVINE · LONDON · LOS ANGELES · MADRID · MILAN · MOSCOW · MUNICH · NEW DELHI · NEW YORK · PARIS · PITTSBURGH
SAN DIEGO · SAN FRANCISCO · SHANGHAI · SILICON VALLEY · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON

# Confirmation Report — Memory Send

Page         : 001
Date & Time: May-07-08 10:48
Line 1       : 912127557306
Line 2       : +
Machine_ID : 7145

| | | |
|---|---|---|
| Job number | : | 789 |
| Date | : | May-07 10:47 |
| To | : | ☎912128628212 |
| Number of pages | : | 002 |
| Start time | : | May-07 10:47 |
| End time | : | May-07 10:48 |
| Pages sent | : | 002 |
| Status | : | OK |

Job number      : 789          *** SEND SUCCESSFUL ***

---



# Facsimile Transmission

222 East 41st Street • New York, New York 10017 • (212) 326-3939
Facsimile: (212) 755-7306
csfriedman@jonesday.com

**May 7 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Frelix, Esq.**

Company:

Telephone No.: **(212) 859-3509**

Send Copies To:

☐ Copies distributed          _Operators notes_

Re:   **Jackson v. The Scotts Company
08 Civ. 1064 (LAK)**

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):    **2**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **JP012279**

CAM No.:   **906346-011032**

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection.   If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible.  Please ask for the facsimile operator.
NYI-4075959v1

ATLANTA  •  BEIJING  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  NEW DELHI  FRANKFURT  •  HONG KONG  •  HOUSTON
IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MILAN  •  MOSCOW  •  MUNICH  •  NEW YORK  •  PARIS  •  PITTSBURGH
SAN DIEGO  •  SAN FRANCISCO  •  SHANGHAI  •  SILICON VALLEY  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

# EXHIBIT E

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number: (212) 326-3414
csfriedman@jonesday.com

JP012279
906346-011032

May 21, 2008

VIA FACSIMILE (212) 862-8212

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

Re:    Jackson v. The Scotts Company
       08 Civ. 1064 (LAK)

Dear Ms. Frelix:

I am writing to confirm our conversation from yesterday in which you agreed to produce a supplement to Plaintiff's Federal Rule of Civil Procedure 26(a) Initial Disclosure, dated April 30, 2008. You said that you would "try" to get it to me later in the same day on May 20, but agreed that I would receive it no later than Monday, May 26. As I did not receive the supplemental disclosure yesterday, pursuant to our agreement I expect to receive it no later than next Monday.

By way of reminder, and as discussed in my letter of May 7, 2008, FRCP 26(a) requires Plaintiff to produce (i) a computation of "each category of damages" that she is seeking, and (ii) "the documents or other evidentiary material . . . on which each computation is based." *See Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ("by its very terms Rule 26(a) requires . . . a 'computation,' supported by documents").

Please telephone me if you have any questions.

Very truly yours,

Craig S. Friedman

NYI-4080705v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Confirmation Report — Memory Send

Page         : 001
Date & Time: May-21-08  11:02
Line 1       :
Line 2       :
Machine ID :

7144

| | | |
|---|---|---|
| Job number | : | 515 |
| Date | : | May-21 11:01 |
| To | : | ☎912128628212 |
| Number of pages | : | 002 |
| Start time | : | May-21 11:01 |
| End time | : | May-21 11:02 |
| Pages sent | : | 002 |
| Status | : | OK |

Job number     : 515          *** SEND SUCCESSFUL ***



**JONES DAY.**                          **Facsimile Transmission**

222 East 41st Street • New York, New York 10017 • (212) 326-3939
Facsimile: (212) 755-7306
csfriedman@jonesday.com

**May 21, 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Frelix, Esq.**

Company:

Telephone No.: **(212) 859-3509**

Send Copies To:

☐ Copies distributed _____
Operator's initials

Re:     **Jackson v. The Scotts Company**
        **08 Civ. 1064 (LAK)**

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):    **2**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **JP012279**

CAM No.:    **906346-011032**

NOTICE: This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

Message:

Please call us immediately if the facsimile you receive is incomplete or illegible. Please ask for the facsimile operator.
NY1-4062306v2

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

# EXHIBIT F

**SANDRA D. FRELIX, ESQ. (SF-0421)**
**Attorney for the Plaintiff**
**110 Wall Street, 11th Floor**
**New York, New York 10005**
**(212) 859-35609**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————X

