Craig S. Friedman (CF-1988)
Matthew W. Lampe (*pro hac vice*)
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA JACKSON,<br><br>       Plaintiff,<br><br>    -against-<br><br>THE SCOTTS COMPANY<br><br>       Defendant. | 08 Civ. 1064 (LAK)<br><br>**DECLARATION OF CRAIG S. FRIEDMAN IN OPPOSITION TO PLAINTIFF'S JULY 11, 2008 MOTION FOR <u>LEAVE TO AMEND COMPLAINT</u>** |

CRAIG S. FRIEDMAN declares as follows:

1.      I am a member of the bar of this Court and an associate of Jones Day, counsel to Defendant The Scotts Company LLC (incorrectly named in the Complaint "The Scotts Company") ("Defendant" or "Scotts"). I am fully familiar with this proceeding as well as the specific matters set forth herein. I submit this declaration in opposition to Plaintiff's July 11, 2008 motion for leave to amend the complaint.

2.      Attached as Exhibit A is a copy of the Notice Of Removal Of Action Under 28 U.S.C. Section 1441(b) in the instant action, filed in the United States District Court for the Southern District of New York on February 1, 2008. A copy of the Complaint, filed in the Supreme Court of the State of New York, Bronx County, is Exhibit A to the Notice Of Removal.

2.      Attached as Exhibit B is a copy of Plaintiff's March 27, 2008 Amended Motion and Notice of Motion for Leave to Amend Complaint.

3.      Attached as Exhibit C is a copy the Proposed Amended Verified Complaint in the instant action, filed on March 27, 2008 as an attachment to Plaintiff's motion for leave to amend the Complaint.

4.      Attached as Exhibit D is a copy of the Court's April 1, 2008 Order.

5.      Attached as Exhibit E is a copy of the Court's April 9, 2008 Order.

6.      Attached as Exhibit F is a copy of the Court's April 30, 2008 Order.

7.      Attached as Exhibit G is a copy of the Court's April 11, 2008 Consent Scheduling Order.

8.      Attached as Exhibit H is a copy of the May 20, 2008 memorandum of law in support of Plaintiff's motion for leave to amend and to remand.

9.      Attached as Exhibit I is a copy of excerpts from Defendant's June 4, 2008 memorandum of law in opposition to Plaintiff's May 20, 2008 motion for leave to amend and to remand.

10.     Attached as Exhibit J is a copy of the Court's July 2, 2008 Order.

11.     Attached as Exhibit K is a copy of excerpts from Defendant's June 4, 2008 memorandum of law in support of its motion for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent power.

12.     Attached as Exhibit L is a copy of the Court's July 3, 2008 Order.

13.     Attached as Exhibit M is a copy of excerpts from Defendant's April 11, 2008 Answer To Amended Complaint.

14.     On April 7, 2008, counsel for Plaintiff, Sandra Frelix, Esq., and I held the Rule 26(f) conference by telephone.  During this conference, Ms. Frelix and I agreed to the dates

contained in the Consent Scheduling Order, which was subsequently 'so ordered' by the Court

on April 11, 2008.

      I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 24th day of July, 2008.
New York, New York

                /s/ Craig S. Friedman

                _____

                Craig S. Friedman

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEB 0 1 2008

U.S.D.C. S.D. N.Y.
CASHIERS

JUDGE KAPLAN

MARIA JACKSON,                          )
                                        )
                   Plaintiff,           )
                                        )
              - against -               )
                                        )
THE SCOTTS COMPANY,                     )
                                        )
                   Defendant.           )
                                        )
                                        )
                                        )
                                        )
                                        )

08 CV 1064

08 Civ. No. ____

## NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b)

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant The Scotts Company LLC ("Scotts" or "Defendant") (incorrectly named in the Complaint as "The Scotts Company") hereby removes to this Court the above-captioned state court action, and states as follows:

1.    Defendant is the only named defendant in the action bearing Index No. 303890/07 filed in the Supreme Court of the State of New York, Bronx County (the "State Court Action").

2.    The Complaint in the State Court Action was filed with the Clerk of the Supreme Court of the State of New York, Bronx County, on or about December 21, 2007. Defendant was served with a copy of the Complaint on January 4, 2008 by delivery to the Secretary of State of the State of New York as agent for Defendant.

3.    This Notice of Removal is being filed with this Court within thirty (30) days after Defendant received a copy of Plaintiff's initial pleading setting forth the alleged claims for relief upon which Plaintiff's action is based.

4.    A copy of all process, pleadings, and orders served upon Defendant in the State Court Action is attached hereto as Exhibit A.

5.    At the present time and at the time of the commencement of the State Court Action, as alleged in the Complaint, Plaintiff Maria Jackson is and was a citizen and resident of the State of New York, County of Queens.  Upon information and belief, Plaintiff resides at 184-12 144th Road, Springfield Gardens, New York 11413.

6.    At the present time and at the time of the commencement of the State Court Action, Scotts is and was a corporation incorporated under the laws of the State of Ohio, with its principal place of business at 14111 Scottslawn Road, Marysville, Ohio 43041.

7.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1332, and is one which may be properly removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. §1441(b), in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

8.    The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, in that Plaintiff, who had an annual base salary of approximately $33,600 at the time of her termination in June 2005, seeks to recover back pay and front pay as well as compensatory and punitive damages and attorneys' fees totaling in excess of $75,000.

9.    Defendant reserves all rights including defenses and objections as to venue, personal jurisdiction, and service, and the filing of this Notice of Removal is subject to, and without waiver of, any such defenses and objections.

10.    Promptly after the filing of this Notice of Removal, Defendant shall provide written notice of the Removal to Plaintiff through her attorney of record in the State Court

Action and to the Clerk of the Court in the State Court Action, as required by 28 U.S.C.

§1446(d).

Dated:  February 1, 2008

JONES DAY

Craig S. Friedman (CF-1988)
Matthew W. Lampe (*pro have vice* application
to be filed)
JONES DAY
222 East 41st Street
New York, New York 10017-6702
(212) 326-3939
(212) 755-7306 (facsimile)

Attorneys for Defendant

# EXHIBIT A

Form 28 - BACKING

SUPREME   COURT OF THE STATE OF NEW YORK
COUNTY OF  BRONX                                 Index No.:  303890/07

==================================================================

MARIA JACKSON                          PLAINTIFF

              - against -

THE SCOTTS COMPANY                      DEFENDANT

==================================================================

SUMMONS AND VERIFIED COMPLAINT

==================================================================

              SANDRA D. FRELIX, P.C.

              110 WALL ST (11TH FL)
              NEW YORK, NY 10005

==================================================================

SUPREME COURT OF TSHE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------------------------------------------X
MARIA JACKSON

                                    *Plaintiff,*

     -against-                                                  SUMMONS


THE SCOTTS COMPANY                                             INDEX No.: .

                                    *Defendant.*
-------------------------------------------------------------------X

To the above-named defendants:

        You are hereby summoned and requested to serve upon plaintiff's attorney an

answer to the complaint in this action within twenty days after the service of this

summons, exclusive of the day of service, or within thirty days after service is complete

if this summons is not personally delivered to you within the State of New York.  In case

of your failure to answer, judgment will be taken against you by default for the relief

demanded in the complaint.

        The basis of the venue designated is based on the location where the defendant

transacts and/or solicits business within the county from which it derives substantial

revenues pursuant to CPLR § 503(c).

Dated: December 21, 2007
          New York, New York

                                    Respectfully submitted,

                                    SANDRA D. FRELIX, P.C.

                                    By: _____
                                          Sandra D. Frelix
                                          Attorney for Plaintiff
                                          110 Wall Street, 11th Floor
                                          New York, New York 10005
                                          Telephone:  212-859-3509
                                          Facsimile:  212-862-8212

SUPREME COURT OF TSHE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------------X
MARIA JACKSON

*Plaintiff,*

                                                    VERIFIED
   -against-                                        COMPLAINT


THE SCOTTS COMPANY                                  INDEX No.:

*Defendant.*
-----------------------------------------------------------------------X

  Plaintiff, MARIA JACKSON ("Mrs. Jackson", "Plaintiff" or "plaintiff"), by and

through her attorney, SANDRA D. FRELIX, for her Complaint against THE SCOTTS

COMPANY ("the Company", "Defendant Scotts", "Defendant" or "defendant"), thereby

states and alleges as follows:

**NATURE OF THE CLAIMS**

  1.  This action is for declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendant's unlawful employment practices and retaliation

against Plaintiff, including the discriminatory treatment, racial harassment, and retaliation

against Plaintiff due to her Race and/or Color (African-American/Black), gender,

deprivation of property without due process of law and equal protection of laws, in

violation of the New York State Human Rights Law, New York Executive Law §§ 290 et

seq.; and the New York City Human Rights Law, Administrative Code of the City of

New York §§ 8-101 et seq. and the New York State Constitution. Additionally, Mrs.

Jackson was subjected to defamation: slander per se and libel per se, being placed in a

false light and was forced to endure the breach of an implied contract to act in good faith

in violation of New York State Law. Moreover, the defendant caused her to suffer

economic discrimination and failed to provide her a reasonable accommodation pursuant to her disability in violation of 9 New York Code of Rules and Regulations (NYCRR) §466.11.

## JURISDICTION AND VENUE

2.    The Court has personal jurisdiction over Defendant pursuant to Sections 301 and/or 302 of the New York Civil Practice Law and Rules ("CPLR") in that the Defendant transacts and/or solicits business within the state from which they derive substantial revenues.

3.    The Court has personal jurisdiction over Defendant because a significant portion of the unlawful employment practices and events giving rise to the claims herein occurred in New York.

4.    The Court has subject matter jurisdiction over this action by virtue of the New York State Human Rights Law, New York Executive Law § 279(9); the New York City Human Rights Law, Administrative Code of the City of New York § 8-502(a); and the Constitution of the State of New York.

5.    Venue is proper in this county pursuant to CPLR § 503(c) because the Defendant conducted business in Bronx County at the relevant times described in this Complaint and continues to conduct business in Bronx County.

6.    Prior to the commencement of this action, a copy of this Complaint was served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

2

## PARTIES

7.      Plaintiff Maria Jackson is an African-American citizen female who resides in Springfield Gardens, New York. At all relevant times, Plaintiff has met the definition of an "employee" under all applicable statutes.

8.      Defendant Scotts conducts business throughout New York State as well as in all the other forty-nine states and internationally.

9.      The Scotts Company is located at 14111 Scottslawn Road, Marysville, OH 43041.

## FACTUAL ALLEGATIONS

10.     Defendant hired Mrs. Jackson in April 2001 as a Seasonal Merchandiser.

11.     She was immediately promoted to the position of Sales Merchandising Manager on or about December 14, 2001.

12.     Mrs. Jackson worked diligently for the Company for four (4) years at the time of her June 2005 unlawful termination.

13.     Mrs. Jackson excelled at her responsibilities pursuant to each of her positions.

14.     Mrs. Jackson also received exemplary job performance appraisals.

15.     In the Spring of 2002 Mrs. Jackson suffered extreme embarrassment and humiliation when District Manager Patrick McGarr ("D.M. McGarr") stated that: "Maria's not Black she is Italian!"

16.     This incident took place at the Liberty Diner in Farmingdale, N.Y.

17.     There was never an occasion witnessed by Mrs. Jackson where a white person's core identity was challenged and violated.

3

18.     In the spring of 2002 Mrs. Jackson became aware that the Defendant was being sued for discrimination for not hiring women in the 04 region.

19.     She further learned that the Defendant had specifically directed D.M. McGarr to hire a black woman.

20.     D.M. McGarr shared this information with James Fitch ("Mr. Fitch"), a Sales Merchandising Manager ("SMM").

21.     Mr. Fitch wanted D.M. McGarr to hire his friend, a Caucasian male, who had previously resigned from the Defendant but wanted his old position back.

22.     At the December 2002 conference in Naples, Florida Mrs. Jackson, D.M. McGarr, and co-workers were attending a class.

23.     Mrs. Jackson went the ladies room upon her return the seats were taken in her class' section.

24.     The only seat available in the section with her co-workers was located at the far end of the table where her co-workers were seated.

25.     The closest unoccupied seat was located in an area occupied by another district.

26.     The district manager of that region Patrick Flagherty ("D.M. Patrick Flagherty) stated that she could sit with his district.

27.     However, D.M. McGarr tapped her on the shoulder and told her that she could not sit there.

28.     D.M. McGarr then signaled one of their co-workers to move down so she could sit with them.

4

29.     Mrs. Jackson then heard Mr. Flagherty state to his SMM's: "What is this? Is she too good to sit with us? Oh yeah, that's right that's Pat's token."

30.     This racist comment was not only hurtful but it was extremely embarrassing to Mrs. Jackson.

31.     Another area where Mrs. Jackson was subjected to disparate treatment pertains to storage facilities.

32.     Point of Purchase is advertising that is sent to managers in great quantity.

33.     Therefore, it is customary for the Company to pay for the storage facility utilized by the managers to house and maintain the advertising materials.

34.     Unfortunately, Mrs. Jackson was informed in no uncertain terms by D.M. McGarr that his budget did not permit him to go over the $75.00 per month for storage.

35.     Consequently, she was forced to store the materials in her home, which greatly inconvenienced her family.

36.     Mrs. Jackson eventually learned that D.M. McGarr paid well over $100.00 for storage for Mrs. Jackson's co-workers who operated in eastern Long Island.

37.     This is an undeniable illustration of the humiliating, embarrassing, disparate as well as racist treatment imposed upon Mrs. Jackson by the Company.

38.     Moreover, even though D.M. McGarr was absolutely aware that Mrs. Jackson was out on a work related disability (herniated and bulging discs) he still spitefully sent Point of Purchase advertising materials to her home.

39.     In the spring of 2003 Ivy Acres held its annual flower show and invited the Company along with other lawn and garden professionals.

5

40.    The event is held on Long Island and after the showing a lavish luncheon is provided for those in attendance.

41.    All of Mrs. Jackson's colleagues were allowed to take the day off and attend the event and the luncheon that followed.

42.    However, Mrs. Jackson was not allowed to attend the event.

43.    But, the Company invited a white woman from an entirely different district (Philadelphia, PA) to attend the event and luncheon with all her expenses paid by the Company.

44.    This incident was extremely insulting to Mrs. Jackson and it too displayed the grossly disparate treatment she was subjected to.

45.    Mrs. Jackson was a dedicated and loyal employee of the Company.

46.    Her act of dedication and loyalty was demonstrated in March of 2003 when she was scheduled to have a hernia operation in March 2003.

47.    Mrs. Jackson's hernia injury was the result of work related lifting.

48.    Mrs. Jackson called D.M. McGarr from the Gunhill Road Home Depot store located in the Bronx in February 2003 to inform him that she needed to have hernia surgery in March 2003.

49.    During the same telephone conversation D.M. McGarr said no to the timing of her March 2003 hernia surgery and they would discuss the matter later.

50.    Mrs. Jackson also told D.M. McGarr that she was in pain. But D.M. McGarr flippantly told her that she would have to get the job done.

51.    However, Mike Garbiele ("Mr. Garbiele"), a co-worker of Mrs. Jackson, required medical treatment for a torn rotor cup in his arm.

6

52.    D.M. McGarr not only allowed Mr. Garbiele time off for medical treatment of his injury but also provided coverage for his stores.

53.    Clearly, D.M. McGarr treated Mrs. Jackson disparately from Mr. Garbiele.

54.    D.M. McGarr did not require Mr. Garbiele to postpone his treatment.

55.    Additionally, D.M. McGarr provided coverage for Mr. Garbiele and allowed him time off for his treatment.

56.    Prior to learning about how D.M. McGarr accommodated Mr. Garbiele she decided to postpone it to accommodate D.M. McGarr even though her physician advised her against postponing the operation.

57.    D.M. McGarr requested that she delay the surgery because the season had just begun and he could not afford to have her out.

58.    D.M. McGarr finally agreed that she could have her surgery in June 2003.

59.    Although Mrs. Jackson has been totally dedicated and loyal to the Company these sentiments were not reciprocated back to her.

60.    Two days after her surgery D.M. McGarr called Mrs. Jackson on her hospital bedside telephone to discuss Scotts' business.

61.    Mrs. Jackson's physician Matthew Kilgo, M.D. answered her hospital bedside telephone and upon learning that D.M. McGarr wanted to discuss Scotts' business he told D.M. McGarr to call back.

62.    D.M. McGarr told Mrs. Jackson and her co-workers that they should not inform corporate that she's out recovering from surgery.

63.    Thus, Mrs. Jackson's surgery was never reported to the Company's human resources department.

64.    During her surgery she had an emergency blood transfusion and was hospitalized once again in July 2003.

65.    Mrs. Jackson was not only forced to submit to a hostile work environment and disparate treatment but she had to bear the indignity of inhumane treatment as well.

66.    The inhumane treatment manifested itself while she was at home recuperating from surgery and the relapse.

67.    D.M. McGarr had the unmitigated audacity to continue to burden Mrs. Jackson by having the Point of Purchase advertising material sent to her home.

68.    D.M. McGarr demanded that she follow-up on reports.

69.    D.M. McGarr also demanded that she answer calls on her cell phone from her home while she was recovering.

70.    Upon Mrs. Jackson's return to work in October 2003 D.M. McGarr was undaunted and unfazed by the fact that she had major surgery four months earlier.

71.    D.M. McGarr insisted that she work at the same level and pace that she worked at prior to her surgery.

72.    D.M. McGarr's actions were so detrimental to her recovery that in 2004 Mrs. Jackson's surgeon wrote two letters addressed to D.M. McGarr requesting a reasonable accommodation for his patient, Mrs. Jackson.

73.    The physician clearly expressed that lifting for Mrs. Jackson was unacceptable.

74.    D.M. McGarr failed to give Mrs. Jackson a reasonable accommodation.

75.    D.M. McGarr expected Mrs. Jackson to perform in the same manner that she had prior to her major surgery.

8

76. D.M. McGarr informed Mrs. Jackson in no uncertain terms that she would have to find a way to get the job done.

77. Another instance of discrimination against Mrs. Jackson occurred in the spring of 2004 when she requested to take her son to the dentist for a serious procedure.

78. D.M. McGarr denied Mrs. Jackson's request to take her son to the dentist for the serious procedure.

79. However, D.M. McGarr allowed Mrs. Jackson's co-worker, Jimmy Fitch, to take his son to a baseball game.

80. Mrs. Jackson was also a victim of economic discrimination.

81. During her October 2003 yearly evaluation D.M. McGarr raved about her performance and she was given a $900.00 raise.

82. D.M. McGarr informed her that he had to fight to get her and her colleagues the $900.00 raises from Mike Carbanara ("Mr. Carbanara") the Regional Sales Director.

83. D.M. McGarr requested that Mrs. Jackson not discuss her raise with her Caucasian male co-workers because he had gotten her a little more based on the fact that she was assigned to the Jericho Home Depot.

84. However, shortly thereafter, she learned that her Caucasian male co-workers had each received a $1500.00 raise.

85. This too illustrates the economic discrimination and disparate treatment she was subjected to and the hostile environment she worked in.

86. It also demonstrates that D.M. McGarr acted in bad faith with Mrs. Jackson.

9

87.    The discriminatory and disparate treatment continued in that in the spring of 2004 Mrs. Jackson was servicing nine (9) Home Depots stores.

88.    She was firmly instructed that the Jericho Home Depot was to have one (1) dedicated merchandiser whose job was to service that store only.

89.    The individual who was the dedicated merchandiser to the Jericho Home Depot was a Caucasian male named Dominic Balducci ("Mr. Balducci").

90.    Mrs. Jackson was responsible for servicing eight (8) other Home Depot stores.

91.    However, she was assigned only one merchandiser to service the other eight Home Depot stores his name was Tyrone Jackson, ("Mr. Jackson") an African-American male.

92.    Mrs. Jackson's Caucasian male co-workers were assigned six to seven Home Depot stores.

93.    Moreover, her Caucasian male co-workers were assigned as many as four (4) merchandisers to service the stores they were responsible for.

94.    In 2003 Mr. Carbanara allocated Mrs. Jackson an additional twenty (20) hours of merchandising.

95.    But, D.M. McGarr instructed Mrs. Jackson to assign all the twenty (20) hours to the Jericho Home Depot store.

96.    During the gardening season of 2004 Mr. Balducci was prone to make many mistakes.

97.    Mrs. Jackson counseled him regarding his poor and disruptive work habits on numerous occasions, but to no avail.

10

98.    Mr. Balducci's poor and disruptive work habits included stealing time from the Company.

99.    Furthermore, Mr. Balducci threatened to cause bodily harm to department heads at Home Depot because someone borrowed "his" jack.

100.    Mr. Balducci was known to use perverted language and engaged in inappropriate discussions about his girlfriend's sex life in the presence of customers.

101.    Additionally, Mrs. Jackson received numerous calls from Home Depot management about his violent behavior.

102.    Mr. Balducci has been banished from three (3) other Home Depot stores and was sternly instructed not to return.

103.    D.M. McGarr's response to the foregoing was: "Dominic did not have to go back to those Home Depots that put him out and that they did not deserve his services to begin with."

104.    It is quite obvious that D.M. McGarr placed the personal feelings he had for Mr. Balducci before his obligations to the Company.

