UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA JACKSON,

                    Plaintiff,

          -against-

THE SCOTTS COMPANY

                    Defendant.

**08 Civ. 1064 (LAK)**

**DECLARATION OF
CRAIG S. FRIEDMAN
IN SUPPORT OF DEFENDANT'S
<u>MOTION TO COMPEL</u>**

  I, CRAIG S. FRIEDMAN, declare under penalty of perjury that the following is true and correct:

  1  I am a member of the bar of this Court and an associate of Jones Day, counsel to Defendant The Scotts Company LLC.  I am fully familiar with this proceeding and the matters set forth herein.  I submit this declaration in support of Defendant's motion to compel.

  2.  Attached as Exhibit A is a copy of Defendant's First Set Of Interrogatories and attached as Exhibit B is a copy of Defendant's First Request For The Production Of Documents.

  3.  Attached as Exhibit C is a June 11, 2008 letter I wrote to Sandra Frelix, Esq.

  4.  Attached as Exhibit D is a copy of Plaintiff's interrogatory responses.

  5.  Attached as Exhibit E is a copy of Plaintiff's responses to Defendant's document requests.

  6.  Attached as Exhibit F is a July 1, 2008 letter I wrote to Ms. Frelix.

  7.  Attached as Exhibit G is a July 8, 2008 letter I wrote to Ms. Frelix.

  8.  Attached as Exhibit H is a copy of Plaintiff's amended interrogatory responses.

  9.  Attached as Exhibit I is a July 7, 2008 letter I wrote to Ms. Frelix.  On July 17, 2008, I telephoned Ms. Frelix and left her a voicemail requesting complete responses to Defendant's discovery requests and asking her to return my call.

  10.  Attached as Exhibit J is a July 21, 2008 letter I wrote to Ms. Frelix.

  11.  Attached as Exhibit K is a copy of the Amended Complaint, filed March 27, 2008.

  12.  Attached as Exhibit L is a copy of Plaintiff's FRCP 26(a) Initial Disclosures.

Executed on the 25th day of July, 2008.    /s/ Craig S. Friedman
New York, New York        Craig S. Friedman

# EXHIBIT A

Craig S. Friedman (CF-1988)
Matthew W. Lampe (admitted *pro hac vice*)
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARIA JACKSON, <br><br> Plaintiff, <br><br> -against- <br><br> THE SCOTTS COMPANY <br><br> Defendant. | **08 Civ. 1064 (LAK)** <br><br><br> **DEFENDANT'S FIRST** <br> **SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and Civil Rule 33.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendant The Scotts Company LLC (incorrectly named in the Complaint as "The Scotts Company") (hereinafter "Scotts" or "Defendant") requests that Plaintiff Maria Jackson ("Plaintiff" or "Jackson") answers fully and separately in writing and under oath the following interrogatories within 30 days of service.

## DEFINITIONS

Unless a contrary meaning appears in context, the following definitions apply:

(a)     "You," "Your," and "Plaintiff" mean plaintiff Maria Jackson and any person or

persons acting on her behalf, including, but not limited to, attorneys,

agents, advisors, investigators, representatives, employees and other persons acting on her behalf.

(b)     "Complaint" refers to the Proposed Amended Verified Complaint filed on March 27, 2008 in this action.

(c)     "Document" includes all materials within the scope of Rule 34(a) of the Federal Rules of Civil Procedure, including, but not limited to, any kind of tangible material, whether written, recorded, microfilmed, microfiched, photographed, computerized, reduced to an electronic or magnetic impulse or otherwise preserved or rendered, and also including, but not limited to, e-mail, papers, agreements, contracts, notes, memoranda, correspondence, letters, telegrams, telexes, statements, invoices, record books, reports, studies, analyses, minutes, records, accounting and financial books, transcriptions, negotiable instruments, deeds, deeds of trust, photographs, books, pamphlets, catalogues, brochures, extracts, working papers, charts, diaries, indices, tapes, wires, films, data sheets and cards, recordings and any and all other written, printed, recorded, transcribed, punched, taped, typed, filmed, duplicated, reproduced or other tangible matter in your possession, custody or control, including, but not limited to, originals, all file copies, all other copies, no matter how or by whom prepared, and all drafts prepared in connection with such writings.

(d)     "Communication" includes any statement or utterance, whether written or oral, made by one person to another, or in the presence of another, and any document (as defined above) delivered or sent from one person to another.

(e)    "Identify" when used in reference to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. When used in reference to a documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(f)    The terms "relating to" and "relate to" mean directly or indirectly mentioning, describing, pertaining to, being connected with, or reflecting upon the subject matter of the specific request.

(g)    The terms "and" and "or" have both conjunctive and disjunctive meanings, and the terms "each," "any," and "all" mean "each and every."

(h)    When appropriate, the singular shall encompass the plural, and vice versa.

## GENERAL INSTRUCTIONS

Each interrogatory is to be answered separately and specifically.

1.      Defendants hereby request, pursuant to Federal Rule of Civil Procedure 26(e), that you supplement or correct any responses later learned to be incomplete or incorrect immediately upon learning that a prior response was incomplete or incorrect.

2.      All information requested herein is to be set forth if it is in the possession or control of, or is available or accessible to, you or any of your agents, consultants, counsel, investigators, representatives or any other person or persons acting for you or on your behalf.

3.      If you cannot answer certain of the following interrogatories in full after exercising due diligence to secure the information to do so, answer to the extent possible and explain your inability to provide a complete answer.  State whatever information or knowledge you have about the unanswered portion of any interrogatory.

4.      If any information called for by an interrogatory is withheld on the basis of a claim of privilege, set forth the nature of the claimed privilege, the nature of the information with respect to which it is claimed, and all other information required under Local Civil Rule 26.2.

5.      Whenever an interrogatory requests the identification of a document, the answer shall state the name, address, position and organization of the author and each recipient of the document, the custodian of the document, the date of the document, and a brief description of the subject matter of the document.

6.      Whenever an interrogatory requests the identity of a person, state his or her full name, present or last known address, telephone number and position of employment at the time in question.

7.      Whenever an interrogatory requests the identity of an entity, state its name, address, telephone number and the type of business in which the entity engages.

8.      Whenever an interrogatory seeks a description of an act, transaction, occurrence, dealing or instance, state the date when it occurred; the place where it occurred; the identity of each person participating therein; the person on whose behalf each such person participated or purported to participate; the nature and substance of all conversation or oral communication occurring during, or in connection with the act, transaction, occurrence, dealing or instance; and identify all documents referring thereto or reflecting the act, transaction, occurrence, dealing or instance.

9.      Whenever an interrogatory asks for a date, state the exact day, month and year, if ascertainable, or, if not, the best approximation thereof.

NYI-4077119v3

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all persons whom you know or believe to possess

knowledge or information relating to any of the allegations, claims, or defenses in this case.

**INTERROGATORY NO. 2:** Identify each type or kind of damages you seek and, for each, state

the precise total amount of damages sought as of the date of these Interrogatories and the method

you used in arriving at this amount.

**INTERROGATORY NO. 3:** Identify all documents relating to or supporting your damages

claims.

**INTERROGATORY NO. 4:** Identify each physician, mental health professional and/or health

care provider who examined you and/or provided treatment to you for any physical, mental or

emotional conditions since 2001.

**INTERROGATORY NO. 5:** For each physician, mental health professional and/or health care

provider identified in the preceding interrogatory answer, identify the dates on which that

individual examined and/or provided treatment to you and identify any documents relating to

such examination or treatment.

**INTERROGATORY NO. 6:** If you claim that Scotts or any of its officers, directors, employees,

contractors, and/or representatives have caused you to experience any medical, psychological or

emotional condition for which you are seeking damages or which you claim is relevant to this

case, identify any doctors or other health care or mental health professionals who have

knowledge of such condition(s) and identify any documents relating to or describing the

condition(s).

INTERROGATORY NO. 7:  If you plan to call any treating physicians or other witnesses to testify about any conditions identified in your previous response, identify the witnesses, identify any report, or draft thereof, prepared by the witness; identify all documents and/or data relied upon by the witnesses in forming opinions; identify all other documents and/or data considered or reviewed by the witnesses in the course of forming opinions; and identify the instructions given to the witnesses.

INTERROGATORY NO. 8:  Identify each oral or written statement you have obtained from any person regarding the subject matter of this action, including the names and address of the person who gave the statement and the date the statement was obtained.

INTERROGATORY NO. 9:  Identify the name of each potential employer you have contacted for the purpose of obtaining employment subsequent to your employment with Scotts and, for each such potential employer, the employer's address, the name(s) of the person(s) at the employer you contacted, and any documents relating to your efforts to obtain such employment.

INTERROGATORY NO. 10:  Identify the name of each employer that has offered you employment subsequent to your employment with Scotts and, for each such employer, the employer's address, the name(s) of the person(s) at the employer who offered you such employment, and any documents relating to any such offer of employment.

INTERROGATORY NO. 11:  Identify the name of each employer for whom you have worked (including self-employment) subsequent to your employment with Scotts and, for each such employer, the employer's address, the name(s) of your immediate supervisor(s), and any

- 7 -

documents relating to such employment (including any documents describing benefits provided by any such employer).

Dated:  May 5, 2008

JONES DAY

_____
Craig S. Friedman (CF-1988)
Matthew W. Lampe (admitted *pro hac vice*)
222 East 41st Street
New York, New York 10017-6702
(212) 326-3939
Attorneys for Defendant

To:    Sandra Frelix, Esq.
       110 Wall Street, 11th Floor
       New York, New York 10005
       (212) 859-3509
       Attorney for Plaintiff

NYI-4077119v3

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing

DEFENDANT'S FIRST SET OF INTERROGATORIES to be served on the following counsel

of record this 5th day of May, 2008 by forwarding a copy, by First Class mail, addressed to:

> Sandra D. Frelix, Esq.
> 110 Wall Street, 11th Floor
> New York, New York 10005

Craig S. Friedman

NYI-4077119v3

# EXHIBIT B

Craig S. Friedman (CF-1988)
Matthew W. Lampe (admitted *pro hac vice*)
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA JACKSON,<br><br>                 Plaintiff,<br><br>     -against-<br><br>THE SCOTTS COMPANY<br><br>                 Defendant. | **08 Civ. 1064 (LAK)**<br><br><br>**DEFENDANT'S FIRST<br>REQUEST FOR THE<br><u>PRODUCTION OF DOCUMENTS</u>** |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant The Scotts Company LLC (incorrectly named in the Amended Complaint as "The Scotts Company") (hereinafter "Scotts" or "Defendant") hereby requests Plaintiff Maria Jackson (hereinafter "Plaintiff" or "Jackson") to produce the documents and things described below for inspection and copying within 30 days at the office of Jones Day, 222 East 41st Street, New York, New York 100017.

## <u>GENERAL INSTRUCTIONS</u>

1.      Each request for production of documents contained herein extends to all documents in your possession, custody or control or in the possession, custody or control of anyone acting on your behalf. A document is to be deemed in your possession, custody, or control (a) if it is in your physical custody, or (b) if it is in the physical custody of any other person and you (i) own such document in whole or in part, (ii) have a right, by contract, statute

or otherwise, to use, inspect, examine or copy such document on any terms, (iii) have an understanding, express or implied, that you may use, inspect, examine or copy such document on any terms or (iv) have, as a practical matter, been able to use, inspect, examine or copy such document when you sought to do so.

2.    If production is requested of a document that is no longer in your possession, custody or control, the answer should state (a) when the document was most recently in your possession, custody or control, (b) the disposition made of the document and (c) the identity of the person, if any, presently in possession, custody or control of such document. If the document has been destroyed, the answer should also state (a) the reason for its destruction, (b) the identity of the person who destroyed the document and (c) the identity of the person who directed that the document be destroyed.

Provide the following information for each document withheld on the basis of an assertion of privilege:

(a)    its date;

(b)    its title;

(c)    its author;

(d)    its addressee;

(e)    the identity of each person who received or saw the original or any copy of such document;

(f)    the claim of privilege under which it is withheld;

(g)    its general subject matter;

(h)    its present custodian; and

(i)    a description of the document that you would consider adequate to support your contention that it is privileged.

3.       If you cannot provide some or any of the requested documents (after exercising due diligence to secure them), so state and provide the documents requested to the extent possible, specifying the reasons for your inability to produce the remainder of the documents and stating whatever information or knowledge you have concerning the documents not produced.

4.       Defendant hereby requests that, after responding to these document production requests, you supplement or correct any responses or production of documents later learned to be incomplete or incorrect immediately upon learning that a prior response or production of documents was incomplete or incorrect.

The documents produced must be organized and labeled to correspond with the categories in the request.

## **DEFINITIONS**

Unless a contrary meaning appears in context, the following definitions apply:

(a)      "You," "Your," and "Plaintiff" mean plaintiff Maria Jackson and any person or persons acting on her behalf, including, but not limited to, attorneys, agents, advisors, investigators, representatives, employees and other persons acting on her behalf.

(b)      "Complaint" refers to the Proposed Amended Verified Complaint filed on March 27, 2008 in this action.

(c)      "Document" includes all materials within the scope of Federal Rule of Civil Procedure 34(a) including, but not limited to, any kind of tangible material, whether written, recorded, microfilmed, microfiched, photographed, computerized, reduced to an electronic or magnetic impulse or otherwise preserved or rendered, and also including, but not limited to, e-mails, papers, agreements, contracts, notes, memoranda, correspondence, letters, telegrams,

- 3 -

telexes, emails, statements, invoices, record books, reports, studies, analyses, minutes, records, accounting and financial books, transcriptions, negotiable instruments, deeds, deeds of trust, photographs, books, pamphlets, catalogues, brochures, extracts, working papers, charts, diaries, indices, tapes, wires, films, data sheets and cards, recordings and any and all other written, printed, recorded, transcribed, punched, taped, typed, filmed, duplicated, reproduced or other tangible matter in your possession, custody or control, including, but not limited to, originals, all file copies, all other copies, no matter how or by whom prepared, and all drafts prepared in connection with such writings.

(d)    "Communication" includes any statement or utterance, whether written or oral, made by one person to another, or in the presence of another, and any document (as defined above) delivered or sent from one person to another.

(e)    The terms "relating to" and "relate to" mean directly or indirectly mentioning, describing, pertaining to, being connected with, or reflecting upon the subject matter of the specific request.

(f)    The terms "and" and "or" have both conjunctive and disjunctive meanings, and the terms "each," "any," and "all" mean "each and every." When appropriate, the singular shall encompass the plural, and vice versa.

## DOCUMENTS TO BE PRODUCED

<u>Document Request No. 1:</u>    All documents identified or referred to in Plaintiff's responses to Defendant's First Set of Interrogatories.

<u>Document Request No. 2:</u>    All documents relating to each of the allegations in your Complaint and the defenses included in Defendant's Answer To Amended Complaint.

- 4 -

<u>Document Request No. 3:</u>    All documents relating to any statements made by any witnesses to the events alleged or claims asserted by you in the Complaint.

<u>Document Request No. 4:</u>    All documents relating to or substantiating any damages, injuries, or losses you claim to have suffered in connection with this action, including but not limited to bills (whether paid or unpaid), work sheets, correspondence, notes, memoranda, reports or statements of physicians, chiropractors, psychiatrists or other health care practitioners, as well as documents prepared by experts regarding damages.

<u>Document Request No. 5:</u>    All notes, calendars, correspondence, diaries or notations, writings or recordings of any type relating to the alleged wrongful acts by Defendant.

<u>Document Request No. 6:</u>    All documents sent to, prepared by, or received from any expert witness you intend to call at trial.

<u>Document Request No. 7:</u>    All documents relating to treatment provided by each physician, mental health professional and/or health care provider requested to be identified in Defendant's First Set of Interrogatories.  In addition, please execute the enclosed form authorizing each identified physician, mental health professional and/or health care provider to release medical records and information to Defendant's counsel.

<u>Document Request No. 8:</u>    All documents relating to your employment at Scotts including, but not limited to, documents concerning the commencement of such employment, changes in employment status, your performance, any disciplinary action against you, the end of such employment, any requests for FMLA or other leave, any grievances, correspondence or other documents concerning or arising during your employment with Scotts.

- 5 -

<u>Document Request No. 9:</u>    All documents relating to any proposed or actual assignment of you by Scotts to a particular job or position or your application or request for any such job or position.

<u>Document Request No. 10:</u>    All documents relating to any workers' compensation or unemployment compensation claims filed or payments received.

<u>Document Request No. 11:</u>    All documents relating to any application by you for disability benefits of any kind, temporary or permanent, whether relating to your employment with Scotts or relating to Social Security or other benefits, and any disability benefits, temporary or permanent, received to date.

<u>Document Request No. 12:</u>    All documents relating to any contacts with the Equal Employment Opportunity Commission, the National Labor Relations Board, the New York State Division of Human Rights, the New York City Commission on Human Rights, and/or any other administrative agency concerning your employment with Scotts or any alleged wrongful acts by Scotts.

<u>Document Request No. 13:</u>    All documents concerning wages, benefits, and terms and conditions of employment offered to or received by Plaintiff in connection with any work performed or made available to Plaintiff from 2005 to the present, including but not limited to, any self-employment since that date.

<u>Document Request No. 14:</u>    All documents concerning any income, salary, and/or benefits paid to Plaintiff from any source from 2005 through the present, including but not limited to

- 6 -

Plaintiff's Federal and State income tax returns (including all W-2 forms and schedules submitted therewith) for tax years 2005 through present.

Document Request No. 15:     All documents concerning the treatment or counseling of Plaintiff, either medical or non-medical, for any mental, emotional or physical injury, illness or condition allegedly caused in whole or in part by the conduct of Defendant.

Document Request No. 16:     Copies of the "reports" referred to in Paragraph 68 of the Complaint.

Document Request No. 17:     Copies of the "two letters addressed to D.M. McGarr" referred to in Paragraph 72 of the Complaint.

Document Request No. 18:     Copies of the "photos" referred to in Paragraph 135 and 138 of the Complaint.

Document Request No. 19:     A copy of the "formal report" referred to in Paragraph 188 of the Complaint.

Document Request No. 20:     A copy of the "policies and procedures" referred to in Paragraph 194 of the Complaint.

Document Request No. 21:     A copy of the "claim regarding her work related injuries" referred to in Paragraph 204 of the Complaint.

Document Request No. 22:     All documents not produced in response to the foregoing requests

NYI-4077117v3

that Plaintiff may seek to introduce at the trial of this action.

Dated:  May 5, 2008

JONES DAY

Craig S. Friedman (CF-1988)
Matthew W. Lampe (admitted *pro hac vice*)
222 East 41st Street
New York, New York 10017-6702
(212) 326-3939
Attorneys for Defendant

To:    Sandra Frelix, Esq.
       110 Wall Street, 11th Floor
       New York, New York 10005
       (212) 859-3509
       Attorney for Plaintiff

- 8 -

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing

DEFENDANT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS to be served

on the following counsel of record this 5th day of May, 2008 by forwarding a copy, by First Class

mail, addressed to:

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

Craig S. Friedman

NYI-4077117v3

# EXHIBIT C

# JONES DAY

222 EAST 41ST STREET · NEW YORK, NEW YORK 10017

TELEPHONE (212) 326-3939 · FACSIMILE (212) 755-7306

Direct Number: (212) 326-3414
csfriedman@jonesday.com

JP012279
906346-011032

June 11, 2008

VIA FACSIMILE (212) 862-8212

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

          Re:    Jackson v. The Scotts Company
                 08 Civ. 1064 (LAK)

Dear Ms. Frelix:

          I am writing to confirm our agreements from yesterday's telephone conversations.

