UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Not for Publication

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARIA JACKSON,

                      Plaintiff,

                 -against-                                08 Civ. 1064 (LAK)

THE SCOTTS COMPANY,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Lewis A. Kaplan, *District Judge.*

          This employment discrimination case now is before the Court on (1) defendant's motion to dismiss the action, pursuant to Fed. R. Civ. P. 37, for non-compliance with a discovery order as well as (2) plaintiff's motions to stay proceedings on defendant's motion to dismiss pending the disposition of a complaint by plaintiff's counsel to another body under the judicial conduct rules. The basis of that complaint is the allegedly erroneous failure of the undersigned to recuse himself from this case. This memorandum and order disposes of these motions.

*Background*

          This case has a long history, but it suffices for the most part to outline the major details.

*Attempts to Procure Remand  Based on Supposed Workers' Compensation Claim*

      The action originally was brought in the New York Supreme Court, Bronx County, but was removed to this Court on the basis of diversity of citizenship.  Plaintiff initially moved to remand, contending that the complaint asserted a claim under the New York Workers' Compensation Law.[1]  That motion was denied on February 21, 2008 on the ground that the complaint did not even purport to assert a claim under the Workers' Compensation Law – indeed, it did not even contain the word "worker."[2]

      Plaintiff subsequently has made repeated efforts to overcome that ruling.  The details need not be recounted.  The efforts all were unsuccessful, and plaintiff's counsel ultimately was sanctioned for this and other misbehavior.[3]

*Discovery Problems*

      As the case proceeded into discovery, problems continued.

      On April 11, 2008, the Court approved a consent scheduling order entered into by the parties.[4]  It required, among other things, completion of discovery by September 5, 2008.  But that was not to be.

---

[1]     Docket item ("DI") 7.

      28 U.S.C. § 1445(c) prohibits removal of workers' compensation claims from state *fora.*

[2]     DI 9.

[3]     DI 10, 42, 56, 87; *see also*  DI 21.

[4]     DI 36.

In July 2008, the Court granted defendant's motion to compel plaintiff to comply with her obligations under Rule 26(a)(1)(A)(iii) by July 29 on pain of possible preclusion of evidence of damages.[5]  On August 18, the Court granted defendant's motion to compel production of documents and answers to interrogatories (the "August 18 Order").[6]  In September, the Court granted defendant's motion to preclude plaintiff from offering, among other things, any evidence of economic damages in consequence of her failure to comply with discovery obligations.[7]

By mid-September 2008, plaintiff still had not submitted to the completion of her deposition or complied fully with her discovery responsibilities.  Defendant moved to dismiss the action pursuant to Rule 37.[8]  In a December 24, 2008 order (the "December 24 Order"), the Court found that it was "abundantly clear" that plaintiff had not complied with her discovery obligations.  It nevertheless granted the defendant's motion only to the extent of ordering plaintiff to appear for and submit to the completion of her deposition by the end of January and to produce certain other discovery as required by the August 18 Order.[9]  The order, however, expressly warned that any failure to comply could result in sanctions, including dismissal of the action.  It is plaintiff's failure to comply with the December 24 Order that underlies defendant's present motion to dismiss.

---

[5]     DI 65.

[6]     DI 81.

[7]     DI 104.

[8]     DI 99.

[9]     DI 119.

4

*The Recusal Efforts*

Plaintiff's counsel, evidently dissatisfied with the Court's prior rulings in this case, wrote to the Chief Judge on September 29, 2008, albeit without sending copies to her adversary or the undersigned.  Her letter contended that she had:

> "learned that there may possibly be a connection between [the undersigned] and the Defendant The Scotts Company ('Scotts') that occurred while he was a partner at Paul, Weiss, Rifkind, Wharton & Garrison ('Paul Weiss').  It appears that Paul Weiss represented Scotts on a matter called the Millennium Growth Plan."

A footnote indicated that counsel had "enclosed and highlighted the AOL search document [and other materials] that leads me to believe that there may be a connection."

As will appear below, the materials in question on their face did not support counsel's belief which, in any event, was wrong.  For the moment, however, it need be noted only that plaintiff's counsel requested that the Chief Judge stay the case "until information regarding [the undersigned's] status, during the relevant time with Paul Weiss, is learned."[10]

On the following day, plaintiff's counsel wrote to the undersigned and asked whether Paul Weiss had represented Scotts while the undersigned was with the firm.  Unlike her letter to the Chief Judge, this letter did not reveal her professed belief that Paul Weiss had done so or, more importantly, disclose the basis for that professed belief.  A few days later, my assistant responded, "as a matter of courtesy rather than of obligation, that [the undersigned did] not recall the defendant in this case having been a client of Paul Weiss . . . during his tenure at the firm."

More than two months went by without any apparent action by plaintiff.  Then, on

---

[10]

       The Chief Judge in December endorsed the request with an order to the effect that the matter of recusal should be directed to the undersigned.

December 15, 2008, plaintiff's counsel moved to disqualify the undersigned on the ground that the failure to recall the defendant having been a client of Paul Weiss during his tenure with the firm gave reasonable grounds to question his impartiality.[11]  The motion – like the September 29 letter to the Court – did not disclose plaintiff's counsel's professed belief that Paul Weiss had represented the defendant or the basis for that point of view.  Thus, plaintiff's point was that recusal was required by the stated lack of recollection as distinguished from the actual existence of an attorney-client relationship between Paul Weiss and the defendant while the undersigned was at the firm.  This of course she had known since October 3, 2008, the date upon which the Court responded to her inquiry.