**MARIA JACKSON**

<i>Plaintiff,</i>

   **-against-**

**THE SCOTTS COMPANY,**

<i>Defendant.</i>

————————————————————————X

**08 Civ. 1064 (LAK)**

**PLAINTIFF'S SUPPLEMENTAL**
**DISCLOSURE PURSUANT**
**TO F.R.C.P. 26 (a)**

Pursuant to Federal Rules of Civil Procedure 26(a), Plaintiff Maria Jackson hereby makes the following supplemental disclosure:

<u>Rule 26(a)(1)(A)(iii)</u>

[A] computation of each category of damages claimed by the disclosing party — who must also make available for inspection and copying as under <u>Rule 34</u> the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

1.    Plaintiff is unable to accurately estimate her economic losses at this time without the assistance of an economist or an accountant. Currently, we are trying to secure an economist or an accountant to review the Plaintiff's records in order to provide the Defendant with the most concise and accurate information regarding the computation of damages in each category. We will provide you with the computations

pursuant to each category along with the relevant documents as soon as that information

is made available to us from either the economist or the accountant.


Dated:  May 25, 2008
      New York, New York


                                 n

Sandra D. Frelix, Esq. (SF 0421)
Attorney for Plaintiff
110 Wall Street, 11th Floor
New York, New York 10005
(212) 859-3509


To:    JONES DAY
       Craig S. Friedman, Esq.
       Matthew W. Lampe (pro hac vice admission pending)
       222 East 41st Street
       New York, New York 10017-6702
       (212) 326-3939
       Attorney for Defendant

2

# EXHIBIT G

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number: (212) 326-3414
csfriedman@jonesday.com

JP012279                              June 6, 2008
906346-011032

VIA FACSIMILE (212) 862-8212 & FIRST CLASS MAIL

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

> Re:    Jackson v. The Scotts Company
>        08 Civ. 1064 (LAK)

Dear Ms. Frelix:

I have reviewed Plaintiff's Supplemental Disclosure Pursuant To F.R.C.P. 26(a) and, like her initial disclosure, it is plainly deficient.

As I informed you in my letters of May 7 and May 21, Rule 26(a) requires Plaintiff to provide (i) a computation of "each category of damages" that she is seeking, and (ii) "the documents or other evidentiary material . . . on which each computation is based," both of which are required by FRCP 26(a)(1)(A)(iii). *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ("by its very terms Rule 26(a) requires . . . a 'computation,' supported by documents"). At no time has Plaintiff disputed that she must comply with these requirements.

In her supplemental disclosure, Plaintiff claims that she "is unable to accurately estimate her economic losses at this time without the assistance of an economist or an accountant." We find it hard to believe that an economist or accountant is necessary for a basic calculation of lost wages and other damages—Plaintiff is well aware of what her salary was at Scotts, and she would further know whatever income she has received since her termination. While Plaintiff might need to supplement her disclosures later if she retains an economist or accountant, her refusal to disclose alleged damages and computations at this stage, based on what information is available to her now, is unacceptable.

With regard the documents supporting her damages claims, Plaintiff's supplemental disclosure states that she will provide "the computations pursuant to each category along with the relevant documents as soon as that information is made available to us from either the economist or the accountant." Again, this is another example of Plaintiff ducking her responsibilities. Certainly, certain documents on which her computations are based are in her possession now. This includes, but is not limited to, her tax returns, W-2 forms, medical bills, and other documents which would purport to show her damages.

NYI-4093677v3

JONES DAY

Sandra D. Frelix, Esq.
June 6, 2008
Page 2

As of today, six weeks after Plaintiff's April 21 deadline to provide initial disclosures, and after having received repeated opportunities to do so, Plaintiff has failed to comply the plain requirements of Rule 26(a). At no time has Plaintiff disputed that she is required to provide a computation of damages and the documents and evidence supporting her damages claims. She has provided no documents or evidence, and has not even provided a basic computation of damages. Instead, all she has done is delay the proceedings through excuses for her failure to comply and open-ended promises that the required disclosures are coming.

As such, if I do not receive a computation of damages, along with the documents supporting Plaintiff's claims of damages, in satisfaction of Rule 26(a) by the end of business on Monday, June 9, Defendant will move the Court for an order (i) compelling Plaintiff to provide the computation and the supporting documents required by Rule 26(a), and (ii) warning Plaintiff that, should she fail to do so, she will be precluded from introducing evidence of her damages at the trial of this action.

Please telephone me if you have any questions.