105.    However, Mrs. Jackson by sharing the real threat that Mr. Balducci posed with D.M. McGarr shows that she recognized that Mr. Balducci's unprofessional and violent behavior had a negative reflection on the Company as well as exposed the Company to unnecessary and avoidable liability.

106.    Moreover, Mrs. Jackson understood that he had clearly become a present liability and that the Company had been placed on notice about his unprofessional and violent behavior.

107.    The liability that D.M. McGarr exposed the Company to is enormous.

11

108.    It is common knowledge that Mr. Balducci had to attend court ordered anger management courses for threatening to kill his neighbor over a parking space.

109.    But, D.M. McGarr remained a staunch supporter of Mr. Balducci without considering the legal ramifications such blinding support could have on the Company or to Mrs. Jackson's safety and well-being.

110.    D.M. McGarr refused to re-hire Henry Williams ("Mr. Williams"), a black man, who worked for the Company for more than five years.

111.    The grounds that D.M. McGarr refused Mr. Williams employment was that he allegedly was not present in the store at a particular time.

112.    D.M. McGarr mercilessly defamed Mr. Williams with the tag "the Phantom" and often made jokes about him during meetings in the presence of a number of co-workers.

113.    Clearly, D.M. McGarr's disparate treatment of Mr. Williams and the unwavering support of Mr. Balducci were based on race and color.

114.    Mrs. Jackson was again forced to endure and witness this racially motivated injustice creating a hostile work environment.

115.    The discrimination and abuse suffered by Mrs. Jackson was unrelenting, discriminatory and racist.

116.    In 2004 Mr. Carbanara gave Mrs. Jackson an additional twenty (20) hours to service her other home depot stores.

117.    Mr. Carbanara realized that she was overwhelmed with servicing each of the Home Depot stores under her authority.

12

118.    Mrs. Jackson hired Ms. Snow in 2004 and Mr. Jackson was hired in 2001 to assist her servicing the other Home Depot stores she was responsible for.

119.    Based on information and belief there were no black merchandisers until Mrs. Jackson hired Kisha Snow ("Ms. Snow") and Mr. Jackson.

120.    Mrs. Jackson's sales numbers were growing by an incredible rate in her other Home Depot stores.

121.    Her sales numbers were increasing so rapidly that the Vice President of Miracle Gro flew in from Ohio to verify her sales numbers.

122.    However, Mr. McGarr transferred Ms. Snow and Mr. Jackson to the Jericho Home Depot store to help Mr. Balducci.

123.    The hours attributed to Ms. Snow and Mr. Jackson were the additional hours that Mr. Carbanara provided Mrs. Jackson with to service her seven (7) other Home Depot stores.

124.    This unfortunate arrangement allowed Mr. Balducci six (6) additional hours or more on a daily basis.

125.    Based on information and belief Mr. Balducci engaged in stealing time from the Company and Mrs. Jackson's budget by working in other departments at the Jericho Home Depot store.

126.    By reassigning hours specifically designated to Mrs. Jackson's seven (7) other Home Depot stores, Mr. McGarr methodically set her up to fail.

127.    Mrs. Jackson took pride in her job and used her creative skills when it was necessary.

13

128.    In 2003 the Company provided Mrs. Jackson and her colleagues with displays known as Cakes.

129.    The specs for the Cakes did not fit in the area they were to be displayed.

130.    Therefore, Mrs. Jackson took it upon herself to successfully re-configure and redesign the Cakes.

131.    Her efforts were so successful that D.M. McGarr gave her a $100.00 incentive for each Cake she built in her stores.

132.    D.M. McGarr instructed Mrs. Jackson to build the Cake displays in her co-workers' stores.

133.    However, Mrs. Jackson received no compensation or incentives for building the Cake displays in her co-workers stores.

134.    Another instance of unfair and disparate treatment Mrs. Jackson suffered occurred with the building of the Field Goal Post contest in 2004.

135.    Mrs. Jackson was the first of her Caucasian male co-workers to e-mail photos of her completed Field Goal Post to D.M. McGarr.

136.    D. M. McGarr admitted that Mrs. Jackson was the first to complete the Field Goal Post contest.

137.    D.M. McGarr further stated that he knew that she would be the first to complete the contest based on previous incentive driven assignments.

138.    However, D.M. McGarr insisted that she resubmit the photos because there was a piece of cardboard in one of the photos she sent.

139.    The piece of cardboard was the property of Home Depot and placed there by a Home Depot employee.

14

140.   Due to other commitments Mrs. Jackson was unable to resubmit the photos immediately.

141.   Another co-worker, Mike Gabriele won the $100.00 contest.

142.   Mike Gabriele won even though he sent his photos in after Mrs. Jackson sent her photos in.

143.   Mrs. Jackson in 2004 created and designed the Bookcase display.

144.   The Book Case display was created and designed by Mrs. Jackson specifically for the Miracle Gro product line.

145.   At the December 2004 National Conference, those in attendance were encouraged to adopt and use the Book Case display.

146.   Even though Mrs. Jackson created and designed the Book Case display concept, the raise she received was less than the raise received by her Caucasian male co-workers.

147.   The events surrounding the December 2004 National Conference in Naples, Florida were particularly public, brutal and extremely humiliating for Mrs. Jackson.

148.   At the conference the Company's employees were encouraged to take the Miracle-Gro since there were several new items in the product line.

149.   Mrs. Jackson began taking one of each sku and realized that Keith Conard ("Mr. Conard"), Regional Vice President, was watching her.

150   A short time later, Mr. Conard approached Mrs. Jackson and asked her: "What are you doing with the Miracle-Gro?"

15

151.    Mrs. Jackson, although perplexed by his peculiar inquiry, respectfully explained: "It is my understanding that we could take the Miracle-Gro, everyone is taking the product."

152.    Mr. Conard responded by stating: "Yes we were told we could take it, however, you can not because you are going on an airplane and will not be allowed on the flight with the product."

153.    Mrs. Jackson approached Rob Lamp ("Mr. Lamp") to obtain clarification on airline travel constraints associated with the Miracle-Gro.

154.    Mr. Lamp stated: "I have been addressing that issue all morning and you can take the Miracle-Gro but you must check it in and not take it in your carry-on luggage.

155.    Mr. Lamp then escorted Mrs. Jackson to the Miracle-Gro table and began assisting her with boxing up the products.

156.    Mr. Conard continued to watch Mrs. Jackson's every move from a distance.

157.    Mr. Lamp carried the box to the elevator and waited with her until the elevator arrived.

158.    When the elevator arrived she stepped on the elevator and he handed her the box and said: "Farewell, until next year."

159.    Prior to the elevator doors closing Mr. Conard stepped onto the elevator.

160.    Mr. Conard then asked Mrs. Jackson: "Have you ever been thrown into jail?"

16

161.    There were other representatives from the Company on the elevator having a conversation.

162.    But, all discussions ceased when Mr. Conard singled out Mrs. Jackson and asked her that question.

163.    He further stated that: "If you take the Miracle-Gro you are going to be thrown into jail and Scotts is not going to be here in Naples to get you out of jail."

164.    He then said: "What are you going to do?"

165.    Mrs. Jackson was shocked and flabbergasted by such a question.

166.    She immediately felt that Mr. Conard was motivated by racism since she was the only Company representative he made this inquiry to.

167.    Mrs. Jackson responded by stating that: "If I am arrested Marion Silber of Gordon & Silber will represent me."

168.    Flippantly, Mr. Conard said: "Is that right?"

169.    Mrs. Jackson steeled herself in order to hold back the tears.

170.    When she got to her room she cried hysterically due to the unbearable embarrassment and humiliation Mr. Conard had subjected her to.

171.    Mrs. Jackson called D.M. McGarr but was far too upset to leave a message the first time she called but called again and left a message.

172.    She then called her colleague Mr. Botz.  Mr. Botz had previously been Mrs. Jackson's direct supervisor.

173.    Mrs. Jackson explained what had occurred with Mr. Conard and how she had tried to call D.M. McGarr unsuccessfully.

17

174.   Mr. Botz told Mrs. Jackson that D.M. McGarr was on the patio in the pool area.

175.   Mr. Botz was very angry about the incident with Mr. Conard and advised Mrs. Jackson to take the product.

176.   Mr. Botz said it was unfair and cited the fact that everyone was taking the product and that she was the only Scotts representative singled out.

177.   D.M. McGarr returned her call and told her to meet him in the hotel lobby. Mrs. Jackson explained what had occurred and D.M. McGarr appeared to be in shock.

178.   He continued to ask Mrs. Jackson over and over again what had transpired between her and Mr. Conard.

179.   D.M. McGarr stated: "I'm in shock because I saw people leaving the hotel with tons of the stuff in their suitcases.  Boxes of stuff I saw them leave with."

180.   Mrs. Jackson expressed to D.M. McGarr that due the actions of Mr. Conard she had been discriminated against.

181.   D.M. McGarr stated that when they get back to New York he would purchase all the Miracle-Gro that she wanted.

182.   But he voiced his concerns that he feared that if she did not put the Miracle-Gro back she would be fired for insubordination.

183.   He further stated that she should apologize to Mr. Conard for taking the Miracle-Gro.

184.   Mrs. Jackson began to cry because the harassment and humiliation had been compounded exponentially as a result of D.M. McGarr's reaction to the discrimination and the disparate treatment she had unfairly experienced.

18

185.    Nevertheless, she returned the Miracle-Gro and apologized to Mr. Conard for taking the product.

186.    Mr. Conard replied: "It was a wise thing to do because the Scotts Company would not have been available and that other incidents could have arose from the matter had you taken the Miracle-Gro."

187.    It is evident that those in a position to rightfully object to the wrongful and unlawful actions of Mr. Conard chose to act in concert with him by ignoring his blatant acts of discrimination.

188.    Mrs. Jackson was told to provide Mr. Cabanara with a formal report about the racist incident with Mr. Conard.

189.    However, when she broached the matter with him he stated curtly: "I'm not interested and forget the matter."

190.    D.M. McGarr acted in a similar fashion when he snapped: "Forget the entire matter. Just forget about it."

191.    It is obvious that both Mr. Cabanara and D.M. McGarr covered and condoned the unlawful actions of Mr. Conard.

192.    On or about January 10, 2005 Mrs. Jackson's back went completely out which forced her to go out on short-term disability.

193.    However, unbeknownst to her, sometime during the month of June 2005 she was unceremoniously and unlawfully terminated.

194.    Mrs. Jackson's unlawful termination was contrary to the Company's policies and procedures.

19

195.    Moreover, the Company failed to provide her with a reasonable accommodation for her work related injury.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination and Harassment
### In Violation of New York State Human Rights Law)

196.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 195, inclusive as if fully set forth herein.

197.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in violation of the New York State Human Rights Law by denying to plaintiff equal terms and conditions of employment, including but not limited to failing to provide plaintiff with a reasonable accommodation as a result to plaintiff's disability and subjecting plaintiff to disparate working conditions and performance standards, gender discrimination, denying plaintiff the opportunity to work in an employment setting free of unlawful harassment, denying plaintiff opportunities for professional growth, denying plaintiff compensation and other terms and conditions of employment equal to that of Caucasian employees, and terminating plaintiff unlawfully from plaintiff's employment with defendant.

198.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in violation of the New York State Human Rights Law by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that

20

has included, among other things, severe and pervasive racial harassment of plaintiff by plaintiff's superiors.

199.    As a direct and proximate result of defendant's unlawful and discriminatory conduct in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

200.    As a direct and proximate result of defendant's unlawful and discriminatory conduct in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of damages.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Retaliation in Violation of New York State Human Rights Law)

201.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 200, inclusive, as if fully set forth herein.

202.    Defendant has retaliated against plaintiff by, inter alia, by treating her with unmitigated contempt when she complained about how she was treated regarding the Mr. Conard/Miracle Gro incident and subjecting plaintiff to wrongful termination, subjecting plaintiff to an unfair and hostile work environment and failing to provide plaintiff with a reasonable accommodation pursuant to plaintiff's disability this is clearly

21

in violation of New York State Human Rights Law for: (a) plaintiff's opposition to defendant's discriminatory practices; (b) being wrongfully subjected to harassment and a hostile work environment.

203. As a direct and proximate result of defendant's unlawful and retaliatory conduct in violation of the New York State Human Rights Law, plaintiff has suffered and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

204. As a direct and proximate result of defendant's unlawful retaliatory conduct in violation of the New York State Human Rights Law, plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Aiding and Abetting Violations of New York State Human Rights Law)

205. Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 204, inclusive, as if fully set forth herein.

206. Defendants knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against plaintiff in violation of the New York State Human Rights Law by actively participating in the unlawful conduct set forth above.

22

207.    As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

208.    As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Discrimination and Harassment
### In Violation of New York City Human Rights Law)

209.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 208, inclusive, as if fully set forth herein.

210.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in violation of the New York City Human Rights Law by denying to plaintiff equal terms and conditions of employment, including but not limited to, failing to provide plaintiff with a reasonable accommodation pursuant to plaintiff's disability, subjecting plaintiff to disparate working conditions and performance standards, gender discrimination, economic discrimination, denying plaintiff the opportunity to work in an employment

23

setting free of unlawful harassment, denying plaintiff opportunities for professional growth, denying plaintiff compensation and other terms and conditions of employment equal to that of Caucasian employees, and terminating plaintiff unlawfully from plaintiff's employment at the Defendant's.

211.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of her Race and/or Color (African-American/Black), in violation of the New York City Human Rights Law by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, severe and pervasive racial harassment of plaintiff by plaintiff's superiors.

212.    As a direct and proximate result of defendant's unlawful and discriminatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

213.    As a direct and proximate result of defendant's unlawful and discriminatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of damages.

Filed On - 12/21/07 4:29:08 PM Bronx County Clerk

214.    Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Retaliation in Violation of New York City Human Rights Law)

215.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 214, inclusive, as if fully set forth herein.

216.    Defendant retaliated against plaintiff by, inter alia, by treating her with unmitigated contempt when she complained about how she was treated regarding the Mr. Conard/Miracle Gro incident and subjecting plaintiff to wrongful termination, subjecting plaintiff to an unfair and hostile work environment and failing to provide plaintiff with a reasonable accommodation pursuant to plaintiff's disability this is clearly in violation of New York State Human Rights Law for: (a) plaintiff's opposition to defendant's discriminatory practices; (b) being wrongfully subjected to harassment and a hostile work environment.

217.    As a direct and proximate result of defendant's unlawful and retaliatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

218.    As a direct and proximate result of defendant's unlawful retaliatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered and

25

continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

219.    Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR THE SIXTH CAUSE OF ACTION

### (Aiding and Abetting Violations of New York City Human Rights Law)

220.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 219, inclusive, as if fully set forth herein.

221.    Defendant knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against plaintiff in violation of the New York City Human Rights Law by actively participating in the unlawful conduct set forth above.

222.    As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York City Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

223.    As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York City Human

26

Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

224.    Defendants unlawful actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
### (Defamation)

225.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 224, inclusive, as if fully set forth herein.

226.    Defendant unlawfully subjected plaintiff to defamation: libel per se and slander per se, placed plaintiff in a false light, and engaged in acts that caused the invasion of plaintiff's privacy.

227.    Defendant knowingly or recklessly subjected plaintiff to defamation: libel per se and slander per se, placed her in a false light, and engaged in acts that caused the invasion of plaintiff's privacy in violation of New York State law.

228.    As a direct and proximate result of defendant's unlawful acts of defamation: libel per se and slander per se, placing plaintiff in a false light, and the invasion of plaintiff's privacy, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income,

Filed On - 12/21/07 4:29:08 PM Bronx County Clerk

compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

229.    As a direct and proximate result of defendant's unlawful acts of defamation: libel per se and slander per se, placing plaintiff in a false light, and the invasion of plaintiff's privacy, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

230.    Defendant's unlawful actions constitute malicious, willful and wanton violations of New York State Law for which plaintiff is entitled to an award of compensatory and punitive damages and other relief.

## AS AND FOR THE EIGHTH CAUSE OF ACTION

### (Economic Discrimination)

231.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 230, inclusive, as if fully set forth herein.

232.    Defendant unlawfully subjected plaintiff to economic discrimination in violation of New York State Law.

233.    Defendant knowingly or recklessly subjected plaintiff to economic discrimination in violation of New York State Law.

234.    As a direct and proximate result of the defendant subjecting plaintiff to economic discrimination, plaintiff has suffered, and continues to suffer, monetary and/or

28

economic damages, including but not limited to loss of past and future income,

compensation and benefits for which plaintiff is entitled to an award of monetary

damages and other relief.

235.    As a direct and proximate result of the defendant subjecting plaintiff to

economic discrimination, plaintiff has suffered, and continues to suffer, severe mental

anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering for which plaintiff is entitled to an award of monetary damages and

other relief.

236.    Defendant's unlawful actions constitute malicious, willful and wanton

violations of New York State Law for which plaintiff is entitled to an award of

compensatory and punitive damages and other relief.

### AS AND FOR THE NINETH CAUSE OF ACTION

#### (Breach of Implied Contract to Act in Good Faith)

237.    Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 236, inclusive, as if fully set forth herein.

238.    Defendant unlawfully breached its implied contract to plaintiff to act in

good faith in violation of New York State Law.

239.    Defendant knowingly or recklessly breached its implied contract to

plaintiff to act in good faith in violation of New York State Law.

240.    As a direct and proximate result of defendant's breach of the implied

contract to plaintiff to act in good faith, plaintiff has suffered, and continues to suffer,

29

monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

241.    As a direct and proximate result of defendant's breach of the implied contract to act in good faith, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

242.    Defendant's unlawful actions constitute malicious, willful and wanton violations of New York State Law for which plaintiff is entitled to an award of compensatory and punitive damages and other relief.

## AS AND FOR THE TENTH CAUSE OF ACTION

### (Failure to Provide a Reasonable Accommodation)

243.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 242, inclusive, as if fully set forth herein.

244.    Defendant unlawfully failed to provide plaintiff with a reasonable accommodation as a result of plaintiff's work related injury.

245.    Defendant knowingly and/or recklessly failed to provide plaintiff with a reasonable accommodation as a result of plaintiff's work related injury in violation of 9 New York Code of Rules and Regulations (NYCRR) §466.11.

30

246.    As a direct and proximate result of defendant's failure to provide plaintiff with a reasonable accommodation of plaintiff's work related injury, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

247.    As a direct and proximate result of defendant's failure to provide plaintiff with a reasonable accommodation of her work related injury, plaintiff has suffered, and continues to suffer, severe physical and mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

248.    Defendant's unlawful actions constitute malicious, willful and wanton violations of New York State Law for which plaintiff is entitled to an award of compensatory and punitive damages and other relief.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION

### (Violation of Equal Protection of Laws)

249.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 248, inclusive, as if fully set forth herein.

250.    Defendant unlawfully violated plaintiff's Equal Protection of Laws rights.

251.    Defendant knowingly or recklessly violated plaintiff's Equal Protection of Laws rights under Article 1 § 11 of the New York State Constitution (Bill of Rights) by

31

subjecting plaintiff to treatment that no Caucasian employee of the defendants' has been subjected to.

252.    As a direct and proximate result of defendant's violating plaintiff's Equal Protection of Laws, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

253.    As a direct and proximate result of defendant's violating plaintiff's Equal Protection of Laws, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enters judgment in her favor and against defendant, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of defendant complained of herein violate the laws of the State of New York and the City of New York;

B.    An order directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and otherwise unlawful conduct are eliminated and do not continue to affect plaintiff;

Filed On - 12/21/07 4:29:08 PM Bronx County Clerk

C.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

D.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for plaintiff's severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

E.   An award of damages for any and all other monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial, plus prejudgment interest;

F.   An award of punitive damages;

G.   An award of costs that plaintiff has incurred in this action, as well as plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

H.   Such other and further relief as the Court may deem just and proper.

Filed On - 12/21/07 4:29:08 PM Bronx County Clerk

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.


Dated: New York, New York
      December 21, 2007

                    Respectfully submitted,

                    SANDRA D. FRELIX, P.C.

                    By: _____
                        Sandra D. Frelix
                        Attorney for Plaintiff
                        110 Wall Street, 11th Floor
                        New York, New York 10005
                        Telephone:  212-859-3509
                        Facsimile:  212-862-8212

## **VERIFICATION**

State of New York    )
                      ) ss.:
County of Queens    )


MARIA JACKSON, being duly sworn, states:

I am the Plaintiff in the action herein. I have read the annexed SUMMONS AND

VERIFIED COMPLAINT, know the contents thereof and the same are true to my

knowledge, except those matters therein which, are stated to be alleged on information

and belief, and as to those matters I believe them to be true.