- First, we agreed that Plaintiff's deadline to respond to Defendant's First Request For The Production Of Documents and Defendant's First Set Of Interrogatories is extended to and including June 23, 2008.

- Second, we agreed that Plaintiff's deposition shall be adjourned to a date convenient for the parties in mid-July. Please provide me with dates on which Plaintiff is available to appear for her deposition.

- Third, we agreed that Plaintiff would provide Defendant with a computation of each category of her damages, and the documents upon which each computation is based, in compliance with Federal Rule of Civil Procedure 26(a) by June 23, 2008. I informed you that—as this computation and the supporting documents are more than six weeks overdue—Defendant will move the Court to compel the production of these required items if Plaintiff does not satisfy the requirements of Rule 26(a) by June 23, 2008.

- Fourth, we agreed that Plaintiff's deadline to reply in support of her May 20, 2008 Motion And Notice Of Motion To Amend The Complaint And Remand Action To State Court is extended to and including June 30, 2008. You provided a stipulation reflecting this agreement to me by facsimile, which I signed and returned yesterday afternoon. You told me that you would file the stipulation with the Court yesterday evening in the S.D.N.Y. Night Deposit Box in an envelope addressed to Judge Kaplan. Please provide me with a copy of the fully executed stipulation that was filed along with any cover letter included in the envelope for Judge Kaplan.

NY1-4095502v1

ATLANTA  ·  BEIJING  ·  BRUSSELS  ·  CHICAGO  ·  CLEVELAND  ·  COLUMBUS  ·  DALLAS  ·  FRANKFURT  ·  HONG KONG  ·  HOUSTON
IRVINE  ·  LONDON  ·  LOS ANGELES  ·  MADRID  ·  MILAN  ·  MOSCOW  ·  MUNICH  ·  NEW DELHI  ·  NEW YORK  ·  PARIS  ·  PITTSBURGH
SAN DIEGO  ·  SAN FRANCISCO  ·  SHANGHAI  ·  SILICON VALLEY  ·  SINGAPORE  ·  SYDNEY  ·  TAIPEI  ·  TOKYO  ·  WASHINGTON

JONES DAY

Sandra D. Frelix, Esq.
June 11, 2008
Page 2

- Fifth, we agreed that Plaintiff's time to respond to Defendant's June 4, 2008 Motion For Sanctions Pursuant To 28 U.S.C. § 1927 And The Court's Inherent Power, and Defendant's Motion For Sanctions Pursuant To Federal Rule Of Civil Procedure 11, is extended to and including July 2, 2008. We also agreed that Defendant's time to reply in support of these motions is extended to July 14, 2008. We agreed that you would provide me with a stipulation reflecting these dates for each motion to review and sign, and you would then file the stipulations with the Court.

Please telephone me if you have any questions.

Very truly yours,

Craig S. Friedman

## Confirmation Report — Memory Send

Page        : 001
Date & Time: Jun-11-08  11:08
Line 1      : +
Line 2      :
Machine ID  :            7144

| | | |
|---|---|---|
| Job number | : | 802 |
| Date | : | Jun-11 11:07 |
| To | : | ☎912128628212 |
| Number of pages | : | 003 |
| Start time | : | Jun-11 11:07 |
| End time | : | Jun-11 11:08 |
| Pages sent | : | 003 |
| Status | : | OK |

Job number     : 802            *** SEND SUCCESSFUL ***



**Facsimile Transmission**

222 East 41st Street ▪ New York, New York 10017 ▪ (212) 326-3939
Facsimile: (212) 755-7306
cafriedman@jonesday.com

**June 11, 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Frelix, Esq.**

Company:

Telephone No.: **(212) 859-3509**

Send Copies To:

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):    **3**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **JP012279**

CAM No.:    **906346-011032**

☐ **Copies distributed**    _____
                            Operator's Initials

Re:    **Jackson v. The Scotts Company**
       **08 Civ. 1064 (LAK)**

NOTICE: This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible. Please ask for the facsimile operator.
NYI-4082306v2

ATLANTA  ▪  BEIJING  ▪  BRUSSELS  ▪  CHICAGO  ▪  CLEVELAND  ▪  COLUMBUS  ▪  DALLAS  ▪  FRANKFURT  ▪  HONG KONG  ▪  HOUSTON
IRVINE  ▪  LONDON  ▪  LOS ANGELES  ▪  MADRID  ▪  MILAN  ▪  MOSCOW  ▪  MUNICH  ▪  NEW DELHI  ▪  NEW YORK  ▪  PARIS  ▪  PITTSBURGH
SAN DIEGO  ▪  SAN FRANCISCO  ▪  SHANGHAI  ▪  SILICON VALLEY  ▪  SINGAPORE  ▪  SYDNEY  ▪  TAIPEI  ▪  TOKYO  ▪  WASHINGTON



# Facsimile Transmission

222 East 41st Street • New York, New York 10017 • (212) 326-3939
Facsimile: (212) 755-7306
csfriedman@jonesday.com

**June 11, 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Frelix, Esq.**

Company:

Telephone No.: **(212) 859-3509**

Send Copies To:

☐ **Copies distributed** _____
Operator's initials

Re:    **Jackson v. The Scotts Company
08 Civ. 1064 (LAK)**

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):    **3**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **JP012279**

CAM No.:    **906346-011032**

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible. Please ask for the facsimile operator.

NYI-4062306v2

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

# EXHIBIT D

**SANDRA D. FRELIX, ESQ.**
ATTORNEY AT LAW
110 WALL STREET, 11th FLOOR
NEW YORK, NEW YORK 10005
212.859.3509 Office
212.862.8212 Fax
917.572.3806 Cell

June 23, 2008

Craig S. Friedman, Esq.
JONES DAY
222 East 41st Street
New York, New York 10017

Re:     Maria Jackson v. The Scotts Company, Index #: 08 Civ. 1064 (LAK)

Dear Mr. Friedman:

Enclosed please find Plaintiff's Responses to Defendant's First Interrogatory Requests and Plaintiff's Supplemental Disclosure Pursuant to F.R.C.P. 26(a)(1)(A)(iii).

If you have any questions or concerns regarding the foregoing please contact me immediately.

Very truly yours,

Sandra D. Frelix, Esq.

Enc.

SANDRA D. FRELIX, ESQ. (SF-0421)
110 Wall Street
11th Floor
New York, New York 10005
(212) 859-3509
(212) 862-8212 (facsimile)
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARIA JACKSON,

                        Plaintiff,

      -against-

THE SCOTTS COMPANY,

                        Defendant.
----------------------------------------------------------X

Index No. 08 CV 1064 (LAK)

PLAINTIFF'S RESPONSES
TO DEFENDANT'S FIRST
<u>INTERROGATORY REQUESTS</u>

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST INTERROGAORY REQUESTS

Pursuant to Rules 26 and 33, of the Federal Rules of Civil Procedure, and Civil

Rule 33.3 of the Local Rules of the United States District Court for the Southern and

Eastern Districts of New York, Plaintiff Maria Jackson hereby responds to the

Defendant's First Set of Interrogatory Request as follows:

### INTERROGATORY NO. 1:

Identify all persons whom you know or believe to possess knowledge or information

relating to any of the allegations, claims, or defenses in this case.

### RESPONSE TO INTERROGATORY REQUEST NO. 1:

Maria Jackson, Jeremy Fass, Jim Fitch, Barbara D'Ana, Patrick McGarr, Matthew Botz,

Robert Anderson, Mike Gabriele, Tina Badger, Ed Wolstelund, Ernie Rios, Jimmy

Obray, Jason Cooper, Patrick Flagherty, Matthew Kilgo, M.D., Mike Carbanara, Tyrone Jackson, Henry Williams, Kisha Snow, Keith Conard, Rob Lamp, Brenda Barker, Jane Towle, and Collette Dennis.

## INTERROGATORY NO. 2:

Identify each type or kind of damages you seek and, for each, state the precise total amount of damages sought as of the date of these Interrogatories and the method you used in arriving at this amount.

## RESPONSE TO INTERROGATORY REQUEST NO. 2:

Plaintiff is willing but unable to provide this information at this time. Due to financial constraints within her family she has not been able to hire the expert needed to calculate the damages sought by the defense.

## INTERROGATORY NO. 3:

Identify all documents relating to or supporting your damages claims.

## RESPONSE TO INTERROGATORY REQUEST NO. 3:

Please refer to the response for interrogatory number 3.

## INTERROGATORY NO. 4:

Identify each physician, mental health professional and/or health care provider who examined you and/or provided treatment to you for any physical, mental or emotional conditions since 2001.

## RESPONSE TO INTERROGATORY REQUEST NO. 4:

Dr. James Liquori, Dr. Richard Obedian, Dr. Richard Matteo, and Dr. Matthew Kilgo.

**INTERROGATORY NO. 5:**

For each physician, mental health professional and/or health care provider identified in the preceding interrogatory answer, identify the dates on which that individual examined and/or provided treatment to you and identify any documents relating to such examination or treatment.

**RESPONSE TO INTERROGATORY REQUEST NO. 5:**

We are waiting to receive the dates of treatment for each physician. Once we receive the information it will be immediately forwarded to counsel for the Defendant.

**INTERROGATORY NO. 6:**

If you claim that Scotts or any of its officers, directors, employees, contractors, and/or representatives have caused you to experience any medical, psychological or emotional condition for which you are seeking damages or which you claim is relevant to this case, identify any doctors or other health care or mental health professionals who have knowledge of such condition(s) and identify any documents relating to or describing the condition(s).

**RESPONSE TO INTERROGATORY REQUEST NO. 6:**

Dr. Matthew Kilgo, Dr. James Liquori, and Dr. Richard Obedian.

**INTERROGATORY NO. 7:**

If you plan to call any treating physicians or other witnesses to testify about any conditions identified in your previous response, identify the witnesses, identify any report, or draft thereof, prepared by the witness; identify all documents and/or documents and/or data relied upon by the witnesses in forming opinions; identify all other

documents and/or data considered or reviewed by the witnesses in the course of forming

opinions; and identify the instructions given to the witnesses.

## RESPONSE TO INTERROGATORY REQUEST NO. 7:

Dr. Matthew Kilgo, Dr. James Liquori, and Dr. Richard Obedian.

We will utilize the appropriate medical reports and other relevant medical documents that

support the injuries suffered by Mrs. Jackson as a result of wrongdoing by the Defendant.

We are unable to "identify the instructions given to the witnesses" due to the

interrogatory being vague and ambiguous.

## INTERROGATORY NO. 8:

Identify each oral or written statement you have obtained from any person regarding the

subject matter of this action, including the names and address of the person who gave the

statement and the date the statement was obtained.

## RESPONSE TO INTERROGATORY REQUEST NO. 8:

We are unable to respond to this interrogatory due to the fact that it is vague and

ambiguous, broad in scope, too general and lacks specificity.

## INTERROGATORY NO. 9:

Identify the name of each potential employer you have contacted for the purpose of

obtaining employment subsequent to your employment with Scotts and, for each such

potential employer's address, the name(s) of the person(s) at the employer you contacted,

and any documents relating to your efforts to obtain such employment.

## RESPONSE TO INTERROGATORY REQUEST NO. 9:

Mrs. Jackson is has been disabled since on or about January 10, 2005 as a result to the

injuries she suffered while performing her job duties for the Defendant.

## INTERROGATORY NO. 10:

Identify the name of each employer that has offered you employment subsequent to your employment with Scotts and, for each such employer, the employer's address, the name(s) of the person(s) at the employer who offered you such employment, and any documents relating to any such offer of employment.

## RESPONSE TO INTERROGATORY REQUEST NO. 10:

Please refer to interrogatory #9.

## INTERROGATORY NO. 11:

Identify the name of each employer for whom you have worked (including self-employment) subsequent to your employment with Scotts and, for each such employer, the employer's address, the name(s) of your immediate supervisor(s), and any documents relating to such employment (including any documents describing benefits provided by any such employer).

## RESPONSE TO INTERROGATORY REQUEST NO. 11:

Please refer to interrogatory #9.

Dated: New York, New York
       June 21, 2008

                    Respectfully submitted,

                    SANDRA D. FRELIX, ESQ.

                    By: _Sandra W. Frelix_____
                         Sandra D. Frelix, Esq. (SF-0421)
                         110 Wall Street, 11th Floor
                         New York, NY  10005
                    Telephone:  (212) 859-3509
                    Facsimile:    (212) 862-8212

                    ATTORNEY FOR PLAINTIFF


To:    Craig S. Friedman, Esq. (CF-1988)
       Matthew W. Lampe, Esq.
       JONES DAY
       222 East 41st Street
       New York, New York 10017

       ATTORNEYS FOR DEFENDANT

Index No. : 08 CV 1064 (LAK)
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA JACKSON

*Plaintiff,*

-against-

THE SCOTTS COMPANY

*Defendant.*

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST INTERROGATORY REQUESTS

Sandra D. Frelix, Esq.
Attorney at Law
110 Wall Street, 11th Floor
New York, New York 10005
(212) 859-3509
ATTORNEY FOR PLAINTIFF

*To:* Craig S. Friedman, Esq. (CF-1988)
Matthew W. Lampe, Esq.
JONES DAY
222 East 41st Street
New York, New York 10017
ATTORNEYS FOR DEFENDANT

*Service of a copy of the within*        *is hereby*
*admitted.*
*Dated*:

*NOTICE OF SETTLEMENT:*
    *PLEASE TAKE NOTICE*
    that a      of which the within is a true copy will be presented for settlement to
one of the judges of the within named court at      on      200   , at 9:30 A.
M.

    *Dated*:
    *To:*

# EXHIBIT E

SANDRA D. FRELIX, ESQ. (SF-0421)
110 Wall Street
11th Floor
New York, New York 10005
(212) 859-3509
(212) 862-8212 (facsimile)
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MARIA JACKSON,                                             Index No. 08 CV 1064 (LAK)

                              Plaintiff,                   PLAINTIFF'S RESPONSES
                                                           TO DEFENDANT'S FIRST
                                                           REQUEST FOR PRODUCTION
          -against-                                        OF DOCUMENTS

THE SCOTTS COMPANY,

                              Defendant.
----------------------------------------------------------X

### RESPONSES TO DEFENDANTS' SPECIFIC DOCUMENT REQUESTS

Pursuant to Rules 26 and 33, of the Federal Rules of Civil Procedure, and Civil

Rule 33.3 of the Local Rules of the United States District Court for the Southern and

Eastern Districts of New York, Plaintiff Maria Jackson hereby responds to the

Defendant's First Request for the Production of Documents as follows:

### GENERAL OBJECTIONS

The following General Objections apply to and are expressly made part of

Plaintiff's specific responses, set forth below, to each Document Request.

1.      Plaintiff objects to Defendant's document requests to the extent they

request information beyond the scope of document requests permitted under the Federal

Rules of Civil Procedure and the Local Rules for the Southern and Eastern Districts of

New York.

2.      Plaintiff object to Defendant's document requests to the extent that they call for disclosure and/or production of documents protected by the attorney-client privilege, work product doctrine, or other privilege, or which are otherwise immune from discovery. Inadvertent production of any such documents shall not constitute a waiver of any privilege with respect to the subject matter thereof or the information contained therein, and shall not waive the right of Plaintiff to object to the use of any such information and/or document (or the information contained therein) during any subsequent proceeding.

3.      Plaintiff objects to Defendant's document requests to the extent that they call for disclosure of (i) confidential documents and/or (ii) personal documents about individuals who are not parties to this action.

4.      Plaintiff objects to Defendant's document requests on the grounds that they are overbroad and unduly burdensome to the extent they seek documents without specifying any time period for such information of documents.

5.      Plaintiff objects to Defendant's interrogatories on the grounds that they are vague and ambiguous, broad in scope, too general and lacks specificity to the extent they seek information without specifying any time period for such information of documentation.

6.      Plaintiff reserves the right to supplement her responses to the First Set for Document Requests and to assert additional objections.

2

**DOCUMENT REQUEST NO. 1:**

All documents identified or referred to in Plaintiff's responses to Defendant's First Set of

Interrogatories.

**RESPONSE TO DOCUMENT REQUEST NO. 1:**

The documents: P1 – P169.

**DOCUMENT REQUEST NO. 2:**

All documents relating to each of the allegations in your Complaint and the defenses

included in Defendant's Answer To Amended Complaint.

**RESPONSE TO DOCUMENT REQUEST NO. 2:**

The documents: P1 – P169.

**DOCUMENT REQUEST NO. 3:**

All documents relating to any statements made by any witnesses to the events alleged or

claims asserted by you in the Complaint.

**RESPONSE TO DOCUMENT REQUEST NO. 3:**

The document: P85.

**DOCUMENT REQUEST NO. 4:**

All documents relating to or substantiating any damages, injuries, or losses you claim to

have suffered in connection with this action, including but not limited to bills (whether

paid or unpaid), work sheets, correspondence, notes, memoranda, reports or statements of

physicians, chiropractors, psychiatrists or other health care practitioners, as well as

documents prepared by experts regarding damages.

**RESPONSE TO DOCUMENT REQUEST NO. 4:**

The documents: P1 – P7; P8 – P24; P25 – P84; P85; P121 – P137; P142 – P165.

3

**DOCUMENT REQUEST NO. 5:**

All notes, calendars, correspondence, diaries or notations, writings or recordings of any type relating to the alleged wrongful acts by Defendant.

**RESPONSE TO DOCUMENT REQUEST NO. 5:**

The documents: P1 – P7; P8 – P24; P25 – P84; P85; P121 – P137; P142 – P165; P166 – 169.

**DOCUMENT REQUEST NO. 6:**

All documents sent to, prepared by, or received from any expert witness you intend to call at trial.

**RESPONSE TO DOCUMENT REQUEST NO. 6:**

The documents: P8 – P24; P142 – P165.

**DOCUMENT REQUEST NO. 7:**

All documents relating to treatment provided by each physician, mental health professional and/or health care provider requested to be identified in Defendant's First Set of Interrogatories.  In addition, please execute the enclosed form authorizing each identified physician, mental health professional and/or health care provider to release medical records and information to Defendant's counsel.

**RESPONSE TO DOCUMENT REQUEST NO. 7:**

The documents: P8 – P24; P142 – P165.

**DOCUMENT REQUEST NO. 8:**

All documents relating to your employment at Scotts including, but not limited to, documents concerning the commencement of such employment, changes in employment status, your performance, any disciplinary action against you, the end of such

employment, any requests for FMLA or other leave, any grievances, correspondence or other documents concerning or arising during your employment with Scotts.

**RESPONSE TO DOCUMENT REQUEST NO. 8:**

The documents: P1 – P169.

**DOCUMENT REQUEST NO. 9:**

All documents relating to any proposed or actual assignment of you by Scotts to a particular job or position or your application or request for any job or position.

**RESPONSE TO DOCUMENT REQUEST NO. 9:**

The documents: P86 – P120.

**DOCUMENT REQUEST NO. 10:**

All documents relating to any workers' compensation or unemployment compensation claims filed or payments received.

**RESPONSE TO DOCUMENT REQUEST NO. 10:**

The documents: P1 – P7.

**DOCUMENT REQUEST NO. 11:**

All documents relating to any application by you for disability benefits of any kind, temporary or permanent, whether relating to your employment with Scotts or relating to Social Security or other benefits, and any disability benefits, temporary or permanent, received to date.

**RESPONSE TO DOCUMENT REQUEST NO. 11:**

The documents: P142 – P165.

**DOCUMENT REQUEST NO. 12:**

All documents relating to any contacts with the Equal Employment Opportunity
Commission, the National Labor Relations Board, the New York State Division of
Human Rights, the New York City Commission on Human Rights, and/or any other
administrative agency concerning your employment with Scotts or any alleged wrongful
acts by Scotts.