The Court promptly denied the motion, noting, among other things, that:

"The fact that the undersigned so responded to the inquiry by plaintiff's counsel would not in any case constitute a basis for disqualification.  It certainly does not evidence the personal bias or prejudiced required for disqualification under Section 144. It does not reflect the 'personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding' that is required for disqualification under Section 455(b)(1).  And, although plaintiff's notice of motion does not refer to Section 455(a), there is nothing about the Court's response that suggests that any reasonable person, aware of all of the facts, would entertain the slightest suspicion that the undersigned's 'impartiality might reasonably be questioned,' the standard applicable under that statute. *See, e.g., In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1309 (2d Cir.1988) ('[T]he test of impartiality is what a reasonable person, knowing and understanding all the facts and circumstances, would believe.'), *reh'g denied,* 869 F.2d 116 (2d Cir.), *cert. denied,* 490 U.S. 1102 (1989)."[12]

On December 16, 2008, the day following the denial of the motion, the undersigned received from Judge Wood the September 29 letter from plaintiff's counsel with the enclosed

---

[11]     DI 113.

[12]     DI 114 (footnotes omitted).

6

Internet materials.  This brought to my attention for the first time plaintiff's counsel's belief that Paul

Weiss had represented defendant in 1999 in connection with its Millennium Growth Plan as well as

the Internet materials she had sent to the Chief Judge.

           The Court promptly reconsidered its ruling in light of this additional material, but

again denied the motion to recuse.  The order stated in part:

> "First, there is nothing in the materials that plaintiff sent to the Chief Judge
> that in fact supports her speculation that my former firm represented defendant in
> connection with the Millennium Growth Plan or anything else, whether in 1999 or
> at any other time.
>
> "Second, I left Paul Weiss in 1994, more than five years before the effective
> date of the Millennium Growth Plan.
>
> "Third, 28 U.S.C. § 455(b)(2) in pertinent part requires disqualification only
> '[w]here in private practice [the judge] served as a lawyer in the matter in
> controversy, or a lawyer with whom he previously practiced law served during such
> association as a lawyer concerning the matter.'  *See generally Faulkner v. Nat'l
> Geographic Soc'y,* 296 F. Supp. 2d 490-91 (S.D.N.Y. 2003), *aff'd,* 409 F.3d 26, 41-
> 43 (2d Cir. 2005).  These criteria manifestly are not met here."[13]

           Plaintiff's counsel did not cease.  On December 17, 2008, she attempted to file a so-

called First Motion to Amend/Correct Motion and Notice of Motion for the Disqualification/Recusal

of the Honorable Lewis A. Kaplan.[14]  Although it was rejected by the Clerk's Office for failure to

comply with electronic filing requirements, the Court considered it.

           The new motion contended that the Court was obliged to recuse on the theory that its

failure recall any representation of the defendant by Paul Weiss violated the Second Circuit's

---

[13]     DI 116.

[14]     DI 115.

7

Mandatory Conflicts Screening Plan (the "Plan").[15]  That motion too was denied.[16]  After pointing

out that the Plan is directed principally at financial interests, a term of art defined as "ownership of

a legal or equitable interest, however small, or a relationship as director, advisor, or other active

participant in the affairs of a party . . ," the Court added in relevant part:

> "This is not to say that a judge's previous professional representation of a
> party, or a previous or even present representation of a party by someone with whom
> the judge once practiced law, invariably is irrelevant.  As the Court previously has
> pointed out, Section 455(b)(2) and Canon 3C(1)(b) require disqualification '[w]here
> in private practice [the judge] served as lawyer *in the matter in controversy,* or a
> lawyer with whom [the judge] previously practiced law served *during such
> association* as a lawyer *concerning the matter.'*  (Emphasis added)  But the Second
> Circuit Plan does not purport to require judges to remember the entire client lists of
> large law firms of which they were members more than a decade before, much less
> to keep abreast of the current client lists of such firms – a requirement that often
> could not be reconciled with the right of clients to ensure the confidentiality of their
> attorney-client relationships.  Nor would any such requirement make sense in light
> of the fact that it is only representations of a party 'in the matter in controversy' that
> even potentially might be disqualifying.
>
> "In this case, plaintiff has not come remotely close to anything disqualifying.
> There is no reason to suppose that the firm in which the undersigned practiced until
> his appointment more than 14 years ago ever represented the defendant.  Even if it
> did, that would not be disqualifying.  The amended complaint here alleges that the
> plaintiff was hired by the defendant in 2001, Am Cpt ¶ 10, which was about seven
> years after the undersigned left the practice of law.  The circumstances of plaintiff's
> employment, which is the subject matter of this case, therefore necessarily post-date
> by years the departure of the undersigned from the private practice of law.
> Accordingly, the undersigned could not possibly have represented the defendant *'in
> the matter in controversy,'* and no 'lawyer with whom he previously practiced law'
> could have done so *'during such association.'"*[17]

---

[15]

   *Id.*

[16]

   DI 118.

[17]

   *Id.* (footnotes omitted) (emphasis in original except as noted).

8

But this did not end the matter either.  Plaintiff's counsel filed another motion to recuse the undersigned on December 31, 2008, essentially rehashing arguments previously rejected and attempting to justify her delay in filing an earlier motion.[18]  That motion was denied in early January 2009.[19]

*The Present Motions and Their Relationship to the Judicial Misconduct Complaint*

The December 24 Order and the denials of the repeated recusal motions set the stage for the matters now before the Court.