Very truly yours,

Craig S. Friedman


NY1-4093677v3

# Confirmation Report — Memory Send

Page      : 001
Date & Time: Jun-06-08  10:27
Line 1    : +
Line 2    :
Machine ID :          7144

| | | |
|---|---|---|
| Job number | : | 752 |
| Date | : | Jun-06 10:26 |
| To | : | ☎912128628212 |
| Number of pages | : | 003 |
| Start time | : | Jun-06 10:26 |
| End time | : | Jun-06 10:27 |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 752          *** SEND SUCCESSFUL ***

# JONES DAY.

**Facsimile Transmission**

222 East 41st Street ▪ New York, New York  10017 ▪ (212) 326-3939
Facsimile: (212) 755-7306
csfriedman@jonesday.com

**June 6, 2006**

Please hand deliver the following facsimile to:

Name: Sandra D. Frelix, Esq.

Company:

Telephone No.: (212) 859-3509

Send Copies To:

☐ Copies distributed _____
                        Operator's Initials

Re:    Jackson v. The Scotts Company
       08 Civ. 1064 (LAK)

Facsimile No.: (212) 862-8212

Number of pages (including this page):    3

From: Craig S. Friedman

Direct Telephone No.: (212) 326-3414

JP No.: JP012279

CAM No.:   908346-011032

NOTICE: This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection.  If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

Message:

Please call us immediately if the facsimile you receive is incomplete or illegible.  Please ask for the facsimile operator.
NYI-4082308v2

ATLANTA ▪ BEIJING ▪ BRUSSELS ▪ CHICAGO ▪ CLEVELAND ▪ COLUMBUS ▪ DALLAS ▪ FRANKFURT ▪ HONG KONG ▪ HOUSTON
IRVINE ▪ LONDON ▪ LOS ANGELES ▪ MADRID ▪ MILAN ▪ MOSCOW ▪ MUNICH ▪ NEW DELHI ▪ NEW YORK ▪ PARIS ▪ PITTSBURGH
SAN DIEGO ▪ SAN FRANCISCO ▪ SHANGHAI ▪ SILICON VALLEY ▪ SINGAPORE ▪ SYDNEY ▪ TAIPEI ▪ TOKYO ▪ WASHINGTON

# EXHIBIT H

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017
TELEPHONE (212) 326-3939 • FACSIMILE (212) 755-7306

Direct Number: (212) 326-3414
csfriedman@jonesday.com

JP012279                                   June 11, 2008
906346-011032

<u>VIA FACSIMILE (212) 862-8212</u>

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

                      Re:    Jackson v. The Scotts Company
                              <u>08 Civ. 1064 (LAK)</u>

Dear Ms. Frelix:

I am writing to confirm our agreements from yesterday's telephone conversations.

- First, we agreed that Plaintiff's deadline to respond to Defendant's First Request For The Production Of Documents and Defendant's First Set Of Interrogatories is extended to and including June 23, 2008.

- Second, we agreed that Plaintiff's deposition shall be adjourned to a date convenient for the parties in mid-July. Please provide me with dates on which Plaintiff is available to appear for her deposition.

- Third, we agreed that Plaintiff would provide Defendant with a computation of each category of her damages, and the documents upon which each computation is based, in compliance with Federal Rule of Civil Procedure 26(a) by June 23, 2008. I informed you that—as this computation and the supporting documents are more than six weeks overdue—Defendant will move the Court to compel the production of these required items if Plaintiff does not satisfy the requirements of Rule 26(a) by June 23, 2008.

- Fourth, we agreed that Plaintiff's deadline to reply in support of her May 20, 2008 Motion And Notice Of Motion To Amend The Complaint And Remand Action To State Court is extended to and including June 30, 2008. You provided a stipulation reflecting this agreement to me by facsimile, which I signed and returned yesterday afternoon. You told me that you would file the stipulation with the Court yesterday evening in the S.D.N.Y. Night Deposit Box in an envelope addressed to Judge Kaplan. Please provide me with a copy of the fully executed stipulation that was filed along with any cover letter included in the envelope for Judge Kaplan.

NYI-4095502v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Sandra D. Frelix, Esq.
June 11, 2008
Page 2

- Fifth, we agreed that Plaintiff's time to respond to Defendant's June 4, 2008 Motion For Sanctions Pursuant To 28 U.S.C. § 1927 And The Court's Inherent Power, and Defendant's Motion For Sanctions Pursuant To Federal Rule Of Civil Procedure 11, is extended to and including July 2, 2008. We also agreed that Defendant's time to reply in support of these motions is extended to July 14, 2008. We agreed that you would provide me with a stipulation reflecting these dates for each motion to review and sign, and you would then file the stipulations with the Court.

Please telephone me if you have any questions.