_____
MARIA JACKSON

Sworn to before me
this ‚Äã1 2 ‚Äã day of December, 2007


_____
NOTARY PUBLIC

35

Form 19 - SECRETARY OF STATE - 306
**SANDRA D. FRELIX, P.C.**
**ATTN:**
SUPREME COURT    BRONX   COUNTY    .    . STATE OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| MARIA JACKSON | plaintiff | Index No. 303890/07 |
| | | Date Filed  . . . . . . . . . . . . |
| - against - | | Office No. |
| THE SCOTTS COMPANY | defendant | Court Date:    /  / |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF NEW YORK, COUNTY OF NEW YORK :SS:
**STEVE AVERY**               being duly sworn, deposes and says that
he is over the age of 18 years, resides in the State of New York and is
not a party to this action.    That on the
**4th   of January,  2008 at  08:50 am**
at the Office of the Secretary of State of the State of New York in the
City of Albany, New York, he served the
**SUMMONS AND VERIFIED COMPLAINT**
**UPON: THE SCOTTS COMPANY**
**the DEFENDANT** in this action, by delivering to and leaving with
    **DONNA CHRISTIE, AGENT**

in the office of the Secretary of State of New York, two true copies
thereof and at the same time of making such service, deponent paid said
Secretary of State, a fee of **$40**. That said service was made pursuant to
Section 306 of the BCL.

Deponent further describes the person actually served as follows:

SEX: **FEMALE**        COLOR: **WHITE**        HAIR: **BLONDE**
APP. AGE: **35**        APP. HT: **5:5**        APP. WT: **130**
OTHER IDENTIFYING FEATURES:

SWORN TO BEFORE ME THIS
9th  DAY OF  January, 2008

KENNETH WISSNER
Notary Public, State of New York
    No.01WI4714130
Qualified in NEW YORK COUNTY
Commission Expires 03/30/2010

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
STEVE AVERY
AETNA  CENTRAL  JUDICIAL  SERVICES
225 BROADWAY, SUITE 1802
NEW YORK, NY, 10007
Reference No: 3SDF102471

CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b), and attached

exhibit, to be served on the following counsel of record this 1st day of February, 2008 by

forwarding a copy, by First Class Mail, addressed to:

> Sandra D. Frelix, Esq.
> 110 Wall Street, 11th Floor
> New York, New York 10005
> (212) 859-3509

Craig S. Friedman

# EXHIBIT B

SUPREME COURT OF TSHE STATE OF NEW YORK
COUNTY OF BRONX

----------------------------------------------------------------X

MARIA JACKSON

                        *Plaintiff,*

      -against-

THE SCOTTS COMPANY

                        *Defendant.*

----------------------------------------------------------------X

**PROPOSED
AMENDED
VERIFIED
COMPLAINT**

**INDEX No.:**

Plaintiff, MARIA JACKSON ("Mrs. Jackson", "Plaintiff" or "plaintiff"), by and through her attorney, SANDRA D. FRELIX, for her Complaint against THE SCOTTS COMPANY ("the Company", "Defendant Scotts", "Defendant" or "defendant"), thereby states and alleges as follows:

## NATURE OF THE CLAIMS

1.      This action is for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices and retaliation against Plaintiff, including the discriminatory treatment, racial harassment, and retaliation against Plaintiff due to her Race and/or Color (African-American/Black), gender, deprivation of property without due process of law and equal protection of laws, in violation of the New York State Human Rights Law, New York Executive Law §§ 290 et seq.: and the New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101 et seq. and the New York State Constitution. Additionally, Mrs. Jackson was subjected to defamation: slander per se and libel per se, being placed in a false light and was forced to endure the breach of an implied contract to act in good faith in violation of New York State Law. Moreover, the defendant caused her to suffer

economic discrimination and failed to provide her a reasonable accommodation pursuant to her disability in violation of 9 New York Code of Rules and Regulations (NYCRR) §466.11.

## JURISDICTION AND VENUE

2.     The Court has personal jurisdiction over Defendant pursuant to Sections 301 and/or 302 of the New York Civil Practice Law and Rules ("CPLR") in that the Defendant transacts and/or solicits business within the state from which they derive substantial revenues.

3.     The Court has personal jurisdiction over Defendant because a significant portion of the unlawful employment practices and events giving rise to the claims herein occurred in New York.

4.     The Court has subject matter jurisdiction over this action by virtue of the New York State Human Rights Law, New York Executive Law § 279(9); the New York City Human Rights Law, Administrative Code of the City of New York § 8-502(a); and the Constitution of the State of New York.

5.     Venue is proper in this county pursuant to CPLR § 503(c) because the Defendant conducted business in Bronx County at the relevant times described in this Complaint and continues to conduct business in Bronx County.

6.     Prior to the commencement of this action, a copy of this Complaint was served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

## PARTIES

7.    Plaintiff Maria Jackson is an African-American citizen female who resides in Springfield Gardens, New York.  At all relevant times, Plaintiff has met the definition of an "employee" under all applicable statutes.

8.    Defendant Scotts conducts business throughout New York State as well as in all the other forty-nine states and internationally.

9.    The Scotts Company is located at 14111 Scottslawn Road, Marysville, OH 43041.

## FACTUAL ALLEGATIONS

10.    Defendant hired Mrs. Jackson in April 2001 as a Seasonal Merchandiser.

11.    She was immediately promoted to the position of Sales Merchandising Manager on or about December 14, 2001.

12.    Mrs. Jackson worked diligently for the Company for four (4) years at the time of her June 2005 unlawful termination.

13.    Mrs. Jackson excelled at her responsibilities pursuant to each of her positions.

14.    Mrs. Jackson also received exemplary job performance appraisals.

15.    In the Spring of 2002 Mrs. Jackson suffered extreme embarrassment and humiliation when District Manager Patrick McGarr ("D.M. McGarr") stated that: "Maria's not Black she is Italian!"

16.    This incident took place at the Liberty Diner in Farmingdale, N.Y.

17.    There was never an occasion witnessed by Mrs. Jackson where a white person's core identity was challenged and violated.

3

18.    In the spring of 2002 Mrs. Jackson became aware that the Defendant was being sued for discrimination for not hiring women in the 04 region.

19.    She further learned that the Defendant had specifically directed D.M. McGarr to hire a black woman.

20.    D.M. McGarr shared this information with James Fitch ("Mr. Fitch"), a Sales Merchandising Manager ("SMM").

21.    Mr. Fitch wanted D.M. McGarr to hire his friend, a Caucasian male, who had previously resigned from the Defendant but wanted his old position back.

22.    At the December 2002 conference in Naples, Florida Mrs. Jackson, D.M. McGarr, and co-workers were attending a class.

23.    Mrs. Jackson went the ladies room upon her return the seats were taken in her class' section.

24.    The only seat available in the section with her co-workers was located at the far end of the table where her co-workers were seated.

25.    The closest unoccupied seat was located in an area occupied by another district.

26.    The district manager of that region Patrick Flagherty ("D.M. Patrick Flagherty) stated that she could sit with his district.

27.    However, D.M. McGarr tapped her on the shoulder and told her that she could not sit there.

28.    D.M. McGarr then signaled one of their co-workers to move down so she could sit with them.

4

29.     Mrs. Jackson then heard Mr. Flagherty state to his SMM's: "What is this? Is she too good to sit with us? Oh yeah, that's right that's Pat's token."

30.     This racist comment was not only hurtful but it was extremely embarrassing to Mrs. Jackson.

31.     Another area where Mrs. Jackson was subjected to disparate treatment pertains to storage facilities.

32.     Point of Purchase is advertising that is sent to managers in great quantity.

33.     Therefore, it is customary for the Company to pay for the storage facility utilized by the managers to house and maintain the advertising materials.

34.     Unfortunately, Mrs. Jackson was informed in no uncertain terms by D.M. McGarr that his budget did not permit him to go over the $75.00 per month for storage.

35.     Consequently, she was forced to store the materials in her home, which greatly inconvenienced her family.

36.     Mrs. Jackson eventually learned that D.M. McGarr paid well over $100.00 for storage for Mrs. Jackson's co-workers who operated in eastern Long Island.

37.     This is an undeniable illustration of the humiliating, embarrassing, disparate as well as racist treatment imposed upon Mrs. Jackson by the Company.

38.     Moreover, even though D.M. McGarr was absolutely aware that Mrs. Jackson was out on a work related disability (herniated and bulging discs) he still spitefully sent Point of Purchase advertising materials to her home.

39.     In the spring of 2003 Ivy Acres held its annual flower show and invited the Company along with other lawn and garden professionals.

40.     The event is held on Long Island and after the showing a lavish luncheon is provided for those in attendance.

41.     All of Mrs. Jackson's colleagues were allowed to take the day off and attend the event and the luncheon that followed.

42.     However, Mrs. Jackson was not allowed to attend the event.

43.     But, the Company invited a white woman from an entirely different district (Philadelphia, PA) to attend the event and luncheon with all her expenses paid by the Company.

44.     This incident was extremely insulting to Mrs. Jackson and it too displayed the grossly disparate treatment she was subjected to.

45.     Mrs. Jackson was a dedicated and loyal employee of the Company.

46.     Her act of dedication and loyalty was demonstrated in March of 2003 when she was scheduled to have a hernia operation in March 2003.

47.     Mrs. Jackson's hernia injury was the result of work related lifting.

48.     Mrs. Jackson called D.M. McGarr from the Gunhill Road Home Depot store located in the Bronx in February 2003 to inform him that she needed to have hernia surgery in March 2003.

49.     During the same telephone conversation D.M. McGarr said no to the timing of her March 2003 hernia surgery and they would discuss the matter later.

50.     Mrs. Jackson also told D.M. McGarr that she was in pain.  But D.M. McGarr flippantly told her that she would have to get the job done.

51.     However, Mike Garbiele ("Mr. Garbiele"), a co-worker of Mrs. Jackson, required medical treatment for a torn rotor cup in his arm.

6

52.    D.M. McGarr not only allowed Mr. Garbiele time off for medical treatment of his injury but also provided coverage for his stores.

53.    Clearly, D.M. McGarr treated Mrs. Jackson disparately from Mr. Garbiele.

54.    D.M. McGarr did not require Mr. Garbiele to postpone his treatment.

55.    Additionally, D.M. McGarr provided coverage for Mr. Garbiele and allowed him time off for his treatment.

56.    Prior to learning about how D.M. McGarr accommodated Mr. Garbiele she decided to postpone it to accommodate D.M. McGarr even though her physician advised her against postponing the operation.

57.    D.M. McGarr requested that she delay the surgery because the season had just begun and he could not afford to have her out.

58.    D.M. McGarr finally agreed that she could have her surgery in June 2003.

59.    Although Mrs. Jackson has been totally dedicated and loyal to the Company these sentiments were not reciprocated back to her.

60.    Two days after her surgery D.M. McGarr called Mrs. Jackson on her hospital bedside telephone to discuss Scotts' business.

61.    Mrs. Jackson's physician Matthew Kilgo, M.D. answered her hospital bedside telephone and upon learning that D.M. McGarr wanted to discuss Scotts' business he told D.M. McGarr to call back.

62.    D.M. McGarr told Mrs. Jackson and her co-workers that they should not inform corporate that she's out recovering from surgery.

63.    Thus, Mrs. Jackson's surgery was never reported to the Company's human resources department.

64.     During her surgery she had an emergency blood transfusion and was hospitalized once again in July 2003.

65.     Mrs. Jackson was not only forced to submit to a hostile work environment and disparate treatment but she had to bear the indignity of inhumane treatment as well.

66.     The inhumane treatment manifested itself while she was at home recuperating from surgery and the relapse.

67.     D.M. McGarr had the unmitigated audacity to continue to burden Mrs. Jackson by having the Point of Purchase advertising material sent to her home.

68.     D.M. McGarr demanded that she follow-up on reports.

69.     D.M. McGarr also demanded that she answer calls on her cell phone from her home while she was recovering.

70.     Upon Mrs. Jackson's return to work in October 2003 D.M. McGarr was undaunted and unfazed by the fact that she had major surgery four months earlier.

71.     D.M. McGarr insisted that she work at the same level and pace that she worked at prior to her surgery.

72.     D.M. McGarr's actions were so detrimental to her recovery that in 2004 Mrs. Jackson's surgeon wrote two letters addressed to D.M. McGarr requesting a reasonable accommodation for his patient, Mrs. Jackson.

73.     The physician clearly expressed that lifting for Mrs. Jackson was unacceptable.

74.     D.M. McGarr failed to give Mrs. Jackson a reasonable accommodation.

75.     D.M. McGarr expected Mrs. Jackson to perform in the same manner that she had prior to her major surgery.

76.    D.M. McGarr informed Mrs. Jackson in no uncertain terms that she would have to find a way to get the job done.

77.    Another instance of discrimination against Mrs. Jackson occurred in the spring of 2004 when she requested to take her son to the dentist for a serious procedure.

78.    D.M. McGarr denied Mrs. Jackson's request to take her son to the dentist for the serious procedure.

79.    However, D.M. McGarr allowed Mrs. Jackson's co-worker, Jimmy Fitch, to take his son to a baseball game.

80.    Mrs. Jackson was also a victim of economic discrimination.

81.    During her October 2003 yearly evaluation D.M. McGarr raved about her performance and she was given a $900.00 raise.

82.    D.M. McGarr informed her that he had to fight to get her and her colleagues the $900.00 raises from Mike Carbanara ("Mr. Carbanara") the Regional Sales Director.

83.    D.M. McGarr requested that Mrs. Jackson not discuss her raise with her Caucasian male co-workers because he had gotten her a little more based on the fact that she was assigned to the Jericho Home Depot.

84.    However, shortly thereafter, she learned that her Caucasian male co-workers had each received a $1500.00 raise.

85.    This too illustrates the economic discrimination and disparate treatment she was subjected to and the hostile environment she worked in.

86.    It also demonstrates that D.M. McGarr acted in bad faith with Mrs. Jackson.

87.    The discriminatory and disparate treatment continued in that in the spring of 2004 Mrs. Jackson was servicing nine (9) Home Depots stores.

88.    She was firmly instructed that the Jericho Home Depot was to have one (1) dedicated merchandiser whose job was to service that store only.

89.    The individual who was the dedicated merchandiser to the Jericho Home Depot was a Caucasian male named Dominic Balducci ("Mr. Balducci").

90.    Mrs. Jackson was responsible for servicing eight (8) other Home Depot stores.

91.    However, she was assigned only one merchandiser to service the other eight Home Depot stores his name was Tyrone Jackson, ("Mr. Jackson") an African-American male.

92.    Mrs. Jackson's Caucasian male co-workers were assigned six to seven Home Depot stores.

93.    Moreover, her Caucasian male co-workers were assigned as many as four (4) merchandisers to service the stores they were responsible for.

94.    In 2003 Mr. Carbanara allocated Mrs. Jackson an additional twenty (20) hours of merchandising.

95.    But, D.M. McGarr instructed Mrs. Jackson to assign all the twenty (20) hours to the Jericho Home Depot store.

96.    During the gardening season of 2004 Mr. Balducci was prone to make many mistakes.

97.    Mrs. Jackson counseled him regarding his poor and disruptive work habits on numerous occasions, but to no avail.

98.     Mr. Balducci's poor and disruptive work habits included stealing time from the Company.

99.     Furthermore, Mr. Balducci threatened to cause bodily harm to department heads at Home Depot because someone borrowed "his" jack.

100.    Mr. Balducci was known to use perverted language and engaged in inappropriate discussions about his girlfriend's sex life in the presence of customers.

101.    Additionally, Mrs. Jackson received numerous calls from Home Depot management about his violent behavior.

102.    Mr. Balducci has been banished from three (3) other Home Depot stores and was sternly instructed not to return.

103.    D.M. McGarr's response to the foregoing was: "Dominic did not have to go back to those Home Depots that put him out and that they did not deserve his services to begin with."

104.    It is quite obvious that D.M. McGarr placed the personal feelings he had for Mr. Balducci before his obligations to the Company.

105.    However, Mrs. Jackson by sharing the real threat that Mr. Balducci posed with D.M. McGarr shows that she recognized that Mr. Balducci's unprofessional and violent behavior had a negative reflection on the Company as well as exposed the Company to unnecessary and avoidable liability.

106.    Moreover, Mrs. Jackson understood that he had clearly become a present liability and that the Company had been placed on notice about his unprofessional and violent behavior.

107.    The liability that D.M. McGarr exposed the Company to is enormous.

108.   It is common knowledge that Mr. Balducci had to attend court ordered anger management courses for threatening to kill his neighbor over a parking space.

109.   But, D.M. McGarr remained a staunch supporter of Mr. Balducci without considering the legal ramifications such blinding support could have on the Company or to Mrs. Jackson's safety and well-being.

110.   D.M. McGarr refused to re-hire Henry Williams ("Mr. Williams"), a black man, who worked for the Company for more than five years.

111.   The grounds that D.M. McGarr refused Mr. Williams employment was that he allegedly was not present in the store at a particular time.

112.   D.M. McGarr mercilessly defamed Mr. Williams with the tag "the Phantom" and often made jokes about him during meetings in the presence of a number of co-workers.

113.   Clearly, D.M. McGarr's disparate treatment of Mr. Williams and the unwavering support of Mr. Balducci were based on race and color.

114.   Mrs. Jackson was again forced to endure and witness this racially motivated injustice creating a hostile work environment.

115.   The discrimination and abuse suffered by Mrs. Jackson was unrelenting, discriminatory and racist.

116.   In 2004 Mr. Carbanara gave Mrs. Jackson an additional twenty (20) hours to service her other home depot stores.

117.   Mr. Carbanara realized that she was overwhelmed with servicing each of the Home Depot stores under her authority.

118.    Mrs. Jackson hired Ms. Snow in 2004 and Mr. Jackson was hired in 2001 to assist her servicing the other Home Depot stores she was responsible for.

119.    Based on information and belief there were no black merchandisers until Mrs. Jackson hired Kisha Snow ("Ms. Snow") and Mr. Jackson.

120.    Mrs. Jackson's sales numbers were growing by an incredible rate in her other Home Depot stores.

121.    Her sales numbers were increasing so rapidly that the Vice President of Miracle Gro flew in from Ohio to verify her sales numbers.

122.    However, Mr. McGarr transferred Ms. Snow and Mr. Jackson to the Jericho Home Depot store to help Mr. Balducci.

123.    The hours attributed to Ms. Snow and Mr. Jackson were the additional hours that Mr. Carbanara provided Mrs. Jackson with to service her seven (7) other Home Depot stores.

124.    This unfortunate arrangement allowed Mr. Balducci six (6) additional hours or more on a daily basis.

125.    Based on information and belief Mr. Balducci engaged in stealing time from the Company and Mrs. Jackson's budget by working in other departments at the Jericho Home Depot store.

126.    By reassigning hours specifically designated to Mrs. Jackson's seven (7) other Home Depot stores, Mr. McGarr methodically set her up to fail.

127.    Mrs. Jackson took pride in her job and used her creative skills when it was necessary.

128.    In 2003 the Company provided Mrs. Jackson and her colleagues with displays known as Cakes.

129.    The specs for the Cakes did not fit in the area they were to be displayed.

130.    Therefore, Mrs. Jackson took it upon herself to successfully re-configure and redesign the Cakes.

131.    Her efforts were so successful that D.M. McGarr gave her a $100.00 incentive for each Cake she built in her stores.

132.    D.M. McGarr instructed Mrs. Jackson to build the Cake displays in her co-workers' stores.

133.    However, Mrs. Jackson received no compensation or incentives for building the Cake displays in her co-workers stores.

134.    Another instance of unfair and disparate treatment Mrs. Jackson suffered occurred with the building of the Field Goal Post contest in 2004.

135.    Mrs. Jackson was the first of her Caucasian male co-workers to e-mail photos of her completed Field Goal Post to D.M. McGarr.

136.    D. M. McGarr admitted that Mrs. Jackson was the first to complete the Field Goal Post contest.

137.    D.M. McGarr further stated that he knew that she would be the first to complete the contest based on previous incentive driven assignments.

138.    However, D.M. McGarr insisted that she resubmit the photos because there was a piece of cardboard in one of the photos she sent.

139.    The piece of cardboard was the property of Home Depot and placed there by a Home Depot employee.

140.     Due to other commitments Mrs. Jackson was unable to resubmit the photos immediately.

141.     Another co-worker, Mike Gabriele won the $100.00 contest.

142.     Mike Gabriele won even though he sent his photos in after Mrs. Jackson sent her photos in.

143.     Mrs. Jackson in 2004 created and designed the Bookcase display.

144.     The Book Case display was created and designed by Mrs. Jackson specifically for the Miracle Gro product line.

145.     At the December 2004 National Conference, those in attendance were encouraged to adopt and use the Book Case display.

146.     Even though Mrs. Jackson created and designed the Book Case display concept, the raise she received was less than the raise received by her Caucasian male co-workers.

147.     The events surrounding the December 2004 National Conference in Naples, Florida were particularly public, brutal and extremely humiliating for Mrs. Jackson.

148.     At the conference the Company's employees were encouraged to take the Miracle-Gro since there were several new items in the product line.

149.     Mrs. Jackson began taking one of each sku and realized that Keith Conard ("Mr. Conard"), Regional Vice President, was watching her.

150.     A short time later, Mr. Conard approached Mrs. Jackson and asked her: "What are you doing with the Miracle-Gro?"

15

151.    Mrs. Jackson, although perplexed by his peculiar inquiry, respectfully explained: "It is my understanding that we could take the Miracle-Gro, everyone is taking the product."

152.    Mr. Conard responded by stating: "Yes we were told we could take it, however, you can not because you are going on an airplane and will not be allowed on the flight with the product."