**RESPONSE TO DOCUMENT REQUEST NO. 12:**

The documents: P121 – P137.

**DOCUMENT REQUEST NO. 13:**

All documents concerning wages, benefits, and terms and conditions of employment
offered to or received by Plaintiff in connection with any work performed or made
available to Plaintiff from 2005 to the present, including but not limited to, any self-
employment since that date.

**RESPONSE TO DOCUMENT REQUEST NO. 13:**

The documents: P86 – P120.

**DOCUMENT REQUEST NO. 14:**

All documents concerning any income, salary, and/or benefits paid to Plaintiff from any
source from 2005 through the present, including but not limited to Plaintiff's Federal and
State income tax returns (including all W-2 forms and schedules submitted therewith) for
tax years 2005 through the present.

**RESPONSE TO DOCUMENT REQUEST NO. 14:**

Requested documents do not exist.

6

**DOCUMENT REQUEST NO. 15:**

All documents concerning the treatment or counseling of Plaintiff, either medical or non-medical, for any mental, emotional or physical injury, illness or condition allegedly caused in whole or in part by the conduct of Defendant.

**RESPONSE TO DOCUMENT REQUEST NO. 15:**

Currently, requested documents do not exist.

**DOCUMENT REQUEST NO. 16:**

Copies of the "report" referred to in Paragraph 68 of the Complaint.

**RESPONSE TO DOCUMENT REQUEST NO. 16:**

Plaintiff is not in possession of requested documents. But will provide the defense with said documents once in possession of them.

**DOCUMENT REQUEST NO. 17:**

Copies of the "two letters addressed to D.M. McGarr" referred to in Paragraph 72 of the Complaint.

**RESPONSE TO DOCUMENT REQUEST NO. 17:**

The documents: P128 & P129.

**DOCUMENT REQUEST NO. 18:**

Copies of the "photos" referred to in Paragraph 135 and 138 of the Complaint.

**RESPONSE TO DOCUMENT REQUEST NO. 18:**

The documents: P166 – P169.

**DOCUMENT REQUEST NO. 19:**

A copy of the "formal report" referred to in Paragraph 188 of the Complaint.

**RESPONSE TO DOCUMENT REQUEST NO. 19:**

Currently, requested document does not exist.

**DOCUMENT REQUEST NO. 20:**

A copy of the "policies and procedures" referred to in Paragraph 194 of the Complaint.

**RESPONSE TO DOCUMENT REQUEST NO. 20:**

The documents: P135 – P137.

**DOCUMENT REQUEST NO. 21:**

A copy of the "claim regarding her work related injuries" referred to in Paragraph 204 of

the Complaint.

**RESPONSE TO DOCUMENT REQUEST NO. 21:**

Please refer to verified complaint in this case.

**DOCUMENT REQUEST NO. 22:**

All documents not produced in response to the foregoing requests that Plaintiff may seek

to introduce at the trial of this action.

**RESPONSE TO DOCUMENT REQUEST NO. 22:**

Plaintiff reserve the right to supplement her responses to the First Set for Document

Requests.

Dated: New York, New York
      June 28, 2008

                              Respectfully submitted,

                              SANDRA D. FRELIX, ESQ.

                              By: _____
                                    Sandra D. Frelix, Esq. (SF-0421)
                                    110 Wall Street, 11th Floor
                                    New York, NY 10005
                              Telephone: (212) 859-3509
                              Facsimile: (212) 862-8212

                              ATTORNEY FOR PLAINTIFF


To:    Craig S. Friedman, Esq. (CF-1988)
       Matthew W. Lampe, Esq.
       JONES DAY
       222 East 41st Street
       New York, New York 10017

       ATTORNEYS FOR DEFENDANT

Index No. : 08 CV 1064 (LAK)
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIA JACKSON

*Plaintiff,*

-against-

THE SCOTTS COMPANY

*Defendant.*

---

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

---

Sandra D. Frelix, Esq.
Attorney at Law
110 Wall Street, 11th Floor
New York, New York 10005
(212) 859-3509
**ATTORNEY FOR PLAINTIFF**

---

*To:* Craig S. Friedman, Esq. (CF-1988)
Matthew W. Lampe, Esq.
JONES DAY
222 East 41st Street
New York, New York 10017
ATTORNEYS FOR DEFENDANT

---

*Service of a copy of the within*                                                    *is hereby*
*admitted.*
*Dated*:

_____

---

*NOTICE OF SETTLEMENT:*
   *PLEASE TAKE NOTICE*
      that a                          of which the within is a true copy will be presented for settlement to
      one of the judges of the within named court at                          on                 200   , at 9:30 A.
      M.

      *Dated*:
      *To*:

# EXHIBIT F

# JONES DAY

222 EAST 41ST STREET · NEW YORK. NEW YORK 10017-6702
TELEPHONE  212-326-3939 · FACSIMILE  212-755-7306

Direct Number  (212) 326-3414
csfriedman@jonesday.com

JP012279                              July 1, 2008
906346-011032

<u>VIA FACSIMILE (212) 862-8212 & FIRST CLASS MAIL</u>

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

                Re:    Jackson v. The Scotts Company
                        <u>08 Civ. 1064 (LAK)</u>

Dear Ms. Frelix:

I have reviewed Plaintiff's Responses To Defendant's First Interrogatory Requests, which I received by mail on June 27, 2008, and they are deficient in several respects.

<u>Plaintiff's Responses Do Not Comply With FRCP 33(b)</u>

Pursuant to Federal Rule of Civil Procedure ("FRCP") 33(b)(3), "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Moreover, FRCP 33(b)(5) requires that the "person who makes the answers [to interrogatories] must sign them, and the attorney who objects must sign any objections."

Plaintiff's responses to Defendant's interrogatories were neither signed by Plaintiff nor answered under oath. Therefore, please provide a supplemental response signed by Plaintiff as well as a verification, signed under oath by Plaintiff, certifying the truthfulness of her responses to Defendant's interrogatories.

<u>Interrogatory Nos. 1 and 4</u>

Interrogatory No. 1 asks Plaintiff to "[i]dentify all persons whom you know or believe to possess knowledge or information relating to any of the allegations, claims, or defenses in this case." Interrogatory No. 4 asks Plaintiff to "[i]dentify each physician, mental health professional and/or health care provider who examined . . . and/or . . . . provided treatment to [Plaintiff] for any physical, mental or emotional conditions since 2001." Defendant's First Set Of Interrogatories defines "identify" as giving the "person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment."

Plaintiff did not object to either of these interrogatories. Plaintiff's Response To Interrogatory No. 1 lists the names of twenty-five natural persons. Plaintiff's Response to Interrogatory No. 4, similarly, provides the names of four natural persons. Plaintiff, however, failed to provide the

NYI-4101369v1

JONES DAY

Sandra D. Frelix, Esq.
July 1, 2008
Page 2

present or last known address and the present or last known place of employment of any of the persons listed.

Interrogatory Nos. 2 and 3

Interrogatory No. 2 asks Plaintiff to "[i]dentify each type or kind of damages [she] seek[s] and, for each, state the precise total amount of damages sought as of the date of these Interrogatories and the method . . . used in arriving at this amount." Likewise, Interrogatory No. 3 asks Plaintiff to "[i]dentify all documents relating to or supporting [her] damages claims."

Plaintiff did not object to either of these interrogatories. Instead, Plaintiff wrote that she "is willing to but unable to provide this information at this time. Due to financial constraints within her family she has not been able to hire the expert needed to calculate the damages sought by the defense."

Plaintiff's responses are plainly deficient. With regard to Interrogatory No. 2, it is not believable that an expert is necessary for a basic calculation of lost wages and other damages—Plaintiff is well aware of what her salary was at Scotts, and she would further know whatever income she has received since her termination. While Plaintiff might need to supplement her disclosures later if she retains an economist or accountant, her refusal to disclose alleged damages and computations at this stage, based on what information is available to her now, is unacceptable.

Plaintiff's Response to Interrogatory No. 3 is another example of Plaintiff ducking her responsibilities. Plaintiff's ability to hire an expert has absolutely no bearing on her obligation to identify and produce the documents relating to or supporting her damages claims. Certainly, certain documents on which her computations are based are in her possession now. This includes, but is not limited to, her tax returns, W-2 forms, medical bills, and other documents which would purport to show her damages. Therefore, please provide a supplemental response correcting these deficiencies.

Interrogatory No. 5

Interrogatory No. 5 asks Plaintiff to identify, for each physician, mental health professional and/or health care provider identified in response to Interrogatory No. 4, the "dates on which that individual examined and/or provided treatment to [Plaintiff]" and "any documents relating to such examination or treatment." The term "identify," as it relates to documents, means "to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s)."

Plaintiff did not object to Interrogatory No. 5. Instead, she provides an incomplete response. Plaintiff states that "[w]e are waiting to receive the dates of treatment for each physician" and that "[o]nce we receive the information it will be immediately forwarded to counsel for the

JONES DAY

Sandra D. Frelix, Esq.
July 1, 2008
Page 3

Defendant." Plaintiff's response, however, fails to respond to the portion of the interrogatory asking Plaintiff to "identify any documents relating to [Plaintiff's] examination or treatment." Therefore, please provide a supplemental response identifying, as that term is defined in Defendant's First Set Of Interrogatories, "any documents relating to [Plaintiff's] examination or treatment" for each medical care provider listed in Response To Interrogatory No. 4.

Interrogatory No. 6

Interrogatory No. 6 asks Plaintiff, if she claims that "Scotts . . . caused [Plaintiff] to experience any medical, psychological or emotional condition for which [she is] seeking damages or which [she] claim[s] is relevant to this case," to "identify any doctors or other health care or mental health professionals who have knowledge of such condition(s) and identify any documents relating to or describing the condition(s)."

Plaintiff did not object to this Interrogatory. Instead, she lists the names of four physicians. This response is deficient for several reasons. First, as discussed above, this response does not comply with the definition of the word "identify," as it relates to individuals, because Plaintiff did not provide the present or last known address of these individuals. Second, this response ignores the portion of the interrogatory asking Plaintiff to "identify any documents relating to or describing" her medical conditions. Therefore, please provide a supplemental response correcting these deficiencies.

Interrogatory No. 7

Interrogatory No. 7 states that, if Plaintiff plans "to call any treating physicians or other witnesses to testify about any conditions identified in [her] previous response," Plaintiff should "identify the witnesses, identify any report, or draft thereof, prepared by the witness; identify all documents and/or data relied upon by the witnesses in forming opinions; identify all other documents and/or data considered or reviewed by the witnesses in the course of forming opinions; and identify the instructions given to the witnesses."

In response, Plaintiff lists the names of three physicians, states that she will "utilize the appropriate medical reports and other relevant medical documents that support the injuries suffered by Mrs. Jackson as a result of wrongdoing by Defendant," and further states that she is "unable to 'identify the instructions given to the witnesses' due to the interrogatory being vague and ambiguous."

First, this response is deficient because she did not provide the addresses of the three physicians listed. Second, this response is deficient because, although Plaintiff states that she will "utilize the appropriate medical records and other medical documents that support the injuries" she purportedly suffered, she fails to "identify" these documents. That is, Plaintiff must give the type of the documents, general subject matter of the documents, the dates of these documents,

NYI-4101369v1

JONES DAY

Sandra D. Frelix, Esq.
July 1, 2008
Page 4

and the authors, addressees, and recipients of these documents. Third, Plaintiff makes an unsupportable objection that the phrase "identify the instructions given to the witnesses" is "vague and ambiguous." This request clearly requires Plaintiff to identify any instructions given by Plaintiff to her treating physicians or any other witness she intends to call to trial to discuss alleged medical conditions for which she is seeking damages. Therefore, please provide a supplemental response correcting these deficiencies.

Interrogatory No. 8

Interrogatory No. 8 seeks "each oral or written statement [Plaintiff has] obtained from any person regarding the subject matter of this action, including the names and addresses of the person who gave the statement and the date the statement was obtained." Plaintiff objects to this interrogatory on the grounds that "it is vague and ambiguous, broad in scope, too general and lacks specificity."

Plaintiff's objection is without merit. Far from "vague and ambiguous," this interrogatory clearly asks Plaintiff to identify oral and written statements she has obtained. Likewise, this interrogatory is not "broad in scope, too general," or lacking in "specificity." It is narrowly tailored to the subject matter of this action—the claims and allegations contained in Plaintiff's March 27, 2008 Amended Complaint. Therefore, please provide a supplemental response that complies with Interrogatory No. 8.

Interrogatory Nos. 9-11

Interrogatory No. 9 asks Plaintiff to "identify the name of each potential employer [she has] contacted for the purpose of obtaining employment subsequent to [her] employment with Scotts," the "employer's address, the name(s) of the person(s) at the employer [Plaintiff] contacted, and any documents relating to [Plaintiff's] efforts to obtain such employment." Interrogatory No. 10 seeks the same information for "each employer that has offered [Plaintiff] employment subsequent to [her] employment with Scotts," and Interrogatory No. 11 seeks such information for "each employer for whom [Plaintiff has] worked (including self-employment) subsequent to [her] employment with Scotts."

Plaintiff did not object to any of these interrogatories. Instead, for each, Plaintiff responded that she "has been disabled since on or about January 10, 2005 as a result to [sic] the injuries she suffered while performing her job duties for the Defendant." This statement, however, is in no way responsive to any of these interrogatories. Therefore, please provide a supplemental response identifying the employers, and providing the requested information for each employer, described in these interrogatories.

JONES DAY

Sandra D. Frelix, Esq.
July 1, 2008
Page 5

Medical Records Authorizations

Enclosed are medical records authorizations for each of the physicians named in Plaintiff's interrogatory responses. Please fill-in the physicians' addresses, have Plaintiff sign the enclosed medical records authorizations, and return them to me.

Please provide Plaintiff's supplemental response correcting the deficiencies described above, a verification signed under oath by Plaintiff certifying that her original responses and supplemental responses are truthful, and the completed medical records authorizations by Thursday, July 9, 2008. Should we not receive these items by this date, we will be forced to take these matters up directly with the Court.

Please telephone me if you have any questions.

Very truly yours,

Craig S. Friedman

Enclosures

## AUTHORIZATION TO RELEASE MEDICAL RECORDS OF MARIA JACKSON

| ...tient's PRINTED Name: | Birth date: | Social Security No.: | Address: |
|---|---|---|---|
| Maria Jackson | 4/9/61 | 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 | 184-12 144 Road Springfield Gardens, NY 11413 |

I, **Maria Jackson**, hereby authorize the use disclosure of health information about me as described below. I hereby authorize the medical professionals in receipt of this authorization to disclose records created and/or obtained in the course of my evaluation and/or treatment to the class of person presenting this authorization to you as detailed below.

**PERSON(S) AUTHORIZED TO MAKE DISCLOSURES**: Dr. Matthew Kilgo and any other individual or medical professional in receipt of this authorization who is employed by **Dr. Matthew Kilgo**.
**Dr. Matthew Kilgo's address is:**

**CLASS OF PERSONS TO WHOM PROTECTED HEALTH INFORMATION MAY BE RELEASED:** Craig S. **Friedman, Esq., Jones Day**, 222 East 41st Street, New York, New York 10017 (Telephone: (212) 326-3939; Fax: (212) 755-7306) and/or any attorneys representing The Scotts Company LLC in the lawsuit referenced below.

**PURPOSE OF REQUESTED USE:** The information will be used/disclosed for discovery purposes and/or as evidence in the lawsuit styled *Maria Jackson against The Scotts Company*, Case 08 CV 1064 (LAK) currently pending in United States District Court for the Southern District of New York.

**DESCRIPTION OF INFORMATION REQUESTED:** All records relating to any and all aspects of Maria Jackson's medical condition at any time, including, but not limited to the following categories of records: progress notes, history and physical records, doctor's handwritten or transcribed notes, documents received by other physicians, discharge summaries, emergency room records, consult reports, operative reports, laboratory reports, nursing notes, medication records, physician ...ders, inpatient treatment records, outpatient treatment records, emergency room treatment records, clinical charts, clinical reports/documents, correspondence, test results, questionnaires/histories, pharmacy prescription records, information regarding alcohol/substance abuse, consent forms, requests to amend records, log sheets, billing records and insurance records.

**EXPIRATION DATE:** This authorization is given in connection with pending claims and shall be honored by the health care provider for the entire time that claims remain pending in the referenced lawsuit. The party receiving information pursuant to this authorization is notified that the authority to use such authorization terminates when the lawsuit has concluded as to all parties.

**In accordance with New York State law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPPA), I understand that :**

1.  The records used disclosed pursuant to this authorization may include information relating to Human Immunodeficiency Virus ("HIV") or Acquired Immunodeficiency Syndrome ("AIDS"), treatment for or history of drug or alcohol abuse, or mental or behavioral health or psychiatric care. The recipient receiving HIV-related, alcohol or drug treatment, or mental health treatment information pursuant to this authorization is prohibited from re-disclosing such information without my authorization unless permitted to do so under state or federal law.

2.  Information disclosed by this authorization may be re-disclosed by the recipient (except as noted above in #1). Such re-disclosure will no longer be protected by this authorization.

3.  I have a right to cancel this authorization at any time. If I wish to cancel this authorization, I must notify Dr. Kilgo in writing. I understand that cancellation will not apply to information that has already been released based on this authorization.

4.  I have the right to receive a copy of this authorization. A copy or facsimile (fax) of this authorization **IS** as valid as the original.

5.  I understand that signing this authorization is voluntary. My treatment, payment, enrolment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

This authorization is intended to comply with all release of information requirements mandated by HIPAA.

**I have read the above and authorize the disclosure of the above-described health and/or medical information.**

SIGNED: _____    DATE: _____
      Maria Jackson

## AUTHORIZATION TO RELEASE MEDICAL RECORDS OF MARIA JACKSON

| ...tient's PRINTED Name:<br><br>Maria Jackson | Birth date:<br><br>4/9/61 | Social Security No.:<br><br>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 | Address:<br><br>184-12 144 Road<br>Springfield Gardens, NY 11413 |
|---|---|---|---|

I, **Maria Jackson**, hereby authorize the use/disclosure of health information about me as described below. I hereby authorize the medical professionals in receipt of this authorization to disclose records created and/or obtained in the course of my evaluation and/or treatment to the class of person presenting this authorization to you as detailed below.

**PERSON(S) AUTHORIZED TO MAKE DISCLOSURES**: **Dr. James Liqouri** and any other individual or medical professional in receipt of this authorization who is employed by **Dr. James Liqouri**.
**Dr. James Liqouri's address is:**

**CLASS OF PERSONS TO WHOM PROTECTED HEALTH INFORMATION MAY BE RELEASED:** **Craig S. Friedman, Esq., Jones Day**, 222 East 41st Street, New York, New York 10017 (Telephone: (212) 326-3939; Fax: (212) 755-7306) and/or any attorneys representing The Scotts Company LLC in the lawsuit referenced below.

**PURPOSE OF REQUESTED USE:** The information will be used/disclosed for discovery purposes and/or as evidence in the lawsuit styled *Maria Jackson against The Scotts Company*, Case 08 CV 1064 (LAK) currently pending in United States District Court for the Southern District of New York.

**DESCRIPTION OF INFORMATION REQUESTED:** All records relating to any and all aspects of Maria Jackson's medical condition at any time, including, but not limited to the following categories of records: progress notes, history and physical records, doctor's handwritten or transcribed notes, documents received by other physicians, discharge summaries, emergency room records, consult reports, operative reports, laboratory reports, nursing notes, medication records, physician ...ers, inpatient treatment records, outpatient treatment records, emergency room treatment records, clinical charts, clinical reports/documents, correspondence, test results, questionnaires/histories, pharmacy prescription records, information regarding alcohol/substance abuse, consent forms, requests to amend records, log sheets, billing records and insurance records.