The December 24 Order, which had denied dismissal for prior discovery failures in order to give plaintiff one more chance to discharge her obligations, warned that non-compliance could result in dismissal of the action.  As is demonstrated below, plaintiff did not comply with the December 24 Order – indeed, she does not claim otherwise.  So the likelihood of a successful motion to dismiss was obvious to plaintiff's counsel.  It therefore perhaps is not surprising that counsel on January 16, 2009 filed her judicial conduct complaint against the undersigned.[20]

Defendant filed the anticipated motion to dismiss for failure to comply with the December 24 Order on January 20, 2009.[21]  Plaintiff's answering papers did not claim that she had

---

[18]   DI 121.

[19]   DI 124.

[20]   The complaint was not served on defendant's counsel or the undersigned.  Plaintiff referred to it in subsequent filings.

[21]   DI 125.

9

complied with the order.[22]  Rather, they renewed her contention that the undersigned should have

recused himself.[23]  Defendant pointed this out in its February 2, 2009 reply and pressed its request

for dismissal.[24]  Plaintiff thereupon moved to stay proceedings in this case pending disposition of

her judicial conduct complaint.[25]

*Discussion*

I.      *The Motions to Stay Proceedings*

The first question is whether there is any reason to stay proceedings on defendant's

motion to dismiss pending the outcome of the plaintiff's judicial conduct complaint.  Plaintiffs'

argument is simple enough – she contends simply that the Second Circuit ought to be permitted to

decide the judicial conduct complaint before anything further occurs in the district court.  But that

argument is not persuasive.

As an initial matter, judicial conduct complaints are governed by the Rules for

Judicial-Conduct and Judicial-Disability Proceedings promulgated by the Judicial Conference of the

United States (the "Judicial Conduct Rules").  Those rules do not require that proceedings in an on-

going case be stayed pending the outcome of a complaint against the presiding judge.  Nor would

such a requirement be sensible, as it readily could be used by the unscrupulous for delay and other

---

[22]     DI 132-33.

[23]     *Id.*

[24]     DI 134.

[25]     DI 135-137.

improper purposes.

This of course is not to say that a court lacks authority to stay proceedings in such circumstances.  Courts have inherent power over their dockets and thus have discretion to stay proceedings when they consider it appropriate.[26]  Considerations pertinent to the exercise of that discretion include "economy of time and effort for [the court], for counsel, and for litigants" and whether the applicant has made "out a clear case of hardship or inequity in being required to go forward."[27]  Moreover, assessment of whether an applicant would suffer hardship in being required to go forward necessarily involves consideration of the likelihood that some useful purpose would be served by delay – in this case, the likelihood that plaintiff's complaint will succeed and, if it does, have some effect on the proceedings in this case.

A.      *Likelihood of Success*

1.      *The Judicial Conduct Rules*

The premise of plaintiff's stay motions is that her complaint under the Judicial Conduct Rules could lead to a determination that the undersigned should have recused himself in this action and affect the course of proceedings in this action.  That premise is incorrect.

Rule 1 of the Judicial Conduct Rules provides in relevant part that the rules "govern proceedings . . . to determine whether a covered judge has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts."  Rule 11(c)(1)(B) requires

---

26

See, e.g., *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

27

*Id*. at 254-55.

that any complaint under the Rules be dismissed if it "is directly related to the merits of a decision or procedural ruling."  Rule 3(h)(3)(A) provides in relevant part that "[a]n allegation that calls into question the correctness of a judge's ruling, *including a failure to recuse*, without more, is merits-related" and therefore not cognizable misconduct.[28]  In consequence, the claim that the undersigned should have recused himself, even if otherwise meritorious, is unlikely to prevail as a claim of judicial conduct because the claim is merits-related and therefore not cognizable under the Judicial Conduct Rules.  Plaintiff's  remedy, if any were appropriate, would be under the usual appellate processes.  But plaintiff's claim would have little likelihood of success even if this fundamental deficiency were put aside.

### 2.    *The Merits of the Recusal Application*

The complaint asserts that the undersigned should have recused because either (1) the judge's former firm, as plaintiff's counsel suggests, previously represented the defendant, a representation that, if it occurred, plaintiff's own submission shows to have been an entirely unrelated corporate matter, or (2) the Court responded to her counsel's inquiry as to whether the firm had represented the defendant during its time there by stating that he did "not recall the defendant in this case having been a client of Paul Weiss . . . during his tenure at the firm."  Neither hypothesis is defensible.  She appears to claim also, although not in her stay motions,[29] that the Court's continued presiding over the case after the filing of her affidavit to disqualify under 28 U.S.C. § 144

---

[28]    Emphasis added.

[29]    DI 135-138.

independently constituted inappropriate behavior.

### (a)      *Paul Weiss Never Represented the Defendant*

The first of her claims is readily dispatched.

The Court has filed a letter from Paul Weiss from the partner in charge of oversight of the firm's database on its current and former representations, a database that includes, among other things, the names of the clients the firm has represented since at least January 1970, the year in which the undersigned joined the firm as an associate.  He confirms "that [Paul Weiss] has never had an attorney-client relationship with The Scotts Company" and that a word search of the firm's Records Department reveals that The Scotts Company does not appear in the firm's records.[30]  There accordingly is no merit at all to plaintiff's complaint.  But it is appropriate in all the circumstances to demonstrate that there never was, even before Paul Weiss's letter was obtained.