Very truly yours,

Craig S. Friedman

Confirmation Report — Memory Send

Page       : 001
Date & Time: Jun-11-08  11:08
Line 1     : +
Line 2     :
Machine ID :              7144

| | | |
|---|---|---|
| Job number | : | 802 |
| Date | : | Jun-11 11:07 |
| To | : ☎912128628212 |
| Number of pages | : | 003 |
| Start time | : | Jun-11 11:07 |
| End time | : | Jun-11 11:08 |
| Pages sent | : | 003 |
| Status | : | OK |

Job number       : 802        *** SEND SUCCESSFUL ***



**Facsimile Transmission**

222 East 41st Street • New York, New York 10017 • (212) 326-3939
Facsimile: (212) 755-7306
csfriedman@jonesday.com

June 11, 2008

Please hand deliver the following facsimile to:

Name: Sandra D. Freix, Esq.

Company:

Telephone No.: (212) 859-3509

Send Copies To:

☐ Copies distributed _____ Operator's Initials

Re:    Jackson v. The Scotts Company
       08 Civ. 1064 (LAK)

Facsimile No.: (212) 862-8212

Number of pages (including this page):    3

From: Craig S. Friedman

Direct Telephone No.: (212) 326-3414

JP No.: JP012279

CAM No.:   906346-011032

NOTICE: This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

Message:

Please call us immediately if the facsimile you receive is incomplete or illegible. Please ask for the facsimile operator.
NYI-4082306v2

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

# EXHIBIT I

# SANDRA D. FRELIX, ESQ.
### ATTORNEY AT LAW
### 110 WALL STREET, 11th FLOOR
### NEW YORK, NEW YORK 10005
### 212.859.3509 Office
### 212.862.8212 Fax
### 917.572.3806 Cell

June 23, 2008

Craig S. Friedman, Esq.
JONES DAY
222 East 41st Street
New York, New York 10017

Re:     <u>Maria Jackson v. The Scotts Company</u>, Index #: 08 Civ. 1064 (LAK)

Dear Mr. Friedman:

Enclosed please find Plaintiff's Responses to Defendant's First Interrogatory Requests and Plaintiff's Supplemental Disclosure Pursuant to F.R.C.P. 26(a)(1)(A)(iii).

If you have any questions or concerns regarding the foregoing please contact me immediately.

Very truly yours,

*Sandra D. Frelix*

Sandra D. Frelix, Esq.

Enc.

SANDRA D. FRELIX, ESQ. (SF-0421)
Attorney for the Plaintiff
110 Wall Street, 11th Floor
New York, New York 10005
(212) 859-35609

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
MARIA JACKSON

                                     *Plaintiff,*

        -against-                                                08 Civ. 1064 (LAK)

                                                                 **PLAINTIFF'S SUPPLEMENTAL
                                                                 DISCLOSURE PURSUANT
THE SCOTTS COMPANY,                                              TO F.R.C.P. 26 (a)**

                                     *Defendant.*
-------------------------------------------------------------------------X

        Pursuant to Federal Rules of Civil Procedure 26(a), Plaintiff Maria Jackson

hereby makes the following supplemental disclosure:

        Rule 26(a)(1)(A)(iii)

        [A] computation of each category of damages claimed by the disclosing

party — who must also make available for inspection and copying as under Rule 34 the

documents or other evidentiary material, unless privileged or protected from disclosure,

on which each computation is based, including materials bearing on the nature and extent

of injuries suffered.

        1.      Plaintiff and her husband know very well the importance of the

calculation of damages in this case. However, due to the financial hardship[1] that they are

currently confronted with, they are financially unable to hire an expert at this time to

---

[1] Plaintiff and her husband were forced to totally finance the funerals of Plaintiff's mother and sister who died within seven (7) months of each other. The son of Plaintiff's sister currently lives with Plaintiff and her husband they provide financially for the minor child.

accurately calculate the damages in this case. The Plaintiff and her husband are

unwilling to allow the undersigned to calculate Plaintiff's damage because this is not the

undersigned's area of expertise. The undersigned agrees with the Plaintiff's and her

husband's position based on the fact that Disciplinary Rule 7-101 [1200.32] demands that

an attorney represent their client zealously. The undersigned would be acting with grave

incompetence and would not be providing the zealous representation required if she were

to calculate the damages in this case. Plaintiff and her husband are in firm agreement that

an expert must calculate the damages in this case. Moreover, Plaintiff and her husband

refuse to jeopardize any recovery that they are entitled to because they allowed a non-

expert calculate the damages in this case.

Dated: June 21, 2008
     New York, New York

                                          Sandra D. Frelix, Esq. (SF 0421)
                                          Attorney for Plaintiff
                                          110 Wall Street, 11th Floor
                                          New York, New York 10005
                                          (212) 859-3509

To:    JONES DAY
        Craig S. Friedman, Esq.
        Matthew W. Lampe
        222 East 41st Street
        New York, New York 10017-6702
        (212) 326-3939
        Attorney for Defendant