153.    Mrs. Jackson approached Rob Lamp ("Mr. Lamp") to obtain clarification on airline travel constraints associated with the Miracle-Gro.

154.    Mr. Lamp stated: "I have been addressing that issue all morning and you can take the Miracle-Gro but you must check it in and not take it in your carry-on luggage.

155.    Mr. Lamp then escorted Mrs. Jackson to the Miracle-Gro table and began assisting her with boxing up the products.

156.    Mr. Conard continued to watch Mrs. Jackson's every move from a distance.

157.    Mr. Lamp carried the box to the elevator and waited with her until the elevator arrived.

158.    When the elevator arrived she stepped on the elevator and he handed her the box and said: "Farewell, until next year."

159.    Prior to the elevator doors closing Mr. Conard stepped onto the elevator.

160.    Mr. Conard then asked Mrs. Jackson: "Have you ever been thrown into jail?"

161.    There were other representatives from the Company on the elevator having a conversation.

162.    But, all discussions ceased when Mr. Conard singled out Mrs. Jackson and asked her that question.

163.    He further stated that: "If you take the Miracle-Gro you are going to be thrown into jail and Scotts is not going to be here in Naples to get you out of jail."

164.    He then said: "What are you going to do?"

165.    Mrs. Jackson was shocked and flabbergasted by such a question.

166.    She immediately felt that Mr. Conard was motivated by racism since she was the only Company representative he made this inquiry to.

167.    Mrs. Jackson responded by stating that: "If I am arrested Marion Silber of Gordon & Silber will represent me."

168.    Flippantly, Mr. Conard said: "Is that right?"

169.    Mrs. Jackson steeled herself in order to hold back the tears.

170.    When she got to her room she cried hysterically due to the unbearable embarrassment and humiliation Mr. Conard had subjected her to.

171.    Mrs. Jackson called D.M. McGarr but was far too upset to leave a message the first time she called but called again and left a message.

172.    She then called her colleague Mr. Botz.  Mr. Botz had previously been Mrs. Jackson's direct supervisor.

173.    Mrs. Jackson explained what had occurred with Mr. Conard and how she had tried to call D.M. McGarr unsuccessfully.

174.    Mr. Botz told Mrs. Jackson that D.M. McGarr was on the patio in the pool area.

175.    Mr. Botz was very angry about the incident with Mr. Conard and advised Mrs. Jackson to take the product.

176.    Mr. Botz said it was unfair and cited the fact that everyone was taking the product and that she was the only Scotts representative singled out.

177.    D.M. McGarr returned her call and told her to meet him in the hotel lobby. Mrs. Jackson explained what had occurred and D.M. McGarr appeared to be in shock.

178.    He continued to ask Mrs. Jackson over and over again what had transpired between her and Mr. Conard.

179.    D.M. McGarr stated: "I'm in shock because I saw people leaving the hotel with tons of the stuff in their suitcases.  Boxes of stuff I saw them leave with."

180.    Mrs. Jackson expressed to D.M. McGarr that due the actions of Mr. Conard she had been discriminated against.

181.    D.M. McGarr stated that when they get back to New York he would purchase all the Miracle-Gro that she wanted.

182.    But he voiced his concerns that he feared that if she did not put the Miracle-Gro back she would be fired for insubordination.

183.    He further stated that she should apologize to Mr. Conard for taking the Miracle-Gro.

184.    Mrs. Jackson began to cry because the harassment and humiliation had been compounded exponentially as a result of D.M. McGarr's reaction to the discrimination and the disparate treatment she had unfairly experienced.

185.   Nevertheless, she returned the Miracle-Gro and apologized to Mr. Conard for taking the product.

186.   Mr. Conard replied: "It was a wise thing to do because the Scotts Company would not have been available and that other incidents could have arose from the matter had you taken the Miracle-Gro."

187.   It is evident that those in a position to rightfully object to the wrongful and unlawful actions of Mr. Conard chose to act in concert with him by ignoring his blatant acts of discrimination.

188.   Mrs. Jackson was told to provide Mr. Cabanara with a formal report about the racist incident with Mr. Conard.

189.   However, when she broached the matter with him he stated curtly: "I'm not interested and forget the matter."

190.   D.M. McGarr acted in a similar fashion when he snapped: "Forget the entire matter.  Just forget about it."

191.   It is obvious that both Mr. Cabanara and D.M. McGarr covered and condoned the unlawful actions of Mr. Conard.

192.   On or about January 10, 2005 Mrs. Jackson's back went completely out which forced her to go out on short-term disability.

193.   However, unbeknownst to her, sometime during the month of June 2005 she was unceremoniously and unlawfully terminated.

194.   Mrs. Jackson's unlawful termination was contrary to the Company's policies and procedures.

195.    Moreover, the Company failed to provide her with a reasonable accommodation for her work related injury.

196.    *In or about March 2003 during her employment with the Company Mrs. Jackson informed her immediate supervisor Mr. McGarr that she required hernia surgery that was caused by work related lifting.*

197.    *Mr. McGarr commanded that neither Mrs. Jackson nor her co-workers inform the Company of her work related hernia injury.*

198.    *Mrs. Jackson complied with Mr. McGarr's command and did not inform the Company of her work related hernia injury because she feared that she would be terminated.*

199.    *On or about January 8, 2005 when Mrs. Jackson was still an employee of the Company, she injured her back, neck and arm as a result of lifting boxes of Miracle Gro fertilizer, which resulted in her described injuries.*

200.    *Mrs. Jackson remained employed by the Company but the Company and its insurance carrier did not pay for her medical treatment.*

201.    *On or about January 10, 2005 Mrs. Jackson notified her direct supervisor Mr. McGarr of the injuries she suffered on or about January 8, 2005.*

202.    *The Company or its insurer never counseled Mrs. Jackson as to her rights under workers' compensation statutory provisions of the State of New York pursuant to her 2003 or 2005 work related injuries.*

203.    *Based on Mrs. Jackson was hesitant to inquire about her workers' compensation rights because she believed by doing so it would adversely affect her employment.*

*204.    On or about February 20, 2008 New York State Workers' Compensation Board took Mrs. Jackson's claim regarding her work related injuries upon learning the circumstances that caused the substantial delay. That her supervisor Mr. McGarr commanded her and her co-worker's not to inform the Company of her said job related injuries.*


## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination and Harassment
### In Violation of New York State Human Rights Law)

205.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 204, inclusive as if fully set forth herein.

206.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in violation of the New York State Human Rights Law by denying to plaintiff equal terms and conditions of employment, including but not limited to failing to provide plaintiff with a reasonable accommodation as a result to plaintiff's disability and subjecting plaintiff to disparate working conditions and performance standards, gender discrimination, denying plaintiff the opportunity to work in an employment setting free of unlawful harassment, denying plaintiff opportunities for professional growth, denying plaintiff compensation and other terms and conditions of employment equal to that of Caucasian employees, and terminating plaintiff unlawfully from plaintiff 's employment with defendant.

207.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in

violation of the New York State Human Rights Law by fostering, condoning, accepting,

ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that

has included, among other things, severe and pervasive racial harassment of plaintiff by

plaintiff's superiors.

208.    As a direct and proximate result of defendant's unlawful and

discriminatory conduct in violation of the New York State Human Rights Law, plaintiff

has suffered, and continues to suffer, monetary and/or economic damages, including but

not limited to loss of past and future income, compensation and benefits for which

plaintiff is entitled to an award of monetary damages and other relief.

209.    As a direct and proximate result of defendant's unlawful and

discriminatory conduct in violation of the New York State Human Rights Law, plaintiff

has suffered, and continues to suffer, severe mental anguish and emotional distress,

including but not limited to depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering for which

plaintiff is entitled to an award of damages.


## AS AND FOR A SECOND CAUSE OF ACTION

### (Retaliation in Violation of New York State Human Rights Law)

210.    Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 209, inclusive, as if fully set forth herein.

211.    Defendant has retaliated against plaintiff by, inter alia, by treating  her

with unmitigated contempt when she complained about how she was treated regarding

the Mr. Conard/Miracle Gro incident and subjecting plaintiff to wrongful termination,

subjecting plaintiff to an unfair and hostile work environment and failing to provide

plaintiff with a reasonable accommodation pursuant to plaintiff's disability this is clearly

in violation of New York State Human Rights Law for: (a) plaintiff's opposition to

defendant's discriminatory practices; (b) being wrongfully subjected to harassment and a

hostile work environment.

212.    As a direct and proximate result of defendant's unlawful and retaliatory

conduct in violation of the New York State Human Rights Law, plaintiff has suffered and

continues to suffer, monetary and/or economic damages, including but not limited to loss

of past and future income, compensation and benefits for which plaintiff is entitled to an

award of monetary damages and other relief.

213.    As a direct and proximate result of defendant's unlawful retaliatory

conduct in violation of the New York State Human Rights Law, plaintiff has suffered and

continues to suffer, severe mental anguish and emotional distress, including but not

limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem

and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an

award of monetary damages and other relief.


## AS AND FOR A THIRD CAUSE OF ACTION

### (Aiding and Abetting Violations of New York State Human Rights Law)

214.    Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 213, inclusive, as if fully set forth herein.

215.    Defendants knowingly or recklessly aided and abetted the unlawful

employment practices, discrimination, harassment and retaliation against plaintiff in

violation of the New York State Human Rights Law by actively participating in the

unlawful conduct set forth above.

216.    As a direct and proximate result of defendant's unlawful discrimination,

harassment and retaliation against plaintiff in violation of the New York State Human

Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic

damages, including but not limited to loss of past and future income, compensation and

benefits for which plaintiff is entitled to an award of monetary damages and other relief.

217.    As a direct and proximate result of defendant's unlawful discrimination,

harassment and retaliation against plaintiff in violation of the New York State Human

Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and

emotional distress, including but not limited to depression, humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and

suffering for which plaintiff is entitled to an award of monetary damages and other relief.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Discrimination and Harassment
### In Violation of New York City Human Rights Law)

218.    Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 217, inclusive, as if fully set forth herein.

219.    Defendant has discriminated against plaintiff and subjected plaintiff to

harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in

violation of the New York City Human Rights Law by denying to plaintiff equal terms

and conditions of employment, including but not limited to, failing to provide plaintiff

with a reasonable accommodation pursuant to plaintiff's disability, subjecting plaintiff to

24

disparate working conditions and performance standards, gender discrimination,

economic discrimination, denying plaintiff the opportunity to work in an employment

setting free of unlawful harassment, denying plaintiff opportunities for professional

growth, denying plaintiff compensation and other terms and conditions of employment

equal to that of Caucasian employees, and terminating plaintiff unlawfully from

plaintiff's employment at the Defendant's.

220.    Defendant has discriminated against plaintiff and subjected plaintiff to

harassment on the basis of her Race and/or Color (African-American/Black), in violation

of the New York City Human Rights Law by fostering, condoning, accepting, ratifying

and/or otherwise failing to prevent or to remedy a hostile work environment that has

included, among other things, severe and pervasive racial harassment of plaintiff by

plaintiff's superiors.

221.    As a direct and proximate result of defendant's unlawful and

discriminatory conduct in violation of the New York City Human Rights Law, plaintiff

has suffered, and continues to suffer, monetary and/or economic damages, including but

not limited to loss of past and future income, compensation and benefits for which

plaintiff is entitled to an award of monetary damages and other relief.

222.    As a direct and proximate result of defendant's unlawful and

discriminatory conduct in violation of the New York City Human Rights Law, plaintiff

has suffered, and continues to suffer, severe mental anguish and emotional distress,

including but not limited to depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering for which

plaintiff is entitled to an award of damages.

223.    Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Retaliation in Violation of New York City Human Rights Law)

224.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 223, inclusive, as if fully set forth herein.

225.    Defendant retaliated against plaintiff by, inter alia, by treating her with unmitigated contempt when she complained about how she was treated regarding the Mr. Conard/Miracle Gro incident and subjecting plaintiff to wrongful termination, subjecting plaintiff to an unfair and hostile work environment and failing to provide plaintiff with a reasonable accommodation pursuant to plaintiff's disability this is clearly in violation of New York State Human Rights Law for: (a) plaintiff's opposition to defendant's discriminatory practices; (b) being wrongfully subjected to harassment and a hostile work environment.

226.    As a direct and proximate result of defendant's unlawful and retaliatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

227.    As a direct and proximate result of defendant's unlawful retaliatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered and

continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

228.     Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR THE SIXTH CAUSE OF ACTION

**(Aiding and Abetting Violations of New York City Human Rights Law)**

229.     Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 228, inclusive, as if fully set forth herein.

230.     Defendant knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against plaintiff in violation of the New York City Human Rights Law by actively participating in the unlawful conduct set forth above.

231.     As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York City Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

232.     As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York City Human

Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and

emotional distress, including but not limited to depression, humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and

suffering for which plaintiff is entitled to an award of monetary damages and other relief.

 233. Defendants unlawful actions constitute malicious, willful and wanton

violations of the New York City Human Rights Law for which plaintiff is entitled to an

award of punitive damages.

## AS AND FOR THE SEVENTH CAUSE OF ACTION

### (Defamation)

 234. Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 233, inclusive, as if fully set forth herein.

 235. Defendant unlawfully subjected plaintiff to defamation: libel per se and

slander per se, placed plaintiff in a false light, and engaged in acts that caused the

invasion of plaintiff's privacy.

 236. Defendant knowingly or recklessly subjected plaintiff to defamation: libel

per se and slander per se, placed her in a false light, and engaged in acts that caused the

invasion of plaintiff's privacy in violation of New York State law.

 237. As a direct and proximate result of defendant's unlawful acts of

defamation: libel per se and slander per se, placing plaintiff in a false light, and the

invasion of plaintiff's privacy, plaintiff has suffered, and continues to suffer, monetary

and/or economic damages, including but not limited to loss of past and future income,

compensation and benefits for which plaintiff is entitled to an award of monetary

damages and other relief.

238.    As a direct and proximate result of defendant's unlawful acts of

defamation: libel per se and slander per se, placing plaintiff in a false light, and the

invasion of plaintiff's privacy, plaintiff has suffered, and continues to suffer, severe

mental anguish and emotional distress, including but not limited to depression,

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence,

and emotional pain and suffering for which plaintiff is entitled to an award of monetary

damages and other relief.

239.    Defendant's unlawful actions constitute malicious, willful and wanton

violations of New York State Law for which plaintiff is entitled to an award of

compensatory and punitive damages and other relief.


## AS AND FOR THE EIGHTH CAUSE OF ACTION

### (Economic Discrimination)

240.    Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 239, inclusive, as if fully set forth herein.

241.    Defendant unlawfully subjected plaintiff to economic discrimination in

violation of New York State Law.

242.    Defendant knowingly or recklessly subjected plaintiff to economic

discrimination in violation of New York State Law.

243.    As a direct and proximate result of the defendant subjecting plaintiff to

economic discrimination, plaintiff has suffered, and continues to suffer, monetary and/or

economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

244.    As a direct and proximate result of the defendant subjecting plaintiff to economic discrimination, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

245.    Defendant's unlawful actions constitute malicious, willful and wanton violations of New York State Law for which plaintiff is entitled to an award of compensatory and punitive damages and other relief.

## AS AND FOR THE NINETH CAUSE OF ACTION

### (Breach of Implied Contract to Act in Good Faith)

246.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 245, inclusive, as if fully set forth herein.

247.    Defendant unlawfully breached its implied contract to plaintiff to act in good faith in violation of New York State Law.

248.    Defendant knowingly or recklessly breached its implied contract to plaintiff to act in good faith in violation of New York State Law.

249.    As a direct and proximate result of defendant's breach of the implied contract to plaintiff to act in good faith, plaintiff has suffered, and continues to suffer,

monetary and/or economic damages, including but not limited to loss of past and future

income, compensation and benefits for which plaintiff is entitled to an award of monetary

damages and other relief.

250.    As a direct and proximate result of defendant's breach of the implied

contract to act in good faith, plaintiff has suffered, and continues to suffer, severe mental

anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering for which plaintiff is entitled to an award of monetary damages and

other relief.

251.    Defendant's unlawful actions constitute malicious, willful and wanton

violations of New York State Law for which plaintiff is entitled to an award of

compensatory and punitive damages and other relief.


## AS AND FOR THE TENTH CAUSE OF ACTION

### (Failure to Provide a Reasonable Accommodation)

252.    Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 251, inclusive, as if fully set forth herein.

253.    Defendant unlawfully failed to provide plaintiff with a reasonable

accommodation as a result of plaintiff's work related injury.

254.    Defendant knowingly and/or recklessly failed to provide plaintiff with a

reasonable accommodation as a result of plaintiff's work related injury in violation of 9

New York Code of Rules and Regulations (NYCRR) §466.11.

255.    As a direct and proximate result of defendant's failure to provide plaintiff with a reasonable accommodation of plaintiff's work related injury, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

256.    As a direct and proximate result of defendant's failure to provide plaintiff with a reasonable accommodation of her work related injury, plaintiff has suffered, and continues to suffer, severe physical and mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

257.    Defendant's unlawful actions constitute malicious, willful and wanton violations of New York State Law for which plaintiff is entitled to an award of compensatory and punitive damages and other relief.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION

### (Violation of Equal Protection of Laws)

258.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 257, inclusive, as if fully set forth herein.

259.    Defendant unlawfully violated plaintiff's Equal Protection of Laws rights.

260.    Defendant knowingly or recklessly violated plaintiff's Equal Protection of Laws rights under Article 1 § 11 of the New York State Constitution (Bill of Rights) by

32

subjecting plaintiff to treatment that no Caucasian employee of the defendants' has been

subjected to.

261.    As a direct and proximate result of defendant's violating plaintiff's Equal

Protection of Laws, plaintiff has suffered, and continues to suffer, monetary and/or

economic damages, including but not limited to loss of past and future income,

compensation and benefits for which plaintiff is entitled to an award of monetary

damages and other relief.

262.    As a direct and proximate result of defendant's violating plaintiff's Equal

Protection of Laws, plaintiff has suffered, and continues to suffer, severe mental anguish

and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering for which plaintiff is entitled to an award of monetary damages and

other relief.

### *AS AND FOR THE TWELFTH CAUSE OF ACTION*

#### *(Violation of New York State Workers' Compensation Rights)*

263.    *Plaintiff hereby repeats and re-alleges each and every allegation in*

*paragraphs 1 through 262, inclusive, as if fully set forth herein.*

264.    *Defendant unlawfully violated plaintiff's New York State Workers'*

*Compensation Rights.*

265.    *Defendant knowingly or recklessly violated plaintiff's New York State*

*Workers' Compensation Rights by subjecting plaintiff to treatment that no Caucasian*

*employee of the defendants' has been subjected to.*

266.    *As a direct and proximate result of defendant's violating plaintiff's New York State Workers' Compensation Rights, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.*

267.    *As a direct and proximate result of defendant's violating plaintiff's New York State Workers' Compensation Rights, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enters judgment in her favor and against defendant, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of defendant complained of herein violate the laws of the State of New York and the City of New York;

B.    An order directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and otherwise unlawful conduct are eliminated and do not continue to affect plaintiff;

C.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all monetary and/or economic damages,

including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

      D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for plaintiff's severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

      E.     An award of damages for any and all other monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial, plus prejudgment interest;

      F.     An award of punitive damages;

      G.     An award of costs that plaintiff has incurred in this action, as well as plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

      H.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  New York, New York
         March 27, 2008

                Respectfully submitted,

                SANDRA D. FRELIX, P.C.

                By: _____
                    Sandra D. Frelix
                    Attorney for Plaintiff
                    110 Wall Street, 11th Floor
                    New York, New York 10005
                    Telephone:  212-859-3509
                    Facsimile:  212-862-8212

## VERIFICATION

State of New York    )
                     ) ss.:
County of Queens     )


      MARIA JACKSON, being duly sworn, states:

      I am the Plaintiff in the action herein.  I have read the annexed SUMMONS AND

AMENDED VERIFIED COMPLAINT, know the contents thereof and the same are true

to my knowledge, except those matters therein which, are stated to be alleged on

information and belief, and as to those matters I believe them to be true.


                                            _____

                                                MARIA JACKSON


Sworn to before me
this \_\_\_\_\_ day of March, 2008




_____
      NOTARY PUBLIC

# EXHIBIT C

SANDRA D. FRELIX, ESQ. (SF-0421)
110 Wall Street
11th Floor
New York, New York 10005
(212) 859-3509
(212) 862-8212 (facsimile)
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARIA JACKSON,                              Index No. 08 CV 1064 (LAK)
                                                  AMENDED
              Plaintiff,               MOTION AND NOTICE OF
                                            MOTION FOR LEAVE
                                             TO AMEND PLEADING
       -against-

THE SCOTTS COMPANY,

              Defendant.
-----------------------------------------------------------X
To:    Craig S. Friedman, Esq. (CF-1988)
       Matthew W. Lampe, Esq. (*pro hac vice* application pending)
       Attorneys for Defendant
       Jones Day
       222 East 41st Street
       New York, New York 10017-6702
       (212) 326-3939
       (212) 755-7306 (facsimile)

       PLEASE TAKE NOTICE that on a date to be determined by this Court, or as

soon thereafter as counsel can be heard, plaintiff will move the Court, at Courtroom No.