**EXPIRATION DATE:** This authorization is given in connection with pending claims and shall be honored by the health care provider for the entire time that claims remain pending in the referenced lawsuit. The party receiving information pursuant to this authorization is notified that the authority to use such authorization terminates when the lawsuit has concluded as to all parties.

In accordance with New York State law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPPA), I understand that :

1. The records used/disclosed pursuant to this authorization may include information relating to Human Immunodeficiency Virus ("HIV") or Acquired Immunodeficiency Syndrome ("AIDS"), treatment for or history of drug or alcohol abuse, or mental or behavioral health or psychiatric care. The recipient receiving HIV-related, alcohol or drug treatment, or mental health treatment information pursuant to this authorization is prohibited from re-disclosing such information without my authorization unless permitted to do so under state or federal law.

2. Information disclosed by this authorization may be re-disclosed by the recipient (except as noted above in #1). Such re-disclosure will no longer be protected by this authorization.

3. I have a right to cancel this authorization at any time. If I wish to cancel this authorization, I must notify Dr. Liqouri in writing. I understand that cancellation will not apply to information that has already been released based on this authorization.

4. I have the right to receive a copy of this authorization. A copy or facsimile (fax) of this authorization **IS** as valid as the original.

5. I understand that signing this authorization is voluntary. My treatment, payment, enrolment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

...This authorization is intended to comply with all release of information requirements mandated by HIPAA.

I have read the above and authorize the disclosure of the above-described health and/or medical information.

SIGNED: _____     DATE: _____
        Maria Jackson

## AUTHORIZATION TO RELEASE MEDICAL RECORDS OF MARIA JACKSON

| ~ient's PRINTED Name:<br><br>Maria Jackson | Birth date:<br><br>4/9/61 | Social Security No.:<br><br>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 | Address:<br><br>184-12 144 Road<br>Springfield Gardens, NY 11413 |
|---|---|---|---|

I, **Maria Jackson**, hereby authorize the use/disclosure of health information about me as described below. I hereby authorize the medical professionals in receipt of this authorization to disclose records created and/or obtained in the course of my evaluation and/or treatment to the class of person presenting this authorization to you as detailed below.

**PERSON(S) AUTHORIZED TO MAKE DISCLOSURES**: **Dr. Richard Matteo** and any other individual or medical professional in receipt of this authorization who is employed by **Dr. Richard Matteo**.
**Dr. Richard Matteo's address is:**

**CLASS OF PERSONS TO WHOM PROTECTED HEALTH INFORMATION MAY BE RELEASED:** Craig S. **Friedman, Esq., Jones Day**, 222 East 41st Street, New York, New York 10017 (Telephone: (212) 326-3939; Fax: (212) 755-7306) and/or any attorneys representing The Scotts Company LLC in the lawsuit referenced below.

**PURPOSE OF REQUESTED USE:** The information will be used/disclosed for discovery purposes and/or as evidence in the lawsuit styled *Maria Jackson against The Scotts Company*, Case 08 CV 1064 (LAK) currently pending in United States District Court for the Southern District of New York.

**DESCRIPTION OF INFORMATION REQUESTED:** All records relating to any and all aspects of Maria Jackson's medical condition at any time, including, but not limited to the following categories of records: progress notes, history and physical records, doctor's handwritten or transcribed notes, documents received by other physicians, discharge summaries, emergency room records, consult reports, operative reports, laboratory reports, nursing notes, medication records, physician ...ers, inpatient treatment records, outpatient treatment records, emergency room treatment records, clinical charts, clinical reports/documents, correspondence, test results, questionnaires/histories, pharmacy prescription records, information regarding alcohol/substance abuse, consent forms, requests to amend records, log sheets, billing records and insurance records.

**EXPIRATION DATE:** This authorization is given in connection with pending claims and shall be honored by the health care provider for the entire time that claims remain pending in the referenced lawsuit. The party receiving information pursuant to this authorization is notified that the authority to use such authorization terminates when the lawsuit has concluded as to all parties.

In accordance with New York State law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPPA), I understand that :

1. The records used/disclosed pursuant to this authorization may include information relating to Human Immunodeficiency Virus ("HIV") or Acquired Immunodeficiency Syndrome ("AIDS"), treatment for or history of drug or alcohol abuse, or mental or behavioral health or psychiatric care. The recipient receiving HIV-related, alcohol or drug treatment, or mental health treatment information pursuant to this authorization is prohibited from re-disclosing such information without my authorization unless permitted to do so under state or federal law.

2. Information disclosed by this authorization may be re-disclosed by the recipient (except as noted above in #1). Such re-disclosure will no longer be protected by this authorization.

3. I have a right to cancel this authorization at any time. If I wish to cancel this authorization, I must notify Dr. Matteo <u>in writing</u>. I understand that cancellation will not apply to information that has already been released based on this authorization.

4. I have the right to receive a copy of this authorization. A copy or facsimile (fax) of this authorization <u>**IS**</u> as valid as the original.

5. I understand that signing this authorization is voluntary. My treatment, payment, enrolment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

This authorization is intended to comply with all release of information requirements mandated by HIPAA.

I have read the above and authorize the disclosure of the above-described health and/or medical information.

SIGNED: _____     DATE: _____
                   Maria Jackson

# AUTHORIZATION TO RELEASE MEDICAL RECORDS OF MARIA JACKSON

| ~ient's PRINTED Name:<br><br>Maria Jackson | Birth date:<br><br>4/9/61 | Social Security No.:<br><br>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 | Address:<br><br>184-12 144 Road<br>Springfield Gardens, NY 11413 |
|---|---|---|---|

I, **Maria Jackson**, hereby authorize the use/disclosure of health information about me as described below. I hereby authorize the medical professionals in receipt of this authorization to disclose records created and/or obtained in the course of my evaluation and/or treatment to the class of person presenting this authorization to you as detailed below.

**PERSON(S) AUTHORIZED TO MAKE DISCLOSURES**: **Dr. Richard Obedian** and any other individual or medical professional in receipt of this authorization who is employed by **Dr. Richard Obedian.**
**Dr. Richard Obedian's address is**:


**CLASS OF PERSONS TO WHOM PROTECTED HEALTH INFORMATION MAY BE RELEASED:** **Craig S. Friedman, Esq., Jones Day**, 222 East 41st Street, New York, New York 10017 (Telephone: (212) 326-3939; Fax: (212) 755-7306) and/or any attorneys representing The Scotts Company LLC in the lawsuit referenced below.

**PURPOSE OF REQUESTED USE:** The information will be used/disclosed for discovery purposes and/or as evidence in the lawsuit styled *Maria Jackson against The Scotts Company*, Case 08 CV 1064 (LAK) currently pending in United States District Court for the Southern District of New York.

**DESCRIPTION OF INFORMATION REQUESTED:** All records relating to any and all aspects of Maria Jackson's medical condition at any time, including, but not limited to the following categories of records: progress notes, history and physical records, doctor's handwritten or transcribed notes, documents received by other physicians, discharge summaries, emergency room records, consult reports, operative reports, laboratory reports, nursing notes, medication records, physician ...ers, inpatient treatment records, outpatient treatment records, emergency room treatment records, clinical charts, clinical reports/documents, correspondence, test results, questionnaires/histories, pharmacy prescription records, information regarding alcohol/substance abuse, consent forms, requests to amend records, log sheets, billing records and insurance records.

**EXPIRATION DATE:** This authorization is given in connection with pending claims and shall be honored by the health care provider for the entire time that claims remain pending in the referenced lawsuit. The party receiving information pursuant to this authorization is notified that the authority to use such authorization terminates when the lawsuit has concluded as to all parties.

In accordance with New York State law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPPA), I understand that :

1. The records used disclosed pursuant to this authorization may include information relating to Human Immunodeficiency Virus ("HIV") or Acquired Immunodeficiency Syndrome ("AIDS"), treatment for or history of drug or alcohol abuse, or mental or behavioral health or psychiatric care. The recipient receiving HIV-related, alcohol or drug treatment, or mental health treatment information pursuant to this authorization is prohibited from re-disclosing such information without my authorization unless permitted to do so under state or federal law.

2. Information disclosed by this authorization may be re-disclosed by the recipient (except as noted above in #1). Such re-disclosure will no longer be protected by this authorization.

3. I have a right to cancel this authorization at any time. If I wish to cancel this authorization, I must notify Dr. Obedian in writing. I understand that cancellation will not apply to information that has already been released based on this authorization.

4. I have the right to receive a copy of this authorization. A copy or facsimile (fax) of this authorization **IS** as valid as the original.

5. I understand that signing this authorization is voluntary. My treatment, payment, enrolment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

6. This authorization is intended to comply with all release of information requirements mandated by HIPAA.

I have read the above and authorize the disclosure of the above-described health and/or medical information.

SIGNED: _____        DATE: _____
    Maria Jackson



# Facsimile Transmission

222 East 41st Street • New York, New York 10017 • (212) 326-3939
Facsimile: (212) 755-7306
csfriedman@jonesday.com

**July 1, 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Frelix, Esq.**

Company:

Telephone No.: **(212) 859-3509**

Send Copies To:

☐ **Copies distributed** _____
                          Operator's initials

Re:    **Jackson v. The Scotts Company**
       **08 Civ. 1064 (LAK)**

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):   **10**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **JP012279**

CAM No.:  **906346-011032**

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible. Please ask for the facsimile operator.

NYI-4101421v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Confirmation Report - Memory Send

```
                                Page      : 001
                                Date & Time: Jul-01-08  20:48
                                Line 1    : +
                                Line 2    :
                                Machine ID :          7144
```

| | | |
|---|---|---|
| Job number | : | 003 |
| Date | : | Jul-01  20:46 |
| To | : | ☏912128628212 |
| Number of pages | : | 010 |
| Start time | : | Jul-01  20:46 |
| End time | : | Jul-01  20:48 |
| Pages sent | : | 010 |
| Status | : | OK |

Job number    : 003          *** SEND SUCCESSFUL ***

---



## Facsimile Transmission

222 East 41st Street • New York, New York 10017 • (212) 326-3939
Facsimile: (212) 755-7306
csfriedman@jonesday.com

2008 JUL -1 P  : 2          **July 1, 2008**

Please hand deliver the following facsimile to:

Name: Sandra D. Frelix, Esq.

Company:

Telephone No.: (212) 869-3609

Send Copies To:

Facsimile No.: (212) 862-8212

Number of pages (including this page):    10

From: Craig S. Friedman

Direct Telephone No.: (212) 326-3414

JP No.: JP012279

CAM No.:  906346-011032

☐ **Copies distributed**    *Operators initials*

Re:    **Jackson v. The Scotts Company**
       **08 Civ. 1064 (LAK)**

NOTICE: This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible. Please ask for the facsimile operator.

NYI-4101421v1

ATLANTA  •  BEIJING  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  FRANKFURT  •  HONG KONG  •  HOUSTON
IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MILAN  •  MOSCOW  •  MUNICH  •  NEW DELHI  •  NEW YORK  •  PARIS  •  PITTSBURGH
SAN DIEGO  •  SAN FRANCISCO  •  SHANGHAI  •  SILICON VALLEY  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

# EXHIBIT G

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number: 212-326-3414
tsfriedman@jonesday.com

JP012279
906346-011032

July 8, 2008

VIA FACSIMILE (212) 862-8212 & FIRST CLASS MAIL

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

Re:    Jackson v. The Scotts Company
       08 Civ. 1064 (LAK)

Dear Ms. Frelix:

I have reviewed Plaintiff's Responses To Defendant's First Request For Production Of Documents, and they are deficient in several respects.

## Plaintiff Has Waived All Objections To Defendant's Document Requests

As discussed in my June 26, 2008 letter to you, a party's failure to timely respond to discovery requests constitutes a waiver of any and all objections under FRCP 34(b) and settled case law. *Rahman v. Smith & Wollensky Restaurant*, 06 Civ. 6198 (LAK) (JCF), 2008 WL 110902, at *1 (S.D.N.Y. Jan. 7, 2008) ("failure to respond to plaintiff's [discovery] requests . . . within thirty days waived all objections to the request[s]").

Defendant served its First Request For The Production Of Documents on May 5, 2008. Pursuant to Federal Rule of Civil Procedure ("FRCP") 34(b)(2)(A), Plaintiff's deadline to respond was June 9, 2008. By agreement of the parties, this deadline was extended to June 23, 2008. Despite this extension of time, Plaintiff did not serve responses to Defendant's document requests until (at the earliest) June 28.

In my June 26 letter, I informed you that Plaintiff waived any objections to Defendant's discovery requests and instructed you that Plaintiff should refrain from asserting any objections to Defendant's discovery requests. Despite this instruction, Plaintiff included the General Objections in her responses anyway. Therefore, please provide a supplemental response without any objections. Should Plaintiff fail to do so, Defendant will move to strike the objections from Plaintiff's responses.

## Document Request No. 2

In Document Request No. 2, Defendant seeks "[a]ll documents relating to each of the allegations in [Plaintiff's] Complaint and the defenses included in Defendant's Answer To Amended

NYI-4126482

JONES DAY

Sandra D. Frelix, Esq.
July 8, 2008
Page 2

Complaint." In response, Plaintiff points to all of the documents she produced. This response is deficient in many respects.

First, this response is deficient because she failed to provide the great majority of the documents she identified in her April 30, 2008 Initial Disclosure Pursuant To FRCP 26(a) ("initial disclosures"). In her initial disclosures, Plaintiff listed twenty-one categories of documents in her "possession, custody, or control" that she may use to support her claims and defenses. Plaintiff, however, has failed to produce many of the documents listed, including "[s]alary information of Plaintiff and her co-workers," "[s]torage facility records for Plaintiff and her co-workers," the Defendant's policies on "merchandisers," "raises," "bonuses," and "incentives," and the "sales numbers for Plaintiff and her co-workers." Therefore, please produce all documents listed in Plaintiff's initial disclosures.

Second, her response to Document Request No. 2 is deficient because she failed to produce documents supporting many of the claims in her Complaint. By way of example, Plaintiff did not produce any documents showing that "she was given a $900.00 raise in October 2003." (Compl. ¶ 81). She also did not produce any documents, such as bank statements, showing that "D.M. McGarr gave her a $100.00 incentive for each Cake she built in her stores." (Compl. ¶ 131). Further, she has failed to produce any documents showing that "the Company and its insurance carrier did not pay for her medical treatment." (Compl. ¶ 202). She also failed to produce any documents showing the amount of "monetary and/or economic damages, . . . past and future income, wages, compensation, seniority, and other benefits of employment" she claims she has lost, and she further failed to produce any documents showing the amount of compensation she is seeking for "severe mental anguish and emotional distress." (Compl. ¶¶ C-D). Therefore, please provide a supplemental production correcting these deficiencies.

Document Request No. 4

Document Request No. 4 seeks "[a]ll documents relating to or substantiating any damages, injuries, or losses you claim to have suffered in connection with this action, including but not limited to bills (whether paid or unpaid), work sheets, correspondence, notes, memoranda, reports or statements of physicians, chiropractors, psychiatrists or other health care practitioners, as well as documents prepared by experts regarding damages."

Plaintiff's responses are deficient. Plaintiff has failed to provide any documents showing her wages earned with Scotts or wages earned subsequent to her employment with Scotts. Likewise, she has failed to provide any documents showing or substantiating the amount of losses she claims to have suffered in this action, including but not limited to medical bills. Plaintiff, similarly, has failed to produce any documents showing the amount she received in short term disability and long term disability benefits, although she did produce applications for such benefits. She has also failed to produce any documents showing application for, or receipt of,

JONES DAY

Sandra D. Frelix, Esq.
July 8, 2008
Page 3

social security benefits. Therefore, please provide a supplemental production with all the documents sought in Request No. 4.

Document Request No. 7

Document Request No. 7 seeks all "documents relating to treatment provided by each physician, mental health professional and/or health care provider requested to be identified in Defendant's First Set Of Interrogatories."

In her interrogatory responses, Plaintiff named Drs. James Liquori, Richard Obedian, Richard Matteo, and Matthew Kilgo. Plaintiff, however, only provided physician forms, completed by Drs. Liquori, Obedian, and Matteo, submitted as part of Plaintiff's applications for disability benefits, and a document purporting to reflect Plaintiff's May 4, 2005 visit with Dr. Obedian. Plaintiff, thus, failed to produce responsive documents including, but not limited to, treatment records, bills for services rendered, and statements from insurance companies. Therefore, please provide all documents regarding Plaintiff's treatment by each of these four physicians and have Plaintiff complete the medical records authorizations provided with my July 1 letter.

Document Request No. 10

Document Request No. 10 seeks "[a]ll documents relating to any workers' compensation or unemployment compensation claims filed or payments received." In response, Plaintiff only provided documents regarding her application for workers' compensation benefits.

This response is deficient because Plaintiff failed to provide any documents regarding her receipt of workers' compensation benefits and because she failed to provide any documents regarding unemployment compensation claims or payment received. Therefore, please provide a supplemental response with such documents or confirm that, as of the date of the supplemental response, no such documents exist.

Document Request Nos. 11

Document Request No. 11 seeks all "documents relating to any application by [Plaintiff] for disability benefits of any kind, temporary or permanent, whether relating to [Plaintiff's] employment with Scotts or relating to Social Security or other benefits, and any disability benefits, temporary or permanent, received to date."

In response, Plaintiff produced her applications for long term disability and short term disability benefits to Scotts' disability benefits carriers. She also provided documents reflecting short term disability payments received from the State of New York. Plaintiff, however, has failed to provide any documents, such as receipts or bank statements, showing the amount of disability benefits she has received (aside from the document showing the amount received from the State

JONES DAY

Sandra D. Frelix, Esq.
July 8, 2008
Page 4

of New York). She has also failed to provide any documents regarding applications for Social Security benefits. Therefore, please provide a supplemental response with documents showing (i) the amount of short term and long term disability benefits Plaintiff has received, and (ii) any application for and receipt of Social Security benefits.

Document Request No. 13

Request No. 13 seeks all "documents concerning wages, benefits, and terms and conditions of employment offered to or received by Plaintiff in connection with any work performed or made available to Plaintiff from 2005 to the present, including but not limited to, any self-employment since that date." In response, Plaintiff points to documents P86-120.

Plaintiff's response is deficient. None of these documents concern "wages, benefits, and terms and conditions of employment" offered to or received by Plaintiff since 2005. Instead, Plaintiff provides only the exhibits to Scotts' EEOC position statement, which were (i) Plaintiff's performance evaluations with Scotts dating back to 2002, and the (ii) copies of Scotts' Equal Employment Opportunity policy, Anti-Harassment policy, Short Term Disability policy, and the Sales Merchandising Manager job description. None of these documents concern wages, benefits or terms and conditions of employment subsequent to Plaintiff's employment with Scotts. Moreover, none of them concern Plaintiff's wages or benefits received from Scotts. Therefore, please provide a supplemental disclosure with all document sought in Request No. 13.

Document Request No. 14

Request No. 14 seeks all "documents concerning any income, salary, and or benefits paid to Plaintiff from any source from 2005 through the present, including but not limited to Plaintiff's Federal and State income tax returns (including all W-2 forms and schedules submitted therewith) for tax years 2005 through the present."

In response, Plaintiff states that "[r]equested documents do not exist." This response is not believable. First, this is not believable because, as I understand it, Plaintiff has received long term disability benefits since her termination from Scotts. Second, this is not believable because Plaintiff seems to infer that she has failed to file federal and state tax returns since as required by law. Third, it is incorrect to suggest that Plaintiff has received no income, salary, or benefits "from any source" since 2005. Indeed, Plaintiff received wages from Scotts in 2005 and such wages should be reflected in her 2005 tax returns and W-2s. Therefore, please provide a supplemental production including all documents sought in Request No. 14.