### (b)      *There Was No Evidence of Any Such Representation*

In asserting that Paul Weiss represented the defendant, plaintiff's counsel relied entirely on the result of a search conducted on AOL.  The materials she submitted, however, did not support her assertion.  And it is worth discussing why that is so because it demonstrates ways in which the Internet is capable of misuse or misunderstanding.

Her search request was "The Scotts Company and Paul Weiss Rifkind."  The first ten

---

[30]      DI 139.

of the 8,410 results included this entry:[31]

> Scotts Company - Scotts Millennium Growth Plan
> ... Patton Boggs; Paul, Hastings, Janofsky & Walker, Paul, Weiss, Rifkind . . . The Scotts
> Company adopts the Scotts Millennium Growth Plan to enhance . . .
> https://www.techagreements.com/agreement-preview... -45k - Similar pages

Given the manner in which search engines work, this apparently would have been evidence, at most,

that the phrases "Scotts Company" and "Paul, Weiss, Rifkind" both appeared on the

techagreements.com web site.[32]  Resort to the techagreements.com web site seems to confirm this.[33]

---

[31]

When the Court conducted the same search on AOL of "The Scotts Company and Paul Weiss Rifkind" on February 9, 2008, the search yielded results that differed slightly from those of plaintiff's counsel.  The first ten results from the Court's search included the following pertinent entry:

> Scotts Miracle-gro Co. Agreements
> ... Webb & Tyler, Patton Boggs, Paul, Hastings, Janofsky & Walker, Paul, Weiss, Rifkind, ...
> Scotts Company - Chief Executive Officer Employment Agreement ...
> www.techagreements.com/company-agreements.aspx?I... - 68k - Similar pages

Note the change in the first line from "Scotts Company - Scotts Millennium Growth Plan" to "Scotts Miracle-gro Co. Agreements." the inclusion in the second line of the latter part of the name of Paterson, Belknap, Webb & Tyler, and the change in reference to "Chief Executive Officer Employment Agreement.."

[32]

*See, e.g., Gov't Employees Ins. Co. v. Google, Inc.,* 330 F. Supp.2d 700, 701 (E.D. Va. 2004) ("The search engines work by comparing search terms entered by the Internet user with databases of Websites maintained by the search engine, generating a results page that lists the Websites matching the search term."); *Playboy Enters., Inc. v. Netscape Comm'ns Corp.*, 55 F. Supp.2d 1070, 1077 (C.D. Cal. 1999) ("Search engines generally use algorithms to assess the relevance of Web sites to a search query by, among other things, looking at the words used on the  site.').

While differences exist in how various search engines work, all perform three basic tasks. First, each search engine uses a "crawler" (also referred to as a "spider") with its own set of rules guiding how documents are gathered.  Some crawlers follow every link on every home page they find and then, in turn, examine every link on each page of those new pages and so on.  Other crawlers ignore certain links, such as links leading to graphic files or sound files.  Each crawler keeps an index of the words it finds and where those words were found.  The indexing software receives the documents and uniform resource locators ("URLs") that the crawler finds.  The software then extracts and indexes information from the documents.  The type of index built determines what type of searching can be done with

the search engine and how the information will appear.  For example, some search engines index every word in each document while others the size of the document and the number of words in it.  Still others index only the title, headings and subheadings of the documents and URLs.  PRESTON GRALLA, HOW THE INTERNET WORKS 192 (7th ed.  2004).  Thus, it is entirely likely that plaintiff's counsel's internet search produced Scotts in association with a list of law firms that included Paul Weiss because both Scotts name and the names of the law firms appeared somewhere no the techagreements.com web site and not because there was any professional connection between Scotts and any of the law firms.

33

The web site offers for sale copies of contracts and corporate documents.  The home page contains hyperlinks as well as frames or dialog boxes that permit a user to search for desired material by document type, company name, law firm, governing law, and industry, among other criteria.  The box for searching by law firm comes up containing the name  Adelberg, Rudow, Dorf & Hendler.  But it has a drop down menu beside that name that lists scores of other law firms including Patton Boggs, Paul, Hastings, and Paul, Weiss, among many other firms.  By clicking on the name of another firm, one may substitute the name of the firm thus selected for that of the Adelberg firm.  The box for searching by governing law is similar, the default entry being Alabama and there being a drop down menu listing all of the states and many foreign jurisdictions.

If one takes the home page as it appears (including the Adelberg firm, the default entry, in the "search by law firm" box), enters "Scotts" in the "search by company" box, and clicks on "Go" beside it, the search result is a list of 292+ Scotts Company documents, including the Scotts Millennium Growth Plan.

If, however, one selects Paul Weiss from the drop down menu in the "search by law firm" box, enters "Scotts" as the search term in the same box," and clicks on "Go" beside that box, the search result reads: "Search Term: Scotts + Paul, Weiss, Rifkind, Wharton & Garrison LLP OR Paul, Weiss   No agreements match your search. Consider revising your search query."