12D, United States Courthouse, 500 Pearl Street, New York, New York 10007, for leave

to amend Complaint pursuant to Fed. R. Civ. P. 15(a).  This motion will be made on the

grounds that:

       1.     The amendment is necessary to repair jurisdictional allegations and add

              claims.

       2.     The amendment will not prejudice any party to this action.

3.    A copy of the proposed amended Complaint is attached as Exhibit 1.

This motion is accompanied by the attached memorandum of law in

support of this motion.

Dated: New York, New York
        March 27, 2008

Respectfully submitted,

SANDRA D. FRELIX, ESQ.


By: ___/s/ Sandra D. Frelix_____
        Sandra D. Frelix, Esq. (SF-0421)
        110 Wall Street, 11th Floor
        New York, NY  10005
Telephone:  (212) 859-3509
Facsimile:   (212) 862-8212

ATTORNEY FOR PLAINTIFF

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MARIA JACKSON,

                 Plaintiff,

         -against-                           08 Civ. 1064 (LAK)

THE SCOTTS COMPANY,

                 Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                  **ORDER**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/1/07

LEWIS A. KAPLAN, *District Judge.*

       This is an employment discrimination action that was removed from state court on the basis of diversity of citizenship. Plaintiff obviously is unhappy with the fact of the removal and has undertaken repeated and fruitless efforts to return to state court. The matter is before the Court on the latest of these, plaintiff's so-called amended motion and notice of motion to remand.

       Plaintiff initially moved to remand [docket item 7], asserting that the complaint asserted a claim under the New York Worker's Compensation Law. That motion was denied as frivolous on February 21, 2008 on the ground that the complaint did not assert a claim under the Worker's Compensation Law – indeed, it did not even contain the word "worker." [Docket item 9]

       Plaintiff then moved for leave to amend the complaint, evidently to attempt to allege a claim under the Worker's Compensation Law, assuming that such an amendment would require remand. [Docket item 18] That motion too was denied, this one on the grounds that the proposed amended complaint attached to the motion consisted exclusively of a caption, without any text. In the course of denying that motion, the Court expressed skepticism also that an amendment to assert a claim under the Worker's Compensation Law would require remand. [Docket item 21]

       Now plaintiff has filed a so-called amended motion and notice of motion to remand to the state court. [Docket item 23]

       As defendant has not answered the complaint, leave of court is not required to

2

amend.[1]  Accordingly, the Court deems the proposed amended complaint attached to plaintiff's motion to have been served and filed, which takes us to the motion to remand.

The amended complaint differs from its predecessor in that it adds a twelfth cause of action. It alleges in material part only this: "Defendant knowingly or recklessly violated plaintiff's New York State Workers' Compensation Rights by subjecting plaintiff to treatment that no Caucasian employee of the defendants' [*sic*] has been subjected to." Am Cpt ¶ 265.

Racial discrimination in employment is prohibited by the New York State Human Rights Law as well as federal statutes and other provisions of law.  The New York Workers' Compensation Law, however, whatever else it might proscribe, it does not appear to bar discrimination on the basis of race.

Accordingly, plaintiff shall show cause, on or before April 8, 2008, why the twelfth cause of action should not be dismissed for failure to state a claim upon which relief may be granted. Insofar as plaintiff's motion [docket item 23] seeks leave to amend, it is denied as unnecessary. Insofar as it seeks an order remanding the action, it is denied without prejudice to renewal in the event the sufficiency of the twelfth cause of action is sustained.

SO ORDERED.

Dated:        April 1, 2008

Lewis A. Kaplan
United States District Judge

---

[1]

As noted, the Court previously denied plaintiff's prior motion to amend.  In so doing, it mistakenly adopted plaintiff's erroneous assumption that leave to amend was required.

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MARIA JACKSON,

                            Plaintiff,


             -against-                                          08 Civ. 1064 (LAK)


THE SCOTTS COMPANY,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

          This state law employment discrimination action was removed from state court on
the basis of diversity of citizenship.  Plaintiff obviously is unhappy with the fact of the removal and
has undertaken repeated and fruitless efforts to return to state court.  The matter is before the Court
on the Court's order of April 1, 2008 [docket item 26], which among other things directed plaintiff
to show cause why the twelfth cause of action in the amended complaint should not be dismissed
for legal insufficiency and plaintiff's recent motion for relief from the order of April 1, 2008 [docket
item 29].


                                        *Facts*


*Prior Proceedings*

          Plaintiff initially moved to remand [docket item 7], claiming that the complaint
asserted a claim under the New York Workers' Compensation Law.  That motion was denied as
frivolous on February 21, 2008 on the ground that the complaint did not assert a claim under the
Worker's Compensation Law – indeed, it did not even contain the word "worker." [Docket item 9]

          Plaintiff then moved for leave to amend the complaint, evidently to attempt to allege
a claim under the Workers' Compensation Law.[1] [Docket item 18]  That motion was denied on the

_____

[1]       This motion apparently was motivated by a belief that the addition of such a claim would
          have required a remand to the state courts under 28 U.S.C. § 1445(c).

2

ground that the proposed amended complaint attached to the motion consisted exclusively of a caption, without any text, and thus failed to state any workers' compensation claim.[2]  In the course of denying that motion, the Court expressed skepticism that an amendment sufficiently asserting a claim under the Workers' Compensation Law would require remand.  [Docket item 21]

Then plaintiff filed a so-called amended motion and notice of motion to remand to the state court.  [Docket item 23]   The order of April 1, 2008 now at issue denied so much of the motion as sought leave to amend on the ground that leave to amend was unnecessary, directed plaintiff to show cause why the twelfth cause of action – which purported to allege a claim under the Workers' Compensation Law – should not be dismissed, and denied the motion to remand without prejudice to renewal in the event the sufficiency of the twelfth cause of action were sustained.

*The Twelfth Cause of Action*

The amended complaint, like its predecessor, alleges facts which, if true, perhaps make out a claim that defendant discriminated against plaintiff on the basis of her race.  The twelfth cause of action adds a claim that alleges in material part only this:  "Defendant knowingly or recklessly violated plaintiff's New York State Workers' Compensation Rights by subjecting plaintiff to treatment that no Caucasian employee of the defendants' [*sic*] has been subjected to."  Am. Cpt. ¶ 265.

*Discussion*

In response to the Court's order to show cause and in support of her own motion for relief from the April 1, 2008 order, plaintiff argues that "New York Workers' Compensation Law Bars Discrimination on the Basis of Race."  Pl. Mem. [docket item 30], at 3.  She relies on Section 120 of the Workers' Compensation Law

The statute in question provides in relevant part as follows:

"**§ 120.        Discrimination against employees who bring proceedings**

It shall be unlawful for any employer . . . to discharge or in any other manner discriminate against an employee as to his or her employment *because such employee has claimed or attempted to claim compensation from such employer,* or because he or she has testified or is about to testify in a proceeding under this chapter and no other valid reason is shown to exist for such action by the employer."  (Emphasis added)

---

[2]

Both counsel and the Court mistakenly believed that leave to amend was required.

3

After quoting Section 120, plaintiff argues that "[i]t is simply irrefutable that § 120 pronounces that it is unlawful to discriminate in **any** manner." Pl. Mem. [docket item 30], at 4 (emphasis in original). But that argument is baseless.

The verb "discriminate" means:

"– *intr.* **1a.** To make a clear distinction: distinguish: *discriminate among the options available.* **b.** To make sensible decisions; judge wisely. **2.** To make distinctions on the basis of class or category without regard to individual merit; show preference or prejudice: *was accused of discriminating against women; discriminated in favor of his cronies.* – *tr.* **1.** To perceive the distinguishing features of; recognize as distinct: *discriminate right from wrong.* **2.** To distinguish by noting differences; differentiate: *unable to discriminate colors.* **3.** To make or constitute a distinction in or between: *methods that discriminate science from pseudoscience.*"[3] (Emphasis in original).

The verb therefore is virtually devoid of content in the absence of knowledge of the objects of the basis of the discrimination to which reference is made. And Section 120 makes clear that the only discrimination that is proscribed is discrimination on the basis that an "employee has claimed or attempted to claim compensation . . . or . . . testified or is about to testify in a [workers' compensation] proceeding." Plaintiff's argument thus would read the limiting language out of the statute.

Not only is plaintiff's argument inconsistent with the explicit language of Section 120, its adoption would lead to results that the Legislature could not possibly have intended. If in fact "§ 120 pronounces that it is unlawful to discriminate in **any** manner," as plaintiff argues, then the Workers' Compensation Law prohibits discrimination on the basis of such characteristics as an employee's preference for mustard versus sauerkraut on hot dogs, Chevrolets versus Fords, blue versus white, Mets versus Yankees, hockey rather than baseball, rock versus classical music, and an unimaginable number of other things.

Accordingly, plaintiff's motion for relief from the April 1, 2008 order [docket item 29] is denied. The twelfth cause of action of the amended complaint is dismissed. In addition, plaintiff's counsel, Sandra D. Frelix, Esq., shall show cause, on or before April 16, 2008, why she should not be sanctioned on the basis that her signatures on her motion and memorandum of law

---

3

THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 517 (4th ed. 2000).

4

[docket items 29-30] violated Fed. R. Civ. P. 11(b)(2) on the ground that the contention that Section 120 of the Workers' Compensation Law prohibits discrimination on the basis of race is not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

SO ORDERED.

Dated:        April 9, 2008

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MARIA JACKSON,

                              Plaintiff,

         -against-                                                     08 Civ. 1064 (LAK)

THE SCOTTS COMPANY,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/30/08

## ORDER

LEWIS A. KAPLAN, *District Judge.*

By memorandum and order dated March 27, 2008, I granted defendant's motion for partial dismissal of the original complaint and dismissed the Fourth through Eleventh Claims, and the claims for declaratory relief, punitive damages and attorney's fees, in their entirety and dismissed also the First through the Third claims to the extent they are based on events prior to December 21, 2004. Plaintiff subsequently filed an amended complaint which, apart from the addition of a twelfth claim for relief that already has been dismissed, was identical in all material respects to the original complaint. Defendant now moves to dismiss the portions of the amended complaint that correspond to those dismissed by the March 27, 2008 order. As has occurred on the motion to dismiss part of the original complaint, plaintiff has filed no opposition to this motion.

"The law of the case doctrine precludes reconsideration of . . . question[s previously determined] here absent 'cogent or compelling reasons.'" *In re Garlock,* 463 F. Supp.2d 478, 480 (S.D.N.Y. 2006) (citing cases). The only possible reason for reconsidering the previous ruling is that plaintiff defaulted on the motion to dismiss the amended complaint in consequence of having agreed upon an extension of time within which to respond to the motion, but then failing to file or obtain approval of the extension. This sort of failure is not sufficient. In any case, given plaintiff's default on the present motion, she certainly has failed to demonstrate any reason whatever for reaching a different result.

Accordingly, defendant's motion for partial dismissal of the amended complaint is granted in all respects. The Fourth through Eleventh Claims, and the claims for declaratory relief, punitive damages and attorney's fees, are dismissed in their entirety. The First through the Third claims are dismissed to the extent they are based on events prior to December 21, 2004.

SO ORDERED.

Dated:          April 30, 2008


                                                          Lewis A. Kaplan
                                                   United States District Judge

# EXHIBIT G

*KARAN, S.*

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/11/08

RECEIVED
APR 1 1 2008
JUDGE KAPLAN'S CHAMBER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA JACKSON,                                    08 Civ. 1064 (LAK)

        Plaintiff,

  -against-

THE SCOTTS COMPANY

        Defendant.

<u>Consent Scheduling Order</u>

Upon consent of the parties, it is hereby
ORDERED as follows:

1. No additional parties may be joined after May 12, 2008.

2. No amendments to the pleadings will be permitted after May 12, 2008.

3. The parties shall make required Rule 26(a)(2) disclosures with respect to:

    (a) expert witnesses on or before June 9, 2008;

    (b) rebuttal expert witnesses on or before July 14, 2008.

4. All discovery, including any depositions of experts, shall be completed on or before September 5, 2008.

5. A joint pretrial order in the form prescribed in Judge Kaplan's individual rules shall be filed on or before October 10, 2008.

6. No motion for summary judgment shall be served after the deadline fixed for submission of the pretrial order. The filing of a motion for summary judgment does not relieve the parties of the obligation to file the pretrial order on time.

7. If any party claims a right to trial by jury, proposed voir dire questions and jury instructions shall be filed with the joint pretrial order.

8. Each party or group of parties aligned in interest shall submit not less than ten (10) days prior to trial (a) a trial brief setting forth a summary of its contentions and dealing with

any legal and evidentiary problems anticipated at trial, and (b) any motions in limine.

9.    This scheduling order may be altered or amended only on a showing of good cause not foreseeable at the date hereof.  Counsel should not assume that extensions will be granted as a matter of routine.

Dated: April 11, 2008

_____
Lewis A. Kaplan
United States District Judge

CONSENTED TO:

SANDRA D. FRELIX, ESQ.

By: _____
Sandra D. Frelix (SF-0421)
110 Wall Street, 11th Floor
New York, New York 10005
(212) 859-3509

*Attorneys for Plaintiff*

JONES DAY

By: _____
Craig S. Friedman (CF-1988)
Matthew W. Lampe (*pro hac vice*
application pending)
222 East 41st Street
New York, New York  10017
(212) 326-3939

*Attorneys for Defendant*

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MARIA JACKSON,                                    Index No. 08 CV 1064 (LAK)

               Plaintiff,


        -against-


THE SCOTTS COMPANY,

               Defendant.
-----------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION AND NOTICE OF
MOTION FOR LEAVE TO AMEND COMPLAINT AND REMAND ACTION TO
STATE COURT**


SANDRA D. FRELIX, ESQ. (SF-0421)
110 Wall Street
11th Floor
New York, New York 10005
(212) 859-3509
Attorney for Plaintiff

# TABLE OF CONTENTS

Table of Authorities...................................................................i

Preliminary Statement............................................................1

Statement of Facts.................................................................1

Procedural History................................................................1

Argument............................................................................3

     I.     PLAINTIFF'S MOTION TO AMEND THE
           COMPLAINT MUST BE GRANTED PURSUANT
           TO FEDERAL RULE OF CIVIL PROCEDURE 15............3

           A.    Legal Standard...............................................3

     II.    PLAINTIFF'S MOTION TO HAVE THIS CASE
           REMANDED UNDER 28 U.S.C.A.(C) MUST
           BE GRANTED......................................................4

           A.    Legal Standard...............................................4

Conclusion..........................................................................7

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

Evans v. Syracuse City School District,
         704 F.2nd 44 (C.A.N.Y., 1983)…………......…………………….......3

Horton v. Liberty Mutual Insurance Co.,
         367 U.S. 348, 81 S.Ct. 1570, 4 Fed.R.Serv.2d 179…………………...5

Richardson Greenshields Securities, Inc. v. Lau,
         825 F.2d 647, 653 n. 6 (2d. Cir.1987)…………...…………………3

State Teachers Retirement Bd. v. Fluor Corp.,
         654 F.2d 843, 856 (2d Cir.1981)………...……….................................3

Tokio Marine & Fire Ins. Co. v. Employers Ins. Of Wausau,
         786 F.2d 101, 103 (2d Cir.1986) ……………………………………3

Wilson v. Lowe's Home Center, Inc.,
         401 F.Supp.2d 186 (Nov. 21, 2005)......................................................5

## **STATUTES**

Fed.R.Civ. P. 11(b)(2).……………………………………………………...2

Fed.R.Civ. P. Rule 11(b)(3).……………………………………………….2

Fed.R.Civ. P. Rule 15.………………………………………………………3

28 U.S.C.A. § 1441(b).……………………………………………….........1

28 U.S.C.A. § 1445(c).……………………………………….........1, 2, 4, 6, 7

i

## **CONGRESSIONAL DOCUMENT**

S.Rep. No. 85-1830 (1958),
    reprinted in 1958 U.S.C.C.A.N. 3099, 3106.............................5

## **LOCAL RULE**

S.D.N.Y. Civ.R.7.1............................................................................1

## **TREATISE**

14C Wright et al., supra, § 3729, at 215.........................................5

## PRELIMINARY STATEMENT

On February 21, 2008 this court dismissed Plaintiff's Motion and Notice of

Motion to Remand Action to State Court under 28 U.S.C.§1445(c) on the grounds that it

was not accompanied by a memorandum of law, in violation of S.D.N.Y. Civ.R.7.1.

Moreover, this Court assessed the undersigned with sanctions in the amount of $750.00.

## STATEMENT OF FACTS

Maria Jackson ("the Plaintiff") was an employee of The Scotts Company ("the

Defendant") from April 2001 until the Defendant unlawfully terminated her in June 2005.

As a result of her unlawful termination the Plaintiff filed a summons and verified

complaint against the Defendant on December 21, 2007.

## PROCEDURAL HISTORY

On December 21, 2007 Plaintiff filed a summons and complaint in the Supreme

Court of the State of New York, County of Bronx. The same was served upon the

Defendant on January 4, 2008. The Defendant then moved this Court with a Notice of

Removal of Action under 28 U.S.C. §1441(b) dated February 1, 2008. The Plaintiff

responded by filing and serving a Motion and Notice of Motion to Remand Action to

State Court under 28 U.S.C.§1445(c) on February 20, 2008.

However, during a February 6, 2008 telephone discussion between the

undersigned and Craig S. Friedman, Esq. ("Mr. Friedman"), counsel for the Defendant,

Mr. Friedman, an attorney of the law firm Jones Day, only requested an extension of time

to answer the complaint from February 8, 2008 to March 10, 2008. On February 14,

2008 the Honorable Lewis A. Kaplan ("Judge Kaplan") granted the Defendant's Time to

Answer, Move or Otherwise Respond to the Complaint to March 10, 2008.

Defendant served Plaintiff with a Partial Motion to Dismiss on March 10, 2008.

The undersigned never received the electronic notice of Judge Kaplan's February 14, 2008 endorsement letter.

As previously stated the undersigned filed and served a Motion and Notice of Motion to Remand Action to State Court under 28 U.S.C.§1445(c) on February 20, 2008. Also, on or about February 20, 2008 the undersigned began to experiencing flu like symptoms that caused the undersigned to fail to acknowledge and respond timely to Judge Kaplan's February 21, 2008 Order denying Plaintiff's Motion to Remand to State Court. The flu suffered by the undersigned lasted for about two (2) weeks.

As an unfortunate result of the undersigned's excusable neglect to respond due to illness, Judge Kaplan found that the undersigned violated Fed.R.Civ.P. 11(b)(2) and 11(b)(3) and sanctioned the undersigned to $750.00 that is to be paid on or before March 19, 2008.

It is worthy to note that the undersigned did not become aware of Judge Kaplan's February 21, 2008 Order until his March 5, 2008 Order.

On March 19, 2008 Plaintiff filed a Motion and Notice of Motion for Relief From Order and a Motion and Notice of Motion for Leave to Amend the Pleading. Both motions were denied by Judge Kaplan on March 21, 2008.

On April 1, 2008 Judge Kaplan rendered and filed an Order requiring Plaintiff to sustain the sufficiency of the twelfth cause of action in Plaintiff's complaint.

On April 9, 2008 Judge Kaplan denied the twelfth cause of action contained in Plaintiff's proposed amended complaint and ordered Plaintiff's counsel to "show cause, on or before April 16, 2008, why she should not be sanctioned on the basis that her

signature on her motion and memorandum of law [docket items 29-30] violated

Fed.R.Civ.P. 11(b)(2) on the grounds that the contention that Section 120 of the Workers'

Compensation Law prohibits discrimination on the basis of race is not warranted by

existing law or by a nonfrivolous argument for extending, modifying, or reversing

existing law or for establishing new law."

On May 2, 2008 the undersigned argued that plaintiff's counsel made a

"reasonable inquiry" prior to submitting plaintiff's April 8, 2008 motion and

memorandum of law.

On May 14, 2008 Judge Kaplan in his Memorandum and Order ordered that the

undersigned pay a monetary sanction of $750.00 no later than May 30, 2008 (regarding

plaintiff's April 8, 2008).

## ARGUMENT

### I.    PLAINTIFF'S MOTION TO AMEND THE COMPLAINT MUST BE GRANTED PURSUANT FEDERAL RULE OF CIVIL PROCEDURE 15

A.  The Legal Standard

Federal Rule of Civil Procedure 15

(a) AMENDMENTS.  States in part: "… Otherwise a party may amend the

party's pleading only by leave of court or by written consent of the adverse party; and

leave shall be freely given when justice so requires.…"

Moreover, Federal Rule of Civil Procedure 15(a) "provides that leave to

amend 'shall be freely given.'  Reasons for a proper denial of leave to amend include

undue delay, bad faith, futility of the amendment, and perhaps most important, the

resulting prejudice to the opposing party."  *State Teachers Retirement Bd. v. Fluor Corp.*,

654 F.2d 843, 856 (2d Cir.1981); *see also Richardson Greenshields Securities, Inc. v.*

3

*Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987); *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir.1986).

"Although grant or denial of leave to amend is within the discretion of district court, a decision without any justifying reason may be an abuse of that discretion and inconsistent with spirit of federal rules." *Evans v. Syracuse City School District,* 704 F.2d 44 (C.A.N.Y., 1983).