NYI-4151716v2

JONES DAY

Sandra D. Frelix, Esq.
July 8, 2008
Page 5

Document Request No. 15

Request No. 15 seeks all "documents concerning the treatment or counseling of Plaintiff, either medical or non-medical, for any mental, emotional or physical injury, illness or condition allegedly caused in whole or in part by the conduct of Defendant."

In response, Plaintiff states that "[c]urrently, requested documents do not exist." Plaintiff's response is inconsistent with Plaintiff's Response To Interrogatory No. 6, in which she identifies Drs. Kilgo, Liquori, and Obedian as "doctors or other health care or mental health professionals" with knowledge of "any medical, psychological or emotional condition" caused by Scotts employees. Therefore, please provide all documents sought in this request. In the alternative, please confirm that Plaintiff is not seeking damages for "any mental, emotional or physical injury, illness or condition allegedly caused in whole or in part by the conduct of Defendant."

Document Request No. 19

Request No. 19 seeks a "copy of the 'formal report' identified in Paragraph 188 of the Complaint." Paragraph 188 alleges that "Mrs. Jackson was told to provide Mr. Carbanara with a formal report about the racist incident with Mr. Conard." Plaintiff responds that "[c]urrently, requested document does not exist." This response, however, is illogical. Either Plaintiff possesses of copy of this "formal report" or she does not. Please confirm whether Plaintiff possesses a copy of the "formal report" and, if she does, please produce it.

Document Request No. 21

Request No. 21 seeks a "copy of the 'claim regarding her work related injuries' referred to in Paragraph 204 of the Complaint." Paragraph 204 alleges that "[o]n or about February 20, 2008 New York State Workers' Compensation Board took Mrs. Jackson's claim regarding her work related injuries upon learning the circumstances that caused the substantial delay." Plaintiff responds that Defendant should "refer to verified complaint in this case." This response is illogical, as it suggests that Plaintiff presented her entire Complaint to the New York State Workers' Compensation Board. Therefore, please provide a supplemental production including the "claim regarding her work related injuries" that the New York State Workers' Compensation Board "took" "on or about February 20."

Document Request No. 22

Request No. 22 seeks "all documents not produced in response to the foregoing requests that Plaintiff may seek to introduce at the trial of this action." Although Plaintiff responds that she "reserve[s] the right to supplement her responses to the First Set for [sic] Document Requests"



JONES DAY

Sandra D. Frelix, Esq.
July 8, 2008
Page 6

she should be aware that FRCP 26(e)(1) *requires* Plaintiff to "supplement or correct [her]
disclosure or response" to this and every other document request and interrogatory "in a timely
manner if [Plaintiff] learns that in some material respect the disclosure or response is incomplete
or incorrect, and if the additional or corrective information has not otherwise been made known
to the other parties during the discovery process or in writing."

Therefore, please provide by Tuesday, July 15, 2008 supplemental responses correcting the
deficiencies described above.  Should I fail to receive a supplemental response correcting these
deficiencies by July 15, Defendant will take these matters up directly with the Court.

Please telephone me if you have any questions.

Very truly yours,

Craig S. Friedman

Confirmation Report — Memory Send

Page        : 001
Date & Time: Jul-08-08  16:51
Line 1      : +
Line 2      :
Machine ID  :        7144

| | | |
|---|---|---|
| Job number | : | 070 |
| Date | : | Jul-08 16:45 |
| To | : | ☎912128628212 |
| Number of pages | : | 007 |
| Start time | : | Jul-08 16:45 |
| End time | : | Jul-08 16:51 |
| Pages sent | : | 007 |
| Status | : | OK |
| Job number | : 070 | *** SEND SUCCESSFUL *** |



**Facsimile Transmission**
222 East 41st Street • New York, New York  10017 • (212) 326-3939
Facsimile: (212) 755-7306
csfriedman@jonesday.com

**July 8, 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Freix, Esq.**

Company:

Telephone No.: **(212) 659-3609**

Send Copies To:

☐ Copies distributed _____ Operator's Initials

Re:   **Jackson v. The Scotts Company**
      **08 Civ. 1064 (LAK)**

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):  **7**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **JF012278**

CAM No.:  **906346-011033**

NOTICE: This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection.   If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

Message:

Please call us immediately if the facsimile you receive is incomplete or illegible.  Please ask for the facsimile operator.

NYI-4101421v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON



# Facsimile Transmission

222 East 41st Street • New York, New York 10017 • (212) 326-3939
Facsimile (212) 755-7306
csfriedman@jonesday.com

**July 8, 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Frelix, Esq.**

Company:

Telephone No.: **(212) 859-3509**

Send Copies To:

☐ **Copies distributed** _____

<small>Operator's initials</small>

Re:     **Jackson v. The Scotts Company
08 Civ. 1064 (LAK)**

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):    **7**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **JP012279**

CAM No.:    **906346-011032**

---

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection.  If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

---

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible.  Please ask for the facsimile operator.

<small>YI-4101421v1</small>

# EXHIBIT H

SANDRA D. FRELIX, ESQ. (SF-0421)
110 Wall Street
11ᵗʰ Floor
New York, New York 10005
(212) 859-3509
(212) 862-8212 (facsimile)
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MARIA JACKSON,                                    Index No. 08 CV 1064 (LAK)

               Plaintiff,                **PLAINTIFF'S AMENDED
                                                  RESPONSES TO DEFENDANT'S
                                                  FIRST INTERROGATORY
    -against-                             REQUESTS**

THE SCOTTS COMPANY,

               Defendant.
----------------------------------------------------------X

## PLAINTIFF'S AMENDED RESPONSES TO DEFENDANT'S FIRST INTERROGATORY REQUESTS

Pursuant to Rules 26 and 33, of the Federal Rules of Civil Procedure, and Civil Rule 33.3 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, Plaintiff Maria Jackson hereby responds to the Defendant's First Set of Interrogatory Request as follows:

### GENERAL OBJECTIONS

The following General Objections apply to and are expressly made part of Plaintiff's specific responses, set forth below, to each Interrogatory Request.

    1.     Plaintiff objects to Defendant's document requests to the extent they request information beyond the scope of interrogatories permitted under the Federal

Rules of Civil Procedure and the Local Rules for the Southern and Eastern Districts of New York.

2.    Plaintiff object to Defendant's interrogatories to the extent that they call for disclosure and/or production of documents protected by the attorney-client privilege, work product doctrine, or other privilege, or which are otherwise immune from discovery. Inadvertent production of any such documents shall not constitute a waiver of any privilege with respect to the subject matter thereof or the information contained therein, and shall not waive the right of Plaintiff to object to the use of any such information and/or document (or the information contained therein) during any subsequent proceeding.

3.    Plaintiff objects to Defendant's interrogatories to the extent that they call for disclosure of (i) confidential information and/or (ii) personal information about individuals who are not parties to this action.

4.    Plaintiff objects to Defendant's interrogatories on the grounds that they are overbroad and unduly burdensome to the extent they seek information without specifying any time period for such information of documentation.

5.    Plaintiff objects to Defendant's interrogatories on the grounds that they are vague and ambiguous, broad in scope, too general and lacks specificity to the extent they seek information without specifying any time period for such information of documentation.

6.    Plaintiff reserves the right to supplement her responses to the First Request for Interrogatories and to assert additional objections.

## INTERROGATORY NO. 1:

Identify all persons whom you know or believe to possess knowledge or information relating to any of the allegations, claims, or defenses in this case.

## RESPONSE TO INTERROGATORY REQUEST NO. 1:

Maria Jackson, Jeremy Fass, Jim Fitch, Barbara D'Ana, Patrick McGarr, Matthew Botz, Robert Anderson, Mike Gabriele, Tina Badger, Ed Wolstelund, Ernie Rios, Jimmy Obray, Jason Cooper, Patrick Flagherty, Matthew Kilgo, M.D., Mike Carbanara, Tyrone Jackson, Henry Williams, Kisha Snow, Keith Conard, Rob Lamp, Brenda Barker, Jane Towle, and Collette Dennis.

## INTERROGATORY NO. 2:

Identify each type or kind of damages you seek and, for each, state the precise total amount of damages sought as of the date of these Interrogatories and the method you used in arriving at this amount.

## RESPONSE TO INTERROGATORY REQUEST NO. 2:

Plaintiff is willing but unable to provide this information at this time. Due to financial constraints within her family she has not been able to hire the expert needed to calculate the damages sought by the defense.

## INTERROGATORY NO. 3:

Identify all documents relating to or supporting your damages claims.

## RESPONSE TO INTERROGATORY REQUEST NO. 3:

Medical reports, workers' compensation documents, EEOC documents, Plaintiff's job evaluations, letter authored by Matthew Botz, disability documents, employment documents, FMLA documents, two letters from physicians requesting a reasonable

medical accommodation for the Plaintiff.

## INTERROGATORY NO. 4:

Identify each physician, mental health professional and/or health care provider who examined you and/or provided treatment to you for any physical, mental or emotional conditions since 2001.

## RESPONSE TO INTERROGATORY REQUEST NO. 4:

Dr. James Liquori, Dr. Richard Obedian, Dr. Richard Matteo, and Dr. Matthew Kilgo.

## INTERROGATORY NO. 5:

For each physician, mental health professional and/or health care provider identified in the preceding interrogatory answer, identify the dates on which that individual examined and/or provided treatment to you and identify any documents relating to such examination or treatment.

## RESPONSE TO INTERROGATORY REQUEST NO. 5:

We are waiting to receive the dates of treatment for each physician. Once we receive the information it will be immediately forwarded to counsel for the Defendant.

## INTERROGATORY NO. 6:

If you claim that Scotts or any of its officers, directors, employees, contractors, and/or representatives have caused you to experience any medical, psychological or emotional condition for which you are seeking damages or which you claim is relevant to this case, identify any doctors or other health care or mental health professionals who have knowledge of such condition(s) and identify any documents relating to or describing the condition(s).

4

**RESPONSE TO INTERROGATORY REQUEST NO. 6:**

Dr. Matthew Kilgo, Dr. James Liquori, and Dr. Richard Obedian.

**INTERROGATORY NO. 7:**

If you plan to call any treating physicians or other witnesses to testify about any

conditions identified in your previous response, identify the witnesses, identify any

report, or draft thereof, prepared by the witness; identify all documents and/or documents

and/or data relied upon by the witnesses in forming opinions; identify all other

documents and/or data considered or reviewed by the witnesses in the course of forming

opinions; and identify the instructions given to the witnesses.

**RESPONSE TO INTERROGATORY REQUEST NO. 7:**

Dr. Matthew Kilgo, Dr. James Liquori, and Dr. Richard Obedian.

We will utilize the appropriate medical reports and other relevant medical documents that

support the injuries suffered by Mrs. Jackson as a result of wrongdoing by the Defendant.

We are unable to "identify the instructions given to the witnesses" due to the

interrogatory being vague and ambiguous.

**INTERROGATORY NO. 8:**

Identify each oral or written statement you have obtained from any person regarding the

subject matter of this action, including the names and address of the person who gave the

statement and the date the statement was obtained.

**RESPONSE TO INTERROGATORY REQUEST NO. 8:**

We are unable to respond to this interrogatory due to the fact that it is vague and

ambiguous, broad in scope, too general and lacks specificity.

**INTERROGATORY NO. 9:**

Identify the name of each potential employer you have contacted for the purpose of obtaining employment subsequent to your employment with Scotts and, for each such potential employer's address, the name(s) of the person(s) at the employer you contacted, and any documents relating to your efforts to obtain such employment.

**RESPONSE TO INTERROGATORY REQUEST NO. 9:**

Mrs. Jackson is has been disabled since on or about January 10, 2005 as a result to the injuries she suffered while performing her job duties for the Defendant.

**INTERROGATORY NO. 10:**

Identify the name of each employer that has offered you employment subsequent to your employment with Scotts and, for each such employer, the employer's address, the name(s) of the person(s) at the employer who offered you such employment, and any documents relating to any such offer of employment.

**RESPONSE TO INTERROGATORY REQUEST NO. 10:**

Please refer to interrogatory response #9.

**INTERROGATORY NO. 11:**

Identify the name of each employer for whom you have worked (including self-employment) subsequent to your employment with Scotts and, for each such employer, the employer's address, the name(s) of your immediate supervisor(s), and any documents relating to such employment (including any documents describing benefits provided by any such employer).

**RESPONSE TO INTERROGATORY REQUEST NO. 11:**

Please refer to interrogatory response #9.


Dated: New York, New York
      June 28, 2008

           Respectfully submitted,

           SANDRA D. FRELIX, ESQ.


        By: _____
           Sandra D. Frelix, Esq. (SF-0421)
           110 Wall Street, 11th Floor
           New York, NY 10005
      Telephone: (212) 859-3509
      Facsimile:  (212) 862-8212

      ATTORNEY FOR PLAINTIFF


To:    Craig S. Friedman, Esq. (CF-1988)
      Matthew W. Lampe, Esq.
      JONES DAY
      222 East 41st Street
      New York, New York 10017

      ATTORNEYS FOR DEFENDANT

Index No. :  08 CV 1064 (LAK)
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIA JACKSON

                              *Plaintiff,*

   -against-


THE SCOTTS COMPANY
                    *Defendant.*

---
---

## PLAINTIFF'S AMENDED RESPONSES TO DEFENDANT'S FIRST INTERROGATORY REQUESTS

---

                              **Sandra D. Frelix, Esq.**
                              **Attorney at Law**
                              **110 Wall Street, 11th Floor**
                              **New York, New York 10005**
                              **(212) 859-3509**
                              **ATTORNEY FOR PLAINTIFF**

---

*To:* **Craig S. Friedman, Esq. (CF-1988)**
     **Matthew W. Lampe, Esq.**
     **JONES DAY**
     **222 East 41st Street**
     **New York, New York 10017**
     **ATTORNEYS FOR DEFENDANT**

---

*Service of a copy of the within*                           *is hereby*
*admitted.*
*Dated*:

                                    ————————————————

---

*NOTICE OF SETTLEMENT:*
      *PLEASE TAKE NOTICE*
      that a                of which the within is a true copy will be presented for settlement to
      one of the judges of the within named court at            on         200   , at 9:30 A.
      M.

      *Dated*:
      *To:*

# EXHIBIT I

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE 212 326 3939 • FACSIMILE 212 755-7306

Direct Number: (212) 326-3414
csfriedman@jonesday.com

JP012279
906346-011032

July 7, 2008

VIA FACSIMILE (212) 862-8212 & FIRST CLASS MAIL

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

Re:     Jackson v. The Scotts Company
        08 Civ. 1064 (LAK)

Dear Ms. Frelix:

I have reviewed Plaintiff's Amended Responses To Defendant's First Interrogatory Requests ("Amended Responses") and, like her initial Responses To Defendant's First Interrogatory Requests ("Initial Responses"), they are deficient in several respects.

Plaintiff Has Waived The "General Objections" Listed In The Amended Responses

Pursuant to Federal Rule of Civil Procedure ("FRCP") 33(b)(4), "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Plaintiff's Amended Responses contain six "General Objections." Plaintiff, however, failed to assert any of these objections in her Initial Responses. As a result, Plaintiff has waived all of the General Objections. Therefore, please provide a supplemental response without the General Objections. Should Plaintiff fail to so do, Defendant will move to strike these objections from her Amended Responses.

Plaintiff's Amended Responses Suffer From The Same Deficiencies As Her Initial Responses

With the exception of the addition of General Objections, and some changes to her Response To Interrogatory No. 3, Plaintiff's Amended Response are identical in all respects to her Initial Responses. As a result, Plaintiff has failed to correct any of the deficiencies in her Initial Responses discussed in my July 1 letter to you. Therefore, please provide a supplemental response correcting the deficiencies discussed in my July 1 letter.

Interrogatory No. 3

As discussed in my July 1 letter, Interrogatory No. 3 asks Plaintiff to "[i]dentify all documents relating to or supporting [her] damages claims." In her Amended Responses, Plaintiff lists "[m]edical reports, workers' compensation documents, EEOC documents, Plaintiff's job evaluations, letter authored by Matthew Botz, disability documents, employment documents,

NYI-4102101v1

JONES DAY

Sandra D. Frelix, Esq.
July 7, 2008
Page 2

FMLA documents, two letters from physicians requesting a reasonable medial accommodation for Plaintiff."

Plaintiff's response continues to be deficient. This response does not comply with the definition of "identify" as contained in Defendant's First Set Of Interrogatories. The term "identify," as it relates to documents, means "to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s)."

Moreover, Plaintiff's response fails to identify certain categories of documents which Plaintiff has in her possession and are essential to her damages claims. This includes, but is not limited to, her tax returns, W-2 forms, and medical bills. Please provide a supplemental response correcting these deficiencies.

Therefore, by Monday, July 14, 2008, please provide supplemental responses correcting the deficiencies described above and in my July 1 letter. Should I fail to receive a supplemental response correcting these deficiencies by July 14, Defendant will take these matters up directly with the Court.

Please telephone me if you have any questions.

Very truly yours,

Craig S. Friedman

Confirmation Report - Memory Send

Page      : 001
Date & Time: Jul-07-08  09:42
Line 1    : +
Line 2    :
Machine ID :          7144

| | | |
|---|---|---|
| Job number | : | 039 |
| Date | : | Jul-07 09:41 |
| To | : | ☎912128628212 |
| Number of pages | : | 003 |
| Start time | : | Jul-07 09:41 |
| End time | : | Jul-07 09:42 |
| Pages sent | : | 003 |
| Status | : | OK |
| Job number | : | 039 |

**\*\*\* SEND SUCCESSFUL \*\*\***



## Facsimile Transmission

222 East 41st Street • New York, New York 10017 • (212) 326-3939
Facsimile: (212) 755-7306
csfriedman@jonesday.com

**July 7, 2008**

Please hand deliver the following facsimile to:

Name: Sandra D. Freilx, Esq.

Company:

Telephone No.: (212) 859-3509

Send Copies To:

Facsimile No.: (212) 862-8212

Number of pages (including this page):    3

From: Craig S. Friedman

Direct Telephone No.: (212) 326-3414

JP No.: JP012279

CAM No.:    906346-011032

☐  Copies distributed _____
Operator's initials

Re:    Jackson v. The Scotts Company
       08 Civ. 1064 (LAK)

NOTICE: This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection.  If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

Message:

Please call us immediately if the facsimile you receive is incomplete or illegible.  Please ask for the facsimile operator.
NYI-4101421v1

ATLANTA  BEIJING  BRUSSELS  CHICAGO  CLEVELAND  COLUMBUS  DALLAS  FRANKFURT  HONG KONG  HOUSTON
IRVINE  LONDON  LOS ANGELES  MADRID  MILAN  MOSCOW  MUNICH  NEW DELHI  NEW YORK  PARIS  PITTSBURGH
IN D.C.  SAN FRANCISCO  SHANGHAI  SILICON VALLEY  SINGAPORE  SYDNEY  TAIPEI  TOKYO  WASHINGTON



# Facsimile Transmission

222 East 41st Street • New York, New York  10017 • (212) 326-3939
Facsimile. (212) 755-7306
csfriedman@jonesday.com

**July 7, 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Frelix, Esq.**

Company:

Telephone No.: **(212) 859-3509**

Send Copies To:

☐ **Copies distributed** _____
Operator's initials

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):    **3**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **JP012279**

CAM No.:   **906346-011032**

Re:   **Jackson v. The Scotts Company
08 Civ. 1064 (LAK)**

---

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection.   If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

---

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible.  Please ask for the facsimile operator.