This conclusion appears to be confirmed if one makes exactly the same search request on AOL.com that plaintiff apparently made on aolsearch.aol.com, but substitutes for Paul, Weiss the name of another firm whose name appears in the drop down menu on the techagreements.com home page.  Results for "The Scotts Company and Baker Botts" and "The Scotts Company and Milbank Tweed," respectively, include:

> Scotts Miracle-Gro Co. Agreements
> ... Baker & McKenzie, Baker Botts, Baker, Donelson, Bearman, Caldwell & Berkowitz ....
> Scotts Company - Chief Executive Officer Employment Agreement ...
> www.techagreements.com/company-agreements.aspx?I... - 68k - Similar pages
>
> Scotts Miracle-Gro Co. Agreements
> ... Michael Best & Friedrich, Milbank, Tweed, Hadley & McCloy, Milberg Weiss .... Scotts Company - Chief Executive Officer Employment Agreement ...

But the key point is not a deduction as to how the techagreements.com web site or the search engine

works.  The Court lacks sufficient information to determine that definitively.  Rather, it is that

plaintiff never offered any basis for supposing that the appearance of Paul Weiss and the other law

firms names in response to plaintiff's search request indicated any attorney-client relationship

between Paul Weiss and defendant as opposed, for example, to its having been a consequence of the

---

It thus appears that the search engine that produced the search result relied upon by plaintiff's counsel generated the result by associating each of the law firms listed in the drop down menu on the home page (i.e., Patton Boggs, Paul, Hastings, and Paul, Weiss) with Scotts (and probably every other company whose documents are in the techagreements database) simply because the names of the law firms and the Scotts name all appear somewhere on the techagreements web site rather than because there ever was an attorney-client relationship agreement Scotts and any of the law firms.

This conclusion appears to be confirmed if one makes exactly the same search request on AOL.com that plaintiff apparently made on aolsearch.aol.com, but substitutes for Paul, Weiss the name of another firm whose name appears in the drop down menu on the techagreements.com home page.  Results for "The Scotts Company and Baker Botts" and "The Scotts Company and Milbank Tweed," respectively, include:

> Scotts Miracle-Gro Co. Agreements
> ... Baker & McKenzie, Baker Botts, Baker, Donelson, Bearman, Caldwell & Berkowitz ....
> Scotts Company - Chief Executive Officer Employment Agreement ...
> www.techagreements.com/company-agreements.aspx?I... - 68k - Similar pages

> Scotts Miracle-Gro Co. Agreements
> ... Michael Best & Friedrich, Milbank, Tweed, Hadley & McCloy, Milberg Weiss .... Scotts
> Company - Chief Executive Officer Employment Agreement ...
> www.techagreements.com/company-agreements.aspx?I... - 68k - Similar pages

It is worth noting that an "advanced" search of the techagreement.com site also supports this point.  From the top right-hand corner of the techagreement.com homepage, one may select the advanced search function.  Clicking on "advanced search" leads to a new search page.  The page allows one to choose from search categories as "Find Agreements that have ... all these words" or "Find agreements that have...this exact wording or phrasing," et al. One may then add additional filters to the search, such as "Company Name," "Agreement Title," or "Law Firm."

When the Court conducted an "advanced search" for agreements with the exact wording or phrase "Scotts Company" and added "Paul Weiss" to the Law Firm filter, the result was: "No agreements match your search. Consider revising your search query."

16

manner in which the techagreements.com web site, which mentions both in unrelated contexts, interacted with the search engine used by plaintiff's counsel.

This lack of evidence alone was sufficient reason for denial of plaintiff's recusal motion without getting to the question whether the existence of an attorney-client relationship between Paul Weiss and the defendant would have warranted recusal.  Even if one were to get to that question, however, plaintiff would have stood in no better stead.

(c)     *Recusal Have Been Unwarranted Even If Plaintiff Had Been Correct on the Facts*

The standards for recusal are set out in two statutes – Sections 144 and 455 of the Judicial Code.[34]  It is well to consider them separately.

(1)     *Section 144*

Section 144 provides in relevant part that:

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

Plaintiff's judicial conduct complaint briefly suggests that the fact that the undersigned proceeded with the case after she sought recusal under Section 144 was improper.  She refers to the statute's command that the assigned judge proceed no further and that another judge be assigned when a party "files a timely and sufficient affidavit that the judge before whom the matter

_____

[34]     28 U.S.C. §§ 144, 455.

is pending has a personal bias or prejudice either against him or in favor of any adversary party."
But this contention, as demonstrated above, is not cognizable under the Judicial Conduct Rules.
Moreover, it would be unlikely to prevail even if it were.

Section 144 has both procedural and substantive requirements.

From a procedural point of view, the affidavit must be timely – it must be filed as
soon as practical after learning of the facts.[35]  It must be made by the party. And it must be
accompanied by a certificate of counsel stating that the affidavit is filed in good faith. The procedural
requirements of the statute are enforced strictly.[36]

From a substantive perspective, the affidavit must allege sufficiently that the judge
has a personal bias or prejudice against the party filing the affidavit or in favor of an adverse party.
To this must be added the further gloss, viz. that the determination of whether such an affidavit is
timely and legally sufficient is made by the judge whose recusal is sought.[37]  In doing so, however,

---

[35]

See, e.g., Omega Eng'g, Inc. v. Omega, 432 F.3d 437, 448 (2d Cir. 2005); Apple v. Jewish
Hosp. and Medical Center, 829 F.2d 326, 333 (2d Cir.1987) ("It is well-settled that a party
must raise its claim of a district court's disqualification at the earliest possible moment after
obtaining knowledge of facts demonstrating the basis for such a claim."); Lamborn v.
Dittmer, 726 F. Supp. 510, 514 (S.D.N.Y.1989) (same); Cranston v. Freeman, 290 F. Supp.
785, 816 (N.D.N.Y.1968) (Section 144 motion untimely when brought after commencement
of trial), rev'd on other grounds, 428 F.2d 822 (2d Cir.1970).