Even though there's been substantial activity in this case, nevertheless, it is still relatively in its infancy and it does not meet any of the requirements that would allow a basis for a proper denial. There is no evidence of "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."

## II.    PLAINTIFF'S MOTION TO HAVE THIS CASE REMANDED UNDER 28 U.S.C.A. §1445(C) MUST BE GRANTED

### A.  The Legal Standard

28 U.S.C.A. §1445(c)

The Plaintiff respectfully requests that this matter be remanded back to the Supreme Court State of New York Bronx County under 28 U.S.C.A. §1445(c) which states the following: "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."

The legislative history of § 1445(c ) shows that Congress enacted the statute to serve two objectives. Congress's primary objective was to reduce the number of diversity cases in federal court by preventing removal of workers' compensation claims against nonresident employers. At the same time, Congress wanted to relieve workers of the

4

expense and delay associated with litigation in federal court. *Wilson v. Lowe's Home Center, Inc.* 401 F.Supp.2d 186 *See* S.Rep. No. 85-1830 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3099, 3106; *see also Horton v. Liberty Mutual Insurance Co.,* 367 U.S. at 351-52, 81 S.Ct. 1570, 4 Fed.R.Serv.2d 179 (noting congressional concern for federal court congestion and potential burdens on workers' compensation plaintiffs if forced to litigate in federal courts); 14C Wright et al., *supra,* § 3729, at 215 (explaining that Congress sought to "limit[ ] the flow of these essentially local disputes into the federal courts").

The Plaintiff suffered two (2) work related injuries. One occurred in February of 2003 and the second work related injury occurred in January 2005.

As a result of her February 2003 work related injury her supervisor District Manager Patrick McGarr ("Mr. McGarr") instructed the Plaintiff and her co-workers not to inform the Defendant of the Plaintiff's work related injury. The Plaintiff complied with Mr. McGarr's command because she believed that she would be fired if she did not comply.

As she did with respect to the February 2003 work related injury the Plaintiff informed Mr. McGarr about her January 2005 work related injury. She did not receive any counseling pursuant to her Workers' Compensation benefits by any employee of the Defendant. Plaintiff did not inquire about her rights under Workers' Compensation because she believed by doing so would adversely affect her employment with the Defendant. The reason the Plaintiff did not inquire about her rights is based on Mr. McGarr's instructions commanding her and her co-workers not to inform the Defendant of her February 2003 work related injury.

The New York State Workers' Compensation Board demands that employers file Form C-2, Employers Report of Accident/Occupational Disease within ten (10) days of the work related accident. (Exhibit 1)

On February 20, 2008 Plaintiff visited the Kings County Workers' Compensation Board office to ascertain whether the Defendant filed the mandatory C-2 forms on her behalf for her February 2003 and January 2005 work related injuries. After a thorough system-wide search of its records; the Kings County Workers' Compensation Board office determined that the Defendant had breached its duty by having never filed C-2 forms for the February 2003 and the January 2005 injuries. (Exhibit 2)

Upon learning of that the Defendant violated its mandatory filing of the C-2 forms for both of Plaintiff's injuries, the Kings County Workers' Compensation Board promptly accepted her January 2005 work related injury claim. (Exhibit 3)

In light of the foregoing, it is quite evident that the Defendant has violated its responsibilities under the New York State Workers' Compensation mandatory requirements. This breach by the Defendant has resulted in financial and medical injury to the Plaintiff. Moreover, there is an open Workers' Compensation claim pursuant to Plaintiff's work related injury that she suffered while employed by the Defendant.

Therefore, again, under 28 U.S.C.A. §1445(c) which provides: "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." Accordingly, this Court must remand this case to Bronx County Supreme Court forthwith.

## CONCLUSION

For all the reasons set forth above, it is respectfully requested that Plaintiff's Motion and Notice of Motion for Leave to Amend be granted, together with such other and further relief as to this Court may deem just and proper. Moreover, the instant case is precisely the type of case that Congress intended to remain in state court.

Therefore, the Congressional intent of 28 U.S.C.A. §1445(c) and justice will be achieved by granting this motion.

Dated:  New York, New York
        May 20, 2008

                                        Yours, etc.,


                                        SANDRA D. FRELIX, ESQ.


                                        By:___/s/ Sandra D. Frelix_____
                                                Sandra D. Frelix, Esq. (SF-0421)
                                                110 Wall Street
                                                11th Floor
                                                New York, New York 10005
                                                (212) 859-3509

                                        ATTORNEY FOR PLAINTIFF

To:  Craig S. Friedman, Esq. (CF-1988)
     Matthew W. Lampe, Esq. (Pro Hac Vice application pending)
     JONES DAY
     322 East 41st Street
     New York, New York 10017

     ATTORNEY FOR DEFENDANT

## EXHIBIT INDEX

1. New York State Workers' Compensation Board Employers' Rights and Responsibilities document.

2. State of New York Workers' Compensation Board Disability Benefits Bureau document indicating that no C-2 form has been filed by the Defendant with the Board.

3. Plaintiff's Workers' Compensation Board Employees' Claim for Compensation dated February 20, 2008.

**EXHIBIT 1**

# *Your Business and Workers' Compensation*

# Employers' Rights and Responsibilities

### Employers' Responsibilities

- Employers must obtain and keep in effect workers' compensation coverage for their employees; there must be no lapse in coverage even when switching insurance carriers.

  *The law requires almost all employers operating in New York State to have workers' compensation coverage for their employees. This requirement can be fulfilled by purchasing insurance coverage through an insurance carrier or by obtaining authorization from the Board to be self-insured.*

- Employers must post a notice of workers' compensation coverage and employee rights.

  *This notice is in a form prescribed by the Workers' Compensation Board. Employers obtain the notice from their insurance carrier or, if self-insured, from the Board. The notice includes the name and address of the insurance carrier and the policy number of the employer. It must be posted in a conspicuous place in the employer's place of business. Violations of this requirement can result in a fine of up to $250 per violation.*

- An employer may not discriminate against an employee or applicant because he or she has claimed or attempted to claim workers' compensation.

- An employer must report most injuries to the Board and the insurance company, if insured, on **Form C-2, Employer's Report of Accident/Occupational Disease**(PDF) [ **On-line Version** ] within 10 days after an accident. An employer shall furnish a report of an occupational disease incurred by an employee on the same form.

  *A C-2 report must be filed with the Board and carrier if the accident results in personal injury which has caused or will cause a loss of time from regular duties of one day beyond the working day or shift on which the accident*

*occurred, or which has required or will require medical treatment beyond ordinary first aid or more than two treatments by a person rendering first aid. Failure to file a C-2 or failure to file it timely may result in a penalty of up to $2,500.*

- C-2 forms (Employer's Report of Work-Related Accident/ Occupational Disease) must be maintained by the employer or designated third party for at least 18 years and are subject to review by the Board at any time.

- A record must be made and maintained on Form C-2 of any injury or illness incurred by an employee in the course of employment, even if the extent of the injury does not require that the C-2 be filed with the Board or carrier.

- An employer must report an injured worker's wages or other compensation to the Board. **Form C-240, Employer's Statement of Wage Earnings**(PDF) [ **On-line Version** ].

- An employer must report any changes in an injured worker's pay or work status to the Board. **Form C-11, Employer's Report of Injured Employee's Change in Employment Status Resulting from Injury**(PDF) [ **On-line Version** ].

- Certain employers must undergo safety consultations if directed to do so.

*If an employer has an experience modification factor of greater than 1.2 and a payroll in excess of $800,000, they must participate in a mandatory safety and loss prevention program, as outlined by the New York State Department of Labor.*

- An employer must provide the Workers' Compensation Board with access to all books, records and payrolls related to employees upon request.

## Employers' Rights

- An employer has the right to request that the insurance carrier contest the compensability of a claim.

*A claim can be contested for a variety of reasons, including, for example, that the injury was not related to work or that the employee is not injured to the extent he or she is claiming. An employer can request that the insurance carrier contest the claim, but since the carrier has assumed liability for the claim, it is not required to comply with the employer's request. In addition, employers or carriers who engage in dilatory tactics will be penalized.*

- An employer has the right to attend any hearings related to a claim filed by

Employers Rights and Responsibilities                                    http: www.wcb.state.ny.us.content_main_small_business_employer

Case 1:08-cv-01064-LAK    Document 45    Filed 05/21/2008    Page 16 of 21

one of the employer's workers.

- An employer has the right to electronically access the Board's case file for a claim filed by the employer's worker by visiting one of the Board's customer service centers.

*The Board's <u>Electronic Case Folder (eCase)</u> allows parties of interest to view the documents in the claim file electronically. Employers should go to one of the eleven district offices or 30 Customer Service Centers with identification to obtain a password to access the files. Based on the confidentiality of workers' compensation records, please be prepared to offer proof that you are the employer of record in the claim.*

- A self-insured employer, or an employer who has failed his or her obligation to secure workers' compensation coverage, has the right to participate in the hearing and present relevant evidence about disputed issues at a hearing.

*Employers may request that a hearing be scheduled on a particular issue by writing to the appropriate district office in a timely manner. Corporations must be represented by counsel in proceedings before the Board. Certain defenses will be waived if they are not promptly raised or if the employer or carrier does not timely file a Form C-7, Notice that Right to Compensation is Controverted.*

- An employer has the right to report suspected workers' compensation fraud to the Fraud Inspector General.

*Fraud Referral Hotline: 1-888-363-6001.*

- An employer has the right to appeal or, if insured, to request that the insurance carrier appeal on appropriate grounds a decision of a Workers' Compensation Law Judge regarding a claim filed by an employee.

*Any party may appeal a notice of decision within 30 days by writing to the Board requesting Board review; however, a party filing a frivolous appeal will be penalized.*

*The Board recommends using the <u>latest version of Adobe Reader</u> which is available as a free download from Adobe's web site.*

3/18/2008 7:59 PM

**EXHIBIT 2**



**STATE OF NEW YORK**

**WORKERS' COMPENSATION BOARD**
DISABILITY BENEFITS BUREAU
100 Broadway - Menands
Albany, NY 12241

(800) 353-3092

THIS AGENCY EMPLOYS AND
SERVES PEOPLE WITH DISABILITIES
WITHOUT DISCRIMINATION

**DONNA FERRARA**
**CHAIR**

To: _____         Date: *3/20/08*
                 (Agency)

On this date, *Maria Jackson* _____, Social Security Number
*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* , appeared in this office.

1. ☐ A Disability Benefits claim form has been given to the above-named person.

2. a. ☐ The above-named person is eligible for Disability Benefits.

   b. ☐ The above-named person is not eligible for Disability Benefits for the following

   reasons: _____

   _____

   _____

3. a. ☐ The claimant informed the Board that Disability Benefits have been paid.

   b. ☐ The claimant informed the Board that Disability Benefits have not been paid.

Disability Benefits Bureau
DEBORAH BUSH

By _____

Telephone No. *718-802-6778* _____

*we ~~have~~ but No Record of Comp. Case or Disability in files*

DB-890 (8-06)

**EXHIBIT 3**

WORKERS' COMPENSATION BOARD

Case 1:08-cv-01064-LAK    Document 67-9    Filed 07/24/2008    Page 21 of 22

**EMPLOYEE'S CLAIM FOR COMPENSATION**

IMPORTANT: Your Social Security Number Must Be Entered:
IMPORTANTE: El Numero de su Seguro Social Debe Ser Indicado:

ANSWER ALL QUESTIONS FULLY - TYPE OR PRINT CLEARLY

Social Security Number: 0 5 6 6 4 4 2 8 6

WCB Case No (If known) _____    Carrier Case No.(if known) _____

| Section | Content |
|---|---|
| **A. Injured Person** | 1. Name *Maria* (First Name) *L.* (Middle Name) *Jackson* (Last Name)<br>2. Mailing Address *184-12 144 Road* (Number and Street (include Apartment) ) *Springfield Gardens* (City) *NY* (State) *11413* (Zip Code)<br>3. Residential Address (if different from mailing address) _____<br>4. Sex ☐ Male ☑ Female  Date of Birth *04-09-61*  Telephone No. ( *718* ) *525-6637*<br>5. Do you speak English? ☑ Yes ☐ No  If no, what language do you speak? _____<br>6. Name of union and local number, if member *N/A*<br>7. State what your regular work/occupation was *Sales Merchandise Manager (SMM)*<br>8. Wages or average earnings per day, including overtime, board, rent and other allowances *650.00 Weekly net*<br>9. Were you paid full wages for the day of injury? ☑ Yes ☐ No<br>10. Your work week at time of injury was: ☐ Five day ☐ Six day ☐ Seven day ☑ Other *6½ day per week* |
| **B. Employer(s)** | 1. Employer *The Scotts Company*  Telephone No *(800) 221-1760*<br>2. Employer's Address *1114 Scottslawn Road*<br>3. Were you employed by any other employer or employers at the time of your injury/illness? ☐ Yes ☑ No<br>4. If yes, did you lose time from work at this other employment as a result of your injury/illness? ☐ Yes ☐ No |
| **C. Place/Time** | 1. Address where injury occurred *Home Depot Hempstead L.I.*  County *Nassau*<br>2. Date of Injury *1-8-05*  at *7:00* o'clock. ☑ AM ☐ PM |
| **D. The Injury** | 1. How did injury/illness occur? *While I was lifting Boxes of Miracle Gro Fertilizer I felt a pop and then a pulling in my back, then pain in my lower back*<br>2. Did anyone witness the injury? ☐ Yes ☑ No  If yes, name(s) _____<br>3. Is the injury the result of the use or operation of a motor vehicle? ☐ Yes ☑ No  If Yes, ☐ your vehicle ☐ employer's vehicle<br>If your vehicle was involved, give name & address of your motor vehicle (No-Fault) insurance carrier. |
| **E. Nature and Extent of Injury/ Illness** | 1. State fully the nature of your injury/illness, including all parts of body injured *L 3-4-5-6-7 Herniated Disk Lumbar my lower back, Right Arm, Neck Disc Buldge*<br>2. Date you stopped work because of this injury/illness? _____<br>3. Have you returned to work? ☐ Yes ☑ No  If yes, on what date? _____<br>4. Does injury/illness keep you from work? ☑ Yes ☐ No<br>5. Have you done any work during period of disability? ☐ Yes ☑ No<br>6. Have you received any wages since your injury/illness? ☐ Yes ☑ No |
| **F. Medical Benefits** | 1. Did you receive or are you now receiving medical care? ☑ Yes ☐ No<br>2. Are you now in need of medical care? ☑ Yes ☐ No<br>3. Name of attending doctor *Richard Matteo, James Liguori, Richard OBedien*<br>Doctor's address _____<br>4. If you were in a hospital, give the dates hospitalized. *No*<br>Name of hospital _____<br>Hospital's Address _____ |
| **G. Comp. Payments** | 1. Have you received or are you now receiving workers' compensation payments for the injury reported above? ☐ Yes ☑ No<br>2. Do you claim further workers' compensation payments? ☑ Yes ☐ No |
| **H. Notice** | 1. Have you given your employer (or supervisor) notice of injury? ☑ Yes ☐ No<br>2. If yes, notice was given ☑ orally ☐ in writing, on *1-10-05*<br>to *Patrick Mc Garr Direct Supervisor* |

I hereby present my claim to the Chair, Workers' Compensation Board, for compensation for disability resulting from an accidental injury or occupational disease arising out of and in the course of my employment and not occasioned by my willful intention or solely through intoxication, and in support of it I make the foregoing statement of facts.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD PRESENTS, CAUSES TO BE PRESENTED, OR PREPARES WITH KNOWLEDGE OR BELIEF THAT IT WILL BE PRESENTED TO, OR BY AN INSURER, OR SELF INSURER, ANY INFORMATION CONTAINING ANY FALSE MATERIAL STATEMENT OR CONCEALS ANY MATERIAL FACT SHALL BE GUILTY OF A CRIME AND SUBJECT TO SUBSTANTIAL FINES AND IMPRISONMENT.

Signed by *Maria Jackson* (Claimant)    Dated *2-20-08*

SEE OTHER SIDE FOR IMPORTANT INFORMATION - VEASE AL DORSO PARA INFORMACION DE IMPORTANCIA

THE WORKERS' COMPENSATION BOARD EMPLOYS AND SERVES PEOPLE WITH DISABILITIES WITHOUT DISCRIMINATION
LA JUNTA DE COMPENSACION OBRERA EMPLEA Y SIRVE A PERSONAS INCAPACITADAS SIN DISCRIMINAR

C-3 (11-06)    www.wcb.state.ny.us

ON-THE-JOB INJURY OR OCCUPATIONAL DISEASE.

CASO DE LESION O ENFERMEDAD OCUPACIONAL

1   Immediately tell your Employer or Supervisor when, where and how you were injured

2   Secure medical care immediately.

3   Tell your doctor to file medical reports with the Board and with your employer or its insurance carrier

4   Make out this claim for compensation and send it to the nearest Workers' Compensation Office   (See below )   Failure to file within two years after the date of injury may result in your claim being denied   If you need help in completing this form telephone or visit the nearest Workers' Compensation Board Office listed below

5   Go to all hearings when notified to appear

6   Go back to work as soon as you are able   compensation is never as high as your wage

YOUR RIGHTS

1   Generally   you are entitled to be treated by a doctor of your choice   unless your employer is involved in a preferred provider organization (PPO) arrangement   you must obtain initial treatment from the preferred provider organization which has been designated to provide health care services to workers compensation injuries

2   Do NOT pay your doctor or hospital   Their bills will be paid by the insurance carrier   If your claim is not disputed   If your case is disputed   the doctor or hospital will be reimbursed by your employer or the insurance carrier

3   [illegible]

4   You are entitled to compensation if your injury keeps you from work for more than seven days   compels you to work at lower wages, or results in permanent disability to any part of your body

5   Compensation is payable directly and without waiting for an award   except when the claim is disputed

6   You are entitled to a hearing   You are not required to obtain anyone to represent you at a hearing, but you have the right to be represented by an attorney or licensed representative   if you so choose   If you obtain representation do not pay your attorney, or representative directly. When the Workers' Compensation Board rules on your case, the attorney's or representative's fee will be set by the Board and paid to him or her by your employer or by your employer's insurance carrier   The amount so paid will be deducted from your award

7   If you need help returning to work, or with family or financial problems because of your injury, contact the Workers' Compensation Board office nearest you and ask for a rehabilitation counselor or social worker

1   Avisar inmediatamente a su patrono o a su supervisor de cuando, donde y como sufrio la lesion.

2   Obtener atencion medica inmediatamente.

3   Pedirle a su medico que presente informes a la Junta y a su patrono, o a la compañia de seguranza.

4   Llenar esta forma de reclamacion para compensacion y   enviarla a la oficina mas cercana de la Junta de Compensacion   (vease abajo )   El no presentar reclamacion dentro de dos años a partir de la fecha de la lesion puede ser motivo de que se le rechace la reclamacion   Si necesita que le ayuden a llenar esta forma   llame por telefono o   vaya a la oficina mas cercana de la Junta de Compensacion Obrera

5   Acudir a todas las audiencias cuando se le notifique que comparezca

6   Volver a su trabajo lo mas pronto que le sea posible   la compensacion nunca es tan alta como su sueldo

SUS DERECHOS

1   Por lo general usted tiene derecho a ser atendido por el medico de su preferencia siempre y cuando esta autorizado por la Junta   Si su patrono esta participando en un acuerdo de organizacion de proveedores con preferencia (P.P.O.) su tratamiento inicial debera obtenerlo de la entidad que su patrono haya designado para proveer cuidado medico para lesiones relacionadas con la compensacion obrera

2   NO PAGUE NADA a su medico ni al hospital   Esas facturas seran pagadas por la compañia de seguros si usted no esta en desacuerdo   Si el caso esta en desacuerdo   el medico u hospital sera reembolsado por su patrono o por la compañia de seguros

3   [illegible]

4   Tiene usted derecho a recibir compensacion si su lesion le imposibilita trabajar por mas de siete dias, o si le obliga a trabajar por un sueldo mas bajo o resulta con incapacidad permanente en alguna parte de su cuerpo

5   La compensacion es pagada directamente y sin tener que esperar la decision excepto cuando se cuestione la reclamacion

6   Usted tiene derecho a una audiencia. Usted no esta obligado a conseguir quien le represente en la audiencia, pero tiene derecho a ser representado por un abogado o por un representante licenciado, si usted lo prefiere. En caso de obtener usted representacion, no pague nada directamente a su abogado o representante. Cuando la Junta de Compensacion Obrera decida su caso los honorarios de su abogado o representante seran fijados por la Junta y seran pagados por el patrono o por la compañia de seguros   La suma pagada en esta forma sera deducida de la cantidad adjudicada a usted

7   Si necesita ayuda para volver al trabajo, o si tiene problemas familiares o economicos por motivo de su lesion, comuniquese con la oficina de la Junta de Compensacion Obrera que le quede mas cerca y pida una reunion con un consejero de rehabilitacion o con un trabajador social

WORKERS' COMPENSATION BOARD DISTRICT OFFICES AND COUNTIES SERVED

OFICINAS DE DISTRITO DE LA JUNTA DE COMPENSACION OBRERA Y LOS CONDADOS SERVIDOS

**ALBANY 12241 - 100 Broadway, Menands. (866) 750-5157**   For all accidents in following counties:   Albany, Clinton, Columbia, Dutchess, Essex, Franklin, Fulton, Greene, Hamilton, Montgomery, Rensselaer, Saratoga, Schenectady, Schoharie, Ulster, Warren, Washington

**BINGHAMTON 13901 - State Office Building, 44 Hawley Street. (866) 802-3604**   For all accidents in following counties:   Broome, Chemung, Chenango, Cortland, Delaware, Otsego, Schuyler, Sullivan, Tioga, Tompkins

**BUFFALO 14202 - Statler Towers, 107 Delaware Ave. (866) 211-0645**   For all accidents in following counties:   Cattaraugus, Chautauqua, Erie, Niagara

**ROCHESTER 14614 - 130 Main Street West. (866) 211-0644**   For all accidents in following counties:   Allegany, Genesee, Livingston, Monroe, Ontario, Orleans, Seneca, Steuben, Wayne, Wyoming, Yates

**SYRACUSE 13203 - 935 James Street. (866) 802-3730**   For all accidents in following counties:   Cayuga, Herkimer, Jefferson, Lewis, Madison, Oneida, Onondaga, Oswego, St. Lawrence

**DOWNSTATE CENTRALIZED MAILING** for New York City, Hempstead, Hauppauge & Peekskill district offices)   PO Box 5205, Binghamton, NY 13902-5205.   NYC (800) 877-1373   Hemp. (866) 805-3630   Haup. (866) 681-5354   Peek. (866) 746-0552   For all accidents in following counties:   Bronx, Kings, Nassau, New York, Orange, Putnam, Queens, Richmond, Rockland, Suffolk, Westchester

(Claims for compensation, inquiries, medical and other reports should be sent to the District Office of the County in which the accident occurred   Be sure to notify this office of any change in your address )

(Reclamaciones para compensacion, preguntas, informes medicos y de otra naturaleza deben enviarse a la oficina de distrito del condado donde ocurrio el accidente   No deje de avisar a esta oficina acerca de cambios en su direccion )

**Notification Pursuant to The New York Personal Privacy Protection Law (Public Officers Law Article 6-A) and the Federal Privacy Act of 1974 (5 U.S.C. Sec. 552a).**

The Workers' Compensation Board's ("Board") authority to request personal information from claimants is derived from Sections 20 and 142 of the Workers' Compensation Law. This information is collected to assist the Board in processing claims in an efficient manner and to help it maintain accurate claim records

The Board is strongly committed to protecting the confidentiality of all personal information that it collects   Such information will be disclosed within this agency only to Board personnel and agents in furtherance of their official duties. Personal information will be disclosed outside the agency only in accordance with applicable state and federal law

The Board's Director of Operations, located at 100 Broadway, Menands, New York 12241 (518-474-6674), is primarily responsible for the maintenance of agency records containing personal claimant information.