YI-4101421v1

ATLANTA  •  BEIJING  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  FRANKFURT  •  HONG KONG  •  HOUSTON
IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MILAN  •  MOSCOW  •  MUNICH  •  NEW DELHI  •  NEW YORK  •  PARIS  •  PITTSBURGH
SAN DIEGO  •  SAN FRANCISCO  •  SHANGHAI  •  SILICON VALLEY  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

# EXHIBIT J

# JONES DAY

<span style="font-size:smaller">222 EAST 41ST STREET • NEW YORK, NEW YORK 10017</span>
<span style="font-size:smaller">TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306</span>

Direct Number: 212-326-3414
csfriedman@jonesday.com

JP012279
906346-011032

July 21, 2008

<u>VIA FACSIMILE (212) 862-8212</u>

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

        Re:    Jackson v. The Scotts Company
                <u>08 Civ. 1064 (LAK)</u>

Dear Ms. Frelix:

I write regarding (i) your failure to provide dates for Plaintiff's deposition, (ii) Plaintiff's failure to correct the deficiencies in her responses to Defendant's document requests and interrogatories, and (iii) Plaintiff's untimely and deficient disclosures pursuant to Federal Rule of Civil Procedure ("FRCP") 26(a)(2).

<u>Plaintiff's Deposition</u>

On May 5, 2008, Defendant served a Notice Of Deposition, noticing Plaintiff's deposition for July 1, 2008. In our telephone conversation of June 10, 2008, which was confirmed in my letter to you dated June 11, 2008, we agreed to adjourn Plaintiff's deposition in light of your request for additional time to respond to Defendant's written discovery requests. During our conversation, you further agreed to provide dates in the middle of July for Plaintiff's deposition.

However, you broke our agreement and failed to provide me with any dates for Plaintiff's deposition. As a result, I telephoned you on Thursday, July 17, and left a voicemail again asking for dates for Plaintiff's deposition. As of today, you have failed to provide me with any such dates. Therefore, please provide by Wednesday, July 23, dates on which Plaintiff is available to submit to a deposition. Should you fail to provide me with dates for Plaintiff's deposition by then, I will assume that Plaintiff has chosen to ignore her obligation to appear for a deposition and Defendant will move the Court to compel Plaintiff to submit to a deposition.

<u>Plaintiff Has Failed To Correct Deficiencies In Her Discovery Responses</u>

As detailed in my previous letters to you of July 1, July 7, and July 8, Plaintiff's responses to Defendant's First Set Of Interrogatories and Defendant's First Request For The Production Of Documents are wholly deficient. As of today, Plaintiff has failed to correct any of the deficiencies discussed in these letters. I telephoned you on Thursday, July 17, and left you a

Sandra D. Frelix, Esq.
July 21, 2008
Page 2

voicemail again requesting that you correct these deficiencies, but you have again failed to respond.[1]

As discussed in my letters and in my voicemail, Plaintiff has failed to provide basic information which Defendant requested and is entitled to. This includes, but is not limited to, basic evidence of damages, such as tax returns, W-2s, statements showing the amount of short term disability and long term disability benefits Plaintiff has received, and medical records authorizations allowing Defendant to obtain complete records from Plaintiff's treating physicians. Plaintiff has likewise failed to provide any information on her efforts to obtain employment subsequent to her employment with Scotts.

Plaintiff has ignored Defendant's repeated, good faith efforts to obtain the full range of discovery which it has requested and to which it is entitled. Therefore, should Plaintiff fail to correct the deficiencies discussed in my previous letters and correspondence by Wednesday July 23, Defendant will assume that Plaintiff has chosen to ignore her obligation to fully respond to Defendant's discovery requests and Defendant will move to compel Plaintiff's complete responses.

Plaintiff's FRCP 26(a)(2) Disclosure Is Untimely And Deficient

I have reviewed Plaintiff's Disclosure Pursuant To FRCP 26(a)(2), dated July 14, 2008, which is untimely and fails to comply with the requirements of FRCP 26.

Pursuant to FRCP 26(a)(2)(C), entitled Time to Disclose Expert Testimony, a party must make the FRCP 26(a)(2) disclosures "at the times and in the sequence that the court orders." You signed and agreed to, and Judge Kaplan 'so ordered' on April 11, a Consent Scheduling Order which states that "[t]he parties shall make required Rule 26(a)(2) disclosures with respect to . . . expert witnesses on or before June 9, 2008." Plaintiff's disclosure is dated July 14, 2008. As a result, it is untimely because it was served more than one month after the deadline for such disclosures.

In any event, Plaintiff's disclosure is deficient because it does not comply with the substantive requirements of FRCP 26(a)(2). FRCP 26(a)(2)(A) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." In her disclosures, Plaintiff has named three lay witnesses and four treating physicians. The fact witnesses, Barbara D'Ana, Matthew Botz, and "Mr. Goodrich," can in no way be termed an "experts." Plaintiff indicates that Ms. D'Ana and Mr. Goodrich are Home Depot employees that worked with Plaintiff. Mr. Botz, as you know, is a Scotts employee who claims to have witnessed allegedly discriminatory practices against Plaintiff. With regard to

_____

[1] The cover letter included with Plaintiff's FRCP 26(a)(2) disclosure states that "Plaintiff's Responses to Defendant's First Interrogatory Requests" are also enclosed. The package I received, however, contained no interrogatory responses.

JONES DAY

Sandra D. Frelix, Esq.
July 21, 2008
Page 3

Plaintiff's treating physicians. Plaintiff has given no indication that they have any knowledge apart from what they learned in their role as Plaintiff's treating physician. Therefore, as none of these witnesses have "scientific, technical, or other specialized knowledge" apart from what they allegedly witness while working with or treating Plaintiff, none of these qualify as FRCP 26 experts.

Plaintiff's disclosures also fail to comply with FRCP 26(a)(2)(B), which governs the requirements of an expert's written report. The rule requires that the FRCP 26(a)(2) "disclosure must be accompanied by a written report—prepared and signed by the witnesses—if the witness is one retained or specially employed to provide expert testimony in the case." Enclosed with Plaintiff's disclosure was a series of documents which, in no way, can be considered a "report" that complies with FRCP 26(a)(2)(B). This "report" does not contain any statement of compensation to be paid, list of other cases in which the witnesses have testified, or list of the witnesses' qualifications with a list of all publications authored in the past ten years. FRCP(a)(2)(B)(iv-vi). This "report" also does not contain the "data or other information considered by the witness" in forming opinions or "any exhibits that will be used to summarize or support" opinions. FRCP(a)(2)(B)(ii-iii).

The rule further requires that the report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." FRCP 26(a)(2)(B)(i). Rather than provide such a statement, the "report" merely contains three signed statements by Mr. Botz and another from Ms. D'Ana regarding incidents they allegedly witnessed while working with Plaintiff, two doctor's notes from Dr. Shawn Garber, and forms completed by Plaintiff's treating physicians in support of Plaintiff's application for long term disability benefits. None of these documents, however, include a "complete statement of all opinions the witness will express and the basis and reasons for them."

Therefore, because Plaintiff's disclosure is both untimely and fails to comply with the substantive requirements of FRCP 26(a)(2), please withdraw this disclosure by Friday, July 25, 2008 and re-serve it as a supplemental disclosure pursuant to FRCP 26(a)(1)(A)(i). Should Plaintiff fail to voluntarily withdraw this disclosure by this date, Defendant will move to strike it.

Please telephone me if you have any questions.

Very truly yours,

Craig S. Friedman

NYI-4106683v2



# Facsimile Transmission

222 East 41st Street • New York  New York  10017 • (212) 326-3939
Facsimile (212) 755-7306
csfriedman@jonesday.com

**July 21, 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Frelix, Esq.**

Company:

Telephone No.: **(212) 859-3509**

Send Copies To:

☐ **Copies distributed** _____
Operator's initials

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):   **4**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **012279**

CAM No.:   **906346-011032**

Re:   **Jackson v. The Scotts Company
08 Civ. 1064 (LAK)**

---

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection.  If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

---

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible.  Please ask for the facsimile operator.

NYI-4101421v1

JonesDay Fax/JonesDay              To    JP004075@jonesday.com

                                   cc

07/21/2008 10:57 AM                bcc

Please respond to            Subject   Fax to 1-2128628212 was successful
JA001203@jonesday.com

JP0RZ001.TIF pg:5 sec:73 usr:JP004075 bil:906346-011032 stat:SENT v:
07/21/08 10:57  212-755-7306     ->     1-2128628212  Jones Day
Pg 001

    TO:   Sandra Frelix         DATE:  07/21/08

    FAX:  1-2128628212          PAGES:  Cover Plus 4

    FROM:  Craig S. Friedman    PHONE:  212.326.3414

    RE:   Jackson v. The Scotts Company/08 Civ. 1064 (LAK)

============================ MESSAGE ============================

Please see the attached.

Sonia Yearde for
Craig S. Friedman



# Facsimile Transmission

222 East 41st Street • New York, NY 10017-6702 • 212-326-3939
Facsimile: 212-755-7306

Please hand deliver the following facsimile to:

| | | | |
|---|---|---|---|
| TO: | Sandra Frelix | DATE: | 07 21 08 |
| FAX: | 1-2108628212 | PAGES: | Cover Plus 4 |
| FROM: | Craig S. Friedman | PHONE: | 212.326.3414 |
| RE: | Jackson v. The Scotts Company 08 Civ. 1064 (LAK) | | |

**Message:**

Please see the attached.

Sonia Yearde for
Craig S. Friedman

NOTICE: This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone or the direct telephone number noted above.

Please call the sender immediately if the facsimile you receive is incomplete or illegible.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON



# Facsimile Transmission

222 East 41st Street • New York, New York  10017 • (212) 326-3939
Facsimile  (212) 755-7306
csfriedman@jonesday.com

**July 21, 2008**

Please hand deliver the following facsimile to:

Name: **Sandra D. Frelix, Esq.**

Company:

Telephone No.: **(212) 859-3509**

Send Copies To:

☐ **Copies distributed** _____
<span>Operator's initials</span>

Re:     **Jackson v. The Scotts Company
08 Civ. 1064 (LAK)**

Facsimile No.: **(212) 862-8212**

Number of pages (including this page):     **4**

From: **Craig S. Friedman**

Direct Telephone No.: **(212) 326-3414**

JP No.: **012279**

CAM No.:   **906346-011032**

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible.  Please ask for the facsimile operator.
NYI-4101421v1

ATLANTA   •   BEIJING   •   BRUSSELS   •   CHICAGO   •   CLEVELAND   •   COLUMBUS   •   DALLAS   •   FRANKFURT   •   HONG KONG   •   HOUSTON
IRVINE   •   LONDON   •   LOS ANGELES   •   MADRID   •   MILAN   •   MOSCOW   •   MUNICH   •   NEW DELHI   •   NEW YORK   •   PARIS   •   PITTSBURGH
SAN DIEGO   •   SAN FRANCISCO   •   SHANGHAI   •   SILICON VALLEY   •   SINGAPORE   •   SYDNEY   •   TAIPEI   •   TOKYO   •   WASHINGTON

# JONES DAY

222 EAST 41ST STREET · NEW YORK, NEW YORK 10017

TELEPHONE: (212) 326-3939 · FACSIMILE: (212) 755-7306

Direct Number: (212) 326-3414
csfriedman@jonesday.com

JP012279                                July 21, 2008
906346-011032

<u>VIA FACSIMILE (212) 862-8212</u>

Sandra D. Frelix, Esq.
110 Wall Street, 11th Floor
New York, New York 10005

                Re:    Jackson v. The Scotts Company
                       08 Civ. 1064 (LAK)

Dear Ms. Frelix:

I write regarding (i) your failure to provide dates for Plaintiff's deposition, (ii) Plaintiff's failure to correct the deficiencies in her responses to Defendant's document requests and interrogatories, and (iii) Plaintiff's untimely and deficient disclosures pursuant to Federal Rule of Civil Procedure ("FRCP") 26(a)(2).

<u>Plaintiff's Deposition</u>

On May 5, 2008, Defendant served a Notice Of Deposition, noticing Plaintiff's deposition for July 1, 2008. In our telephone conversation of June 10, 2008, which was confirmed in my letter to you dated June 11, 2008, we agreed to adjourn Plaintiff's deposition in light of your request for additional time to respond to Defendant's written discovery requests. During our conversation, you further agreed to provide dates in the middle of July for Plaintiff's deposition.

However, you broke our agreement and failed to provide me with any dates for Plaintiff's deposition. As a result, I telephoned you on Thursday, July 17, and left a voicemail again asking for dates for Plaintiff's deposition. As of today, you have failed to provide me with any such dates. Therefore, please provide by Wednesday, July 23, dates on which Plaintiff is available to submit to a deposition. Should you fail to provide me with dates for Plaintiff's deposition by then, I will assume that Plaintiff has chosen to ignore her obligation to appear for a deposition and Defendant will move the Court to compel Plaintiff to submit to a deposition.

<u>Plaintiff Has Failed To Correct Deficiencies In Her Discovery Responses</u>

As detailed in my previous letters to you of July 1, July 7, and July 8, Plaintiff's responses to Defendant's First Set Of Interrogatories and Defendant's First Request For The Production Of Documents are wholly deficient. As of today, Plaintiff has failed to correct any of the deficiencies discussed in these letters. I telephoned you on Thursday, July 17, and left you a

NYI-4106653v2

Sandra D. Frelix, Esq.
July 21, 2008
Page 2

voicemail again requesting that you correct these deficiencies, but you have again failed to respond.[1]

As discussed in my letters and in my voicemail, Plaintiff has failed to provide basic information which Defendant requested and is entitled to. This includes, but is not limited to, basic evidence of damages, such as tax returns, W-2s, statements showing the amount of short term disability and long term disability benefits Plaintiff has received, and medical records authorizations allowing Defendant to obtain complete records from Plaintiff's treating physicians. Plaintiff has likewise failed to provide any information on her efforts to obtain employment subsequent to her employment with Scotts.

Plaintiff has ignored Defendant's repeated, good faith efforts to obtain the full range of discovery which it has requested and to which it is entitled. Therefore, should Plaintiff fail to correct the deficiencies discussed in my previous letters and correspondence by Wednesday July 23, Defendant will assume that Plaintiff has chosen to ignore her obligation to fully respond to Defendant's discovery requests and Defendant will move to compel Plaintiff's complete responses.

Plaintiff's FRCP 26(a)(2) Disclosure Is Untimely And Deficient

I have reviewed Plaintiff's Disclosure Pursuant To FRCP 26(a)(2), dated July 14, 2008, which is untimely and fails to comply with the requirements of FRCP 26.

Pursuant to FRCP 26(a)(2)(C), entitled Time to Disclose Expert Testimony, a party must make the FRCP 26(a)(2) disclosures "at the times and in the sequence that the court orders." You signed and agreed to, and Judge Kaplan 'so ordered' on April 11, a Consent Scheduling Order which states that "[t]he parties shall make required Rule 26(a)(2) disclosures with respect to . . . expert witnesses on or before June 9, 2008." Plaintiff's disclosure is dated July 14, 2008. As a result, it is untimely because it was served more than one month after the deadline for such disclosures.

In any event, Plaintiff's disclosure is deficient because it does not comply with the substantive requirements of FRCP 26(a)(2). FRCP 26(a)(2)(A) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." In her disclosures, Plaintiff has named three lay witnesses and four treating physicians. The fact witnesses, Barbara D'Ana, Matthew Botz, and "Mr. Goodrich," can in no way be termed an "experts." Plaintiff indicates that Ms. D'Ana and Mr. Goodrich are Home Depot employees that worked with Plaintiff. Mr. Botz, as you know, is a Scotts employee who claims to have witnessed allegedly discriminatory practices against Plaintiff. With regard to

---

[1] The cover letter included with Plaintiff's FRCP 26(a)(2) disclosure states that "Plaintiff's Responses to Defendant's First Interrogatory Requests" are also enclosed. The package I received, however, contained no interrogatory responses.

JONES DAY

Sandra D. Frelix, Esq.
July 21, 2008
Page 3

Plaintiff's treating physicians, Plaintiff has given no indication that they have any knowledge apart from what they learned in their role as Plaintiff's treating physician. Therefore, as none of these witnesses have "scientific, technical, or other specialized knowledge" apart from what they allegedly witness while working with or treating Plaintiff, none of these qualify as FRCP 26 experts.

Plaintiff's disclosures also fail to comply with FRCP 26(a)(2)(B), which governs the requirements of an expert's written report. The rule requires that the FRCP 26(a)(2) "disclosure must be accompanied by a written report—prepared and signed by the witnesses—if the witness is one retained or specially employed to provide expert testimony in the case." Enclosed with Plaintiff's disclosure was a series of documents which, in no way, can be considered a "report" that complies with FRCP 26(a)(2)(B). This "report" does not contain any statement of compensation to be paid, list of other cases in which the witnesses have testified, or list of the witnesses' qualifications with a list of all publications authored in the past ten years. FRCP(a)(2)(B)(iv-vi). This "report" also does not contain the "data or other information considered by the witness" in forming opinions or "any exhibits that will be used to summarize or support" opinions. FRCP(a)(2)(B)(ii-iii).

The rule further requires that the report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." FRCP 26(a)(2)(B)(i). Rather than provide such a statement, the "report" merely contains three signed statements by Mr. Botz and another from Ms. D'Ana regarding incidents they allegedly witnessed while working with Plaintiff, two doctor's notes from Dr. Shawn Garber, and forms completed by Plaintiff's treating physicians in support of Plaintiff's application for long term disability benefits. None of these documents, however, include a "complete statement of all opinions the witness will express and the basis and reasons for them."

Therefore, because Plaintiff's disclosure is both untimely and fails to comply with the substantive requirements of FRCP 26(a)(2), please withdraw this disclosure by Friday, July 25, 2008 and re-serve it as a supplemental disclosure pursuant to FRCP 26(a)(1)(A)(i). Should Plaintiff fail to voluntarily withdraw this disclosure by this date, Defendant will move to strike it.

Please telephone me if you have any questions.

Very truly yours,

Craig S. Friedman/SRY

Craig S. Friedman

NYI-4106653v2

# EXHIBIT K

**SUPREME COURT OF TSHE STATE OF NEW YORK**
**COUNTY OF BRONX**

--------------------------------------------------------------------X

MARIA JACKSON

*Plaintiff,*

-against-

**THE SCOTTS COMPANY**

*Defendant.*

--------------------------------------------------------------------X

**PROPOSED
AMENDED
VERIFIED
COMPLAINT**

**INDEX No.:**

Plaintiff, MARIA JACKSON ("Mrs. Jackson", "Plaintiff" or "plaintiff"), by and

through her attorney, SANDRA D. FRELIX, for her Complaint against THE SCOTTS

COMPANY ("the Company", "Defendant Scotts", "Defendant" or "defendant"), thereby

states and alleges as follows:

## NATURE OF THE CLAIMS

1.      This action is for declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendant's unlawful employment practices and retaliation

against Plaintiff, including the discriminatory treatment, racial harassment, and retaliation

against Plaintiff due to her Race and/or Color (African-American/Black), gender,

deprivation of property without due process of law and equal protection of laws, in

violation of the New York State Human Rights Law, New York Executive Law §§ 290 et

seq.: and the New York City Human Rights Law, Administrative Code of the City of

New York §§ 8-101 et seq. and the New York State Constitution. Additionally, Mrs.

Jackson was subjected to defamation: slander per se and libel per se, being placed in a

false light and was forced to endure the breach of an implied contract to act in good faith

in violation of New York State Law. Moreover, the defendant caused her to suffer

economic discrimination and failed to provide her a reasonable accommodation pursuant to her disability in violation of 9 New York Code of Rules and Regulations (NYCRR) §466.11.