[36]

13A CHARLES ALLAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE:
JURISDICTION 2D § 3542, at 581-84 (1984); see also, e.g., United States v. Occhipinti, 851
F.Supp. 523, 525 (S.D.N.Y.1993) (procedures governing timeliness and sufficiency "must
be strictly followed and if there is any deviation, the motion should be denied"); United
States v. Johnpoll, 748 F. Supp. 86, 88 (S.D.N.Y.1990) (same), aff'd, 932 F.2d 956 (2d Cir.),
cert. denied, 502 U.S. 881 (1991);  726 F. Supp. 510, 514 (S.D.N.Y.1989) (same).

[37]

See, e.g., Berger v. United States, 255 U.S. 22, 32 (1921) (it "is imposed upon the judge the
duty of examining the affidavit to determine whether or not it is the affidavit specified and
required by the statute and to determine its legal sufficiency"); National Auto Brokers Corp.

18

the judge is obliged to assume the truth of the factual allegations of the affidavit, although the judge

may disregard speculative and conclusory assertions.[38]

In this case, plaintiff's affidavit was untimely.  Although she knew enough to write

the Chief Judge on September 29, 2008 to ask that proceedings be stayed and received the Court's

response to her inquiry on or about October 3, 2008, she did file the Section 144 affidavit until

December 31, 2008.[39]  Her protestation that she could not have filed earlier is unpersuasive because

she had no more information when she did file on December 31 than she had on October 3, when

the Court responded to her letter.  So the application was untimely.  But it would have been

insufficient in any case.

Section 144 requires an affidavit "that the judge before whom the matter is pending

has a personal bias or prejudice either against him or in favor of any adverse party," and usually a

*v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir.1978) ("a judge has an affirmative duty to inquire into the legal sufficiency of such an affidavit and not to disqualify himself unnecessarily ..."), *cert. denied,* 439 U.S. 1072 (1979); *United States v. Haldeman,* 559 F.2d 31, 131 (D.C.Cir.1976) ("It is well settled that the involved judge has the prerogative, if indeed not the duty, of passing on the legal sufficiency of a Section 144 challenge."), *cert. denied,* 431 U.S. 933 (1977); *Eisler v. United States,* 170 F.2d 273, 278 (D.C.Cir.1948) ("[T]he judge has a lawful right to pass on the legal sufficiency of the affidavit."), *cert. granted,* 335 U.S. 857, *cert. dismissed,* 338 U.S. 883 (1949); *American Brake Shoe and Foundry Co. v. Interborough Rapid Transit Co.,* 6 F.Supp. 215, 218 (S.D.N.Y.1933) ("[W]hen such an affidavit is filed, the recused judge is restricted to a determination of its timeliness and legal sufficiency.").

[38]

*See, e.g., Berger v. United States,* 255 U.S. 22, 35 (1921) (court must assume truth of allegations in the affidavit);,*United States v. Vespe,* 868 F.2d 1328, 1340 (3d Cir.1989) (court need not credit speculative and conclusory allegations); *Phillips v. Joint Legislative Committee on Performance and Expenditure Review,* 637 F.2d 1014, 1019 (5th Cir.1981) (court must assume truth of allegations), *cert. denied,* 456 U.S. 960 (1982); *Haldeman,* 559 F.2d at 134 (court may disregard speculative and conclusory allegations).

[39]

Jackson Aff. (DI 123).

19

bias or prejudice stemming from an extrajudicial source.[40]  Plaintiff's affidavit alleges only that she believed that the Court was biased against her because she had been advised by counsel that the undersigned had been obliged to respond to counsel's inquiry about prior representation by Paul Weiss of the defendant with an unequivocal "yes" or "no."[41]  With all due respect, the Court was not obliged to respond to counsel's inquiry at all.  That it honestly (and, as events have shown, correctly) did so by stating that it did not recall any representation of Scotts by Paul Weiss while he was with the firm affords no basis for a conclusion that the Court held a personal bias in favor of or against either plaintiff or her adversary, let alone any bias or prejudice stemming from an extrajudicial source.  In other words, the affidavit was legally insufficient because its factual allegations, assuming their truth, did not allege the personal bias or prejudice that is essential to a Section 144 recusal motion.

In view of the fact that the determination of the timeliness and sufficiency of an affidavit under Section 144 is committed in the first instance to the judge in question, there is no basis for plaintiff's contention that the failure to step aside in the face of these papers was improper, let alone a basis for recusal independent of the merits of the plaintiff's contention that the undersigned was disqualified by virtue of the imagined prior representation of the defendant by Paul Weiss.

---

[40]

*Liteky v. United States,* 510 U.S. 540, 550-51 (1994).

[41]

Jackson Aff. (DI 123-2) ¶¶ 3-6.

*(2)      Section 455*

Section 455, which is the real focus of plaintiff's attention, provides in relevant part as follows:

"(a)      Any . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

"(b)      He shall also disqualify himself in the following circumstances:

*   *   *

"(2)      Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter."