Failure to provide the information requested on this form will not result in the denial of your claim, but may delay the processing of your claim. The voluntary release of your social security number enables the Board to ensure that information is associated with, and quick action is taken on your claim

**HIPAA Notice**

In order to adjudicate a workers' compensation claim, WCL13-a(4)(a) and 12 NYCRR 325-1.3 require health care providers to regularly file medical reports of treatment with the Board and the carrier or employer. Pursuant to 45 CFR 164.512 these legally required medical reports are exempt from HIPAA's restrictions on disclosure of health information

The Workers' Compensation Board assures hearing locations accessible to the disabled. Contact the nearest Board office if you have special accessibility needs.

**Notificacion conforme a la Ley de Proteccion de la Privacidad de Nueva York (Ley de Servidores Publicos 6-A) y el Acta Federal de Privacidad de 1974 (5 U.S.C. Sec.552a).**

La autoridad de la Junta de Compensacion Obrera para requerir informacion personal de los reclamantes surge de las Secciones 20 y 142 de la Ley de Compensacion Obrera. Esta informacion se utiliza para ayudar a la Junta a procesar reclamaciones en forma eficiente y mantener expedientes precisos

La Junta guarda celosamente la confidencialidad de toda la informacion personal que colecta. Esa informacion solo se comparte con personal de la Junta y sus agentes en relacion al cumplimiento de sus deberes oficiales. Informacion personal recopilada por la Junta solo sera compartida con personas o entidades fuera de la Junta cuando sea requerido por leyes estatales o federales.

El Director de Operaciones de la Junta con oficinas en 100 Broadway, Menands, New York 12241 (518-474-6674), es responsable directo del mantenimiento de los expedientes de la agencia que contienen informacion personal de los reclamantes

Si usted no suministra la informacion requerida en esta forma, esto no quiere decir que su reclamacion sera denegada, pero puede retrasar el procesamiento de su caso. El tener su seguro social permite a la Junta tomar accion rapida en todo lo concerniente a la informacion relacionada con su reclamacion

**Aviso de HIPAA**

Como requisito para adjudicar una reclamacion, la ley de compensacion obrera WCL 13-a(4)(a) y 12 NYCRR 325-1.3 requiere a los proveedores de salud radicar regularmente ante la Junta, el asegurador o el patrono informes sobre el tratamiento medico. Conforme a 45CFR 164.512 estos informes medicos requeridos por ley estan exentos de las restricciones sobre informacion medica impuestos por HIPAA.

Proveemos locales accesibles para la vista de sus casos. Comunicate con nuestra oficina mas cercana si tienes algun requerimiento especial de acceso.

C-3 (11-06) Reverse

# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA JACKSON, | 08 Civ. 1064 (LAK) |
|       Plaintiff, | |
|   -against- | |
| THE SCOTTS COMPANY | |
|       Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MAY 20, 2008 MOTION FOR LEAVE TO AMEND COMPLAINT
<u>AND REMAND ACTION TO STATE COURT</u>**

Craig S. Friedman (CF-1988)
csfriedman@jonesday.com
Matthew W. Lampe (*pro hac vice*)
mwlampe@jonesday.com
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939
Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY ................................................... 2

      A.    Plaintiff Files An Amended Complaint Adding A Claim Of Race Discrimination Under The WCL And Moves To Remand ....................... 3

      B.    The Court Dismisses Plaintiff's Claim That WCL § 120 Prohibits Discrimination On The Basis Of Race ........................................................ 4

      C.    The Court Grants Defendant's Partial Motion To Dismiss As Law Of The Case ........................................................................................................ 5

      D.    The Court Enters A Consent Scheduling Order Which Precludes Amendments To The Pleadings After May 12, 2008 ................................ 5

      E.    The Court Sanctions Ms. Frelix Under Rule 11 On The Grounds That Plaintiff's Claim That WCL § 120 Prohibits Race Discrimination Is Frivolous ........................................................................ 5

      F.    Plaintiff Again Moves For Leave To Amend And For Remand To State Court, Seeking To Reintroduce Her Claim That The WCL Prohibits Race Discrimination And The Other Claims That Were Dismissed As The Law Of The Case ...................................................... 6

ARGUMENT ................................................................................................................ 7

    POINT I    THE COURT SHOULD DENY PLAINTIFF'S MOTION TO AMEND ON THE GROUNDS THAT IT IS UNTIMELY BECAUSE IT WAS SERVED EIGHT DAYS AFTER THE DEADLINE FOR AMENDMENTS TO THE PLEADINGS ................. 7

    POINT II    THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR LEAVE TO AMEND BECAUSE IT IS FUTILE ..................................... 8

      A.    Applicable Legal Principles ..................................................................... 8

      B.    Plaintiff's Proposed Causes Of Action Four Through Eleven, Causes Of Action One Through Three To The Extent They Are Based On Events Prior To December 21, 2004, Claims For Attorneys' Fees, Punitive Damages, And A Declaratory Judgment, And A Claim Of Race Discrimination Under The WCL Are Futile Because The Previous Dismissal Of These Claims Is The Law Of The Case ........................................................................................................ 8

      C.    Plaintiff's Proposed WCL Claim Is Futile Because The WCB Has Exclusive Jurisdiction Over WCL Claims ............................................. 10

      D.    Plaintiff's Proposed Claim Of Race Discrimination Under The WCL Is Futile Because The WCL Does Not Bar Race Discrimination ........................................................................................ 12

# TABLE OF CONTENTS
(continued)

Page

E.   Plaintiff's Proposed WCL Claims Are Futile Because They Are
Time-Barred ................................................................................................ 12

POINT III   THE COURT SHOULD DENY PLAINTIFF'S MOTION TO
REMAND ...................................................................................................... 13

A.   The Court Should Deny Plaintiff's Motion To Remand Because
Her Motion For Leave To Amend To Include A WCL Claim Is
Futile ............................................................................................................ 13

B.   Even If Plaintiff Could State A WCL Claim, The Court Should
Deny Plaintiff's Motion To Remand Because The Statute On
Which Plaintiff Relies, 28 U.S.C. § 1445(c), Does Not Allow For
Remand Of Actions Where Plaintiff Amends The Complaint To
Include A Workers' Compensation Claim .................................................. 14

C.   Plaintiff's Motion For Leave To Remand Should Be Denied
Because She Offers Only Unsupported Assertions And
Exaggerations In Support Of Her Motion .................................................. 14

CONCLUSION .................................................................................................................... 16

between the Amended Complaint, and the May 20 Proposed Amended Complaint, is that as part of her WCL claim Plaintiff adds the allegation that Defendant failed "to file the mandatory C-2 Workers' Compensation form when she suffered work related injuries in February 2003 and January 2005." (Prop. Am. Compl. ¶ 204.) Based on the WCL claim in the Proposed Amended Complaint, Plaintiff again argues that 28 U.S.C. § 1445(c) requires remand of the instant action to state court.

**ARGUMENT**

**POINT I**

**THE COURT SHOULD DENY PLAINTIFF'S MOTION TO AMEND ON THE
GROUNDS THAT IT IS UNTIMELY BECAUSE IT WAS SERVED EIGHT DAYS
AFTER THE DEADLINE FOR AMENDMENTS TO THE PLEADINGS**

First, the Court should deny Plaintiff's motion for leave to amend (and, as a consequence, her motion to remand) because it is untimely. On April 11, 2008, the Court 'so ordered' a Consent Scheduling Order which states that "[n]o amendments to the pleadings will be permitted after May 12, 2008." (April 11 Order.) This Order is signed by counsel for both parties and neither party has requested any extension of the deadlines contained in this Order. (*Id.*) Plaintiff did not serve the instant motion until May 20—a full eight days after the Court ordered deadline agreed to by Plaintiff. Therefore, the Court should deny Plaintiff's motion for leave to amend as untimely. As Plaintiff's motion to remand is predicated entirely on the WCL claim in the untimely Proposed Amended Complaint, that motion should likewise be dismissed.

## POINT II

### THE COURT SHOULD DENY PLAINTIFF'S MOTION
### FOR LEAVE TO AMEND BECAUSE IT IS FUTILE

**A.**     **Applicable Legal Principles**

Federal Rule of Civil Procedure ("FRCP") 15(a) states that leave to amend a pleading

"shall be freely given when justice so requires." However, "it is well established that leave to

amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336

F.3d 114, 127 (2d Cir. 2003). An amendment is futile when the proposed new claim would not

withstand a motion to dismiss under FRCP 12(b)(6). *Milanese v. Rust-Oleum Corp.*, 224 F.3d

104. 110 (2d Cir. 2001). Moreover, "if the proposed amended complaint would be subject to

'immediate dismissal' for failure to state a claim or on some other ground, the Court will not

permit the amendment." *Perkins v. Kamco Supply Corp.*, 06 Civ. 5054 (DAB) (DF), 2007 WL

4207193, at *2 (S.D.N.Y. Nov. 27, 2007) (quoting *Jones v. New York State Div. of Military &*

*Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999)).

**B.**     **Plaintiff's Proposed Causes Of Action Four Through Eleven, Causes Of Action One
Through Three To The Extent They Are Based On Events Prior To December 21,
2004, Claims For Attorneys' Fees, Punitive Damages, And A Declaratory Judgment,
And A Claim Of Race Discrimination Under The WCL Are Futile Because The
Previous Dismissal Of These Claims Is The Law Of The Case**

Pursuant to the law of the case doctrine, "when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages of the same case."

*Thomas v. City of New York*, CV-03-1797 (CPS), 2007 WL 2156652, at *5 (E.D.N.Y. July 25,

2007). The Second Circuit has held that "the major grounds justifying reconsideration are an

intervening change of controlling law, the availability of new evidence, or the need to correct a

NYI-4092031v3

clear error or prevent manifest injustice." *Id.* (quoting *Virgin Atlantic Airways v. Nat. Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  Here, the law of the case doctrine bars the above-referenced claims.

As discussed above, on March 27, 2008, the Court granted Defendant's partial motion to dismiss Causes of Action Four through Eleven, and the claims for declaratory relief, punitive damages, and attorney's fees, in their entirety, and dismissed also the First through Third Causes of Action to the extent they are based on events prior to December 21, 2004.  (March 27 Order.) After Plaintiff reintroduced these claims by filing an Amended Complaint identical in "all material respects" to the Original Complaint, (April 30 Order), Defendant moved to dismiss the portions of the Amended Complaint that corresponded to those dismissed in the March 27 Order. Plaintiff did not oppose this motion and the Court subsequently granted Defendant's motion in its entirety, holding that that the March 27 dismissal was the law of the case.  (April 30 Order.)

Now, Plaintiff moves for leave to amend to reintroduce all the claims (supported by identical factual allegations) dismissed on March 27, and again on April 30.  (*Compare* Am. Compl. ¶¶ 10 to 267 *with* Prop. Am. Compl. ¶¶ 10 to 272.)  Plaintiff, however, has offered no reason for the Court to reverse its previous decision that the dismissal of these claims is the law of the case.  As such, the Plaintiff's attempt to reintroduce these claims should be denied.  This conclusion is particularly justified where, as here, the Proposed Amended Complaint offers supporting factual allegations identical to those supporting the claims previously dismissed. *Gardner v. Wansart*, 05 Civ. 3351 (SHS), 2006 WL 2742043, at *6 (S.D.N.Y. Sept. 26, 2006) (dismissing claims in amended complaint as law of the case where plaintiff did not plead "any further facts in support of those claims").

- 9 -

Likewise, the Court's dismissal of Plaintiff's claim of race discrimination under the WCL on April 9, 2008 is also the law of the case. Indeed, in the May 14, 2008 Order sanctioning Ms. Frelix for asserting this claim, the Court said that this claim was dismissed "for the eminently simple reason that the [WCL], unlike the [NYSHRL], does not even address, let alone proscribe, employment discrimination on the basis of race or other suspect characteristics" and reiterated that "her argument is totally baseless." *Jackson v. The Scotts Company*, 08 Civ. 1064 (LAK), 2008 WL 2117244, at *1-2 (S.D.N.Y. May 14, 2008). Nevertheless, Plaintiff moves for leave to amend so she may assert the same claim. (Prop. Am. Compl. ¶ 270.) As the Court has already dismissed this claim, and further found it to be utterly frivolous, this portion of the motion for leave to amend should be denied because the previous dismissal is the law of the case.

**C.     Plaintiff's Proposed WCL Claim Is Futile Because The WCB
          Has Exclusive Jurisdiction Over WCL Claims**

In any event, Plaintiff's proposed WCL claim is futile because neither this Court, nor any other court, has jurisdiction to hear such a claim. This is because the New York State Workers' Compensation Board is the exclusive forum for claims under the WCL. It is well-settled "that primary jurisdiction with respect to determinations as to the applicability of the Workers' Compensation Law has been vested in the Workers' Compensation Board." *Botwinick v. Ogden*, 59 N.Y.2d 909, 911, 466 N.Y.S.2d 291 (1983); *High, Veronica v. Reuters America, Inc.*, 7 Misc. 3d 1006(A), 801 N.Y.S.2d 234, at *2 (Sup Ct., Bronx Cnty. March 9, 2005) (same). In the State of New York, the "Legislature has placed the responsibility for such factual determinations in the Workers' Compensation Board, and claimants may not circumvent this procedure and choose the courts as the forum for resolution of such questions." *Cunningham v. State of New York*, 60 N.Y.2d 248, 252, 469 N.Y.S.2d 588 (1983); *High, Veronica*, 7 Misc.3d 1006(A) at *2 ("a litigant

# EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARIA JACKSON,

                              Plaintiff,

         -against-

THE SCOTTS COMPANY,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/-/09
```

08 Civ. 1064 (LAK)

**ORDER**

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff's motion for leave to amend and to remand (DI 44) is denied, substantially for the reasons set forth in defendant's opposing memorandum (DI 49) and, to the extent relevant, prior orders of this Court.

        SO ORDERED.

Dated:        July 2, 2008

                                        _____
                                            Lewis A. Kaplan
                                        United States District Judge

# EXHIBIT K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIA JACKSON,

   Plaintiff,

 -against-

THE SCOTTS COMPANY

   Defendant.

---

08 Civ. 1064 (LAK)

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927
<u>AND THE COURT'S INHERENT POWER</u>**

Craig S. Friedman (CF-1988)
csfriedman@jonesday.com
Matthew W. Lampe (*pro hac vice*)
mwlampe@jonesday.com
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939
Attorneys for Defendant

work related injuries in February 2003 and January 2005." (Prop. Am. Compl. ¶ 204.) Based on

the Proposed Amended Complaint, Plaintiff again claims that 28 U.S.C. § 1445(c) requires

remand of the instant action to state court.

## ARGUMENT

### THE COURT SHOULD SANCTION PLAINTIFF AND MS. FRELIX PURSUANT TO 28 U.S.C. § 1927 AND THIS COURT'S INHERENT POWER[10]

**A.**    **Applicable Legal Principles**

Pursuant to 28 U.S.C. § 1927, an attorney who "so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions are

appropriate under this statute where an attorney's actions "are so completely without merit as to

require the conclusion they must have been undertaken for some improper purpose, such as

delay." *Shafti v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996); *Thomas America Corp.*

*v. Fitzgerald*, 175 F.R.D. 462 (S.D.N.Y. 1997) (imposing sanctions under 28 U.S.C. § 1927 for

filing a frivolous motion). Section 1927 "applies 'to a continuing course of conduct, and

imposes a continuing obligation on attorneys to avoid dilatory tactics.'" *Rubio v. City of New*

*York*, 03 CV 1349 (SJ) (KAM), 2005 WL 1498283, at *3 (E.D.N.Y. May 31, 2005) (quoting

*U.S. v. Int'l. Bd. of Teamsters*, 948 F.2d 1338 1344 (2d Cir. 1991)).

Likewise, a district court has the inherent power to impose sanctions where (1) the

challenged claim was without a colorable basis, and (2) the claim was brought in bad faith, i.e.,

motivated by improper purposes such as harassment or delay. *Schlaifer Nance & Company, Inc.*

*v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir 1999). The Second Circuit has held that the only

---

[10] Defendant also intends to serve Plaintiff with a motion for sanctions pursuant to Federal Rule of Civil Procedure 11, including the sanction of dismissal of the action with prejudice. Defendant will file this motion with the Court should Plaintiff fail to withdraw the May 20 motion before the completion of the 21-day safe harbor period. Fed. R. Civ. P. 11(c)(2).

meaningful difference between an award under § 1927 and the Court's inherent power is that §

1927 awards are made only against attorneys while an award under the court's inherent power

may be made against an attorney, a party, or both. *Id.*

Here, a more clear-cut case of sanctionable conduct is difficult to imagine. Plaintiff and

Ms. Frelix have flouted the Court's orders and the law at every turn—and because of this, the

Court and Defendant have continuously been distracted from the conduct of this litigation and

Defendant has incurred costs and attorneys' fees.

**B.      Plaintiff's Motions For Leave To Amend And To Remand Have No Colorable Basis**

   1.     Plaintiff's Proposed Claim Of Race Discrimination Under The WCL Is Without A
          Colorable Basis Because The WCL Does Not Bar Race Discrimination And
          This Court Has Already Sanctioned Ms. Frelix For Asserting This Same Claim

In the Amended Complaint, filed March 27, 2008, Plaintiff claimed that "Defendant

knowingly or recklessly violated plaintiff's New York State Workers' Compensation Rights by

subjecting plaintiff to treatment that no Caucasian employee of defendants' has been subjected

to." (Am. Comp. ¶ 265.) The Court dismissed this claim "for the eminently simple reason that

the [WCL] . . . . does not even address, let alone proscribe discrimination on the basis of race or

other suspect characteristics." *Jackson*, 2008 WL 2117244 at *1. The Court then sanctioned

Ms. Frelix under Rule 11(b)(2), finding that "it is perfectly plain that, on an objective basis, Ms.

Frelix's contention . . . . was not warranted by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law or for establishing new law." *Id.* at *2.

Now, Plaintiff moves for leave to filed a Proposed Amended Complaint which includes

an identical claim of race discrimination under the WCL. (*Compare* Am. Compl. ¶ 265 *with*

Proposed Am. Compl. ¶ 270.) This claim is frivolous for the simple reason that the Court has

already held that an identical claim asserted earlier in the case is frivolous. *Shackelford v.*

*Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140 (D. Colo. 2000) (imposing sanctions for litigation of

claim in bad faith after counsel warned of frivolous nature of claim and it was clear claim was

without any foundation).

> 2.    Plaintiff's Proposed WCL Claim Is Without A Colorable Basis Because The
> Workers' Compensation Board Is The Exclusive Forum For WCL Claims

In any event, even if the WCL did prohibit race discrimination (which it does not),

Plaintiff's WCL claim is without a colorable basis because neither this Court, nor any other

court, has jurisdiction to hear such a claim.  This is because the New York State Workers'

Compensation Board is the exclusive forum for claims under the WCL.  It is well-settled "that

primary jurisdiction with respect to determinations as to the applicability of the Workers'

Compensation Law has been vested in the Workers' Compensation Board." *Botwinick v. Ogden*,

59 N.Y.2d 909, 911, 466 N.Y.S.2d 291 (1983); *High, Veronica v. Reuters America, Inc.*, 7 Misc.

3d 1006(A), 801 N.Y.S.2d 234, at *2 (Sup Ct., Bronx Cnty. March 9, 2005) (same).  In the State

of New York, the "Legislature has placed the responsibility for such factual determinations in the

Workers' Compensation Board, and claimants may not circumvent this procedure and choose the

courts as the forum for resolution of such questions." *Cunningham v. State of New York*, 60

N.Y.2d 248, 252, 469 N.Y.S.2d 588 (1983); *High, Veronica*, 7 Misc.3d 1006(A) at *2 ("a litigant

may not circumvent the WCB's jurisdiction and procedures by seeking relief in the courts

system").

This principle applies with full force to claims of discrimination under § 120.  *Casale v.*

*Reo*, 04-CV-1013, 2005 WL 1660743, at *3 (N.D.N.Y. July 13, 2005) ("Plaintiff's exclusive

remedy for a violation of [WCL] Section 120 is to seek redress through the Workers'

Compensation Board"); *see also Wehling v. Bayex, Inc.*, 248 A.D.2d 973, 974, 670 N.Y.S.2d

973, 278 (4th Dep't 1998) (same).  This is confirmed by the plain language of WCL § 120,

which vests the WCB with the authority to remedy violations of this section.  N.Y. W.C.L. § 120

("[u]pon finding that an employer has violated this section, the board shall make an order that

any employee so discriminated against shall be restored to employment").

Therefore, it is well-settled that the courts do not have jurisdiction over WCL claims.

Thus, even if race discrimination was a cognizable claim under the WCL (which it is not),

Plaintiff's attempt to avoid this Court's jurisdiction by adding such a claim would still be without

a colorable basis.

> 3. Plaintiff's Proposed Causes Of Action Four Through Eleven, Proposed Causes Of Action One Through Three To The Extent They Are Based On Events Prior to December 21, 2004, and Proposed Claims For Attorneys' Fees, Punitive Damages, And A Declaratory Judgment, Are Without A Colorable Basis Because They Are Barred By The Law Of The Case Doctrine

On March 27, 2008, after Plaintiff failed to respond to Defendant's partial motion for

dismissal of the original Complaint, the Court granted Defendant's motion and dismissed the

Fourth through Eleventh Causes of Action, and the claims for declaratory relief, punitive

damages, and attorney's fees, in their entirety and also dismissed the First through Third Claims

to the extend they are based on events prior to December 21, 2004.  (March 27 Order.)  Plaintiff

subsequently filed an amended complaint which "was identical in all material respects to the

original complaint."  (April 30 Order.)  Again, Defendant was forced to move to dismiss the

portions of the Amended Complaint that corresponded to those dismissed in the March 27 Order.

Plaintiff, again, filed no opposition.  As a result, the Court granted Defendant's second motion to

dismiss on the grounds that "[t]he law of the case doctrine precludes reconsideration of . . .

question[s previously determined] here absent cogent or compelling reasons" and, in failing to

respond, Plaintiff "failed to demonstrate any reason whatever for reaching a different result."

(April 30 Order.)

Plaintiff now moves for leave to file a Proposed Amended Complaint that includes

Causes Of Action One through Eleven identical to those in the both the original Complaint and

the Amended Complaint. (*Compare* Proposed Am. Compl. ¶¶ 208-265 *with* Complaint ¶¶ 196-253 *and* Am. Compl. ¶¶ 205-262.)  Moreover, the underlying factual allegations contained in the Proposed Amended Complaint are identical to those in both the original Complaint and the Amended Complaint. (*Compare* Proposed Am. Compl. ¶¶ 10-195 *with* Complaint ¶¶ 10-195 *and* Am. Compl. ¶¶ 10-195.)  Plaintiff has already had two opportunities to address the deficiencies of these claims and, as a result of her failure to do so, the Court has deemed the dismissal of the above-described claims the law of the case.  As a result, her new attempt to reintroduce these claims is without a colorable basis.  *Cf. Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (applying FRCP 11, Second Circuit held that "once the court had ruled that it would not allow compensatory and punitive damages for the alleged ADEA violations, the demand for such damages in the supplemental complaint was frivolous because it was barred by the law of the case").

> 4.     Plaintiff's Motion To Remand Is Without A Colorable Basis Because It Is Based Upon A Claim Over Which The Courts Do Not Have Jurisdiction

In addition to a frivolous motion for leave to amend, Plaintiff's May 20 papers include an equally frivolous motion to remand the instant action to state court pursuant to 28 U.S.C. § 1445(c), which provides that a "civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." This motion is predicated entirely on the argument that Plaintiff may assert a WCL claim in the instant action.  As it is well-settled that neither this nor any other Court has jurisdiction over WCL claims, the instant motion to remand is unsupportable as a matter of law.  The conclusion that the instant motion to remand is frivolous is confirmed by the fact that, in her memorandum of law, Plaintiff has failed to cite to even a single decision in support of her argument for remand.

Therefore, for the reasons described above, Plaintiff's May 20 motion for leave to amend

and to remand is without any colorable basis.

**C.**    **Plaintiff's Motions For Leave To Amend And Remand Were Brought In Bad Faith**

1.    Plaintiff And Her Counsel Have Acted In Bad Faith Through A Pattern Of
       Sanctionable Conduct, Including Plaintiff's Most Recent Motion, Which Stems
       From Plaintiff's Unsupportable Position That This Case Should Be Remanded

First, Plaintiff and her counsel have acted in bad faith because the instant motion is the

most recent in a long line of unsupportable and sanctionable attempts to add a WCL claim in the

instant action, which Plaintiff believes would compel this Court to remand this case to state

court.  As discussed above, Plaintiff first moved to remand under 28 U.S.C. § 1445(c) on the

basis that she had claims in the Complaint "arising under the workmen's compensation laws" of

New York State.  (Friedman Decl., Ex. B.)  The Court dismissed this claim as "patently

frivolous" and subsequently sanctioned Plaintiff's attorney *sua sponte* on the ground that this

frivolous argument violated Rules 11(b)(2) and 11(b)(3).  Plaintiff's second attempt to move for

leave to amend and to remand was denied because Plaintiff's proposed amended complaint

consisted exclusively of a caption, without any text, and thus failed to state a WCL claim.  After

filing an Amended Complaint asserting a claim of race discrimination under the WCL, the Court

dismissed the WCL claim on the grounds that the WCL does not prohibit race discrimination.

The Court again sanctioned Ms. Frelix because her contention that the WCL prohibited race

discrimination was frivolous and thus violated Rule 11.  Now, Plaintiff has continued this pattern

and has filed yet another sanctionable pleading.

Moreover, Plaintiff has engaged in this pattern of sanctionable conduct in support of a

goal which is unsupportable as a matter of law—remand of this case to state court under 28

U.S.C. § 1445(c).  In fact, Ms. Frelix acknowledged this at the May 2 oral argument.  When

confronted by the Court with the frivolousness of her arguments, she said "I guess this all stems

- 13 -

from the fact that it's our position that Ms. Jackson should be—this case should be remanded back to Bronx Supreme Court." (Tr. p. 6). This position, however, has never been viable because, as discussed above, *supra* § B.2, this Court does not have jurisdiction over WCL claims. As a result, each attempt to remand on this basis has been totally without merit.

> 2.  Plaintiff's Repeated Motions For Leave To Amend Have Been Brought In Bad Faith Because She Concedes That She Is Seeking A Remedy For Her WCL Claims Before The New York State Workers' Compensation Board

Plaintiff's own allegations in the Proposed Amended Complaint, and the memorandum of law in support of her underlying motions, show Plaintiff's repeated attempts to assert a WCL claim were meant only to harass Defendant and needlessly increase the cost of this litigation.

In the both the Amended Complaint, and the Proposed Amended Complaint, Plaintiff has included an allegation that "[o]n or about February 20, 2008, New York State Workers' Compensation Board took Mrs. Jackson's claim regarding her work related injuries upon learning the circumstances that caused the substantial delay." (Am. Compl. ¶ 204; Proposed Am. Compl. ¶ 207.) February 20, 2008 is likewise a key date in the instant litigation, as it marked Plaintiff's first motion to remand pursuant to 28 U.S.C. § 1445(c). (Friedman Decl., Ex. B.) As the Court is well aware, since February 20 Plaintiff has made repeated attempts to amend her original Complaint to include a WCL claim. As such, from February 20, 2008 until the present time, Plaintiff has continued to knowingly seek redress for alleged violations of the WCL in two different forums: the WCB (which has jurisdiction over this claim) and the courts (which do not have jurisdiction over this claim). § B.2, *supra*. This is a clear cut example of improperly multiplying proceedings.

Therefore, in bringing repeated motions for leave to amend her complaint to include a WCL claim, Plaintiff and her counsel have needlessly wasted the time of the Court, and have unreasonably and vexatiously multiplied the proceedings of the instant action.

3.    Plaintiff Has Acted In Bad Faith By Repeatedly Ignoring Court Deadlines,
      Including The Consent Scheduling Order's Deadline To Amend The Pleadings

Plaintiff and her counsel have further acted in bad faith by repeatedly ignoring the orders

of this Court, a fact noted by the Court at the May 2 oral argument when it informed Ms. Frelix

that "you're entitled to disagree with my ruling, but you're not entitled to ignore it, and you just

keep on coming." (Tr. p. 12.) In addition to the orders discussed at oral argument, in bringing

her most recent motion Plaintiff has ignored the Court's (i) April 30 Order, which held that the

March 27 dismissal of Causes of Action Four through Eleven, Causes of Action One through

Three to the extent they are time-barred, and Plaintiff's claims for declaratory relief, punitive

damages, and attorneys fees, is the law of the case, (ii) April 9 and May 14 Orders, which made

clear that a claim of discrimination under the WCL is unsupportable and frivolous, and (iii)

April 11 Consent Scheduling Order, which stated that no amendments to the pleadings will be

permitted after May 12, 2008.

The most recent violation is also the most telling about the conduct of the instant

litigation. On April 11, 2008, the Court 'so ordered' a Consent Scheduling Order which states

that "[n]o amendments to the pleadings will be permitted after May 12, 2008." (April 11 Order.)

This Order is signed by counsel for both parties, including Ms. Frelix, and neither party has

requested any extension of the deadlines contained in this Order. (*Id.*) In filing this motion for

leave to amend a full nine days after the deadline for amendments to the pleadings, Plaintiff now

attempts to contravene a court order which her counsel specifically agreed to and signed. Where

a party so blatantly ignores an Order of the Court, sanctions are justified. *Cf. Morley*, 66 F.3d at

25 (affirming sanctions under Rule 11(b)(1) where a supplemental complaint "manifestly

contravened" a court's orders).

**D.     The Court Should Compel Plaintiff And Ms. Frelix To Reimburse Defendant For The Costs, Expenses, And Attorneys' Fees Reasonably Incurred As A Result Of Their Unreasonable And Vexatious Multiplication Of The Proceedings**

As discussed above, an attorney who "multiplies the proceedings in any case unreasonably and vexatiously . . . may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Court may impose similar sanctions against a party pursuant to its inherent power. *Schlaifer Nance & Company, Inc*, 194 F.3d at 336.

Here, Plaintiff and her counsel have acted vexatiously in bringing repeated frivolous motions to remand and to assert a WCL claim, including the most recent motion on May 20. Defendant, therefore, seeks the expenses, costs, and attorney's fees incurred as a result of this conduct. Specifically, Defendant seeks the expenses, costs, and attorney's fees incurred in:

(a)     Reviewing, conducting research in opposition to, preparing for and drafting responses to Plaintiff's February 20 motion to remand, March 19 motion for leave to amend, and March 27 motion for leave to amend;

(b)     Preparing for and attending the May 2 oral argument;

(c)     Reviewing, conducting research in opposition to, preparing for and drafting a response to Plaintiff's pending May 20 motion; and

(d)     Researching, preparing for and drafting the instant motion, including any reply.

Because Defendant, as of this writing, continues to incur fees and expenses for which it seeks reimbursement, it requests that, should the Court grant the instant motion, it be permitted to submit within ten days of this Court's ruling a bill of costs, and an accompanying affidavit, demonstrating the exact sums for which it seeks reimbursement. *Lazzarino v. Kenton Associates, Ltd.*, 998 F. Supp. 364, 368 (S.D.N.Y. 1998) (allowing moving party to submit an affidavit to the court showing attorneys' fees and costs incurred after granting sanctions pursuant to the court's inherent power).

- 16 -

With respect to category (a), Defendant did not ultimately file oppositions to the three

motions. Defendant acknowledges and is grateful that the Court quickly rejected Plaintiff's

frivolous February 20, March 19, and March 27 motions *sua sponte*. Nevertheless, Defendant

incurred attorneys' fees, costs, and expenses in reviewing, conducting research to defend, and

beginning to prepare responses to the frivolous motions, and should be reimbursed for this time.

*Ramashwar v. Espinoza*, 05 Civ. 2012 (AJP), 2006 WL 36752, at *9 (S.D.N.Y. Jan 6, 2006)

(granting attorneys' fees and costs as sanction for "time spent preparing the summary judgment

and sanctions motions against a complaint which, at the time, included the [sanctionable]

claims"); *Rubio*, 2005 WL 1498283, at *3 ("filing of such frivolous claims and failure to

withdraw them before Defendants incurred unnecessary costs constitutes bad faith" and

supported claim for attorneys' fees under 28 U.S.C. § 1927).

## CONCLUSION

For the foregoing reasons, pursuant to 28 U.S.C. § 1927 and this Court's inherent power,

the Court should compel Plaintiff and Ms. Frelix to reimburse Scotts for the expenses, costs, and

attorney's fees incurred in (i) reviewing, conducting research in opposition to, preparing for and

drafting responses to Plaintiff's February 20 motion to remand, March 19 motion for leave to

amend, and March 27 motion for leave to amend, (ii) preparing for and attending the May 2 oral

argument, (iii) reviewing, conducting research in opposition to, preparing for and drafting a

response to Plaintiff's pending May 20 motion, (iv) researching, preparing for and drafting the

instant motion, including any reply; and further grant Defendant ten days from the date of this

Court's ruling to submit a bill of costs, and an accompanying affidavit, demonstrating the exact

sums for which it

seeks reimbursement, as well as any further relief as the Court may deem appropriate.

Dated:  June 4, 2008                              JONES DAY

                                                      /s/ Craig S. Friedman
                                          _____
                                          Craig S. Friedman (CF-1988)
                                          csfriedman@jonesday.com
                                          Matthew W. Lampe (*pro hac vice*)
                                          mwlampe@jonesday.com
                                          222 East 41st Street
                                          New York, New York 10017-6702
                                          (212) 326-3939
                                          Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS

PURSUANT TO 28 U.S.C. § 1927 AND THIS COURT'S INHERENT POWERS to be served

on the following counsel of record this 4th of June, 2008 by forwarding a copy, by First Class

mail, addressed to:

> Sandra D. Frelix, Esq.
> 110 Wall Street, 11th Floor
> New York, New York 10005

/s/ Craig S. Friedman

Craig S. Friedman

NYI-4090837v9

# EXHIBIT L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARIA JACKSON,

                Plaintiff,

      -against-                             08 Civ. 1064 (LAK)

THE SCOTTS COMPANY,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/3/2008

### ORDER

Lewis A. Kaplan, *District Judge.*

        Defendant moves for sanctions, pursuant to the Court's inherent power, against both plaintiff and her counsel, Sandra D. Frelix, Esq., and, in addition, pursuant to 28 U.S.C. § 1927,[1] against Ms. Frelix. It seeks dismissal of the action and an order requiring plaintiff and Ms. Frelix to reimburse defendant for the costs, expenses, and reasonable attorney's fees incurred as a result of their vexatious and unreasonable multiplication of the proceedings. Plaintiff and her counsel, as has occurred previously, have failed to respond to the motion.

        Ms. Frelix already has been sanctioned twice in this action for frivolous assertions, most notably her baseless contention that the New York Workers' Compensation Law (the "WCL") proscribes discrimination on the basis of race – a contention that she repeatedly has made, even after having been sanctioned for doing so, in a vain attempt to have this action remanded to the state court from which it was removed, where she doubtless feels more comfortable. *See* Tr., May 2, 2008, at 6. This motion is occasioned by more of the same.

        In view of the default on the motion, it is unnecessary to say very much. As defendant argues, plaintiff's motion to amend and remand [DI 44] was entirely frivolous at least because it sought yet again to assert the claim of race discrimination based on the WCL and sought to reassert other causes of action that previously were dismissed by this Court. *See* Def. Mem. 9-12.

---

[1]    Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

2

This and prior motions for leave to amend plainly were filed in bad faith – indeed, although the Court previously avoided determining whether Ms. Frelix acted in bad faith, it is compelled in all the circumstances to the conclusion that she has acted in bad faith throughout this action. She has evidenced an unsettling willingness to say or do whatever she perceives might advance her goal of getting this case back to Bronx County Supreme Court without regard to case law or prior rulings of this Court. In view of Ms. Frelix's bad faith, which the Court finds is both objective and subjective, and unreasonable conduct and the fact that it has been undertaken for the improper purpose of obtaining a remand to which she is not entitled, sanctions under Section 1927 are appropriate.[2] *See, e.g., Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78-80 (2d Cir. 2000). Moreover, as defendant has pointed out, this is not the first court to sanction her.

The question of dismissal or other sanctions upon plaintiff is another matter. Defendant has failed even to attempt to demonstrate that plaintiff is responsible in any way for Ms. Frelix's behavior.

In all the circumstances, defendant's motion [DI 46] is granted to the extent that (1) defendant shall recover of Ms. Frelix, pursuant to 28 U.S.C. § 1927, the costs, expenses, and reasonable attorney's fees incurred by it in consequence of Ms. Frelix's repeated vexatious and unreasonable actions, and (2) Ms. Frelix is directed to furnish to her client copies of this order and the Court's previous orders sanctioning her and to file proof thereof on or before July 21, 2008. It is denied in all other respects, the denial being without prejudice insofar as it seeks sanctions against Ms. Frelix pursuant to the inherent power of the Court should the sanctions imposed pursuant to 28 U.S.C. § 1927 prove inadequate. Defendant may move within 14 days to fix the amount of the sanction to be imposed pursuant to this order.

SO ORDERED.

Dated:          July 3, 2008

Lewis A. Kaplan
United States District Judge

---

[2]

In view of Ms. Frelix's failure to oppose the sanctions motion, there is no need for a hearing or oral argument.

# EXHIBIT M

Craig S. Friedman (CF-1988)
Matthew W. Lampe (*pro hac vice* application pending)
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MARIA JACKSON,** | 08 Civ. 1064 (LAK) |
| **Plaintiff,** | |
| -against- | **ANSWER TO** |
| | **AMENDED COMPLAINT** |
| **THE SCOTTS COMPANY** | |
| **Defendant.** | |

Defendant The Scotts Company LLC (incorrectly named in the Complaint as "The Scotts Company") ("Defendant" or "Scotts"), by and through its undersigned counsel, hereby answers the Proposed Amended Verified Complaint ("Complaint") of Plaintiff Maria Jackson ("Plaintiff"), as follows:

## NATURE OF THE CLAIMS

1.      Denies each and every allegation in Paragraph 1 of the Complaint, except admits that Plaintiff purports to bring claims under the New York State Human Rights Law (N.Y. Exec. L. § 290 et seq.), New York City Human Rights Law (Admin. Code of the City of New York § 8-101 et seq.), New York State Workers' Compensation Law, and the Constitution of the State of New York, as well as claims of defamation, "economic discrimination," breach of implied contract to act in good faith, and failure to provide a reasonable accommodation, and further admits that Plaintiff seeks the relief described therein.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

279.    Plaintiff's defamation claim is barred, in whole or in part, by a qualified privilege.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

280.    Plaintiff's failure to accommodate claim is barred, in whole or in part, because any accommodation not provided would have constituted an undue hardship.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

281.    Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

282.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

WHEREFORE, Defendant demands judgment dismissing the Complaint with prejudice, together with the costs and disbursements of this action, reasonable attorneys' fees and such other and further relief as the Court deems just.

Dated:  April 11, 2008                    JONES DAY


                                          /s/ Craig S. Friedman
                                          _____
                                          Craig S. Friedman (CF-1988)
                                          Matthew W. Lampe (*pro have vice* admission
                                          pending)
                                          222 East 41st Street
                                          New York, New York 10017-6702
                                          (212) 326-3939
                                          Attorneys for Defendant