## JURISDICTION AND VENUE

2. The Court has personal jurisdiction over Defendant pursuant to Sections 301 and/or 302 of the New York Civil Practice Law and Rules ("CPLR") in that the Defendant transacts and/or solicits business within the state from which they derive substantial revenues.

3. The Court has personal jurisdiction over Defendant because a significant portion of the unlawful employment practices and events giving rise to the claims herein occurred in New York.

4. The Court has subject matter jurisdiction over this action by virtue of the New York State Human Rights Law, New York Executive Law § 279(9); the New York City Human Rights Law, Administrative Code of the City of New York § 8-502(a); and the Constitution of the State of New York.

5. Venue is proper in this county pursuant to CPLR § 503(c) because the Defendant conducted business in Bronx County at the relevant times described in this Complaint and continues to conduct business in Bronx County.

6. Prior to the commencement of this action, a copy of this Complaint was served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

## PARTIES

7.      Plaintiff Maria Jackson is an African-American citizen female who resides in Springfield Gardens, New York.  At all relevant times, Plaintiff has met the definition of an "employee" under all applicable statutes.

8.      Defendant Scotts conducts business throughout New York State as well as in all the other forty-nine states and internationally.

9.      The Scotts Company is located at 14111 Scottslawn Road, Marysville, OH 43041.

## FACTUAL ALLEGATIONS

10.     Defendant hired Mrs. Jackson in April 2001 as a Seasonal Merchandiser.

11.     She was immediately promoted to the position of Sales Merchandising Manager on or about December 14, 2001.

12.     Mrs. Jackson worked diligently for the Company for four (4) years at the time of her June 2005 unlawful termination.

13.     Mrs. Jackson excelled at her responsibilities pursuant to each of her positions.

14.     Mrs. Jackson also received exemplary job performance appraisals.

15.     In the Spring of 2002 Mrs. Jackson suffered extreme embarrassment and humiliation when District Manager Patrick McGarr ("D.M. McGarr") stated that: "Maria's not Black she is Italian!"

16.     This incident took place at the Liberty Diner in Farmingdale, N.Y.

17.     There was never an occasion witnessed by Mrs. Jackson where a white person's core identity was challenged and violated.

3

18.    In the spring of 2002 Mrs. Jackson became aware that the Defendant was being sued for discrimination for not hiring women in the 04 region.

19.    She further learned that the Defendant had specifically directed D.M. McGarr to hire a black woman.

20.    D.M. McGarr shared this information with James Fitch ("Mr. Fitch"), a Sales Merchandising Manager ("SMM").

21.    Mr. Fitch wanted D.M. McGarr to hire his friend, a Caucasian male, who had previously resigned from the Defendant but wanted his old position back.

22.    At the December 2002 conference in Naples, Florida Mrs. Jackson, D.M. McGarr, and co-workers were attending a class.

23.    Mrs. Jackson went the ladies room upon her return the seats were taken in her class' section.

24.    The only seat available in the section with her co-workers was located at the far end of the table where her co-workers were seated.

25.    The closest unoccupied seat was located in an area occupied by another district.

26.    The district manager of that region Patrick Flagherty ("D.M. Patrick Flagherty) stated that she could sit with his district.

27.    However, D.M. McGarr tapped her on the shoulder and told her that she could not sit there.

28.    D.M. McGarr then signaled one of their co-workers to move down so she could sit with them.

29.     Mrs. Jackson then heard Mr. Flagherty state to his SMM's: "What is this? Is she too good to sit with us? Oh yeah, that's right that's Pat's token."

30.     This racist comment was not only hurtful but it was extremely embarrassing to Mrs. Jackson.

31.     Another area where Mrs. Jackson was subjected to disparate treatment pertains to storage facilities.

32.     Point of Purchase is advertising that is sent to managers in great quantity.

33.     Therefore, it is customary for the Company to pay for the storage facility utilized by the managers to house and maintain the advertising materials.

34.     Unfortunately, Mrs. Jackson was informed in no uncertain terms by D.M. McGarr that his budget did not permit him to go over the $75.00 per month for storage.

35.     Consequently, she was forced to store the materials in her home, which greatly inconvenienced her family.

36.     Mrs. Jackson eventually learned that D.M. McGarr paid well over $100.00 for storage for Mrs. Jackson's co-workers who operated in eastern Long Island.

37.     This is an undeniable illustration of the humiliating, embarrassing, disparate as well as racist treatment imposed upon Mrs. Jackson by the Company.

38.     Moreover, even though D.M. McGarr was absolutely aware that Mrs. Jackson was out on a work related disability (herniated and bulging discs) he still spitefully sent Point of Purchase advertising materials to her home.

39.     In the spring of 2003 Ivy Acres held its annual flower show and invited the Company along with other lawn and garden professionals.

40.     The event is held on Long Island and after the showing a lavish luncheon is provided for those in attendance.

41.     All of Mrs. Jackson's colleagues were allowed to take the day off and attend the event and the luncheon that followed.

42.     However, Mrs. Jackson was not allowed to attend the event.

43.     But, the Company invited a white woman from an entirely different district (Philadelphia, PA) to attend the event and luncheon with all her expenses paid by the Company.

44.     This incident was extremely insulting to Mrs. Jackson and it too displayed the grossly disparate treatment she was subjected to.

45.     Mrs. Jackson was a dedicated and loyal employee of the Company.

46.     Her act of dedication and loyalty was demonstrated in March of 2003 when she was scheduled to have a hernia operation in March 2003.

47.     Mrs. Jackson's hernia injury was the result of work related lifting.

48.     Mrs. Jackson called D.M. McGarr from the Gunhill Road Home Depot store located in the Bronx in February 2003 to inform him that she needed to have hernia surgery in March 2003.

49.     During the same telephone conversation D.M. McGarr said no to the timing of her March 2003 hernia surgery and they would discuss the matter later.

50.     Mrs. Jackson also told D.M. McGarr that she was in pain.  But D.M. McGarr flippantly told her that she would have to get the job done.

51.     However, Mike Garbiele ("Mr. Garbiele"), a co-worker of Mrs. Jackson, required medical treatment for a torn rotor cup in his arm.

52.     D.M. McGarr not only allowed Mr. Garbiele time off for medical treatment of his injury but also provided coverage for his stores.

53.     Clearly, D.M. McGarr treated Mrs. Jackson disparately from Mr. Garbiele.

54.     D.M. McGarr did not require Mr. Garbiele to postpone his treatment.

55.     Additionally, D.M. McGarr provided coverage for Mr. Garbiele and allowed him time off for his treatment.

56.     Prior to learning about how D.M. McGarr accommodated Mr. Garbiele she decided to postpone it to accommodate D.M. McGarr even though her physician advised her against postponing the operation.

57.     D.M. McGarr requested that she delay the surgery because the season had just begun and he could not afford to have her out.

58.     D.M. McGarr finally agreed that she could have her surgery in June 2003.

59.     Although Mrs. Jackson has been totally dedicated and loyal to the Company these sentiments were not reciprocated back to her.

60.     Two days after her surgery D.M. McGarr called Mrs. Jackson on her hospital bedside telephone to discuss Scotts' business.

61.     Mrs. Jackson's physician Matthew Kilgo, M.D. answered her hospital bedside telephone and upon learning that D.M. McGarr wanted to discuss Scotts' business he told D.M. McGarr to call back.

62.     D.M. McGarr told Mrs. Jackson and her co-workers that they should not inform corporate that she's out recovering from surgery.

63.     Thus, Mrs. Jackson's surgery was never reported to the Company's human resources department.

64.    During her surgery she had an emergency blood transfusion and was hospitalized once again in July 2003.

65.    Mrs. Jackson was not only forced to submit to a hostile work environment and disparate treatment but she had to bear the indignity of inhumane treatment as well.

66.    The inhumane treatment manifested itself while she was at home recuperating from surgery and the relapse.

67.    D.M. McGarr had the unmitigated audacity to continue to burden Mrs. Jackson by having the Point of Purchase advertising material sent to her home.

68.    D.M. McGarr demanded that she follow-up on reports.

69.    D.M. McGarr also demanded that she answer calls on her cell phone from her home while she was recovering.

70.    Upon Mrs. Jackson's return to work in October 2003 D.M. McGarr was undaunted and unfazed by the fact that she had major surgery four months earlier.

71.    D.M. McGarr insisted that she work at the same level and pace that she worked at prior to her surgery.

72.    D.M. McGarr's actions were so detrimental to her recovery that in 2004 Mrs. Jackson's surgeon wrote two letters addressed to D.M. McGarr requesting a reasonable accommodation for his patient, Mrs. Jackson.

73.    The physician clearly expressed that lifting for Mrs. Jackson was unacceptable.

74.    D.M. McGarr failed to give Mrs. Jackson a reasonable accommodation.

75.    D.M. McGarr expected Mrs. Jackson to perform in the same manner that she had prior to her major surgery.

76.     D.M. McGarr informed Mrs. Jackson in no uncertain terms that she would have to find a way to get the job done.

77.     Another instance of discrimination against Mrs. Jackson occurred in the spring of 2004 when she requested to take her son to the dentist for a serious procedure.

78.     D.M. McGarr denied Mrs. Jackson's request to take her son to the dentist for the serious procedure.

79.     However, D.M. McGarr allowed Mrs. Jackson's co-worker, Jimmy Fitch, to take his son to a baseball game.

80.     Mrs. Jackson was also a victim of economic discrimination.

81.     During her October 2003 yearly evaluation D.M. McGarr raved about her performance and she was given a $900.00 raise.

82.     D.M. McGarr informed her that he had to fight to get her and her colleagues the $900.00 raises from Mike Carbanara ("Mr. Carbanara") the Regional Sales Director.

83.     D.M. McGarr requested that Mrs. Jackson not discuss her raise with her Caucasian male co-workers because he had gotten her a little more based on the fact that she was assigned to the Jericho Home Depot.

84.     However, shortly thereafter, she learned that her Caucasian male co-workers had each received a $1500.00 raise.

85.     This too illustrates the economic discrimination and disparate treatment she was subjected to and the hostile environment she worked in.

86.     It also demonstrates that D.M. McGarr acted in bad faith with Mrs. Jackson.

87.    The discriminatory and disparate treatment continued in that in the spring of 2004 Mrs. Jackson was servicing nine (9) Home Depots stores.

88.    She was firmly instructed that the Jericho Home Depot was to have one (1) dedicated merchandiser whose job was to service that store only.

89.    The individual who was the dedicated merchandiser to the Jericho Home Depot was a Caucasian male named Dominic Balducci ("Mr. Balducci").

90.    Mrs. Jackson was responsible for servicing eight (8) other Home Depot stores.

91.    However, she was assigned only one merchandiser to service the other eight Home Depot stores his name was Tyrone Jackson, ("Mr. Jackson") an African-American male.

92.    Mrs. Jackson's Caucasian male co-workers were assigned six to seven Home Depot stores.

93.    Moreover, her Caucasian male co-workers were assigned as many as four (4) merchandisers to service the stores they were responsible for.

94.    In 2003 Mr. Carbanara allocated Mrs. Jackson an additional twenty (20) hours of merchandising.

95.    But, D.M. McGarr instructed Mrs. Jackson to assign all the twenty (20) hours to the Jericho Home Depot store.

96.    During the gardening season of 2004 Mr. Balducci was prone to make many mistakes.

97.    Mrs. Jackson counseled him regarding his poor and disruptive work habits on numerous occasions, but to no avail.

98.    Mr. Balducci's poor and disruptive work habits included stealing time from the Company.

99.    Furthermore, Mr. Balducci threatened to cause bodily harm to department heads at Home Depot because someone borrowed "his" jack.

100.    Mr. Balducci was known to use perverted language and engaged in inappropriate discussions about his girlfriend's sex life in the presence of customers.

101.    Additionally, Mrs. Jackson received numerous calls from Home Depot management about his violent behavior.

102.    Mr. Balducci has been banished from three (3) other Home Depot stores and was sternly instructed not to return.

103.    D.M. McGarr's response to the foregoing was: "Dominic did not have to go back to those Home Depots that put him out and that they did not deserve his services to begin with."

104.    It is quite obvious that D.M. McGarr placed the personal feelings he had for Mr. Balducci before his obligations to the Company.

105.    However, Mrs. Jackson by sharing the real threat that Mr. Balducci posed with D.M. McGarr shows that she recognized that Mr. Balducci's unprofessional and violent behavior had a negative reflection on the Company as well as exposed the Company to unnecessary and avoidable liability.

106.    Moreover, Mrs. Jackson understood that he had clearly become a present liability and that the Company had been placed on notice about his unprofessional and violent behavior.

107.    The liability that D.M. McGarr exposed the Company to is enormous.

108.   It is common knowledge that Mr. Balducci had to attend court ordered anger management courses for threatening to kill his neighbor over a parking space.

109.   But, D.M. McGarr remained a staunch supporter of Mr. Balducci without considering the legal ramifications such blinding support could have on the Company or to Mrs. Jackson's safety and well-being.

110.   D.M. McGarr refused to re-hire Henry Williams ("Mr. Williams"), a black man, who worked for the Company for more than five years.

111.   The grounds that D.M. McGarr refused Mr. Williams employment was that he allegedly was not present in the store at a particular time.

112.   D.M. McGarr mercilessly defamed Mr. Williams with the tag "the Phantom" and often made jokes about him during meetings in the presence of a number of co-workers.

113.   Clearly, D.M. McGarr's disparate treatment of Mr. Williams and the unwavering support of Mr. Balducci were based on race and color.

114.   Mrs. Jackson was again forced to endure and witness this racially motivated injustice creating a hostile work environment.

115.   The discrimination and abuse suffered by Mrs. Jackson was unrelenting, discriminatory and racist.

116.   In 2004 Mr. Carbanara gave Mrs. Jackson an additional twenty (20) hours to service her other home depot stores.

117.   Mr. Carbanara realized that she was overwhelmed with servicing each of the Home Depot stores under her authority.

118.    Mrs. Jackson hired Ms. Snow in 2004 and Mr. Jackson was hired in 2001 to assist her servicing the other Home Depot stores she was responsible for.

119.    Based on information and belief there were no black merchandisers until Mrs. Jackson hired Kisha Snow ("Ms. Snow") and Mr. Jackson.

120.    Mrs. Jackson's sales numbers were growing by an incredible rate in her other Home Depot stores.

121.    Her sales numbers were increasing so rapidly that the Vice President of Miracle Gro flew in from Ohio to verify her sales numbers.

122.    However, Mr. McGarr transferred Ms. Snow and Mr. Jackson to the Jericho Home Depot store to help Mr. Balducci.

123.    The hours attributed to Ms. Snow and Mr. Jackson were the additional hours that Mr. Carbanara provided Mrs. Jackson with to service her seven (7) other Home Depot stores.

124.    This unfortunate arrangement allowed Mr. Balducci six (6) additional hours or more on a daily basis.

125.    Based on information and belief Mr. Balducci engaged in stealing time from the Company and Mrs. Jackson's budget by working in other departments at the Jericho Home Depot store.

126.    By reassigning hours specifically designated to Mrs. Jackson's seven (7) other Home Depot stores, Mr. McGarr methodically set her up to fail.

127.    Mrs. Jackson took pride in her job and used her creative skills when it was necessary.

128.    In 2003 the Company provided Mrs. Jackson and her colleagues with displays known as Cakes.

129.    The specs for the Cakes did not fit in the area they were to be displayed.

130.    Therefore, Mrs. Jackson took it upon herself to successfully re-configure and redesign the Cakes.

131.    Her efforts were so successful that D.M. McGarr gave her a $100.00 incentive for each Cake she built in her stores.

132.    D.M. McGarr instructed Mrs. Jackson to build the Cake displays in her co-workers' stores.

133.    However, Mrs. Jackson received no compensation or incentives for building the Cake displays in her co-workers stores.

134.    Another instance of unfair and disparate treatment Mrs. Jackson suffered occurred with the building of the Field Goal Post contest in 2004.

135.    Mrs. Jackson was the first of her Caucasian male co-workers to e-mail photos of her completed Field Goal Post to D.M. McGarr.

136.    D. M. McGarr admitted that Mrs. Jackson was the first to complete the Field Goal Post contest.

137.    D.M. McGarr further stated that he knew that she would be the first to complete the contest based on previous incentive driven assignments.

138.    However, D.M. McGarr insisted that she resubmit the photos because there was a piece of cardboard in one of the photos she sent.

139.    The piece of cardboard was the property of Home Depot and placed there by a Home Depot employee.

140.    Due to other commitments Mrs. Jackson was unable to resubmit the photos immediately.

141.    Another co-worker, Mike Gabriele won the $100.00 contest.

142.    Mike Gabriele won even though he sent his photos in after Mrs. Jackson sent her photos in.

143.    Mrs. Jackson in 2004 created and designed the Bookcase display.

144.    The Book Case display was created and designed by Mrs. Jackson specifically for the Miracle Gro product line.

145.    At the December 2004 National Conference, those in attendance were encouraged to adopt and use the Book Case display.

146.    Even though Mrs. Jackson created and designed the Book Case display concept, the raise she received was less than the raise received by her Caucasian male co-workers.

147.    The events surrounding the December 2004 National Conference in Naples, Florida were particularly public, brutal and extremely humiliating for Mrs. Jackson.

148.    At the conference the Company's employees were encouraged to take the Miracle-Gro since there were several new items in the product line.

149.    Mrs. Jackson began taking one of each sku and realized that Keith Conard ("Mr. Conard"), Regional Vice President, was watching her.

150.    A short time later, Mr. Conard approached Mrs. Jackson and asked her: "What are you doing with the Miracle-Gro?"

151.    Mrs. Jackson, although perplexed by his peculiar inquiry, respectfully explained: "It is my understanding that we could take the Miracle-Gro, everyone is taking the product."

152.    Mr. Conard responded by stating: "Yes we were told we could take it, however, you can not because you are going on an airplane and will not be allowed on the flight with the product."

153.    Mrs. Jackson approached Rob Lamp ("Mr. Lamp") to obtain clarification on airline travel constraints associated with the Miracle-Gro.

154.    Mr. Lamp stated: "I have been addressing that issue all morning and you can take the Miracle-Gro but you must check it in and not take it in your carry-on luggage.

155.    Mr. Lamp then escorted Mrs. Jackson to the Miracle-Gro table and began assisting her with boxing up the products.

156.    Mr. Conard continued to watch Mrs. Jackson's every move from a distance.

157.    Mr. Lamp carried the box to the elevator and waited with her until the elevator arrived.

158.    When the elevator arrived she stepped on the elevator and he handed her the box and said: "Farewell, until next year."

159.    Prior to the elevator doors closing Mr. Conard stepped onto the elevator.

160.    Mr. Conard then asked Mrs. Jackson: "Have you ever been thrown into jail?"

161.     There were other representatives from the Company on the elevator having a conversation.

162.     But, all discussions ceased when Mr. Conard singled out Mrs. Jackson and asked her that question.

163.     He further stated that: "If you take the Miracle-Gro you are going to be thrown into jail and Scotts is not going to be here in Naples to get you out of jail."

164.     He then said: "What are you going to do?"

165.     Mrs. Jackson was shocked and flabbergasted by such a question.

166.     She immediately felt that Mr. Conard was motivated by racism since she was the only Company representative he made this inquiry to.

167.     Mrs. Jackson responded by stating that: "If I am arrested Marion Silber of Gordon & Silber will represent me."

168.     Flippantly, Mr. Conard said: "Is that right?"

169.     Mrs. Jackson steeled herself in order to hold back the tears.

170.     When she got to her room she cried hysterically due to the unbearable embarrassment and humiliation Mr. Conard had subjected her to.