The undersigned left Paul Weiss for the bench in 1994.  Plaintiff first was employed by defendant in 2001, and all of the alleged discrimination is said to have occurred thereafter. Hence,  (1) the undersigned could not possibly have served as a lawyer in the matter in controversy, and (2) no lawyer with whom the undersigned previously practiced law could have served "during such association as a lawyer concerning the matter."  Section 455(b)(2) therefore would not have been satisfied here, irrespective of whether Paul Weiss ever had represented the defendant, as the "matter in controversy" – plaintiff's employment by defendant – post-dated my departure from the firm.

Plaintiff nevertheless claimed that disqualification was mandatory under Section 455(a) because there was an appearance of impropriety, either because Paul Weiss represented defendant in 1999 in connection with the Millennium Growth Plan or because of the undersigned's response to her counsel's inquiry.  Neither contention ever had any merit.

In *Liteky v. United States,*[42] the Supreme Court said that:

"§ 455(a) expands the protection of § 455(b), but duplicates some of its protection as well -- not only with regard to bias and prejudice but also with regard to interest and relationship.  Within the area of overlap, it is unreasonable to interpret § 455(a) (unless the language *requires* it) as implicitly eliminating a limitation explicitly set forth in § 455(b)."[43]

Thus, a judge is required to recuse – in consequence of a previous attorney-client relationship between the judge and a party – or even a current attorney-client relationship between a lawyer with whom the judge formerly practiced and a party – only when the criteria of Section 455(b)(2) are satisfied.  Any other construction of Section 455(a) would render Section 455(a) inconsistent with Section 455(b)(2).

To be sure, the relationship between Sections 455(a) and (b) perhaps is not entirely clear.[44]  And the Court assumes for purposes of discussion that there may be circumstances in which recusal might be appropriate under Section 455(a) on grounds that are broader than, but overlap with, circumstances addressed by Section 455(b).  For example, if recusal were sought on the grounds that (1) a former law partner of the judge represented the defendant in the matter pending before the judge, and (2) the judge had a close personal relationship with the lawyer, Section 455(b)(2) would not necessarily be satisfied – the lawyer-client relationship between the party and the judge's former

---

[42]  510 U.S. 540.

[43]  *Id.* at 552-53 (emphasis in original).

[44]  *Compare In re Certain Underwriter,* 294 F.3d 297, 305-06 (2d Cir. 2002) ("facts [that] do not suffice for recusal under § 455(b) . . . may be examined . . . under § 455(a)), *with United States v. Lauersen,* 348 F.3d 329, 336 (2d Cir. 2003), *vacated on other grounds,* 543 U.S. 1097 (2005) (court should hesitate to construe § 455(a) to require recusal where subject is addressed in § 455(b) and § 455(b) does not require recusal) (semble).

client might not have existed while the judge and the former partner practiced together.  But Section 455(a) might warrant recusal, without creating any inconsistency with Section 455(b)(2), in consequence of the close personal relationship between the judge and the former partner coupled with the former partner's representation of a party.  But that is neither here nor there in this case.

Even assuming that plaintiff had been right in supposing that Paul Weiss represented defendant in 1999 in connection with the Millennium Growth Plan, apparently an incentive compensation arrangement, there would have been no appearance of impropriety.  The undersigned, as noted, left the firm in 1994.  There was no evidence that the defendant was a client when he was there, even assuming it had become a client later.  There is no connection between the subject matter of this case and the incentive compensation scheme.  There would be no reason to suppose even that anyone who worked on the incentive compensation scheme, assuming that the firm actually worked on that matter, was with the firm when the undersigned was there – a fact of no mean significance given Paul Weiss's size, which long has numbered in the hundreds of lawyers.

(c)    *Recusal Would Not Have Been Warranted By the Response to Plaintiff's Inquiry*

Nor is there anything to plaintiff's contention that the Court was obliged to recuse because it responded to her inquiry by stating that it had no recollection of Paul Weiss representing the defendant while the undersigned was at the firm.  The point of the statement was that the defendant, to the best of the Court's recollection, was not a client during the Court's tenure with the firm.  A judge is not obliged to have encyclopedic and definitive knowledge of what individuals and entities were and were not clients of a law firm of hundreds of lawyers over a period of more than

24 years.  No reasonable person, aware of all the facts, would regard the failure to claim such definitive knowledge as creating an appearance of partiality.

### B.    The Equities

Nor do the equities favor a stay pending the outcome of plaintiff's complaint.

Defendant's motion to dismiss for discovery misconduct is fully briefed and ready for decision.  If it were granted, plaintiff would be in a position to raise her recusal argument on appeal from the final judgment.  Even if it were not granted, it would be difficult to see how she would be materially harmed by proceeding to a determination of the action on the merits, whether by summary judgment or trial.  The point would be moot if she prevailed and available to her on appeal if she lost.

### II.       The Motion to Dismiss

Rule 37(b)(2)(A) provides in relevant part:

"If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

*   *   *

"(v) dismissing the action or proceeding in whole or in part."

"[T]he sanction of '[d]ismissal under Fed.R.Civ.P. 37 is a drastic remedy that should be imposed only in extreme circumstances,' usually after consideration of alternative, less drastic sanctions. Dismissal under Rule 37 is warranted, however, where a party fails to comply with the

court's discovery orders willfully, in bad faith, or through fault.'"[45]  Accordingly, the Court proceeds to consider the pivotal questions:  (1) whether the plaintiff failed to comply with a discovery order, (2) whether the failure was wilful, in bad faith, or otherwise culpable, (3) whether less drastic sanctions would be preferable, and (4) whether any other considerations weigh against dismissal.