171.     Mrs. Jackson called D.M. McGarr but was far too upset to leave a message the first time she called but called again and left a message.

172.     She then called her colleague Mr. Botz.  Mr. Botz had previously been Mrs. Jackson's direct supervisor.

173.     Mrs. Jackson explained what had occurred with Mr. Conard and how she had tried to call D.M. McGarr unsuccessfully.

174.    Mr. Botz told Mrs. Jackson that D.M. McGarr was on the patio in the pool area.

175.    Mr. Botz was very angry about the incident with Mr. Conard and advised Mrs. Jackson to take the product.

176.    Mr. Botz said it was unfair and cited the fact that everyone was taking the product and that she was the only Scotts representative singled out.

177.    D.M. McGarr returned her call and told her to meet him in the hotel lobby. Mrs. Jackson explained what had occurred and D.M. McGarr appeared to be in shock.

178.    He continued to ask Mrs. Jackson over and over again what had transpired between her and Mr. Conard.

179.    D.M. McGarr stated: "I'm in shock because I saw people leaving the hotel with tons of the stuff in their suitcases.  Boxes of stuff I saw them leave with."

180.    Mrs. Jackson expressed to D.M. McGarr that due the actions of Mr. Conard she had been discriminated against.

181.    D.M. McGarr stated that when they get back to New York he would purchase all the Miracle-Gro that she wanted.

182.    But he voiced his concerns that he feared that if she did not put the Miracle-Gro back she would be fired for insubordination.

183.    He further stated that she should apologize to Mr. Conard for taking the Miracle-Gro.

184.    Mrs. Jackson began to cry because the harassment and humiliation had been compounded exponentially as a result of D.M. McGarr's reaction to the discrimination and the disparate treatment she had unfairly experienced.

185.    Nevertheless, she returned the Miracle-Gro and apologized to Mr. Conard for taking the product.

186.    Mr. Conard replied: "It was a wise thing to do because the Scotts Company would not have been available and that other incidents could have arose from the matter had you taken the Miracle-Gro."

187.    It is evident that those in a position to rightfully object to the wrongful and unlawful actions of Mr. Conard chose to act in concert with him by ignoring his blatant acts of discrimination.

188.    Mrs. Jackson was told to provide Mr. Cabanara with a formal report about the racist incident with Mr. Conard.

189.    However, when she broached the matter with him he stated curtly: "I'm not interested and forget the matter."

190.    D.M. McGarr acted in a similar fashion when he snapped: "Forget the entire matter. Just forget about it."

191.    It is obvious that both Mr. Cabanara and D.M. McGarr covered and condoned the unlawful actions of Mr. Conard.

192.    On or about January 10, 2005 Mrs. Jackson's back went completely out which forced her to go out on short-term disability.

193.    However, unbeknownst to her, sometime during the month of June 2005 she was unceremoniously and unlawfully terminated.

194.    Mrs. Jackson's unlawful termination was contrary to the Company's policies and procedures.

195.    Moreover, the Company failed to provide her with a reasonable accommodation for her work related injury.

196.    *In or about March 2003 during her employment with the Company Mrs. Jackson informed her immediate supervisor Mr. McGarr that she required hernia surgery that was caused by work related lifting.*

197.    *Mr. McGarr commanded that neither Mrs. Jackson nor her co-workers inform the Company of her work related hernia injury.*

198.    *Mrs. Jackson complied with Mr. McGarr's command and did not inform the Company of her work related hernia injury because she feared that she would be terminated.*

199.    *On or about January 8, 2005 when Mrs. Jackson was still an employee of the Company, she injured her back, neck and arm as a result of lifting boxes of Miracle Gro fertilizer, which resulted in her described injuries.*

200.    *Mrs. Jackson remained employed by the Company but the Company and its insurance carrier did not pay for her medical treatment.*

201.    *On or about January 10, 2005 Mrs. Jackson notified her direct supervisor Mr. McGarr of the injuries she suffered on or about January 8, 2005.*

202.    *The Company or its insurer never counseled Mrs. Jackson as to her rights under workers' compensation statutory provisions of the State of New York pursuant to her 2003 or 2005 work related injuries.*

203.    *Based on Mrs. Jackson was hesitant to inquire about her workers' compensation rights because she believed by doing so it would adversely affect her employment.*

20

204.    On or about February 20, 2008 New York State Workers' Compensation Board took Mrs. Jackson's claim regarding her work related injuries upon learning the circumstances that caused the substantial delay. That her supervisor Mr. McGarr commanded her and her co-worker's not to inform the Company of her said job related injuries.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination and Harassment
### In Violation of New York State Human Rights Law)

205.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 204, inclusive as if fully set forth herein.

206.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in violation of the New York State Human Rights Law by denying to plaintiff equal terms and conditions of employment, including but not limited to failing to provide plaintiff with a reasonable accommodation as a result to plaintiff's disability and subjecting plaintiff to disparate working conditions and performance standards, gender discrimination, denying plaintiff the opportunity to work in an employment setting free of unlawful harassment, denying plaintiff opportunities for professional growth, denying plaintiff compensation and other terms and conditions of employment equal to that of Caucasian employees, and terminating plaintiff unlawfully from plaintiff 's employment with defendant.

207.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in

21

violation of the New York State Human Rights Law by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, severe and pervasive racial harassment of plaintiff by plaintiff's superiors.

208.    As a direct and proximate result of defendant's unlawful and discriminatory conduct in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

209.    As a direct and proximate result of defendant's unlawful and discriminatory conduct in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of damages.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Retaliation in Violation of New York State Human Rights Law)

210.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 209, inclusive, as if fully set forth herein.

211.    Defendant has retaliated against plaintiff by, inter alia, by treating her with unmitigated contempt when she complained about how she was treated regarding the Mr. Conard/Miracle Gro incident and subjecting plaintiff to wrongful termination,

subjecting plaintiff to an unfair and hostile work environment and failing to provide

plaintiff with a reasonable accommodation pursuant to plaintiff's disability this is clearly

in violation of New York State Human Rights Law for: (a) plaintiff's opposition to

defendant's discriminatory practices; (b) being wrongfully subjected to harassment and a

hostile work environment.

212.    As a direct and proximate result of defendant's unlawful and retaliatory

conduct in violation of the New York State Human Rights Law, plaintiff has suffered and

continues to suffer, monetary and/or economic damages, including but not limited to loss

of past and future income, compensation and benefits for which plaintiff is entitled to an

award of monetary damages and other relief.

213.    As a direct and proximate result of defendant's unlawful retaliatory

conduct in violation of the New York State Human Rights Law, plaintiff has suffered and

continues to suffer, severe mental anguish and emotional distress, including but not

limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem

and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an

award of monetary damages and other relief.


### AS AND FOR A THIRD CAUSE OF ACTION

**(Aiding and Abetting Violations of New York State Human Rights Law)**

214.    Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 213, inclusive, as if fully set forth herein.

215.    Defendants knowingly or recklessly aided and abetted the unlawful

employment practices, discrimination, harassment and retaliation against plaintiff in

violation of the New York State Human Rights Law by actively participating in the unlawful conduct set forth above.

216.    As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

217.    As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Discrimination and Harassment
### In Violation of New York City Human Rights Law)

218.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 217, inclusive, as if fully set forth herein.

219.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of plaintiff's Race and/or Color (African-American/Black), in violation of the New York City Human Rights Law by denying to plaintiff equal terms and conditions of employment, including but not limited to, failing to provide plaintiff with a reasonable accommodation pursuant to plaintiff's disability, subjecting plaintiff to

disparate working conditions and performance standards, gender discrimination, economic discrimination, denying plaintiff the opportunity to work in an employment setting free of unlawful harassment, denying plaintiff opportunities for professional growth, denying plaintiff compensation and other terms and conditions of employment equal to that of Caucasian employees, and terminating plaintiff unlawfully from plaintiff's employment at the Defendant's.

220.    Defendant has discriminated against plaintiff and subjected plaintiff to harassment on the basis of her Race and/or Color (African-American/Black), in violation of the New York City Human Rights Law by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, severe and pervasive racial harassment of plaintiff by plaintiff's superiors.

221.    As a direct and proximate result of defendant's unlawful and discriminatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

222.    As a direct and proximate result of defendant's unlawful and discriminatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of damages.

223.    Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Retaliation in Violation of New York City Human Rights Law)

224.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 223, inclusive, as if fully set forth herein.

225.    Defendant retaliated against plaintiff by, inter alia, by treating her with unmitigated contempt when she complained about how she was treated regarding the Mr. Conard/Miracle Gro incident and subjecting plaintiff to wrongful termination, subjecting plaintiff to an unfair and hostile work environment and failing to provide plaintiff with a reasonable accommodation pursuant to plaintiff's disability this is clearly in violation of New York State Human Rights Law for: (a) plaintiff's opposition to defendant's discriminatory practices; (b) being wrongfully subjected to harassment and a hostile work environment.

226.    As a direct and proximate result of defendant's unlawful and retaliatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

227.    As a direct and proximate result of defendant's unlawful retaliatory conduct in violation of the New York City Human Rights Law, plaintiff has suffered and

continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

228.    Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR THE SIXTH CAUSE OF ACTION

### (Aiding and Abetting Violations of New York City Human Rights Law)

229.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 228, inclusive, as if fully set forth herein.

230.    Defendant knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against plaintiff in violation of the New York City Human Rights Law by actively participating in the unlawful conduct set forth above.

231.    As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York City Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

232.    As a direct and proximate result of defendant's unlawful discrimination, harassment and retaliation against plaintiff in violation of the New York City Human

Rights Law, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

233.     Defendants unlawful actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR THE SEVENTH CAUSE OF ACTION

### (Defamation)

234.     Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 233, inclusive, as if fully set forth herein.

235.     Defendant unlawfully subjected plaintiff to defamation: libel per se and slander per se, placed plaintiff in a false light, and engaged in acts that caused the invasion of plaintiff's privacy.

236.     Defendant knowingly or recklessly subjected plaintiff to defamation: libel per se and slander per se, placed her in a false light, and engaged in acts that caused the invasion of plaintiff's privacy in violation of New York State law.

237.     As a direct and proximate result of defendant's unlawful acts of defamation: libel per se and slander per se, placing plaintiff in a false light, and the invasion of plaintiff's privacy, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income,

compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

238.    As a direct and proximate result of defendant's unlawful acts of defamation: libel per se and slander per se, placing plaintiff in a false light, and the invasion of plaintiff's privacy, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

239.    Defendant's unlawful actions constitute malicious, willful and wanton violations of New York State Law for which plaintiff is entitled to an award of compensatory and punitive damages and other relief.

## AS AND FOR THE EIGHTH CAUSE OF ACTION

### (Economic Discrimination)

240.    Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 239, inclusive, as if fully set forth herein.

241.    Defendant unlawfully subjected plaintiff to economic discrimination in violation of New York State Law.

242.    Defendant knowingly or recklessly subjected plaintiff to economic discrimination in violation of New York State Law.

243.    As a direct and proximate result of the defendant subjecting plaintiff to economic discrimination, plaintiff has suffered, and continues to suffer, monetary and/or

economic damages, including but not limited to loss of past and future income,

compensation and benefits for which plaintiff is entitled to an award of monetary

damages and other relief.

244.    As a direct and proximate result of the defendant subjecting plaintiff to

economic discrimination, plaintiff has suffered, and continues to suffer, severe mental

anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering for which plaintiff is entitled to an award of monetary damages and

other relief.

245.    Defendant's unlawful actions constitute malicious, willful and wanton

violations of New York State Law for which plaintiff is entitled to an award of

compensatory and punitive damages and other relief.


## AS AND FOR THE NINETH CAUSE OF ACTION

### (Breach of Implied Contract to Act in Good Faith)

246.    Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 245, inclusive, as if fully set forth herein.

247.    Defendant unlawfully breached its implied contract to plaintiff to act in

good faith in violation of New York State Law.

248.    Defendant knowingly or recklessly breached its implied contract to

plaintiff to act in good faith in violation of New York State Law.

249.    As a direct and proximate result of defendant's breach of the implied

contract to plaintiff to act in good faith, plaintiff has suffered, and continues to suffer,

monetary and/or economic damages, including but not limited to loss of past and future

income, compensation and benefits for which plaintiff is entitled to an award of monetary

damages and other relief.

250.    As a direct and proximate result of defendant's breach of the implied

contract to act in good faith, plaintiff has suffered, and continues to suffer, severe mental

anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering for which plaintiff is entitled to an award of monetary damages and

other relief.

251.    Defendant's unlawful actions constitute malicious, willful and wanton

violations of New York State Law for which plaintiff is entitled to an award of

compensatory and punitive damages and other relief.


## AS AND FOR THE TENTH CAUSE OF ACTION

### (Failure to Provide a Reasonable Accommodation)

252.    Plaintiff hereby repeats and re-alleges each and every allegation in

paragraphs 1 through 251, inclusive, as if fully set forth herein.

253.    Defendant unlawfully failed to provide plaintiff with a reasonable

accommodation as a result of plaintiff's work related injury.

254.    Defendant knowingly and/or recklessly failed to provide plaintiff with a

reasonable accommodation as a result of plaintiff's work related injury in violation of 9

New York Code of Rules and Regulations (NYCRR) §466.11.

255.     As a direct and proximate result of defendant's failure to provide plaintiff with a reasonable accommodation of plaintiff's work related injury, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.

256.     As a direct and proximate result of defendant's failure to provide plaintiff with a reasonable accommodation of her work related injury, plaintiff has suffered, and continues to suffer, severe physical and mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

257.     Defendant's unlawful actions constitute malicious, willful and wanton violations of New York State Law for which plaintiff is entitled to an award of compensatory and punitive damages and other relief.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION

### (Violation of Equal Protection of Laws)

258.     Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 257, inclusive, as if fully set forth herein.

259.     Defendant unlawfully violated plaintiff's Equal Protection of Laws rights.

260.     Defendant knowingly or recklessly violated plaintiff's Equal Protection of Laws rights under Article 1 § 11 of the New York State Constitution (Bill of Rights) by

subjecting plaintiff to treatment that no Caucasian employee of the defendants' has been

subjected to.

261.    As a direct and proximate result of defendant's violating plaintiff's Equal

Protection of Laws, plaintiff has suffered, and continues to suffer, monetary and/or

economic damages, including but not limited to loss of past and future income,

compensation and benefits for which plaintiff is entitled to an award of monetary

damages and other relief.

262.    As a direct and proximate result of defendant's violating plaintiff's Equal

Protection of Laws, plaintiff has suffered, and continues to suffer, severe mental anguish

and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering for which plaintiff is entitled to an award of monetary damages and

other relief.

### *AS AND FOR THE TWELFTH CAUSE OF ACTION*

#### *(Violation of New York State Workers' Compensation Rights)*

*263.    Plaintiff hereby repeats and re-alleges each and every allegation in*

*paragraphs 1 through 262, inclusive, as if fully set forth herein.*

*264.    Defendant unlawfully violated plaintiff's New York State Workers'*

*Compensation Rights.*

*265.    Defendant knowingly or recklessly violated plaintiff's New York State*

*Workers' Compensation Rights by subjecting plaintiff to treatment that no Caucasian*

*employee of the defendants' has been subjected to.*

266.    *As a direct and proximate result of defendant's violating plaintiff's New York State Workers' Compensation Rights, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits for which plaintiff is entitled to an award of monetary damages and other relief.*

267.    *As a direct and proximate result of defendant's violating plaintiff's New York State Workers' Compensation Rights, plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enters judgment in her favor and against defendant, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of defendant complained of herein violate the laws of the State of New York and the City of New York;

B.    An order directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and otherwise unlawful conduct are eliminated and do not continue to affect plaintiff;

C.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all monetary and/or economic damages,

including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

        D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for plaintiff's severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

        E.     An award of damages for any and all other monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial, plus prejudgment interest;

        F.     An award of punitive damages;

        G.     An award of costs that plaintiff has incurred in this action, as well as plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

        H.     Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.


Dated:  New York, New York
         March 27, 2008

                              Respectfully submitted,

                              SANDRA D. FRELIX, P.C.


                              By: _____
                                     Sandra D. Frelix
                                     Attorney for Plaintiff
                                     110 Wall Street, 11th Floor
                                     New York, New York 10005
                                     Telephone:  212-859-3509
                                     Facsimile:  212-862-8212

## **VERIFICATION**

State of New York     )
                      )  ss.:
County of Queens      )


  MARIA JACKSON, being duly sworn, states:

  I am the Plaintiff in the action herein.  I have read the annexed SUMMONS AND

AMENDED VERIFIED COMPLAINT, know the contents thereof and the same are true

to my knowledge, except those matters therein which, are stated to be alleged on

information and belief, and as to those matters I believe them to be true.


_____
    MARIA JACKSON


Sworn to before me
this _____ day of March, 2008



_____
  NOTARY PUBLIC

# EXHIBIT L

SANDRA D. FRELIX, ESQ. (SF-0421)
Attorney for the Plaintiff
110 Wall Street, 11th Floor
New York, New York 10005
(212) 859-35609

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MARIA JACKSON

Plaintiff,

-against-

THE SCOTTS COMPANY,

Defendant.
-------------------------------------------------------------------X

08 Civ. 1064 (LAK)

PLAINTIFF'S INITIAL
DISCLOSURE PURSUANT
TO F.R.C.P. 26 (a)

Pursuant to Federal Rules of Civil Procedure 26(a), Plaintiff Maria Jackson hereby makes the following initial disclosures:

Rule 26 (a)(1)(A)(i)

The name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

1. Maria Jackson, Plaintiff, 184-12 144th Road, Springfield Garden, New York 11413, telephone #: 917-407-2629. Mrs. Jackson will provide evidence to support the claims in her verified complaint.

2. Jeremy Fass, telephone #: 631-766-0116, will provide information regarding Mrs. Jackson's employment with the Defendant.

Rule 26(a)(1)(A)(ii)

[A] copy – or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

1.    Plaintiff's personnel file.

2.    Salary information of Plaintiff and her co-workers.

3.    Any and all documents pertaining to the 2002 Naples, FL conference.

4.    Storage facility records for Plaintiff and her co-workers.

5.    Any and all documents pertaining to the 2003 Ivy Acres event.

6.    Any and all documents regarding Plaintiff's 2003 hernia operation.

7.    Any and all documents pertaining to the Defendant's treatment of Mike Garbiele in light of his injury.

8.    The Defendant's employment policies and procedures.

9.    The Defendant's policy regarding merchandisers.

10.    The Defendant's policy on raises.

11.    The Defendant's policy on bonuses.

12.    The Defendant's policy on incentives.

13.    The sales numbers for Plaintiff and her co-workers.

14.    The policy and procedure announced pertaining to the employees taking Miracle Gro products at the December 2004 National Conference in Naples, Fl.

15.   Any and all documents regarding discrimination lawsuit involving the Defendant.

16.   Any and all documents detailing the policy and procedure when and act of discrimination is reported to a supervisor or other employee who occupies a superior position.

17.   Any and all documents regarding the policy and procedure for reporting a work related injury to the New York State Workers' Compensation Board.

18.   Any and all documents regarding Plaintiff and the New York State Workers' Compensation Board.

19.   Any and all documents regarding Plaintiff's termination.

20.   The Defendant's discrimination policy.

21.   Any and all documents regarding Plaintiff's EEOC charge.

22.   Plaintiff reserves the right to adjust this list.

Rule 26(a)(1)(A)(iii)

[A] computation of each category of damages claimed by the disclosing party — who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

1.   Plaintiff is unable to accurately estimate her economic losses at this time without discovery.