### A.    Noncompliance With the December 24, 2008 Order

On August 18, 2008, the Court granted defendant's motion to compel discovery – specifically, complete responses to certain documents requests and interrogatories – and directed plaintiff to comply no later than August 28, 2008.[33]

On September 19, 2008, defendant moved to dismiss for failure to comply with the August 18 Order,[34] arguing that plaintiff had not complied.[35]  Plaintiff responded in October by attaching copies of (a) incomplete discovery responses that had antedated the August 18 Order and supplemental responses evidently served hours before her response, and (b) seeking to excuse the delay with a claim of illness.[36]  As defendant's reply papers pointed out, however, even the belated supplemental responses failed to comply with the August 18 Order.  Plaintiff persisted in her failure

---

[45]

*John B. Hull, Inc. v. Waterbury Petrol. Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir. 1988) (internal quotation marks and citations omitted).

[33]

DI 81.

[34]

DI 99.

[35]

Friedman Decl. (DI 101) ¶¶ 21-22.

[36]

DI 108.

to produce, among other things, (a) records of various treating physicians and medical authorizations that would have permitted defendant to obtain them, and (b) information pertinent to her claims of disparate treatment – materials critical to the defense of this action.[37]

Rather than dismissing the action, the Court issued the December 24 Order. It stated in relevant part:

> "Plaintiff, on or before January 12, 2009, shall comply in all respects with the August 18, 2008 order.

> "Any failure to comply in all respects with this order may result in the imposition of sanctions, which may include dismissal of the action."[38]

On January 20, 2009, defendant renewed its motion to dismiss, asserting that plaintiff had not complied with the December 24 Order.[39]  She had not "provide[d] a single document, medical record, medical records authorization, or supplemental interrogatory response."[40]  Plaintiff's response to the motion does not contend otherwise or seek to excuse this failure.  Accordingly, plaintiff's non-compliance with the December 24 Order is undisputed.

### B.    Wilfulness, Bad Faith or Fault

The December 24 Order was crystal clear – plaintiff was to produce the additional

---

[37]   DI 111, at 8-9; Friedman Decl. (DI 112) ¶¶ 4-5.

[38]   DI 119.

[39]   DI 125.

[40]   DI 126, at 3; Friedman Decl. (DI 127) ¶ 3.

material required by the August 18 Order on or before January 12, 2009.  She failed to comply.  She has offered no excuse or explanation for the failure.  The Court therefore finds that plaintiff's failure to comply with the December 24 Order was wilful and in bad faith.

### C.      Alternative Sanctions

This is but the latest in a long series of irresponsible actions and failures to act, some of which have resulted in the imposition of lesser sanctions.  Indeed, the December 24 Order itself was an attempt to secure compliance with the August 18 Order by means short of dismissal or other sanctions.  It failed.

The Court finds in all of the circumstances that plaintiff will not comply with her discovery obligations in response to any sanction or other means.  It therefore finds also that any lesser sanction would be ineffective.

### D.      Other Considerations

Several other factors are pertinent to the determination of the sanction appropriate in view of plaintiff's disobedience of the December 24 Order.

First, the order warned plaintiff that failure to comply could result in sanctions, which might include dismissal of the action.  She cannot claim surprise.

Second, plaintiff herself – as distinct from her counsel – long has been well aware of problems with her attorney.  In July 2008, when the Court sanctioned plaintiff's counsel for repetitious and baseless contentions that discrimination violated the Workers' Compensation Law, it directed plaintiff's counsel to provide plaintiff herself with copies of the pertinent court orders and

27

to file proof that she had done so.[41]  It did so out of concern that plaintiff should be aware of the fact that her attorney was behaving in an inappropriate  manner and a manner, moreover, that plaintiff well might have concluded was not in plaintiff's interest.  Plaintiff, however, has not discharged counsel and, in fact, has abetted counsel's efforts.[42]

Third, the Court notes that plaintiff and her counsel on at least one or two occasions have sought to excuse failures to comply with various obligations by claims of illness.  On this occasion, however, no such claim has been made.  Moreover, the Court has more than accommodated these claims in the past.  Indeed, it did not dismiss the action in response to defendant's September 2008 motion to do so for failure to comply with the August 18 Order in light of such a claim, instead giving plaintiff a final chance to comply with her obligations.  She did not avail herself of that opportunity or claim inability to do so.

*Conclusion*

There is no basis for staying further proceedings in this action pending the outcome of plaintiff's judicial conduct complaint concerning the Court's failure to recuse itself.  That complaint lacks merit, and plaintiff in any case will have ample opportunity to raise the point on direct appeal from a final judgment.  Dismissal of the action is appropriate in light of plaintiff's wilful, bad faith failure to comply with the December 24 Order and the patent inadequacy of means of coercing compliance.

---

[41]        DI 56, 71.  Plaintiff's counsel filed such proof.  DI 77.

[42]        *See e.g.*, Pl.'s Aff. (DI 120 Exh. 6).

28

Accordingly, plaintiff's motions for a stay[43] are denied in all respects.  Defendant's motion to dismiss the action pursuant to Rule 37(b)(2)[44] is granted and the action is dismissed with prejudice.  The Clerk shall enter final judgment accordingly and terminate any pending motions as moot.

SO ORDERED.

Dated:        February 10, 2009

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[43]    DI 135-137.

[44]    DI 125.